**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

GENERAL ELECTRIC COMPANY,

       *Plaintiff*,

    v.

MITSUBISHI HEAVY INDUSTRIES,
LTD., and MITSUBISHI POWER SYSTEMS
AMERICAS, INC.,

       *Defendants*.

CIVIL ACTION NO. 3:10-CV-276-F

**JURY TRIAL DEMANDED**

**MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION IN LIMINE**

# TABLE OF CONTENTS

MOTION IN LIMINE 1:
GE SHOULD BE PRECLUDED FROM PRESENTING EVIDENCE OR
ARGUMENT CLAIMING DAMAGES FOR  WIND TURBINES THAT WERE
NEVER INSTALLED .......................................................................................................................1

MOTION IN LIMINE 2:
GE SHOULD BE PRECLUDED FROM PRESENTING EVIDENCE  OR
ARGUMENT CLAIMING DAMAGES FOR ACTIVITIES  OCCURRING
BEFORE GE FILED SUIT ON FEBRUARY 10, 2010.................................................................6

MOTION IN LIMINE 3:
GE SHOULD BE PRECLUDED FROM PRESENTING EVIDENCE OR
ARGUMENT SEEKING LOST PROFITS  FOR SALES OCCURRING BEFORE
THE '705 PATENT ISSUED ......................................................................................................11

MOTION IN LIMINE 4:
GE SHOULD BE PRECLUDED FROM PRESENTING EVIDENCE OR
ARGUMENT THAT MITSUBISHI "COPIED" GE'S PATENTS OR PRODUCTS .................14

MOTION IN LIMINE 5:
GE SHOULD BE PRECLUDED FROM PRESENTING UNTIMELY  EVIDENCE
REGARDING INFRINGEMENT OF THE '055 PATENT .........................................................16

CONCLUSION............................................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

Cases

*Am. Med. Sys., Inc. v. Med. Eng'g Corp.*,
   6 F.3d 1523 (Fed. Cir. 1993)..................................................................................8, 9, 10

*Cross Medical Products, Inc. v. Medtronic Sofamor Danek, Inc.*,
   424 F.3d 1293 (Fed. Cir. 2005)......................................................................................4

*Crown Packaging Technology, Inc. v. Rexam Beverage Can Co.*,
   559 F.3d 1308 (Fed. Cir. 2009).......................................................................................9

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,
   567 F.3d 1314 (Fed. Cir. 2009)......................................................................................16

*Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l Inc.*,
   389 F.3d 1370 (Fed. Cir. 2004).......................................................................................4

*Gart v. Logitech*,
   254 F.3d 1334 (Fed. Cir. 2001)......................................................................................8

*Golden Blount, Inc. v. Robert H. Peterson Co.*,
   438 F.3d 1343 (Fed. Cir. 2006).......................................................................................5

*Gyromat Corp. v. Champion Spark Plug Co.*,
   735 F.2d 549 (Fed. Cir. 1984)................................................................................. 11-12

*Merck & Co. v. Mediplan Health Consulting, Inc.*,
   434 F. Supp. 2d 257 (S.D.N.Y. 2006)............................................................................10

*Mformation Techs., Inc. v. Research In Motion Ltd.*,
   No. C 08-04990 JW, 2011 U.S. Dist. LEXIS 148156 (N.D. Cal. Dec. 19, 2011)...................10

*Nike, Inc. v. Wal-Mart Stores, Inc.*,
   138 F.3d 1437 (Fed. Cir. 1998)......................................................................................8

*Osteotech, Inc. v. Regeneration Techs., Inc.*,
   No. 3:06-cv-04249-FLW, 2008 U.S. Dist. LEXIS 86254 (D.N.J. Sept. 26, 2008) ............. 9-10

*Rite-Hite Corp. v. Kelly Co., Inc.*,
   56 F.3d 1538 (Fed. Cir. 1995) (en banc).............................................................................13

*Siemens Medical Solutions v. Saint-Gobain Ceramics*
   , 637 F.3d 1269 (Fed. Cir. 2011)....................................................................................14

*WiAV Solutions LLC v. Motorola, Inc.*,
   732 F. Supp. 2d 634 (E.D. Va. 2010) .........................................................................8, 11

**STATUTES**

35 U.S.C. § 287 ................................................................................................................. passim

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26 ....................................................................................................................19

Fed. R. Civ. P. 37 ..............................................................................................................18, 19

Fed. R. Evid. 401 ....................................................................................................................16

Fed. R. Evid. 403 ....................................................................................................................16

Defendants Mitsubishi Heavy Industries, Ltd. and Mitsubishi Power Systems Americas, Inc. (collectively, "Mitsubishi") submit this memorandum in support of their motion in limine. Mitsubishi's motion seeks: (1) to preclude Plaintiff General Electric Company ("GE") from presenting evidence or argument claiming damages under U.S. Patent No. 6,879,055 for wind turbines that were never installed; (2) to preclude GE from presenting evidence or argument claiming damages for any infringing acts that occurred before GE filed suit on February 10, 2010; (3) to preclude GE from presenting evidence or argument claiming lost profits for sales occurring before U.S. Patent No. 7,629,705 ("the '705 patent") issued; (4) to preclude GE from presenting evidence or argument that Mitsubishi "copied" GE's patents or products; and (5) to preclude GE from presenting untimely evidence regarding infringement of the '055 patent.

