

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| GENERAL ELECTRIC COMPANY, § <br> Plaintiff, § <br> § <br> v. § <br> § <br> MITSUBISHI HEAVY INDUSTRIES, § <br> LTD. ET AL., § <br> Defendants. § <br> § | CIV. ACTION NO. 3:10-CV-276-F |

**ORDER DENYING IN PART AND GRANTING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF
NONINFRINGEMENT AND INVALIDITY OF U.S. PATENT NO. 7,629,055**

BEFORE THE COURT is Defendants Mitsubishi Heavy Industries, Ltd.'s and Mitsubishi Power Systems Americas, Inc.'s (collectively "Mitsubishi") Motion for Summary Judgment of Noninfringement and Invalidity U.S. Patent No. 7,629,055 (Doc. No. 375), filed on December 2, 2011. Plaintiff General Electric Company ("GE") filed a Response on December 28, 2011 (Doc. No. 395), and Mitsubishi filed a Reply on January 12, 2012 (Doc. No. 421). After considering the parties' briefs and reviewing the evidence, the Court finds that there is no genuine issue of material fact and that Defendants are entitled to judgment as a matter of law. Accordingly, Defendants' Motion for Summary Judgment is DENIED IN PART AND GRANTED IN PART.[1]

### I. Factual and Procedural Background

This case presents a dispute over the alleged infringement of two patents relating to wind-turbine technology. U.S. Patent No. 6,879,055 ("the '055 patent"), entitled

---

[1] This resolves Doc. No. 375.

"BASE FRAME FOR MOUNTING THE SHAFT OF THE ROTOR OF A WIND POWER PLANT ONTO THE PLANT TOWER," describes a two-piece design for a base frame, which is the structure on top of a wind turbine tower that supports the electricity-generating equipment. The United States Patent and Trademark Office ("PTO") issued the '055 patent to GE on April 12, 2005. In February of 2010, GE filed suit, alleging Mitsubishi's wind turbines infringe Claims 1 and 12 of the '055 patent. Claim 1 provides:

> 1. An apparatus, comprising:
> A base frame for the arrangement of a drive train, which is driven by a wind-driven rotor of a wind power plant, on the tower of the wind power plant on which the base frame is affixed with an essentially horizontal orientation of the rotor axis so that it can rotate azimuthally around the essentially vertical axis of the tower and is constructed from a discrete upper part that carries the drive train and a discrete lower part that has an azimuthal drive device that is attachably joined with the upper part at a connection point, wherein the lower part provides for azimuthal rotation around the essentially vertical axis of the tower, wherein the connection point extends along an essentially horizontal cross-section that has a larger dimension in the direction of the rotor axis than in the direction perpendicular to that.

Claim 12 provides:

> 12. The apparatus according to one of the claims 1, 2, or 3, wherein, on the upper part, two supports that extend away from its end that faces away from the rotor essentially in the direction of the rotor axis are arranged, on which at least one generator of the wind power plant can be supported.

In the instant Motion, Mitsubishi presents four independent grounds for summary judgment.

## II. Legal Standard:

Summary judgment is appropriate if the evidence shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.*, 731 F.2d 831 (Fed. Cir. 1984). In the summary judgment process, both movants and non-movants bear burdens of proof. *See generally Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The movant with the burden of proof at trial must establish every essential element of its claim or affirmative defense. *Id.* at 322–23. The moving party without the burden of proof need only point to the absence of evidence on an essential element of the non-movant's claims or affirmative defenses. *Id.* at 323. At that point, the burden shifts to the non-moving party to produce evidence in support of its claims or affirmative defenses. *Id.* at 324. The non-moving party must produce "specific facts" showing a genuine issue for trial and not mere general allegations. Fed. R. Civ. P. 56(e); *Tubacex v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). It is important to note that "[n]either 'conclusory allegations' nor 'unsubstantiated assertions' will satisfy the non-movant's burden." *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996). In deciding whether to grant summary judgment, the Court should view the evidence in the light most favorable to the party opposing summary judgment and indulge all reasonable inferences in favor of that party. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205–06 (5th Cir. 2007). "The standard of review is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon the record evidence before the court." *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 586 (1986)). To the extent that facts are undisputed, the Court may resolve the case as a matter of law. *Blackwell v. Barton*, 34 F.3d 298, 301 (5th Cir. 1994).

### III. Application

#### A. Noninfringement

GE accuses Mitsubishi's turbines of infringing the '055 patent under the doctrine of equivalents. Mitsubishi puts fourth three independent grounds for summary judgment of noninfringement.

