**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **GENERAL ELECTRIC COMPANY,** | § § § | |
| **Plaintiff,** | § § | |
| v. | § § § | Civil Action No. 3:10-CV-00276-F |
| **MITSUBISHI HEAVY INDUSTRIES, LTD., and MITSUBISHI POWER SYSTEMS AMERICAS, INC.,** | § § § § § | JURY TRIAL DEMANDED |
| **Defendants.** | § § | |

**GENERAL ELECTRIC COMPANY'S
OPPOSITION TO MITSUBISHI'S MOTIONS *IN LIMINE***

Plaintiff General Electric Company ("GE") respectfully submits this Opposition to Mitsubishi's Motions *in Limine*, and would respectfully show as follows.[1]

**I.**

**GE SHOULD NOT BE PRECLUDED FROM PRESENTING EVIDENCE OR ARGUMENT CLAIMING DAMAGES FOR WIND TURBINES THAT WERE NEVER INSTALLED**

Mitsubishi's first motion *in limine* seeks to exclude from GE's damages base 456 turbines that Mitsubishi unquestionably sold to Babcock & Brown but ultimately did not install. Specifically, Mitsubishi argues that there allegedly can be no infringement because the claims of the '055 patent require the base frame to be joined, and the turbines at issue were never joined during installation. Mot. at 3-4.

---

[1] In light of the Court's summary judgment ruling on GE's 055 patent, GE understands that Mitsubishi's motions *in limine* nos. 1 and 5, and portions of no. 2, are moot. GE nevertheless submits this opposition to all five motions in the interest of preserving its positions.

Mitsubishi, however, ignores the law which provides that a sale or even just an "offer for sale" of a patented invention constitutes an act of infringement under § 271(a), regardless of whether the apparatus is actually constructed. If this was not the law, than mere offers for sale, which do not result in the construction or delivery of anything, would not constitute acts of infringement. But the patent statute says that they do. Indeed, the Federal Circuit has flatly rejected Mitsubishi's argument. See *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.* 617 F.3d 1296, 1311 (Fed. Cir. 2010) ("[W]e reject Maersk USA's claim that the entire apparatus must have been constructed and ready for use in order to have been sold. Our precedent establishes that a contract can constitute a sale to trigger infringement liability.").[2]

In *Transocean*, the Federal Circuit held that the act of entering into a contract for delivery of an oil rig could constitute an act of infringement, provided that the contract was for the "patented invention." *Id*. The contract at issue included schematics for the oil rig, and the plaintiff alleged that these documents showed the "patented invention." *Id*. This showing, the Federal Circuit held, was sufficient to survive summary judgment, and it reversed the district court's order of non-infringement. *Id*. ("Maersk USA and Statoil signed a contract and the schematics that accompanied the contract could support a finding that the sale was of an infringing article."). Moreover, the Federal Circuit held that "the fact that Maersk USA, after the execution of the contract, altered the rig … is irrelevant. The potentially infringing article is the rig sold in the contract, not the altered rig that Maersk USA delivered to the U.S." *Id*. Accordingly, GE is entitled to damages if it can show that Mitsubishi entered into a contract to

---

[2] Mitsubishi's MIL No. 1 appears to be more of an untimely, summary judgment motion. As discussed above, GE has sufficient evidence to sustain a claim of infringement for these turbines. For these additional reasons, the MIL should be denied.

deliver the claimed invention, regardless of whether the device was ever delivered. *Id.* At the very least, Mitsubishi's contracts with Babcock & Brown would constitute infringing "offers for sale." 35 U.S.C. § 271(a).

Here, Mitsubishi sold 456 turbines to Babcock & Brown pursuant to two Wind Turbine Generator Supply Agreements dated June 5, 2007 (for 206 turbines), and February 22, 2008 (for 250 turbines).[3] GE App. at 1; 308. Both contracts include "Technical Specifications" for Mitsubishi's 2.4 MW turbines, including schematics and a parts list. *Id.* at 83-113; 388-418. These specifications show that the turbines practice the '055 patent. Therefore, GE has met its burden to demonstrate infringement. *Transocean*, 617 F.3d at 1311. At a minimum, there is an issue of fact that cannot be resolved on a motion *in limine*.