## MOTION IN LIMINE 1:

### GE SHOULD BE PRECLUDED FROM PRESENTING EVIDENCE OR ARGUMENT CLAIMING DAMAGES FOR WIND TURBINES THAT WERE NEVER INSTALLED

Because the asserted claims of the '055 patent require an installed wind turbine, infringement can occur only if the wind turbine is installed. GE's technical expert acknowledges that infringement of the asserted claims requires an assembled product. It therefore follows that damages arising from Mitsubishi's alleged infringement of the '055 patent can only be awarded for wind turbines that have been installed. Despite this undisputed fact, GE's damages expert, Julie Davis, has included wind turbines that were never installed in her damage calculations. Ms. Davis presumably expects to testify to this effect at trial. Her testimony, however, should be barred as incompetent and lacking proper foundation under Rules 602 and 702.

### A.    Relevant Procedural Background

GE seeks, among other things, reasonable royalty damages for the alleged infringement of the '055 patent by Mitsubishi's accused wind turbines. Davis Expert Report, Exhibit 3,

- 1 -

Schedule A5.1. In her damages calculation, GE's expert, Ms. Davis, included certain orders that she acknowledged were "related to cancellations of projects and the settlement amounts associated with the cancellations."  Specifically, Ms. Davis identified the following contracts as providing a basis for claiming reasonable royalty damages:

| | |
|---|---|
| 2A3037 * | Hatchet Ridge/B&B 2009 WT Farm |
| 2A3039 * | 2009 WT Farm Babcock & Brown |
| 2A3040 * | 2009 WT Farm Babcock & Brown |
| 2A3042 * | Babcock & Brown (2010) |
| 2A3049 * | Edison Reconciliation |

*Id.*

Each of these orders involved contracts between Mitsubishi and a customer where the customer later broke the contract.  Importantly, as Ms. Davis admitted, because they were the subject of canceled orders, none of these wind turbines were ever installed.  Davis Deposition at 11:17-12:1  ("My general understanding is that none of those turbines were installed.").  As she explained, Ms. Davis' understanding was that Mitsubishi still infringed the asserted claims even if the turbines were not installed.  *Id.* at 12:14-13:1 (stating "to the extent that those turbines were sold with configurations or components that would have been infringing, then that would have been infringement, even if they were not installed").

Each asserted claim of the '055 patent requires a base frame that "*is constructed* from a discrete upper part that carries the drive train and a discrete lower part that has an azimuthal drive device that is *attachably joined* with the upper part at a connection point."  '055 patent, claim 1 (emphases added).  The upper part of the nacelle and the lower part of the nacelle are shipped separately to the construction site and then assembled, where the two parts are bolted together.  According to GE's technical expert, Dr. Swift, it is this bolting together that meets the

claim limitation requiring that the lower part of the base frame "is attachably joined with the

upper part at a connection point."  As Dr. Swift opines in his expert report:

> The lower part of the base frame of the Accused Turbines is
> attachably joined with the upper part of the base frame at a
> connection point.  The yaw nacelle module contains a yaw tube
> that has at its top end a flange that is joined to lower side of the
> upper part of the base frame, contained within the front nacelle
> module, by the use of bolts.  The rear module is bolted to the front
> module.  *The bolting together of the yaw tube and the upper base
> frame is an attachable joint a connection between the upper and
> lower parts of the base frame.*

Swift Expert Report Regarding Infringement, para. 89 (emphasis added).

### B.    Argument

#### 1.    There Is No Foundation for Ms. Davis' Claim That Uninstalled Wind Turbines can Infringe the '055 Patent

Ms. Davis is not qualified to testify about the technological or legal aspects of

infringement of the '055 patent.[1]  Her expertise lies in economics, not wind-turbine construction.

Nor can GE's technical expert for the '055 patent provide a foundation for Ms. Davis.  In

his expert report, Dr. Swift bases his infringement opinion on structure that is created when the

wind turbine is installed:  "The bolting together of the yaw tube and the upper base frame is an

attachable joint at a connection between the upper and lower parts of the base frame."  Nowhere

in his expert report does Dr. Swift suggest that unassembled components of the accused wind

turbines infringe the '055 patent.

Moreover, the plain language of Claim 1 of the '055 patent is limited to an installed wind

turbine:  "a base frame . . . constructed from a discrete upper part that carries the drive train and a

---

[1] Ms. Davis's expert report acknowledges that she was retained "to prepare analyses to assist the
judge and/or jury in considering the amount of damages that GE may recover should MHI and/or
MPSA be found to infringe one or more claims of a valid and enforceable patent."  Expert
Report of Julie Davis, page 2.  Her expert report goes on to say:  "I offer no opinion on the
lilibity elements in this matter."  *Id.*

discrete lower part that has an azimuthal drive device that is *attachably joined* with the upper

part at a connection point." '055 patent, claim 1 (emphases added).  That is, for Mitsubishi's

accused products to infringe, claim 1 requires that the wind turbines actually be constructed by

bolting together (i.e., "attachably join[ing]") the upper part with the lower part of the base frame.