*1. Waiver*

First, Mitsubishi argues that it is entitled to summary judgment of noninfringement because GE's infringement contentions failed to adequately disclose its theory of infringement under the doctrine of equivalents. The Northern District of Texas's Local Patent Rules are designed to facilitate the forward motion of patent litigation. Miscellaneous Order No. 62, Preamble. Local Patent Rule ("P.R.") 3-1 requires a party claiming patent infringement to disclose its asserted claims and preliminary infringement contentions early in the litigation so that "the case takes a clear path, focusing discovery on building precise final infringement or invalidity contentions and narrowing issues for *Markman*, summary judgment, trial, and beyond." P.R. 3-1(a); *Connectel, LLC v. Cisco Sys., Inc.*, 391 F. Supp. 2d 526, 527 (E.D. Tex. 2005) (Davis, J.); *see also Network Caching Tech., LLC v. Novell, Inc.*, No. C-01-2079 VRW, 2003 WL 21699799, at *5 (N.D. Cal. Mar. 21, 2003) ("PICs are not meant to provide a forum for litigation of the substantive issues; they are merely designed to streamline the discovery process.").

Infringement contentions must provide "particular theories of infringement with sufficient specificity to provide defendants with notice of infringement beyond that which is provided by mere language of the patent rules themselves." *Orion IP, L.L.C. v. Staples, Inc.*, 407 F. Supp. 2d 815, 817 (E.D. Tex. 2006) (Davis, J.) (citing *Connectel*, 391 F. Supp. 2d at 527–28); *STMicroelectronics, Inc. v. Motorola, Inc.*, 308 F. Supp. 2d 754, 755 (E.D. Tex. 2004) (Davis, J.) (citing *Network Caching*, 2003 WL 21699799, at *4–5).

Mitsubishi contends that GE's infringement contentions did not provide it with adequate notice of the position of GE's expert, Dr. Swift. Dr. Swift takes the position that the overall shape of the upper part of the base frame in the accused technology is equivalent to the elongated connection point described in the '055 patent. GE's infringement contentions identify the three modules of Mitsubishi's nacelle and the connections between them as the infringing structure. The Court finds that these contentions gave Mitsubishi adequate notice of GE's theory of infringement under the doctrine of equivalents, and declines to grant judgment as a matter of law on this issue.

### 2. *Doctrine of Equivalents*

Next, Mitsubishi argues that GE's theory of infringement under the doctrine of equivalents is precluded as a matter of law. Under the doctrine of equivalents, "a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is "equivalence" between the elements of the accused product or process and the claimed elements of the patented invention." *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997). To determine

whether an accused technology infringes under the doctrine of equivalents, courts must consider "the purpose for which an ingredient is used in a patent, the qualities it has when combined with other ingredients, and the function which it is intended to perform." *Id.* at 25 (quoting *Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605, 610 (1950)). In order to evaluate whether the accused technology is equivalent to the patented technology, courts must determine "whether persons reasonably skilled in the art would have known of the interchangeability of an ingredient not contained in the patent with one that was." *Id.*

Claim 1 of the '055 patent requires an oblong connection point. The connection point in the accused technology is circular. GE alleges that Mitsubishi's turbines infringe under the doctrine of equivalents for two reasons: first, the circular connection point in the accused technology combined with the oblong shape of the upper part of the base frame effect the same form and function as the patented technology; and second, even the circular connection point standing alone infringes the patent because structures of a different shape than that claimed in the patent can be equivalent.

Mitsubishi asks the Court to find its turbines do not infringe the '055 patent as a matter of law for either of two reasons: 1) the "all elements rule" prohibits GE from arguing that a circle is equivalent to an oblong shape, and 2) the '055 patent discloses without claiming the allegedly infringing elements of Mitsubishi's technology in violation of the "disclosure-dedication rule."