The fact that the turbines were ultimately not delivered is irrelevant. Mitsubishi received nearly $200 million for these infringing sales at a higher profit margin than turbines that were installed. GE App. at 619-22; 625 (Deposition Transcript of Julie L. Davis). Mitsubishi should not get a windfall simply because the supply agreements ultimately were not fulfilled. *See*, *e.g.*, *Transocean*, 617 F.3d at 1309 ("The underlying purpose of holding someone who offers to sell liable for infringement is to prevent generating interest in a potential infringing product to the detriment of the rightful patentee."). Therefore, Mitsubishi owes GE at least a reasonable royalty for these acts of infringement. 35 U.S.C. § 284(a).

Mitsubishi's reliance on *Golden Blount, Inc. v. Robert H. Peterson Co.*, is misplaced. In *Golden Blount*, the Federal Circuit noted that direct infringement of the claims at issue required the defendants to combine two separate and distinct products. 438 F.3d 1354,

---

[3] Mitsubishi incorrectly states that Ms. Davis included the contract "Edison Reconciliation" in her damages base. Mot. at 2. No such entry was included. See GE App. at Exhibit 3, Schedule A5.1.

1372 (Fed. Cir. 2006). Because each of the components was packaged and sold as separate products, and because the patentee failed to introduce any evidence that the two parts had been combined post-sale, the Federal Circuit held that they could not assume that an act of direct infringement occurred. *Id.* Here, the upper and lower base frames are not sold and packaged as separate products, and Mitsubishi's customers did not keep the lower base frame and return the upper portion. Rather, Mitsubishi's customers, including Babcock & Brown, contracted to receive a complete Mitsubishi 2.4 MW wind turbine, which is clearly depicted in the specifications attached to the contract. As this sale constitutes an act of infringement, GE should be permitted to present evidence of these infringing sales to the jury. *See Transocean*, 617 F.3d at 1311.

## II.

### GE SHOULD NOT BE PRECLUDED FROM PRESENTING EVIDENCE OR ARGUMENT CLAIMING DAMAGES FOR ACTIVITIES OCCURRING BEFORE GE FILED SUIT ON FEBRUARY 10, 2010

Mitsubishi's second motion *in limine* seeks to preclude GE from seeking pre-suit damages due to an alleged failure to mark pursuant to 35 U.S.C. § 287(a). But because the marking statute does not apply in this case, Mitsubishi's motion *in limine* should be denied.

The marking statute states that, if a patentee makes, uses, offers for sale, or sells "a patented article," it must mark the product with the patent number. If the patentee is required to mark and fails to do so, then it forfeits damages prior to providing the defendant with actual notice of infringement. 35 U.S.C. § 287(a). While the patentee bears the burden of proving compliance with the marking statute, the defendant first bears the burden to show that the marking statute has been implicated by a patentee's sale of the "patented article" in the United States. *Laitram Corp. v. Hewlett-Packard Co., Inc.*, 806 F. Supp. 1294, 1297 (E.D. La.

1992); see also *In re Katz Interactive Call Processing Patent Litig.*, No. CV 07-ML-01816, 2011 U.S. Dist. LEXIS 116661, 52-53 (C.D. Cal. Sept. 29, 2011) ("Although we recognize that [the patentee] has the burden to prove compliance with § 287, we held that the defendants had the burden to prove that there were patented articles to mark."). Where "there are no products to mark," the marking statute is not implicated, and "the recovery of damages is not limited." *Tex. Digital Sys. v. Telegenix, Inc.*, 308 F.3d 1193, 1219-20 (Fed. Cir. 2002), *abrogated on other grounds by Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc). As the Supreme Court noted decades ago, marking "can only be given in connection with some fabricated article. **Penalty for failure implies opportunity to perform.**" *Wine Rwy. Appliance Co. v. Enterprise Rwy. Equip. Co.*, 297 U.S. 387, 393 (1936) (emphasis added).