       Contrary to the assertion of GE's damages expert, a product does not infringe an

apparatus claim like those of the '055 patent because they "were sold with configurations or

components that would have been infringing . . . even if they were not installed."  Davis

Deposition at 12:14-13:1.  Literal infringement requires that "each and every limitation set forth

in a claim appear in an accused product."  *Frank's Casing Crew & Rental Tools, Inc. v.

Weatherford Int'l Inc.*, 389 F.3d 1370, 1378 (Fed. Cir. 2004).  Moreover, the Federal Circuit has

rejected arguments like GE's that devices that are capable of infringing directly infringe an

apparatus claim.

       For example, in *Cross Medical Products, Inc. v. Medtronic Sofamor Danek, Inc.*, 424

F.3d 1293 (Fed. Cir. 2005), the claim recited a fixation device for stabilizing one or more bone

segments comprising "an anchor seat means which has a lower bone interface *operatively joined*

to said bone segment."  *Id.* at 1299 (emphasis added).  The Federal Circuit construed

"operatively joined" to require that the interface and the bone segment "are connected and in

contact" with each other.  *Id.* at 1306.  Because Medtronic did not make an apparatus with an

anchor seat in contact with bone, the Federal Circuit held that Medtronic did not directly infringe

the claims.  *Id.* at 1312.

       Similarly, here, the asserted claims require attachably joining the upper and lower parts

of the base frame together.  Because the wind turbines were never installed for those customers

who canceled their orders, no base frame was ever constructed and each and every limitation of

- 4 -

the claims cannot be present. That the wind turbines could have been installed is irrelevant. Thus, unassembled components of Mitsubishi's accused wind turbines cannot infringe the asserted claims of the '055 patent.

### 2. GE Should Be Precluded from Including Uninstalled Wind Turbines as a Basis for GE's Claim for Royalty Damages

Because uninstalled wind turbines do not infringe the asserted claims of the '055 patent, no direct infringement arises from cancelled sales contracts. And without direct infringement, Mitsubishi cannot be liable to GE for those sales contracts. Offers to sell unassembled products that may infringe *if assembled* do not give rise to liability until the products are assembled. If assembly never takes place, no infringement occurs, and no liability arises.

The Federal Circuit addressed a similar situation in *Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1343 (Fed. Cir. 2006). There, the claims recited a fireplace assembly with a primary burner tube placed above the secondary burner tube. *Id.* at 1360. The defendant packaged and sold its secondary burner separately from its primary burner. Although the court found the defendant's assembled accused product infringed and the plaintiff was entitled to damages, the Federal Circuit vacated and remanded the damages award. The district court had failed to consider 802 accused products that were allegedly returned to the defendant before being assembled into an infringing configuration. *Id.* at 1373. As the Federal Circuit explained, "[i]f the 802 [accused products] were returned before having been sold to retailers and thereafter assembled into an infringing configuration, they should not have been included in the damages calculus." *Id.* at 1372. That is, the Court found that any unassembled products that did not infringe the claims could not be included as part of the plaintiff's damages award.

Likewise, here, because the canceled orders for Mitsubishi's wind turbines were never installed, those products do not infringe the '055 patent claims and GE is not entitled to any

damages for those products.  Thus, GE should be precluded from presenting any evidence or argument seeking damages for those unassembled products.

## MOTION IN LIMINE 2:

### GE SHOULD BE PRECLUDED FROM PRESENTING EVIDENCE OR ARGUMENT CLAIMING DAMAGES FOR ACTIVITIES OCCURRING BEFORE GE FILED SUIT ON FEBRUARY 10, 2010

35 U.S.C. § 287 requires a patent owner who "makes, offers to sell, or sells" a patented product to give notice of any alleged infringement before damages can be assessed.  Constructive notice can be provided by "marking" the patented product with the patent number.  Actual notice can be provided by an affirmative communication to the alleged infringer.  In the absence of such marking or actual notice, 35 U.S.C. § 287 precludes a patent owner from demanding damages for any period prior to the complaint.

GE bears the burden of showing that it complied with 35 U.S.C. § 287.  But GE's damages expert has cited no evidence showing that GE complied.  And, in fact, GE's own admissions show that GE did not comply with the statute.  Thus, there is no foundation for GE's damages expert to claim damages for any acts of infringement that occurred prior to GE's filing of the complaint.  Accordingly, GE's damages expert should be precluded from offering testimony claiming such damages.

### A.      Relevant Procedural Background

GE filed this suit on February 10, 2010, asserting, *inter alia*, that Mitsubishi's wind turbines infringe the '055 patent the '705 patent.  The '055 patent issued on April 12, 2005, and the '705 patent issued on December 8, 2009.  When the patents issued, GE was selling or offering to sell products in the United States that were covered by the patents-in-suit.

In its preliminary infringement contentions served on July 19, 2010, GE asserted that Mitsubishi infringed various claims of both patents and also admitted that its 1.5 MW wind

turbine embodied the asserted claims from the '705 patent and its 3.6 MW wind turbine

embodied the asserted claims of the '055 patent:

> GE asserts that the following GE products embody the claimed
> subject matter of the asserted claims of the '705 Patent:  GE
> 1.5MW wind turbine equipped with ZVRT feature, GE 2.5MW
> wind turbine equipped with ZVRT feature.
>
> GE asserts that the following GE products embody the claimed
> subject matter of the asserted claims of the '055 Patent: GE
> 3.6MW wind turbine.