    a. <u>All Elements Rule</u>

6

The "all elements" rule refers to the Supreme Court's holding in *Warner-Jenkinson* that "[e]ach element contained in a patent claim is deemed material to defining the scope of the patented invention, and thus the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole." *Id.* at 29. Mitsubishi argues that under no circumstances could the circular connection point in its turbines be equivalent to the oblong connection point in GE's because the all elements rule prohibits using the doctrine of equivalents to vitiate a claim limitation, such as the requirement in the '055 patent that the connection point be elongated. GE counters that "Mitsubishi's application of the all-elements rule would actually vitiate the doctrine of equivalents entirely, since any doctrine of equivalents theory necessarily assumes that the claim element—here, an elongated connection point—is not literally present in the accused device." GE Resp., at 17. The Court agrees. Whether an element of the accused technology is the equivalent of an element in the patented technology is a highly factual inquiry that takes into account all those factors articulated in *Graver*: "the purpose for which an ingredient is used in a patent, the qualities it has when combined with other ingredients, . . . the function which it is intended to perform," and how a person of ordinary skill in the art would have viewed the allegedly infringing element. *Graver Tank*, 339 U.S. at 610. While the Supreme Court in *Warner-Jenkinson* sought to narrow the doctrine of equivalents to ensure that claim limitations were not disregarded, it expressly preserved the doctrine. *Warner-Jenkinson Co.*, 520 U.S. at 29–30. Adopting Mitsubishi's interpretation of the all elements rule would effectively eliminate the doctrine of equivalents altogether.

7

GE has presented expert testimony that the function and purpose of the circular connection point in Mitsubishi's turbines, coupled with the elongated upper-part of the base frame or on its own, has the same function and purpose as the elongated connection point described in the '055 patent. The issue of whether this slight difference in shape renders Mitsubishi's turbines equivalent to the patented technology is for the jury to decide.

### b. Disclosure Dedication Rule

The disclosure dedication rule prevents a patentee from arguing that an element of the accused technology infringes the patent under the doctrine of equivalents when that structure was disclosed in the patent but not claimed. *PSC Computer Prods., Inc. v. Foxconn Int'l, Inc.*, 355 F.3d 1353, 1360 (Fed. Cir. 2004). In order to violate the disclosure dedication rule, "[t]he disclosure must be of such specificity that one of ordinary skill in the art could identify the subject matter that had been disclosed and not claimed." *Id.* Mitsubishi argues it is entitled to judgment as a matter of law because GE's expert has admitted that "the '055 patent discloses the features of the Mitsubishi base frame that form the basis for his doctrine of equivalents arguments (a tapered design with a contoured oblong load path)." Mitsubishi's Mot., at 24. However, the allegations of infringement under the doctrine of equivalents also involve the circular connection point used in Mitsubishi's turbines. By arguing that the specification of the '055 patent "contains no discussion of alternate shapes for the connection point, circular or otherwise," GE has raised a genuine issue of material fact concerning whether or not the '055 patent specifically disclosed this element of the accused technology. GE's Resp., at

26. Therefore, Mitsubishi is not entitled to summary judgment of noninfringement under the doctrine of equivalents.

### B. Invalidity

Finally, Mitsubishi argues that asserted claims 1 and 12 of the '055 patent are invalid as anticipated by prior art. To show that a patent claim is invalid as anticipated, the party challenging the patent must show that a single prior art reference expressly or inherently discloses each and every element of a claimed invention. *Finisar Corp. v. DirecTV Grp. Inc.*, 523 F.3d 1323, 1334–35 (Fed. Cir. 2008). Anticipation further requires that the prior art disclose all elements of the claimed invention arranged as in the claim. *Id.* Issued patents are presumptively valid; therefore, the party challenging the patent must come forward with clear and convincing evidence of invalidity. *Cordance Corp. v. Amazon.com, Inc.*, 658 F.3d 1330, 1337 (Fed. Cir. 2011).

In 1973, the Department of Energy established a program with the goal of creating technology designed to facilitate the commercialization of wind energy. The DOE delegated responsibility for managing the development of horizontal-axis wind turbines to the NASA-Lewis Research Center. Under contract with NASA, GE's Advanced Energy Programs Department prepared a report entitled <u>MOD-5A Wind Turbine Generator Program Design Report</u> in 1984. The report describes a conceptual wind turbine design called the MOD-5A, which discloses a two-part support structure with an elongated connection point.

Mitsubishi contends that this report anticipates every element of claims 1 and 12 of the patented invention as arranged therein. Mitsubishi argues that the only difference

9

GE's own expert can identify between the MOD-5A turbines and the technology described in claims 1 and 12 of the '055 patent is that the upper yaw structure in the MOD-5A turbines is not part of the base frame as it is in the '055 patent because it is not housed in the nacelle. This interpretation of the claims, Mitsubishi argues, diverts from the parties' agreed construction of the term "base frame" as a "support structure that carries the drive train and the azimuthal drive device."