For this same reason, the Federal Circuit has held that the marking statute does not apply when only process or method claims have been asserted at trial. *Crown Packaging Tech., Inc. v. Rexam Bev. Can Co.*, 559 F.3d 1308, 1316-1317 (Fed. Cir. 2009) ("[W]here the patent claims are directed to only a method or process there is nothing to mark."); *see also Hanson v. Alpine Valley Ski*, 718 F.2d 1075, 1083 (Fed. Cir. 1983) (holding that the marking statute did not apply where "[t]he only claims that were found infringed in this case, however, were claims . . . drawn to the method of forming, distributing and depositing snow upon a surface. . . ."). Thus, where there is no tangible "patented article" to mark, the marking requirement does not apply and damages should not be limited. *Tex. Digital Sys.* 308 F.3d at 1219-20.

### A. GE Should Not Be Precluded From Obtaining Pre-Suit Damages For Infringement of the '055 Patent

Mitsubishi has not met its burden to demonstrate that, with respect to the '055 patent, "there were patented articles to mark." *In re Katz*, 2011 U.S. Dist. LEXIS 116661 at *

52-53. While GE has stated that its 3.6 MW wind turbine practices the '055 patent, Mitsubishi admits that GE has never made, sold, or imported any of these turbines into the United States. Mot. at 10. GE's offers to sell these turbines in the United States do not implicate the marking statute because there was no tangible "patented article" for GE to mark. *Tex. Digital Sys*. 308 F.3d at 1219-20. This is not a case where GE had a product in the United States and offered it for sale. Indeed, Mitsubishi does not even attempt to identify a "patented article" in the United States that GE allegedly could have marked, a fact that, by itself, has been found sufficient **to award the patentee summary judgment** that the marking statute does not apply.[4] *See In re Katz*, 2011 U.S. Dist. LEXIS 116661, at *53 ("Under this standard, GEICO has failed to offer an evidence of "patented article" that Katz should have marked. By itself, this conclusion warrants a finding of summary judgment in favor of Katz").

Instead, Mitsubishi relies singularly on the holding of *WiAV Solutions LLC v. Motorola, Inc*., 732 F. Supp. 2d 634, 641 (E.D. Va. 2010), for the proposition that a patentee's damages should be limited for failure to mark an offer for sale. But the court in *WiAV Solutions* did not consider the issue of whether there was any patented article for the patentee to mark. Instead, the court found evidence that the "Skyworks" products at issue, microprocessors used in various broadband platforms, had reached U.S. Soil. *See id*. at 642-643. Thus, there were actual products offered for sale in the United States that could be marked. Indeed, the court held that the record failed to show that "no sales were made in the United States."[5] *Id*. at 643.

---

[4] As with MIL No. 1, Mitsubishi's MIL No. 2 appears to be less of a motion *in limine* and more an untimely motion for summary judgment.

[5] The court in *WiAV Solutions* reversed the burden of proof between the parties to require the plaintiff to show that "no sales were made in the United States" rather than requiring the defendant to show that the patentee made, sold or used the patented article in the US. 732 F.3d at 640. However, the court is clearly in the minority, as most courts faced with this issue hold

In contrast, here, it is undisputed that GE's 3.6 MW turbine—the only "patented article"—has never been sold and never been present in the United States. There thus was nothing to mark. Accordingly, Mitsubishi's motion in limine directed at the '055 patent should be denied.

Moreover, even assuming *arguendo* that Mitsubishi were correct that GE was obligated to mark, despite the absence of a patented article in the United States, any non-compliance was cured when GE discontinued its 3.6 MW turbine in 2006. See GE App. at 627. In *American Med. Sys, Inc. v. Med. Eng'g Corp.*, the Federal Circuit explained that the marking statute has temporal limitations and can apply for certain periods of time but not others. 6 F.3d 1523, 1537 (Fed. Cir. 1993). The Federal Circuit "construe[d] section 287(a) to preclude recovery of damages ***only for infringement for any time prior to compliance*** with the marking or actual notice requirements of the statute" and held that a patentee who failed to initially mark its "patented article" was entitled to damages as of the date it marked its article. *Id*. This decision shows that a patentee should not be permanently prejudiced by its failure to mark a patented article. Here, once GE discontinued its 3.6 MW model in 2006, it no longer had any obligation to mark and thus was in full compliance with its obligations under section 287(a). Accordingly, at a minimum, GE should be entitled to damages for the period after 2006, when it unquestionably fully complied with the marking statute.