GE's Preliminary Infringement Contentions, dated July 19, 2010, at pages 2-3.

There is no dispute that GE sold and offered to sell patented products after the patents-in-

suit issued.  GE's damages expert relies on sales of the 1.5 MW wind turbine equipped with

ZVRT to calculate GE's alleged damages after the '705 patent issued on December 9, 2009.

And a GE corporate witness, Vincent Schellings, admitted that GE offered its 3.6 MW wind

turbine for sale in the United States after the '055 patent issued on April 12, 2005.  Schellings

Depo. at 178:23-179:9.

By selling or offering to sell products covered by the asserted patents, GE was obligated

under 35 U.S.C. § 287 to mark the products with the patent numbers as a predicate to claiming

damages for infringement that took place prior to GE giving actual notice of the alleged

infringement.  GE has expressly admitted, however, that it did *not* mark its wind turbines with

either patent number, stating in response to Interrogatory No. 13:  "*GE does not mark* its wind

turbines with the patent numbers of the patents in suit."  (Emphasis added.)  And before filing

suit, GE never notified Mitsubishi of the '055 patent, the '705 patent, or GE's infringement

allegations under either patent.

GE's damages expert, however, intends to testify that GE is entitled to damages for

Mitsubishi activities that occurred prior to 2010.  More specifically, in her expert report, GE's

damages expert, Julie Davis, has included in her damages calculations Mitsubishi wind turbines that were sold and installed before 2010.  Davis Expert Report, Appendix B, Schedules 1-2.

**B.    Argument**

35 U.S.C. § 287 imposes limitations on patent infringement damages when patent owners fail either to mark their patented products with patent numbers or to give notice of the alleged infringement to the infringer.  Marking provides constructive notice of the infringement, and, in the absence of such constructive notice, actual notice is required before damages can be assessed. *Gart v. Logitech*, 254 F.3d 1334, 1345 (Fed. Cir. 2001).

Of note, the marking statute is limited to "patented articles," and thus does not apply to patented methods—if only method claims are included in the patent.  But where a patent, such as GE's '705 patent, includes both method claims and product claims and the patent owner asserts both types of claims against the accused infringer, the patent owner must mark its patented products or provide actual notice of infringement to collect damages for infringements before suit is filed.  *Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1539 (Fed. Cir. 1993).

Furthermore, although the statute is limited to patent owners "making, offering for sale, or selling within the United States any patented article," the statue expressly applies to "offer[s] for sale."  Thus, an offer for sale triggers the marking requirement even if no actual sale takes place.  *WiAV Solutions LLC v. Motorola, Inc.*, 732 F. Supp. 2d 634, 641 (E.D. Va. 2010).

As the patent owner, GE has the burden to show compliance with the marking statute by a preponderance of the evidence.  *Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1446 (Fed. Cir. 1998).  This burden includes the burden to show that it was not required to mark its patented products under § 287.  *WiAV Solutions*, 732 F. Supp. 2d at 640.

1.    **GE Triggered the Marking Statute for the '705 Patent by
Selling and Offering to Sell Its 1.5 MW Wind Turbine**

It is undisputed that GE was selling and offering to sell its 1.5 MW wind turbine in the

United States when the '705 patent issued on December 9, 2009.  Given GE's admissions, there

can be no dispute that GE's 1.5 MW wind turbine "embodies the claimed subject matter of the

asserted claims of the '705 patent."  GE Prelim. Infringement Contentions at 2-3.  Thus, to obtain

damages under the '705 patent without giving actual notice of infringement, GE was obligated to

mark its 1.5 MW wind turbines with the '705 patent.

For much of this litigation, GE asserted apparatus claims from the '705 patent against

Mitsubishi (specifically claims 9 and 13).  By asserting both method and apparatus claims, GE

inserted itself squarely into the fact pattern of the leading cases that hold that when a patent

owner asserts both method and apparatus claims of a patent, § 287 applies.  *Compare Am. Med.*

*Sys.*, 6 F.3d at 1539 (requiring marking where both method and apparatus claims were asserted)

*with Crown Packaging Technology, Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1317 (Fed.

Cir. 2009) (holding no marking required where patent owner asserted only method claims of a

patent with both method and apparatus claims).

The fact that the '705 patent includes both method and apparatus claims, and that GE has

now limited its infringement allegations to a single method claim (claim 1) from the '705 patent

does not exempt GE from the requirements of the marking statute.  GE did not withdraw those

allegations until October 24, 2011, when GE informed the Court that GE "no longer asserts"

claims 9 and 13 of the '705 patent.  Docket No. 345.  As several courts have recognized,

however, the fact that GE recently dropped the apparatus claims does not change the analysis.

*See Osteotech, Inc. v. Regeneration Techs., Inc.*, No. 3:06-cv-04249-FLW, 2008 U.S. Dist.