GE does not dispute that the validity of the '055 patent turns on whether the term "base frame" encompasses the upper yaw structure of the MOD-5A wind turbine. GE's expert has, in fact, admitted that if the upper yaw structure in the MOD-5A turbines is part of the base frame, then the 1984 report anticipates claims 1 and 12 of the '055 patent. App. to Mitsubishi's Reply 22 [Swift Tr. 187:23-188:16]. Instead, GE argues that the dispute between the parties' experts' on this issue creates a genuine issue of material fact:

> Mitsubishi contends that the uppermost section of the tower, the upper yaw assembly, is the lower part of a two-part base frame, while GE's expert disagrees and opines, consistent with the disclosure of the report itself, that the upper yaw structure is part of the tower, and that the structure in the MOD-5A nacelle known as the bedplate is just a one-piece base frame.

GE Resp., at 26–27. GE further argues that its expert's interpretation of the prior art does not conflict with the agreed construction of the claim term "base frame" because where a support structure that carries an azimuthal drive device is part of the tower and not the nacelle, it is not a "base frame" as that claim term has been construed to mean. The Court disagrees.

The question before the Court is one of law, not fact. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 388–89 (1996) (holding that the task of determining the

meaning of a patent claim is for the judge, not the jury). The Court rejects GE's contention that "base frame" means something different in the context of the MOD-5A wind turbine than it does in claims 1 and 12 of the '055 patent. To the contrary, the whole point of construing claim terms is to establish the scope of the patent so that it can be fairly compared to like technology. *Terlep v. Bringmann Corp.*, 418 F.3d 1379, 1382 (Fed. Cir. 2005).

Here, the parties agreed on and the Court adopted a construction of the term "base frame." That agreed construction describes a base frame only as a "support structure that carries the drive train and the azimuthal device;" it does not require that the structure be housed within the nacelle. If the Court were to accept the position GE advocates, it would impose a limitation on the claims that the parties' already agreed and the Court already confirmed does not exist.

The parties do not dispute that what Mitsubishi describes as the base frame in the MOD-5A turbines is a support structure that carries the drive train and the azimuthal device. The fact that it is not housed in the nacelle does not distinguish it from claims 1 and 12 of the '055 patent. As such, there is no genuine issue of material fact and Mitsubishi is entitled to summary judgment of invalidity.

The Court's conclusion on this point is bolstered by the "Action Closing Prosecution" ("the Action") that was recently issued by the United States Patent and Trademark Office. The Action, which concludes the reexamination of the '055 patent that Mitsubishi requested in April of 2011, declares claims 1 and 12 of the '055 patent invalid as anticipated by GE's 1984 report describing the MOD-5A turbines. Defs.'

11

Notice of Feb. 3, 2012, U.S. Patent Office Action Closing Prosecution of Reexamination of U.S. Patent No. 6,879,055 Ex. 1, at 8–9. The Action expressly rejects the very same reasoning GE asks the Court to adopt:

> Patent owner argues at pages 6-7 of the Response that MOD-5A does not disclose a "base frame" made of discrete upper and lower parts, because claim 1 requires both the upper part of the base frame to carry a drive train, and the lower part of the base frame to have an azimuthal drive device. As reasoned by the patent owner, MOD-5A does not satisfy these limitations. The examiner disagrees because the structure encompassed by the plain language of claim 1 is fully met by the structure exhibited by MOD-5A. There is no apparent ambiguity surrounding the terminology used in claim 1 relative to the ['055 patent] disclosure. In the ['055 patent], the upper part (6) carries the drive train (12), and the lower part (16) has the azimuthal drive device (23). In comparison, the MOD-5A apparatus exhibits an upper part (bedplate) carrying a drive train (gearbox), and a lower part (yaw subsystem) having an azimuthal drive device (yaw drive mechanism. Patent owner's argument thus relies upon semantic differences in wording, which is considered unpersuasive in distinguishing MOD-5A.

*Id.* at 16.

Mitsubishi notified the Court of the Patent Office's Action Closing Prosecution on February 7, 2011 (Doc. No. 448). GE filed a Response on February 9, 2012 (Doc. No. 454). GE reminds the Court that the Patent Office's Action is not final and argues that, as such, it is not relevant to the issues pending before the Court.

The Court has considered the Notice and Response. The Court reached the decision that Mitsubishi is entitled to summary judgment of invalidity on its own accord, without reference to the Patent Office's Action. The Action, therefore, is relevant only to the extent that it validates the Court's decision.

## IV. <u>Conclusion</u>

For the aforementioned reasons, Mitsubishi's Motion for Summary Judgment of Noninfringement and Invalidity U.S. Patent No. 7,629,055 is DENIED IN PART AND GRANTED IN PART. The Motion is DENIED with respect to noninfringement and GRANTED with respect to invalidity.

IT IS SO ORDERED.

Signed this 10th day of February, 2012.

*[signature]*
Royal Furgeson
United States Senior District Judge