---

that the defendant first bears the burden to show the marking statute has been implicated. *See Laitram*, 806 F. Supp. at 1297; *In re Katz*, 2011 U.S. Dist. LEXIS 116661 at * 52-53 (rejecting the minority rule); *Unova Inc. v. Hewlett-Packard*, No. CV 02-3772 (ER), 2006 U.S. Dist. LEXIS 97403, at *1 (C.D. Cal. Feb. 16, 2006). Nevertheless, even under the minority rule of *WiAV Solutions*, it is undisputed that GE's 3.6 MW turbine was never present in the United States, and therefore, there is no evidence that GE failed to mark a "patented article."

### B. GE Should Not Be Precluded From Obtaining Pre-Suit Damages For Infringement of the '705 Patent

The Federal Circuit recently confirmed that a patentee is not required to mark its products when only method claims have been asserted at trial, regardless of whether the patent contains both method and apparatus claims. *See Crown Packaging*, 559 F.3d at 1316-1317 (Fed. Cir. 2009) ("[W]here the patent claims are directed to only a method or process there is nothing to mark."); *see also Hanson*, 718 F.2d at 1083. Here, the only claim being asserted at trial is claim 1, which is a method claim. Therefore, there is no product for GE to mark, and the marking statute does not apply.

Mitsubishi asserts that, because GE initially asserted apparatus claims 9 and 13, the marking statute applies. In essence, Mitsubishi claims that, had GE asserted only claim 1 from the outset, there would be no marking defense and GE's damages would not be limited; but, because GE initially asserted claims 9 and 13, and then dropped those claims after filing several motions and finally receiving some discovery from Ingeteam, GE's damages claims should be limited. The marking statute was not designed to cause such an inequitable result.

In fact, none of the cases cited by Mitsubishi support its position. For example, the court in *Osteotech, Inc. v. Regeneration Techs., Inc.*, adopted the flawed reasoning used by the district court in *Crown Packaging*, which the Federal Circuit rejected six months later. No. 3:06-cv-04249-FLW, 2008 U.S. Dist. LEXIS 86254 (D.N.J. Sept. 26, 2008) (citing *Crown Packaging*, 498 F.2d 718, 728 (D. Del. 2007), for the rule that a duty to mark arises even when only the method claims of a patent have been asserted); *but see Crown Packaging*, 559 F.3d at 1317 (reversing district court's grant of summary judgment and holding that "where the patent claims are directed to only a method or process there is nothing to mark."). Similarly, in *Merck & Co. v. Mediplan Health Consulting, Inc.*, another case cited by Mitsubishi, the court

committed the same legal error. 434 F. Supp. 2d 257, 263 (S.D.N.Y. 2006) (holding that "plaintiffs were required to comply with section 287(a) regardless of whether they assert only the method claims of the '784 patent.").

Unlike the situation where a patentee seeks a determination of infringement on both the method and apparatus claims, GE is not attempting to obtain any benefit from the dropped apparatus claims. In *American Med. Sys.*, for example, the patentee asserted both the apparatus and method claims, and the alleged infringer stipulated to infringement for trial. 6 F.3d at 1529. Similarly, in *Mformation Techs., Inc. v. Research In Motion Ltd.*, cited by Mitsubishi, the patentee sought judgments on both the method and apparatus claims, but the district court invalidated the apparatus claims on summary judgment. No. C 08-04990 JW, 2011 U.S. Dist. LEXIS 148156, at *46-51 (N.D. Cal. Dec. 19, 2011). In contrast, in cases where the patentee does not ultimately assert the apparatus claims for any legal or financial benefit, there is no duty to mark. *See Crown Packaging*, 559 F.3d at 1317; *Hanson*, 718 F.2d at 1083.