LEXIS 86254, at *19-20 (D.N.J. Sept. 26, 2008) (finding patentee "cannot evade the marking

requirement by relinquishing its initial product claim at this stage"); *see also Merck & Co. v. Mediplan Health Consulting, Inc.*, 434 F. Supp. 2d 257, 263 n.5 (S.D.N.Y. 2006) (imposing marking requirement where plaintiffs had arguably asserted infringement of both product and method claims given the broad allegations in the complaint even though it ultimately asserted only the method claims); *cf. Mformation Techs., Inc. v. Research In Motion Ltd.*, No. C 08-04990 JW, 2011 U.S. Dist. LEXIS 148156, at *46-51 (N.D. Cal. Dec. 19, 2011) (requiring marking where plaintiff initially asserted both product and method claims and court later found product claims invalid).[2]   Under the law, and as a matter of sound policy, GE was obligated to comply with § 287.

> **2.     GE Triggered the Marking Statute for the '055 Patent by Offering Its 3.6 MW Wind Turbine for Sale**

GE has admitted also that its 3.6 MW wind turbine "embodies the claimed subject matter of the asserted claims of the '055 patent."  And GE has admitted that it made offers to sell its 3.6 MW wind turbine in the United States after the '055 patent issued on April 12, 2005.  Thus, to obtain damages under the '055 patent before giving actual notice of infringement, GE had an obligation to mark its 3.6 MW wind turbines with the '055 patent.

GE offered its 3.6 MW wind turbine for sale in the United States, but apparently those offers did not result in actual sales.  The absence of actual sales, however, is irrelevant to the analysis.  The plain language of § 287 makes clear that "offering for sale . . . any patented article" triggers the marking statute.  Congress expressly included offers for sale in § 287, and

---

[2] The purpose of the marking statute is to encourage a patentee to give the public notice of its patent. *Am. Med. Sys.*, 6 F.3d at 1538.  Allowing GE to circumvent its marking obligation by dropping its product claims late in litigation would be contrary to the policies underlying the statute. *See Merck*, 434 F. Supp. 2d at 263 ("As a policy matter, patentees should be encouraged to mark their products, and permitting patentees to later on elect to proceed only on method claims to excuse non-compliance with the marking statute would undermine that goal.").

the courts have interpreted the statute consistent with its plain meaning.  *See, e.g., WiAV*

*Solutions*, 732 F. Supp. 2d at 641 (stating "the plain language of the statute requires marking

when a product is made, sold, offered for sale, or imported").

> **C.      By Failing to Cite Evidence that GE Complied with § 287, Ms. Davis'
> Expert Report Lack Foundation for Claiming Damages for Any Acts
> that Occurred before GE Filed Suit**

In the absence of evidence that GE complied with § 287, GE is barred from claiming

damages for allegedly infringing acts occurring before February 10, 2010, when GE filed suit.

By failing to cite any evidence to support compliance with the statute, GE's damages expert

lacks any foundation for claiming damages for any act of infringement before that date.

including those turbines that were installed in 2008-2009 and are included in Ms. Davis's expert

report and her damage calculations.  Accordingly, Ms. Davis should be precluded from

presenting any such evidence or testimony.

## <u>MOTION IN LIMINE 3:</u>

## <u>GE SHOULD BE PRECLUDED FROM PRESENTING
EVIDENCE OR ARGUMENT SEEKING LOST PROFITS
FOR SALES OCCURRING BEFORE THE '705 PATENT ISSUED</u>

GE's damages expert is asserting "lost profit" damages for alleged infringement of the

'705 patent, which issued on December 9, 2009.  Every wind turbine at issue in this case was

sold long before that date.  Thus, none of Mitsubishi's sales could have infringed the '705 patent.

GE's only infringement theory is that Mitsubishi and its customers infringed the '705 patent by

installing Mitsubishi's wind turbines *after* those turbines had already legitimately been sold.  But

GE's damages theory, based on "lost profits," does not fit GE's infringement theory.  "Lost

profits" damages may be appropriate if an infringer, *by virtue of his infringement*, made a sale

that the patentee otherwise would have made.  *See, e.g., Gyromat Corp. v. Champion Spark Plug*

*Co.*, 735 F.2d 549, 553 (Fed. Cir. 1984) ("The critical inquiry in determining whether to award

- 11 -

lost profits is whether [the patentee] has shown a reasonable probability that *it would have made the infringing sales* that [the infringer] made." (emphasis added)).  In this case, Mitsubishi did not make *any sales* by infringing the '705 patent; therefore, lost profits is not an appropriate measure of damages.

And for any infringing uses that occurred after the '705 patent issued, GE is limited by law to damage theories keyed to that use, such as a reasonable royalty.  Thus, there is no foundation for GE's damages expert to opine that GE should be awarded lost profits, and any such evidence or testimony should be precluded.

### A.     Relevant Procedural Background

GE's damages expert, Ms. Davis, asserts in her report that GE is entitled to lost profit damages for Mitsubishi sales to three wind farm projects:  Elm Creek II (62 turbines), Juniper Canyon (63 turbines), and Taloga (54 turbines).  Davis Expert Report, pp. 18-22.  Elm Creek II and Juniper Canyon were project sites for Mitsubishi customer Iberdrola Renewables "Iberdrola").  *Id.*  Taloga was a project site for Mitsubishi customer Edison Mission Electric ("EME").  *Id.*

The supply contract between Mitsubishi and Iberdrola for the turbines installed at Elm Creek II and Juniper Canyon was executed on February 21, 2008.  MPSANDTX0001386-1487.  The supply contact between Mitsubishi and Edison Mission Electric for the turbines installed at the Taloga site was executed on March 28, 2007.  MPSANDTX0002510-2585.  The turbines were manufactured and imported into the United States before the '705 patent issued, and Mitsubishi's customers installed the turbines in 2010 and 2011.  *See* MPSA's Response to Interrogatory No. 13 (Apr. 26, 2010).  Thereafter, with Mitsubishi's assistance, the turbines were commissioned and began operating.  *See, generally*, Komiya Tr. 95-98.