Adopting Mitsubishi's rationale would unfairly prejudice patentees, especially those in district courts, like this one, with local patent rules requiring early disclosure of preliminary infringement contentions and a finding of "good cause" to subsequently amend them. *See* Amended Miscellaneous Order No. 62 ("Local Patent Rules") § 3-1 (requiring submission of preliminary infringement contentions 14 days after the initial case management conference), § 3-7. After initially reviewing Ingeteam's source code near the end of 2010, GE amended its preliminary infringement contentions to assert apparatus claims 9 and 13, because waiting risked losing the ability to assert these claims entirely. See S&W Enters. v. Southtrust Bank of Ala., 315 F.3d 533, 536 (5th Cir. Tex. 2003) (holding that good cause does not exist when a party is

dilatory in seeking leave to amend).  At the time GE sought leave to amend its preliminary infringement contentions, it had not taken the deposition of Ingeteam, and did not yet have access to the Ingeteam manuals and documentation related to its source code, which Ingeteam did not produce until late September of last year, more than nine months after GE served its subpoena, and only after being ordered to do so by the Eastern District of Wisconsin.  *See In Re Subpoena Duces Tecum to Ingeteam, Inc*. No. 11-MISC-36, slip op. at *3-4 (E.D. Wis. Aug. 16, 2011).  After finally receiving and getting the opportunity to review this additional source code, GE dropped the apparatus claims.

Because Mitsubishi's motion *in limine* is premised on an erroneous interpretation of the marking statute that has been rejected by the Federal Circuit, and because granting it would result in an inequitable result, the Court should deny Mitsubishi's motion.

### III.

### GE SHOULD NOT BE PRECLUDED FROM PRESENTING EVIDENCE OR ARGUMENT SEEKING LOST PROFITS FOR SALES OCCURRING BEFORE THE '705 PATENT ISSUED

Mitsubishi's third motion *in limine* seeks to exclude from GE's damages claim lost profits arising from the sale of 179 wind turbines by Mitsubishi to customers who installed them at their project sites in 2010 and 2011.  Specifically, Mitsubishi argues that, because these sales allegedly occurred before the '705 patent issued, GE is prohibited from seeking lost profits on those sales, even though the turbines were not installed until after the '705 patent issued, and thus an act of infringement unquestionably occurred after the '705 patent issued.

The sales challenged by Mitsubishi are as follows:

| Project | Customer | Number of MHI turbines sold | Date Commissioned |
|---|---|---|---|
| Elm Creek II | Iberdrola Renewables | 62 | Q1 2011[6] |
| Juniper Canyon | Iberdrola Renewables | 63 | Q4 2010[7] |
| Taloga | Edison Mission Energy | 54 | Q3 2011[8] |

Mitsubishi does not dispute that the GE is entitled to seek damages for these 179 turbines. *See* Mot. at 12. Instead, Mitsubishi only argues that GE should not be permitted to seek lost profits for these sales. However, an act of infringement unquestionably occurred when these turbines were installed and commissioned at these project sites. *See* GE App. at 654 (Expert Report of Dr. W. Mack Grady, ¶60). GE's claim to lost profits is premised on these post-2009 acts of infringement. *See* GE App. at 715 (Expert Report of Julie Davis). GE's clam is that, but for Mitsubishi's infringement, these customers would have purchased and installed turbines from GE instead. Because ZVRT is a grid requirement, if Mitsubishi could not offer ZVRT in the infringing manner that they did these customers would not have installed Mitsubishi turbines in 2010 and 2011. As long as GE can show that there was a reasonable probability that these sales would have been made by GE 'but for' Mitsubishi's infringement, it is entitled to an award of lost profits. *Rite-Hite Corp., et al. v. Kelley Co., Inc.*, 56 F.3d 1538,

---

[6] http://energyfacilities.puc.state.mn.us/Docket.html?Id=20051

[7] http://www.awea.org/learnabout/publications/reports/upload/1Q-Market-Report_-Public.pdf

[8] http://www.awea.org/learnabout/industry_stats/upload/3Q-2011-AWEA-Market-Report-for-Public-2.pdf

1545 (Fed. Cir. 1995) (en banc). These disputed facts cannot be resolved on a motion *in limine*.[9]