In her expert report, GE's damages expert opines that "certain turbines that were *sold and/or installed* for Iberdrola and EME in 2010 and 2011 are subject to lost profits." Davis Expert Report, p. 14.  But at her deposition, Ms. Davis admitted that the contracts for all of the Mitsubishi wind turbines in her lost profits analysis "were executed prior to December of 2009." Davis Depo. p. 22.  She contended nonetheless that GE was entitled to lost profits on those turbines because after the '705 patent issued, its customers "would recognize that the turbines that Mitsubishi had planned to deliver to those projects would infringe the patent and, therefore, could not be delivered to the customer." Davis Depo. p. 24.

**B.    Argument**

To recover damages for lost profits, "the patentee must show a reasonable probability that, 'but for' the infringement, it would have made the sales that were made by the infringer." *Rite-Hite Corp. v. Kelly Co., Inc.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc).  Here, the Mitsubishi sales that are the basis for GE's lost profits claim were *not* infringements because they were made *before* the '705 patent issued.

None of the Mitsubishi sales relied upon by Ms. Davis took place after the '705 patent issued.  Thus, there were no "infringing" sales that GE could have "lost."  Ms. Davis assumes that turbines Mitsubishi sold to its customers could not have been delivered to the customers after the '705 patent issued.  But even if it is assumed that the wind turbines could not have been delivered after the '705 patent issued, that fact is not the same as saying that GE lost sales.  The customers did not buy any wind turbines after the '705 patent issued, and there is no way to know whether they would have purchased replacement turbines if the Mitsubishi wind turbines could not be installed.  Nor is there any way to know whether the customers would have purchased replacement turbines from GE instead of another supplier in a multi-supplier market. In short, in the absence of infringing sales, Ms. Davis has no basis to allege *lost* sales by GE.

- 13 -

This case is analogous to *Siemens Medical Solutions v. Saint-Gobain Ceramics* , 637 F.3d 1269 (Fed. Cir. 2011).  There, the alleged infringing activity occurred at the end of the patent's term.  The evidence showed that a number of the accused products were *made* before the patent expired, but the evidence did not show that the accused products were *sold* before the patent expired.  *Id.* at 1290.  On these facts, the Federal Circuit rejected the patent owner's lost-profits claim, holding that in the absence of proof of infringing *sales* during the patent term, there was no substantial evidence to support lost profits.  *Id.*  Accordingly, the patent owner was only entitled to recover a reasonable royalty for the infringement that arose from making the accused product.  *Id.*

Similarly here, there is no legal basis for Ms. Davis to claim lost profits based on Mitsubishi sales that occurred outside the patent term.  Mitsubishi is unaware of even a single case where "lost profits" were awarded for an infringing *use* of a product that was sold before the asserted patent was issued.  GE may be entitled to a reasonable royalty if the installation and use of its wind turbines infringe the '705 patent.  But Ms. Davis should be precluded from claiming lost profits for GE from those acts.

## MOTION IN LIMINE 4:

### GE SHOULD BE PRECLUDED FROM PRESENTING EVIDENCE OR ARGUMENT THAT MITSUBISHI "COPIED" GE'S PATENTS OR PRODUCTS

GE should be precluded from presenting evidence or making arguments that Mitsubishi "copied" either GE's patents or its products.  GE has not pled and is not alleging that Mitsubishi willfully infringed either of GE's asserted patents.  And GE's experts have not alleged any evidence of copying to support any of their opinions.  Moreover, evidence of copying, even if it existed, is not relevant to any issue in the case.  Allegations of "copying," however, would be

- 14 -

inflammatory and confuse the jury.  Thus, GE should not be permitted to suggest that Mitsubishi copied GE's patents or products.

### A.    Relevant Procedural Background

Neither GE's original Complaint nor its Amended Complaint alleged willful infringement or mentioned copying as an element of GE's case.  Docket Nos. 1 and 29.  In the meet and confer for this motion, GE conceded that it will not allege willful infringement at the trial.

GE submitted two expert reports concerning infringement, one for each of the two patents-in-suit.  Neither relied on or even mentioned copying.  Subsequently, GE submitted two expert reports concerning validity, again one as to each patent-in-suit.  Again, neither relied on or even mentioned copying.  Of particular note, GE's validity reports address other secondary considerations of non-obviousness, without mention copying.  Likewise, GE's damages expert did not rely on or mention copying in her report.

### B.    Argument

GE did not give Mitsubishi notice of the patents before GE filed suit, and there is no evidence that Mitsubishi knew about GE's patents when Mitsubishi developed its designs accused of infringement in this case.  And there is no evidence that Mitsubishi "copied" GE's patents or products.  But even if such evidence existed, "copying" is not relevant to any issue raised in the case.