Mitsubishi ignores the wealth of evidence demonstrating that, but for Mitsubishi's infringement of the '705 patent, GE would have made these additional sales. For example, evidence will be presented to show that, in December of 2009—when the '705 patent issued— Iberdrola and EME would have sought to purchase GE turbines in order to keep its project deadlines if Mitsubishi was unable to use GE's patented ZVRT method. GE App. at 719-24 (Expert Report of Julie Davis at 17-22). For example, GE will present evidence to show that Iberdrola most likely would have purchased GE's turbines in order to keep its place in the interconnection queue for the Elm Creek II and Juniper Canyon projects, thereby avoiding costly delays or possible cancellation. *Id*. at 722-23. Similarly, GE will present evidence indicating that Edison most likely would have purchased GE turbines for use at the Taloga site in order to meet the operating date for its Power Purchase Agreement (PPA). *Id*. at 724. Moreover, there also is sufficient evidence to support the conclusion that it is reasonably likely Mitsubishi's customers would have terminated its contracts with Mitsubishi as a result of its infringing activity. In fact, it is one of the reasons Babcock & Brown terminated its supply contracts with Mitsubishi. *See Mitsubishi Power Sys. Ams., Inc. v. Babcock & Brown Infrastructure Group US, LLC*, No. 4499-VCL, 2010 Del. Ch. LEXIS 11, at *6-7 (Del. Ch. Jan. 22, 2010) (summarizing Babcock & Brown's allegation that by Mitsubishi's fraudulently induced them to enter into supply agreements by failing to disclose knowledge that its turbines infringed GE patents); see also GE App. at 845-46 (Deposition transcript of Randolph Mann) ("Q: And why

---

[9] Once again, Mitsubishi's MIL No. 3 appears to be more of an untimely motion for summary judgment.

did Edison Mission Energy file that lawsuit?  A: Because we were concerned about our ability to – to deploy and finance our 2.4-megawatt wind turbines that we had purchased from Mitsubishi due to patent infringement claims that were being made by GE and being litigated"). Mitsubishi's motion *in limine* does not address any of this factual evidence regarding causation, nor does it reference GE's expert's *Panduit* analysis at all.  *See Rite-Hite*, 56 F.3d at 1545 (holding a patentee can meet its burden to demonstrate causation by showing the four *Panduit* factors have been met)

Mitsubishi does not challenge GE's evidence as insufficient.  Instead, it argues that, as a matter of law, sales activity that occurred before the infringement period cannot be used to establish an award of lost profits.  But here the installation occurred after the 705 patent issued, and that installation infringes the '705 patent.  Moreover, Mitsubishi's position is at odds with the Federal Circuit's decision in *Brooktree Corp. v. Advanced Micro Devices*.  977 F.2d 1555, 1578-1581 (Fed. Cir. 1992) (holding that lost profits were available to a patentee under the Semiconductor Chip Protection Act for acts of price erosion that occurred prior to the act of infringement). [10]  In *Brooktree*, the Federal Circuit considered whether a patentee may be entitled to damages arising from events that occurred before any infringement began.  *Id*. There, the patentee lowered its prices in response to announcements by the potential infringer that it was introducing a new, low cost microchip.  But the patentee had no knowledge that these new chips would be infringing, and actual infringement was not found to occur until commercial sales of the chips began several months later.  On appeal, the infringer argued that the district court erred as a matter of law by permitting the jury to award lost profits arising from

---

[10] Although the lost profits calculation arose from infringement under both the patent and mask work protection acts, the Court noted that it "benefit[ed] from the guidance of patent precedent." *Brooktree*, 977 F.2d at 1579.

events occurring before any act of infringement. *Id*. at 1578. Noting that "[c]ausation is a classical jury question" and that "[i]n patent cases . . . damages are measured by inquiring: had the tortfeasor not committed the wrong, what would have been the financial position of the person wronged?" the Federal Circuit held that pre-infringing activity may give rise to lost profits "when the losses are reasonably related to the infringing activity." *Id*. at 1579. Accordingly, it concluded that the district court committed no error of law and affirmed the jury award of lost profits. *Id*. Here, the facts are analogous. If MHI had not infringed GE's ZVRT patent, these customers would not have accepted MHI's turbines; instead, GE will submit evidence to show that these customers more likely than not would have purchased turbines from GE and installed GE's wind turbines. In sum, there is a sufficient factual basis for GE to present evidence of lost profits to the jury.