Evidence of copying may be relevant to a willful infringement allegation, but here GE did not plead willful infringement.  And in the meet and confer discussion for this motion, GE agreed that it will not assert willful infringement at trial.

Neither GE nor its experts have alleged copying as a basis to support any of their theories.  Neither expert alleged copying to support their infringement opinions, their validity opinions, their damages opinions, or any other opinions.

Moreover, evidence of copying is not relevant to any issue raised in the case. Evidence of copying is "of no import on the question of whether the claims of an issued patent are infringed, either literally or by equivalents." *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1336 (Fed. Cir. 2009). Evidence of copying is sometimes cited as objective evidence of nonobviousness. But here, neither of GE's experts has relied on copying to support their opinions on validity. Thus, "copying" is simply not an issue that is properly in the case.

Allegations of "copying," however, would be inflammatory and confuse the jury. And permitting arguments of copying at trial would merely invite superfluous and prejudicial commentary. *See* Fed. R. Evid. 401, Fed. R. Evid. 403. Therefore, GE should be precluded from arguing that Mitsubishi copied GE's patents or products at any time during the trial, including during opening, closing, objections, and witness examination.

## <u>MOTION IN LIMINE 5:</u>

### <u>GE SHOULD BE PRECLUDED FROM PRESENTING UNTIMELY EVIDENCE REGARDING INFRINGEMENT OF THE '055 PATENT</u>

GE admits that Mitsubishi's wind turbines do not literally infringe the '055 patent because those turbines have a *circular* base frame connection and not an *elongated* base frame connection. GE now rests its entire infringement case on the doctrine of equivalents. In particular, GE plans to advance a theory of infringement under the doctrine of equivalents not disclosed in its infringement contentions or expert reports. The Court should not permit GE to circumvent the discovery rules and present to the jury a theory of infringement hidden from Mitsubishi until the eve of trial. Permitting those untimely arguments to be made at trial would be highly prejudicial to Mitsubishi. Accordingly, the Court should preclude GE from arguing and introducing evidence claiming infringement of the '055 patent under the doctrine of equivalents.

A.      **Relevant Procedural Background**

Mitsubishi included a detailed description of the procedural background relevant to GE's infringement theories in its briefs supporting summary judgment of noninfringement of the '055 patent.  Docket Nos. 376 and 421.  In short, GE submitted infringement contentions on July 19, 2010, and amended those contentions on September 18, 2010.  Both infringement contentions included boilerplate language regarding the legal test for the doctrine of equivalents.  But GE never explained in its infringement contentions how that doctrine could apply to this case.

In an expert report submitted by Dr. Swift in October 2011, GE disclosed, for the first time, that it intends to argue that the shape of the upper part of Mitsubishi's base frame ("a tapered design that transitions from oblong to circular" and "provid[es] a contoured oblong load path") is equivalent to the elongated connection point recited in the asserted claims.  *See* Docket No. 377 ("MHI App.") 145-147 [Swift  Expert Report ¶¶ 97, 98, 102].  In contrast, GE's September 2010 infringement contentions were based only on various "connections" between components of Mitsubishi's base frame.  MHI App. 26.  The contentions made no mention of the shape of the upper part of Mitsubishi's base frame, much less its "tapered design" or its "contoured oblong load path."  *Id.*  In its briefs supporting summary judgment of noninfringement of the '055 patent (Docket Nos. 376 and 421), Mitsubishi showed that this argument was untimely and improperly applied the doctrine of equivalents.

With its brief opposing summary judgment, GE submitted a new declaration from Dr. Swift asserting yet another new theory of infringement under the doctrine of equivalents that was not disclosed in either GE's infringement contentions or Dr. Swift's expert report.  In this declaration, GE alleged that "the elongation of the upper part of MHI's base frame above the connection point, *together with the bolted connection between the upper and lower parts* of the base frame, is equivalent to the elongated connection point element of claim 1."  Docket No. 396

116 [Swift Decl. ¶8].  In its reply brief supporting summary judgment of noninfringement of the

'055 patent (Docket No. 421), Mitsubishi showed that this new argument was also untimely and

legally flawed.

      **B.**      **Argument**

           **1.**     **The Court Should Preclude Evidence and Argument Concerning Infringement of the '055 Patent Under the Doctrine of Equivalents**

GE failed to provide the discovery necessary to preserve arguing infringement under the

doctrine of equivalents for trial.  "The disclosure of asserted claims and preliminary infringement

contentions must contain . . . . (3) A chart identifying specifically and *in detail* where each

element of each asserted claim is found within each accused instrumentality, including for each

element that such party contends is governed by 35 U.S.C. 8 112(6), the identity of each

structure, act, or material in the accused instrumentality that performs the claimed function."