Mitsubishi cites to *Siemens Med. Solutions USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.* for the proposition that lost profits should only be awarded if the products at issue are the subject of sales activity during the infringement period. 637 F.3d 1269 (Fed. Cir. 2011). But the Federal Circuit in *Siemens* addressed a different question, whether a patentee was entitled to lost profits when there was no evidence of a sale at all. Specifically, the court held that the patentee was not entitled to lost profits for 18 Positron emission tomography (PET) scanners because the patentee only offered evidence that the scanners had been made, and did not offer any evidence that they had been sold. *Id*. at 1290. Here, there is no question that Mitsubishi sold the 179 turbines at issue, and therefore *Siemens* is inapposite. Moreover, Mitsubishi's reading of *Siemens* is directly at odds with the Federal Circuit's decision in *Brooktree* and generally inconsistent with the "significant latitude" the Federal Circuit "[has] given patentees … to prove and recover lost profits for a wide variety of foreseeable economic

effects of infringement." *Grain Processing Corp. v. American Maize-Products Co.*, 185 F.3d 1341, 1350 (Fed. Cir. 1999) (citing, with approval, the holding of *Brooktree*).

Finally, even assuming *arguendo* that Mitsubishi's reading of the law were correct, there still is sufficient evidence to support GE's lost profits theory. Critically, Mitsubishi ignores that the definition of "sale" is not limited to the act of signing a sales contract. *See NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1319 (Fed. Cir. 2005) (holding that the definition of "sale" in 35 U.S.C.§ 271(a) "includes the concept of a **transfer of title or property**.") (emphasis added). Here, the Frame Agreements under which Iberdrola and EME purchased the turbines for the three projects at issue expressly state that title to the wind turbines "shall be transferred to Owner upon Seller's receipt of payment in full for such item" and custody of the wind turbines is transferred to the owner upon delivery at the project site. GE App. at 849 (PPM Frame Agreement); 909 (EME Frame Agreement). Because custody and/or title for each of the 179 turbines did not pass to Iberdrola and EME until after December 8, 2009, when those turbines were actually installed, each of the turbines were "sold" within the infringement period. *See* GE App. at 619-22 (accounting for revenue in 2010-2011); 929 (Testimony from Greg Wunder that Mitsubishi does not recognize sales until the turbines are delivered to the project site); 930 (Oct. 2010 EME Settlement Agreement to release Taloga turbines to the delivery site). Therefore, even under Mitsubishi's incorrect reading of the law, there is a material issue of disputed fact regarding whether "sales" of the turbines at issue occurred after the '705 patent issued. Accordingly, Mitsubishi's motion *in limine* regarding lost profits should be denied.

## IV.

## GE SHOULD NOT BE PRECLUDED FROM PRESENTING EVIDENCE OR ARGUMENT THAT MITSUBISHI COPIED GE'S PATENTS OR PRODUCTS

Mitsubishi seeks an order precluding GE from arguing or presenting evidence that Mitsubishi copied GE's patents or products at trial. Mitsubishi contends that copying is irrelevant to the issues to be tried because GE has not alleged willful infringement and its experts do not cite copying in support of their opinions. Mot. at 14-15. Mitsubishi is mistaken.

First, GE alleges that Mitsubishi induces infringement of the '705 patent by its customers, and intent is an element of inducing infringement. Evidence of copying is directly relevant to establishing Mitsubishi's knowledge that by selling infringing turbines to its customers and instructing and assisting them in configuring the wind turbine for zero voltage ride through, it was inducing the infringement of GE's '705 patent. *DSU Medical Corp. v. JMS Co., Ltd.*, 471 F.3d 1293 (Fed. Cir. 2006) (plaintiff alleging inducement must establish proof of the inducer's intent to encourage another's infringement, as opposed to merely requiring proof of intent to cause acts that are found to result in infringement).

Second, evidence of copying is also relevant to validity because copying is an objective indicator of non-obviousness. *Crocs, Inc. v. International Trade Com'n*, 598 F.3d 1294, 1311 (Fed. Cir. 2010) ("Still another objective measure…copying may indeed be another form of flattering praise for inventive features."). Mitsubishi suggests that GE is somehow precluded from offering evidence of copying in support of validity because its technical experts did not offer opinions on copying, Mot. at 14, but there is no requirement that such evidence come in through expert testimony. To the contrary, it is perfectly appropriate for GE to introduce evidence of copying, including for purposes of establishing validity, through documents and testimony of percipient witnesses.