Am. Misc. Order No. 62 § 3-1(a) (emphasis added).  GE provided no information, much less

detailed information, to support its boilerplate assertion of the doctrine of equivalents in its

infringement contentions.  For example, GE never alleged that the shape of Mitsubishi's main

frame—i.e., the "upper part" of the base frame—satisfies the elongated connection point

limitation under the doctrine of equivalents, and did not disclose how the tapered shape of

Mitsubishi's base frame allegedly performs substantially the same function, in substantially the

same way, to achieve substantially the same result as the elongated connection point limitation of

claim 1 of the '055 patent.  Thus, the Court should preclude GE from arguing and introducing

evidence of infringement under the doctrine of equivalents.  Am. Misc. Order No. 62 § 3-1(b)

("Failure to comply with the requirements of this paragraph, including the requirement of

specificity and detail in contending infringement, may result in appropriate sanctions, including

dismissal."); *see also* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify

- 18 -

a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless").

Mitsubishi will suffer substantial prejudice if GE is permitted to advance its current theories of infringement under the doctrine of equivalents.  As explained in Mitsubishi's reply brief in support of summary judgment, GE's failure to timely disclose its infringement theories denied Mitsubishi the opportunity to test those theories  during fact discovery or search for prior art that invalidates the asserted claims under GE's overly broad interpretation.  Docket No. 421.

The prejudice Mitsubishi will suffer is particularly acute as to GE's latest infringement theory, which was advanced for the first time in opposition to summary judgment.  Dr. Swift's theory—that "the elongation of the upper part of MHI's base frame above the connection point, *together with the bolted connection between the upper and lower parts* of the base frame, is equivalent to the elongated connection point element of claim 1"—was not disclosed in his expert report, much less in GE's infringement contentions.  Rule 26(a)(2)(B) requires an expert report to "contain a complete statement of all opinions to be expressed and the basis and reasons therefore."  Thus, GE's tactics have denied Mitsubishi the opportunity to take any discovery, fact or expert, on the infringement theory that GE now apparently intends to advance at trial.  The Court should preclude GE from offering any arguments or introducing any evidence to support its belated theories of infringement under the doctrine of equivalents.  Am. Misc. Order No. 62 § 3-1(b); Fed. R. Civ. P. 37(c)(1).

Any suggestion by GE that it properly alerted Mitsubishi to its infringement contentions is meritless.  GE's current contentions were not disclosed—or even suggested—in GE's unsubstantiated boilerplate reference to the doctrine of equivalents in its infringement

contentions or from its cryptic responses to Mitsubishi's multiple correspondences pointing out GE's insufficient contentions.

During his deposition, Dr. Swift, GE's expert, testified that he formed an opinion regarding infringement under the doctrine of equivalents in approximately May of 2011. Yet GE withheld that infringement theory until Dr. Swift submitted his expert report after fact discovery closed. GE should not profit from its delay in disclosing its infringement theories. Accordingly, GE should be precluded from arguing or introducing evidence claiming infringement of the '055 patent under the doctrine of equivalents

## CONCLUSION

For the foregoing reasons, Mitsubishi respectfully requests that the Court grant Mitsubishi's motion in limine and preclude GE from: (1) presenting evidence or argument claiming damages under U.S. Patent No. 6,879,055 for wind turbines that were never installed; (2) presenting evidence or argument claiming damages for any infringing acts that occurred before GE filed suit on February 10, 2010; (3) presenting evidence or argument claiming lost profits for sales occurring before the '705 patent issued; (4) presenting evidence or argument that Mitsubishi "copied" GE's patents or products; and (5) presenting untimely evidence regarding infringement of the '055 patent.

Dated:  January 27, 2012                    Respectfully submitted,


                                            By:  /s/ Jeffrey C. Totten
                                            Vic H. Henry
                                            Texas Bar # 09484250
                                            vhhenry@hoaf.com
                                            Lane Fletcher
                                            Texas Bar # 07139300
                                            lanefletcher@hoaf.com
                                            HENRY ODDO AUSTIN & FLETCHER
                                            a Professional Corporation
                                            1700 Pacific Avenue, Suite 2700,
                                            Dallas, Texas 75201
                                            Telephone: (214) 658-1900
                                            Facsimile: (214) 658-1919

                                            Roger D. Taylor (admitted *pro hac vice*)
                                            Virginia L. Carron (admitted *pro hac vice*)
                                            Cortney Alexander (admitted *pro hac vice*)
                                            FINNEGAN, HENDERSON, FARABOW,
                                            GARRETT & DUNNER, L.L.P.
                                            3500 SunTrust Plaza,
                                            303 Peachtree Street, N.E.,
                                            Atlanta, GA 30308-3263
                                            Phone: (404) 653-6400
                                            Facsimile: (404) 653-6444

                                            Thomas H. Jenkins (admitted *pro hac vice*)
                                            Thomas W. Winland (admitted *pro hac vice*)
                                            Naoki Yoshida (admitted *pro hac vice*)
                                            Jeffrey C. Totten (admitted *pro hac vice*)
                                            Tyler M. Akagi (admitted *pro hac vice*)
                                            FINNEGAN, HENDERSON, FARABOW,
                                            GARRETT & DUNNER, L.L.P.
                                            901 New York Avenue, N.W.,
                                            Washington, D.C. 20001
                                            Phone: (202) 408-4000
                                            Facsimile: (202) 408-4400

                                            **ATTORNEYS FOR DEFENDANTS**


- 21 -

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been served via the Court's ECF system on all known counsel of record in accordance with the Federal Rules of Civil Procedure on this the 27th day of January 2012.


_/s/  Lane Fletcher_____