Lastly, granting Mitsubishi's motion risks improperly impeding GE's ability to prove infringement in this case. Evidence regarding copying of GE's turbines, which unquestionably practice the patents at issue, is also relevant to infringement.

Mitsubishi's motion *in limine* therefore should be denied.

## V.

### GE SHOULD NOT BE PRECLUDED FROM PRESENTING EVIDENCE OF INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS

Mitsubishi attempts a second bite at the summary judgment apple by requesting that GE's entire infringement case under the '055 patent be excluded *in limine*. Mot. at 16. In addition to being inappropriate for a motion *in limine*, Mitsubishi's request is unfounded. GE demonstrated in its opposition to Mitsubishi's summary judgment motion that Mitsubishi had more than adequate information about GE's '055 infringement theory, including that GE claims infringement under the doctrine of equivalents based on the design of Mitsubishi's upper base frame, by no later than May 2011—well before the close of discovery and the deadline for serving expert reports in October.

Mitsubishi contends that GE introduced a new theory in its opposition brief by offering Dr. Swift's declaration, in which he opined that the connection point element of claim 1 is met by the contoured shape of Mitsubishi's upper base frame combined with the bolted connection between the upper and lower parts. The element in question requires a "connection point" between the upper and lower discrete parts of the base frame that has "a larger dimension in the direction of the rotor axis than in the direction perpendicular to that." Col. 6, lines 59-63. While Dr. Swift's expert report focuses on how the shape of Mitsubishi's upper base frame provides the stress-reduction benefits described in the patent, there can be no serious dispute that GE accuses the connection itself—where the upper and lower parts of Mitsubishi's base frame

are bolted together—as part of the structure in Mitsubishi's turbine that is equivalent to the claimed connection point. Indeed, Mitsubishi has repeatedly emphasized that GE's original infringement contentions served more than a year ago specifically identified the connection between the upper and lower parts of Mitsubishi's base frame. For Mitsubishi to now claim surprise and prejudice is not credible.[11]

GE should not be precluded from offering evidence of infringement of the '055 under the doctrine of equivalents at trial.

---

[11] Mitsubishi maintains that it was denied the opportunity to search for prior art that invalidates the asserted claims as GE interprets them. Mot. at 19. Of course, Mitsubishi has known since this suit was filed two years ago that GE interprets the claims to cover the design of Mitsubishi's base frame, and by at least last May that GE's focus was on the upper base frame. Mitsubishi of course knows of the design of its upper base frame, and thus had ample information with which to identify the dozens of prior art references identified in its invalidity contentions.

| | |
|---|---|
| Date:   February 10, 2012 | Respectfully submitted, |
| | s/ Carmen E. Bremer<br>T. Ray Guy<br>Texas Bar #08648500<br>Carmen E. Bremer<br>Texas Bar #24041009<br>WEIL GOTSHAL & MANGES LLP<br>200 Crescent Court, Suite 300<br>Dallas, TX 75201<br>Telephone: (214) 746-7700<br>Facsimile: (214) 746-7777<br>ray.guy@weil.com<br>carmen.bremer@weil.com<br><br>David Lender<br>Nicholas Sethi<br>WEIL GOTSHAL & MANGES LLP<br>767 Fifth Avenue<br>New York, New York 10153<br>Telephone: (212) 310-8000<br>Facsimile: (212) 310-8007<br>david.lender@weil.com<br>nick.sethi@weil.com<br><br>Anish R. Desai<br>WEIL GOTSHAL & MANGES LLP<br>1300 Eye Street N.W.<br>Suite 900<br>Washington, D.C. 20005<br>Telephone: (202) 682-7000<br>Facsimile: (202) 857-0940<br>anish.desai@weil.com<br><br>Nicholas Groombridge<br>PAUL WEISS RIFKIND WHARTON & GARRISON<br>1285 Avenue of the Americas<br>New York, New York 10019<br>Telephone: (212) 373-3000<br>Facsimile: (212) 757-3990<br>ngroombridge@paulweiss.com<br><br>**ATTORNEYS FOR PLAINTIFF GENERAL ELECTRIC COMPANY** |

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served on February 10, 2012 on all counsel of record via the Court's ECF system.

s/ Carmen E. Bremer
Carmen E. Bremer
