# TAB 7

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS – DALLAS DIVISION

_____

GENERAL ELECTRIC COMPANY,

Plaintiff,


v.                    Civil Action No. 3:10-CV-276-F

MITSUBISHI HEAVY INDUSTRIES, LTD., and MITSUBISHI POWER SYSTEMS AMERICAS, INC.,

Defendants

_____

EXPERT REPORT AND DISCLOSURE

OF JULIE L. DAVIS

Submitted October 18, 2011


Confidential Business Information – Outside Attorneys' Eyes Only

United States District Court for the Northern District of Texas – Dallas Division
Civil Action No. 3:10-CV-276-F

General Electric Company v. Mitsubishi Heavy Industries, Ltd., and Mitsubishi Power Systems Americas, Inc.


## Table of Contents

1.   Background and Experience ....................................................................................................... 1

2.   Scope of Retention ..................................................................................................................... 2

3.   Information Relied Upon .......................................................................................................... 3

4.   Background Information ........................................................................................................... 5

5.   Summary of Opinions ............................................................................................................. 11

6.   Basis and Reasoning ............................................................................................................... 12

7.   Total Damages ........................................................................................................................ 56

Exhibit 1:          Curriculum Vitae of Julie L. Davis

Exhibit 2:          Index to Documents Considered in Forming Opinions

Exhibit 3:          Damages Calculations – Assuming Infringement of the '055 and '705 patents

                    Lost Profits and Reasonable Royalties on Sales of Wind Turbines

Exhibit 4:          Damages Calculations – Assuming Infringement of Only the '705 patent

                    Lost Profits and Reasonable Royalties on Sales of Wind Turbines

Exhibit 5:          Damages Calculations – Assuming Infringement of Only the '055 patent

                    Reasonable Royalties on Sales of Wind Turbines


Appendix A:         GE Sales and Profit Information

Appendix B:         MPSA Sales and Profit Information

Appendix C:         MHI Sales and Profit Information

Appendix D:         Selected Project Profitability for MPSA and MHI

Appendix E:         Transportation Cost Savings Calculation

Appendix F:         License Agreement Summary

Confidential Business Information – Outside Attorneys' Eyes Only

United States District Court for the Northern District of Texas – Dallas Division
Civil Action No. 3:10-CV-276-F

General Electric Company v. Mitsubishi Heavy Industries, Ltd., and Mitsubishi Power Systems Americas, Inc.


## 1.      Background and Experience

I have been providing audit and financial consulting services to attorneys and corporate clients for over thirty-three years.  The early part of my career was devoted to directing and performing independent financial audits of private and publicly held companies ranging from manufacturing entities to financial institutions.  Drawing upon that background, I now consult extensively with companies involved in business and intellectual property disputes.

I have worked on numerous intellectual property cases during my career and have conducted complex studies of damages related thereto.  These studies have included evaluations of lost sales, lost profits, incremental profits, manufacturing and marketing capacities, fixed and variable costs, product line profitability, price erosion, reasonable royalties, unjust enrichment, and prejudgment interest.  I have testified in matters related to these studies.

In addition to intellectual property disputes, I have assisted companies in developing intellectual property strategies and managing their intellectual property portfolios.  I have also conducted studies related to those portfolios including patent portfolio analyses, competitive assessments, licensing analyses, cost studies, and benchmarking studies.  In addition, I have co-authored a book on the best practices used by leading companies in managing their intellectual property.

I graduated in 1978, *summa cum laude*, from Kansas State University with a Bachelor of Science degree in Business Administration and Accounting.  In the same year, I earned the Gold Key in the State of Kansas for the highest score in the state on the CPA exam.  I am a member of the American Institute of Certified Public Accountants, American Bar Association, and Licensing Executives Society.  My curriculum vitae, which is attached as Exhibit 1, describes my professional credentials including other publications and prior testimony experience as required under Federal Rules of Civil Procedure Rule 26(a)(2)(B).

United States District Court for the Northern District of Texas – Dallas Division
Civil Action No. 3:10-CV-276-F

General Electric Company v. Mitsubishi Heavy Industries, Ltd., and Mitsubishi Power Systems Americas, Inc.


## 2.    Scope of Retention

The above-referenced matter relates to the alleged infringement by Mitsubishi Heavy Industries, Ltd. ("MHI") and Mitsubishi Power Systems Americas, Inc. ("MPSA") (collectively "Mitsubishi" or "the Defendants") of the following U.S. patents owned by and assigned to General Electric Company ("GE"):

- U.S. Patent No. 6,879,055 B2 entitled "Base Frame for Mounting the Shaft of the Rotor of a Wind Power Plant onto the Plant Tower," issued April 12, 2005 ("the '055 patent), and

- U.S. Patent No. 7,629,705 B2 entitled "Method and Apparatus for Operating Electrical Machines," issued December 8, 2009 ("the '705 patent").[1]

For the purposes of this report, I may refer to the '055 patent and the '705 patent collectively as "the patents-in-suit."

GE alleges that the Defendants "directly, indirectly, contributorily, and/or by inducement, literally or under the doctrine of equivalents, have infringed and continue to infringe [the patents-in-suit] by their manufacture, use, sale, offer for sale, and/or importation of products and services related to variable speed wind turbines, within… the United States, that infringe one or more claims of [the patents-in-suit]."[2]

Davis & Hosfield Consulting LLC has been retained by Weil, Gotshal & Manges LLP ("Counsel") on behalf of GE in the above-referenced matter to prepare analyses to assist the judge and/or jury in considering the amount of damages that GE may recover should MHI and/or MPSA be found to infringe one or more claims of a valid and enforceable patent.

I offer no opinion relating to the liability elements in this matter.  However, for the purpose of forming my opinions, I have assumed that the asserted claims of the patents-in-suit are valid, enforceable, and have been infringed by Mitsubishi.

---

[1] Amended Complaint for Patent Infringement, May 17, 2010, pp. 3-8; U.S. Patent No. 6,879,055 B2; U.S. Patent No. 7,629,705 B2.
[2] Amended Complaint for Patent Infringement, May 17, 2010, pp. 3 and 6.

Confidential Business Information – Outside Attorneys' Eyes Only

United States District Court for the Northern District of Texas – Dallas Division
Civil Action No. 3:10-CV-276-F

General Electric Company v. Mitsubishi Heavy Industries, Ltd., and Mitsubishi Power Systems Americas, Inc.


My project team and I have been engaged for this assignment at the hourly billing rates of the individuals assigned plus expenses.  The current hourly billing rates range from $125 to $575 per hour.  The amount of our fees is not contingent upon the opinions expressed herein or on the outcome of this matter.


**3.      Information Relied Upon**


My opinions are based upon information available to me as of the date of this report.  I, and professionals working under my direction, have relied upon and examined documents produced by the parties, along with publicly available information.  A listing of all documents considered is attached as Exhibit 2.


In addition, we reviewed the following deposition testimony:


**GE**

- Ronald Brzezinski, Customer Value Manager, dated June 23, 2011;
- Brian Cretti, New Unit CFO for Wind Business, dated June 22, 2011;
- Robert Letts, Transfer Pricing Director for the Energy Business and Tax Business Process Manager, dated September 23, 2011;
- Mete Maltepe, Country Executive for GE Energy in Turkey, dated July 18, 2011;
- Vincent Schellings, Project Manager for Offshore Wind, dated October 5, 2011;
- Guido Schumacher, Manager of Commercial Operations for Europe and Asia, dated July 15, 2011; and
- Stephen Swift, General Manager of Sales and Commercial Operations for the Renewable Energy Business, dated June 24, 2011.


**Mitsubishi**

- Masato Akado, Manager, Wind Turbine Business Section, Strategic Planning and Commercial Operations Department, Wind Turbine Business Divisions, Power Systems at MHI, dated April 14, 2011 and April 20, 2011;
- Koji Dobashi, Group Head of Manufacturing Planning for MHI, dated April 21, 2011;
- Masateru Komiya, Manager of Commercial Operations for MPSA, dated March 31, 2011;
- Tomohiro Numajiri, Shunin ("person in charge") for MHI, dated April 19, 2011 and September 20, 2011;

United States District Court for the Northern District of Texas – Dallas Division
Civil Action No. 3:10-CV-276-F

General Electric Company v. Mitsubishi Heavy Industries, Ltd., and Mitsubishi Power Systems Americas, Inc.


- Douglas Powell, Vice President of Field Operations for MPSA, dated December 16, 2010;
- Gregory Wunder, Vice President and Chief Corporate Officer for MPSA, dated July 14, 2011; and
- Akira Yasugi, Project Promotion Section Manager in the Wind Turbine business unit at MHI, dated April 13, 2011.


**<u>Third Parties</u>**
- Johnny Combs, employed by Trinity Green serving as Director of Operations for Kairos Energy under a consulting agreement, dated May 13, 2011;
- Randolph Mann, Vice President of Wind Energy Development for Edison Mission Energy, dated January 24, 2011; and
- Harmie Toren, Head of the Operation Services Department for Iberdrola Renewables, dated September 21, 2011.


We also held discussions with the following GE personnel:
- Rafael Alcalde-Navarro, GE Energy Commercial Leader for Latin America and the Western United States;
- Ragu Balanathan, Engineering Manager;
- Ronald Brzezinski, Customer Value Manager;
- Tom Flaherty, Global Materials and Operations Leader;
- Liping Guthrie, Account Manager for Power Generation Renewables;
- Dave Johnson, Sales Director for Renewable Energy;
- James Maughan, General Manager of Product Services;
- Jim McGinness, Executive IP Counsel for Renewables;
- John McGuiness, Wind Services Platform Leader; and
- Minesh Shah, Product Manager.


Finally, we also held a discussion with Dr. Andrew Swift, GE's technical expert in this matter regarding the '055 patent.


My opinions are based on my skills, knowledge, experience, education, and training, as well as information gathered by and/or provided to me as of the date of this report.  It is usual and customary for experts to

Confidential Business Information – Outside Attorneys' Eyes Only

United States District Court for the Northern District of Texas – Dallas Division
Civil Action No. 3:10-CV-276-F

General Electric Company v. Mitsubishi Heavy Industries, Ltd., and Mitsubishi Power Systems Americas, Inc.

consider and/or rely upon sources of information such as those identified above and in Exhibit 2 in forming damages opinions.

I understand that I may be asked to testify regarding my opinions contained herein as well as related matters, including those raised on cross examination; those necessary to address matters raised by Mitsubishi's witnesses who testify concerning damages issues; or those otherwise raised at trial by Mitsubishi's attorneys or the Court concerning damages issues. I expect to further elaborate and expand on the content of my report as necessary to make my testimony understandable to the Court. To the extent helpful to explain, or to put in context, the subject matters discussed throughout my report, I also expect to provide further general explanations of the matters I discuss. In connection with any testimony, I may rely on materials referenced in this report and on the attachments and demonstrative exhibits to be prepared in connection with my testimony.

I understand that discovery in this matter is ongoing and new information may become available prior to trial. Therefore, I will be prepared to supplement my report in the event that any new facts that may become known to me prior to or during trial impact my opinions or the bases therefor. I am aware of my continuing obligation to supplement my report under Rule 26 of the Federal Rules of Civil Procedure.

## 4.    Background Information

**Parties to this matter**

I discuss below additional information related to each of the parties in this matter.

## GE

GE is a New York corporation with its principal place of business located in Fairfield, Connecticut.[3] Among other things, the company "engages in the development, manufacture, and distribution of variable speed wind turbines and components."[4] Its business segments include Energy Infrastructure, Technology Infrastructure, GE Capital, and Home & Business Solutions.[5]

---

[3] Amended Complaint for Patent Infringement, May 17, 2010, p. 1.
[4] Amended Complaint for Patent Infringement, May 17, 2010, p. 1.
[5] General Electric Company Form 10-K for the fiscal year ended December 31, 2010, p. 4.

United States District Court for the Northern District of Texas – Dallas Division
Civil Action No. 3:10-CV-276-F

General Electric Company v. Mitsubishi Heavy Industries, Ltd., and Mitsubishi Power Systems Americas, Inc.


GE describes its Energy Infrastructure business segment as "a leader in the field of development, implementation and improvement of products and technologies that harness resources such as wind, oil, gas and water."[6]  Through this business unit, GE offers "wind turbines with rated capacities ranging from 1.5 [megawatts ("MW") to] 4.1 MW and support services extending from development assistance to operation and maintenance."[7]  GE's global revenue from sales of wind turbines was approximately $5.2 billion in 2009, $5 billion in 2010, and estimated to be $4.8 billion in 2011.[8]  In addition to offering wind turbines, the Energy Infrastructure segment sells products and services such as aircraft engine derivatives, gas turbines and generators, water treatment solutions for industrial and municipal water systems, and integrated electrical equipment and systems used to distribute, protect, and control energy and equipment.[9]


**MHI**

MHI, a Japanese corporation, with a principal place of business in Tokyo, Japan, "engages in the development, manufacture, and distribution of variable speed wind turbines and components for importation, sale, and use in the United States...through its U.S.-based subsidiary MPSA…."[10]  The company operates six business segments – Shipbuilding & Ocean Development, Power Systems, Machinery & Steel Structures, Aerospace, Mass and Medium-Lot Manufactured Machinery, and Others.[11]  Within its Power Systems segment, MHI offers products and services relating to wind turbines, boilers, steam and gas turbines, and diesel engines, among others.[12]  Drawing on its portfolio of wind turbines with capacities ranging from 250 kilowatts ("kW") to 2.4 MWs, MHI has manufactured and delivered over 2,250 units worldwide.[13]


**MPSA**

MPSA is a Delaware corporation with its principal place of business located in Lake Mary, Florida.[14]  MPSA's parent company is MHI America, Inc. which is owned by MHI.[15]  According to its website, MPSA is "Mitsubishi's Western Hemisphere headquarters for versatile power generation technologies, performance-

---

[6] General Electric Company Form 10-K for the fiscal year ended December 31, 2010, p. 4.
[7] http://www.ge-energy.com/wind.
[8] Deposition of Brian Cretti, June 22, 2011, pp. 34-35.
[9] General Electric Company Form 10-K for the fiscal year ended December 31, 2010, p. 5.
[10] Amended Complaint for Patent Infringement, May 17, 2010, p. 2.
[11] Mitsubishi Heavy Industries, Ltd. Annual Report 2010 for the year ended March 31, 2010, p. 24.
[12] Mitsubishi Heavy Industries, Ltd. Annual Report 2010 for the year ended March 31, 2010, p. 28.
[13] http://www.mhi.co.jp/en/products/category/wind_turbine_generators.html.
[14] Amended Complaint for Patent Infringement, May 17, 2010, p. 2;
http://www.mhi.co.jp/en/power/introduction/network/index.html.
[15] Deposition of Masato Akado, April 14, 2011, p. 17.

United States District Court for the Northern District of Texas – Dallas Division
Civil Action No. 3:10-CV-276-F

General Electric Company v. Mitsubishi Heavy Industries, Ltd., and Mitsubishi Power Systems Americas, Inc.

defining innovations and responsive service capabilities that boost uptime and reliability to new levels."[16] Using its integrated design and production capabilities for key components such as blades, gearboxes, and controls, MPSA offers wind turbines with outputs between 1 MW and 2.4 MWs.[17]  In addition to wind turbines, MPSA's product offerings include gas and steam turbines, combined cycle power plants, and supercritical boilers, as well as services relating to control systems and generators.[18]

### Wind turbines

I discuss below additional information related to wind turbines.

### Wind turbines

Wind energy or power describes the process by which the wind is used to generate electricity.  Wind turbines are used to convert the kinetic energy in the wind into mechanical power by using the wind to "lift" and rotate the blades, which spins a shaft connected to a generator, thus making electricity.[19]

Since wind energy is fueled by the wind, it is a clean fuel source which does not pollute the air like power plants that rely on coal or natural gas.  In addition, wind turbines do not produce atmospheric emissions, which can lead to acid rain or greenhouse gasses.  Since wind energy is abundant and renewable, it is one of the most important renewable energy technologies available today, making it one of the fastest-growing energy sources in the world.[20]

Wind turbines consist of several blades that are attached to a nacelle.[21]  The shaft and generator, along with the gear box, controller, and brake, are contained within the nacelle, which sits atop the tower.[22]  The wind turbine's generated power is transmitted to a substation on the grid which distributes the power.[23]

Turbines are available in a range of sizes.  Single small turbines, below 100 kW, can be used for homes, telecommunications dishes, or water pumping.  Utility-scale turbines range in output, from as low as 100 kW

---

[16] http://www.mpshq.com/.
[17] http://www.mpshq.com/products/wind_turbines/index.html.
[18] http://www.mpshq.com/products/index.html; http://www.mpshq.com/service/index.html.
[19] www1.eere.energy.gov/windandhydro/wind_how.html.
[20] http://www1.eere.energy.gov/windandhydro/wind_ad.html.
[21] Claim Construction Order, May 9, 2011, p. 2.
[22] www1.eere.energy.gov/windandhydro/wind_how.html.
[23] Claim Construction Order, May 9, 2011, p. 2.

United States District Court for the Northern District of Texas – Dallas Division
Civil Action No. 3:10-CV-276-F

General Electric Company v. Mitsubishi Heavy Industries, Ltd., and Mitsubishi Power Systems Americas, Inc.

to as large as several megawatts.  Wind farms group larger turbines together, which provide bulk power to the electrical grid.[24]  I understand most modern wind farms are designed as integrated power plants, where the turbines are placed together with electrical equipment necessary for the turbines to connect, and provide power, to the grid.

**The accused Mitsubishi wind turbines**

Mitsubishi has been accused of infringing the '055 and '705 patents "by [its] manufacture, use, sale, offer for sale, and/or importation of products and services related to variable speed wind turbines."[25]  Specifically, Mitsubishi's MWT92/2.4, MWT95/2.4, MWT100/2.4, and MWT102/2.4 wind turbines have been identified as the accused products ("Accused Products").[26]

"Broadly speaking, there are three components to a wind turbine.  The first is the nacelle, the second is the blades, and the third is the tower."[27]  Each of these components must be manufactured and delivered to the installation site.[28]  As the size of wind turbines has grown, it has become harder to manufacture, ship, and assemble larger turbines, especially those with extremely heavy nacelles.[29]

Mitsubishi's accused 2.4 MW turbines utilize a three-piece nacelle design.[30]  The three parts are the yaw module, front module, and rear module.  The yaw module is the bottom piece of the nacelle and weighs 33.8 tons.[31]  The front module is located on top of the yaw module and weighs 60.1 tons.[32]  The rear module is on the opposite side of the front module from where the wind turbine hub and blades appear and weighs 33.8 tons.[33]  Combined as a single piece, the nacelle weighs roughly 127.7 tons.[34]  A January 2007 Mitsubishi

---

[24] www1.eere.energy.gov/windandhydro/wind_how.html.
[25] Amended Complaint for Patent Infringement, May 17, 2010, pp. 3 and 6.
[26] Mitsubishi Heavy Industries, Ltd.'s Second Supplemental Objections and Responses to GE's First Set of Fact Discovery Interrogatories, February 16, 2011, p. 5; Mitsubishi Power Systems Americas, Inc.'s Second Supplemental Objections and Responses to GE's First Set of Fact Discovery Interrogatories, February 16, 2011, p. 5.
[27] Deposition of Masato Akado, April 14, 2011, p. 46.
[28] See, for example, MHINDTX0000003-MHINDTX0000060; Deposition of Masateru Komiya, March 31, 2011, pp. 56-62, 108.
[29] Discussion with Dr. Andrew Swift; Claim Construction Order, May 9, 2011, p. 2.
[30] Deposition of Tomohiro Numajiri, April 19, 2011, p. 20.
[31] Deposition of Tomohiro Numajiri, April 19, 2011, p. 21; MHINDTX0000003-MHINDTX0000060 at MHINDTX0000017.
[32] Deposition of Tomohiro Numajiri, April 19, 2011, p. 21; MHINDTX0000003-MHINDTX0000060 at MHINDTX0000017.
[33] Deposition of Tomohiro Numajiri, April 19, 2011, pp. 21-23; MHINDTX0000003-MHINDTX0000060 at MHINDTX0000017.

United States District Court for the Northern District of Texas – Dallas Division
Civil Action No. 3:10-CV-276-F

General Electric Company v. Mitsubishi Heavy Industries, Ltd., and Mitsubishi Power Systems Americas, Inc.


"Technical Presentation" advertises the benefits of Mitsubishi's design: "[t]he benefits of this method are that the 2.4MW wind turbine nacelle can be divided into proper weight modules which can be transported without using a specialized trailer.  During erection, it is not necessary to use a large crane.  This results in cost savings and simplicity during the transportation and construction stages."[35]


**Regulations Governing the Interconnection of Wind Farms to the Electrical Grid**


***FERC Order No. 661-A***

On December 12, 2005, the Federal Energy Regulatory Commission ("FERC") issued Order No. 661-A relating to interconnection requirements for a wind generating plant.[36]  I understand these requirements set out specific guidelines regarding the operation of wind turbine generators that are connected to the electrical grid. Specifically, Appendix G of FERC Order No. 661-A sets forth "Interconnection Requirements for a Wind Generating Plant," including the ability of the turbine generator to remain connected during certain electrical disturbances, or faults, on the grid.


Appendix G includes two distinct requirements related to Low Voltage Ride-Through ("LVRT") capability called "Transition Period LVRT Standard," and "Post-transition Period LVRT Standard."[37]  I understand the Transition Period LVRT Standard requires that a wind turbine remain connected to the grid for a period of time where the grid voltage drops to as low as 15% of the nominal voltage (measured from the point of interconnection).[38]  Further, I understand the Post-transition Period LVRT Standard requires that a wind turbine remain connected to the grid for a period of time where the grid voltage is as low as zero volts (measured from the point of interconnection).[39]


The Transition Period LVRT Standard applies to turbines that meet the following criteria: (i) wind generating plants that have "interconnection agreements signed and filed with the Commission, filed with the Commission in unexecuted form, or filed with the Commission as non-conforming agreements between

---

[34] MHINDTX0000003-MHINDTX0000060 at MHINDTX0000017.
[35] MHINDTX0212116-MHINDTX0212131 at MHINDTX0212126.
[36] United States of America Federal Energy Regulatory Commission Order No. 661-A, December 12, 2005.
[37] United States of America Federal Energy Regulatory Commission Order No. 661-A, December 12, 2005, pp. 49-52.
[38] United States of America Federal Energy Regulatory Commission Order No. 661-A, December 12, 2005, pp. 49-51.
[39] United States of America Federal Energy Regulatory Commission Order No. 661-A, December 12, 2005, pp. 51-52.

United States District Court for the Northern District of Texas – Dallas Division
Civil Action No. 3:10-CV-276-F

General Electric Company v. Mitsubishi Heavy Industries, Ltd., and Mitsubishi Power Systems Americas, Inc.

January 1, 2006 and December 31, 2006, with a scheduled in-service date no later than December 31, 2007, or (ii) wind generating turbines subject to a wind turbine procurement contract executed prior to December 31, 2005, for delivery through 2007."[40]  Any wind turbine that does not meet either of the above criteria is subject to the Post-transition Period LVRT Standard.[41]  Similar to the FERC Post-transition Period LVRT Standard, the Energy Reliability Council of Texas Operating Guide dated July 1, 2010, which applies to wind turbine generators in Texas, has a zero voltage ride-through requirement.[42]

**The patents-in-suit**

I discuss below additional information related to each of the patents-in-suit.

**The '055 patent**

The '055 patent issued, and was assigned to GE, on April 12, 2005.[43]  The Abstract describes a two-part base frame for the azimuthal adjustment of the gondola on the tower of the wind power plant, which facilitates transport and assembly during the erecting of wind power plants.[44]  Furthermore, the patent states that

> [t]he invention involves a base frame for the arrangement of a drive train on the tower of a wind power plant.  The drive train is driven by a wind-driven rotor.  The base frame is affixed onto the tower with an essentially horizontal orientation of the rotor axis so that it can rotate azimuthally around the essentially vertical axis of the tower and is constructed from an upper part that carries the drive train and a lower part that has an azimuthal drive device that is combined with the upper part at a connection point and functions for azimuthal rotation.[45]

Generally, I understand the '055 patent concerns the base frame that supports wind turbines.[46]  I understand from discussion with Dr. Andrew Swift, GE's technical expert in this matter, that the base frame is the principal support structure for a wind turbine's rotor and drive train.[47]  I further understand that the '055 patent covers a base-frame which is designed to be manufactured and delivered in two pieces without

---

[40] United States of America Federal Energy Regulatory Commission Order No. 661-A, December 12, 2005, pp. 49-50.

[41] United States of America Federal Energy Regulatory Commission Order No. 661-A, December 12, 2005, p. 51.

[42] I have been informed that FERC Order No. 661-A does not apply to utilities operating in Texas, but that § 3.1.4.6.1 of the Electric Reliability Council of Texas Operating Guide requires wind farm projects in Texas to meet similar ZVRT requirements if they are subject to an interconnection agreement signed after November 1, 2008.

[43] U.S. Patent No. 6,879,055 B2.

[44] U.S. Patent No. 6,879,055 B2.

[45] U.S. Patent No. 6,879,055 B2.

[46] Claim Construction Order, May 9, 2011, p. 2.

[47] See also, Deposition of Vincent Schellings, October 5, 2011, pp. 43-44.  The base frame is described as the part of the wind turbine that carries and supports the components of the wind turbine that generate electricity and that ensure the terminals face into the wind.

United States District Court for the Northern District of Texas – Dallas Division
Civil Action No. 3:10-CV-276-F

General Electric Company v. Mitsubishi Heavy Industries, Ltd., and Mitsubishi Power Systems Americas, Inc.

sacrificing the ability of the base frame to handle high loads due to strong wind gusts.[48]  Further, I understand that GE accuses Mitsubishi of infringing the '055 patent due to the design of the nacelle on the Accused Products.

**The '705 patent**

The '705 patent was assigned to GE after issuing on December 8, 2009.[49]  The invention relates to methods and apparatus for operating electrical machines.[50]  The patent describes a method for operating an electrical machine by coupling the electrical machine to a power system such that the power system is configured to transmit at least one phase of electric power to and from the electrical machine.  Additionally, "[t]he method also includes configuring the electrical machine such that the electrical machine remains electrically connected to the electric power system during and subsequent to a voltage amplitude of the electric power system operating outside of a predetermined range for an undetermined period of time" including "during and subsequent to the voltage amplitude of the electric power system decreasing below the predetermined range including approximately zero volts for the undetermined period of time, thereby facilitating zero voltage ride through."[51]  Thus, I understand that the '705 patent teaches a method for facilitating ZVRT.

5.    **Summary of Opinions**

Based on my experience in similar matters and discussions with Counsel, I understand that, if Mitsubishi is found to have infringed at least one claim of the patents-in-suit, GE would be entitled to recover from the Defendants "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer."[52]  If GE is successful in proving that it would have made additional sales of wind turbines "but for" Mitsubishi's acts of infringement, GE may also be entitled to some measure of lost profits.

Based on my understanding of the facts and circumstances in this matter (and assuming liability), I have calculated damages measured as a combination of lost profits and reasonable royalties.  My calculations assume that "but for" Mitsubishi offering the Accused Products to certain customers, GE would have been

---

[48] Discussion with Dr. Andrew Swift.
[49] U.S. Patent No. 7,629,705 B2.
[50] U.S. Patent No. 7,629,705 B2.
[51] U.S. Patent No. 7,629,705 B2.
[52] Title 35 U.S.C. § 284.

Confidential Business Information – Outside Attorneys' Eyes Only

United States District Court for the Northern District of Texas – Dallas Division
Civil Action No. 3:10-CV-276-F

General Electric Company v. Mitsubishi Heavy Industries, Ltd., and Mitsubishi Power Systems Americas, Inc.

able to capture those sales. However, not all of Mitsubishi's sales represent lost sales for GE. For those sales not subject to lost profits damages, I have calculated damages based on a reasonable royalty applied to the output measured in MWs provided by Mitsubishi's infringing sales. If the Court or jury determines that both of the patents-in-suit are infringed by Mitsubishi, I have calculated damages as summarized below:[53]

| Lost Profits | Reasonable Royalties | Total Damages |
|---|---|---|
| $ 219,109,458 | $        72,060,000 | $   291,169,458 |

If the Court or jury determines that the appropriate measure of damages is reasonable royalties only, total damages are summarized below:[54]

| '055 Patent | '705 Patent | Total Damages |
|---|---|---|
| $81,816,000 | $26,760,000 | $   108,576,000 |

## 6.      Basis and Reasoning

### Lost Profits

In order to be entitled to damages calculated in the form of lost profits, GE must prove that it would have made additional sales of its own wind turbines "but for" Mitsubishi's acts of infringement. One approach used to satisfy this "but for" test is by meeting four criteria, commonly referred to as the *Panduit* factors.[55]

### *Panduit* Factors

When applying the *Panduit* test, the patentee must establish that each of the following four *Panduit* factors is met in order to obtain an award of lost profits:

1. Demand for the patented product;
2. Absence of acceptable non-infringing substitutes;

---

[53] Exhibit 3. This represents total damages (lost profits and reasonable royalties) if the Court or jury finds both patents-in-suit valid and infringed by Mitsubishi. I have also prepared schedules which calculate damages assuming only one of the patents-in-suit is valid and infringed by Mitsubishi. These calculations are summarized in the attached Exhibit 4 and Exhibit 5.

[54] Exhibit 3, Schedule B. This represents total damages (reasonable royalties only) if the Court or jury finds both patents-in-suit valid and infringed by Mitsubishi. I have also prepared schedules which calculate damages assuming only one of the patents-in-suit is valid and infringed by Mitsubishi. These calculations are summarized in the attached Exhibit 4 and Exhibit 5.

[55] *Panduit Corp. v. Stahlin Bros. Fiber Works, Inc.,* 197 USPQ 726 (6th Cir.1978).

United States District Court for the Northern District of Texas – Dallas Division
Civil Action No. 3:10-CV-276-F

General Electric Company v. Mitsubishi Heavy Industries, Ltd., and Mitsubishi Power Systems Americas, Inc.

      3.   Manufacturing and marketing capability to exploit demand; and

      4.   Amount of profit that the patentee would have made absent the infringement.

Before I discuss each of the *Panduit* factors, I provide further discussion of how I have considered lost profits specifically related to this matter. First, it is my opinion that damages in the form of lost profits are appropriate *only* if one or more claims of the '705 patent are determined to be valid and infringed. That is, I have not calculated lost profits damages related to the '055 patent. For the '055 patent, I believe that the appropriate measure of damages is a reasonable royalty only. In the event that lost profits are awarded as damages for sales of certain of the products accused of infringing the '705 patent, I believe it would not be appropriate to award reasonable royalties on those units for infringement of the '055 patent. Therefore, my lost profits opinion excludes reasonable royalty damages on units subject to lost profits.

Another important consideration for the lost profits analysis is a determination of which Mitsubishi sales would be subject to lost profits. With the exception of a single turbine installed as part of a project referred to as Flagship, all of Mitsubishi's 2.4 MW turbines that have been installed in the United States are capable of ZVRT.[56] However, not all of these Mitsubishi sales would be subject to lost profits. First, the '705 patent did not issue until December 8, 2009.[57] Therefore, any turbines installed prior to that date would not be subject to a claim of lost profits against Mitsubishi. Second, not all of the turbines reported on Mitsubishi's financial documents have been installed. For example, certain turbines intended for sale to Babcock & Brown have not been imported into the United States and were not installed.[58] In this matter, I understand lost profits are only appropriately awarded for turbines that have or will be installed. Finally, certain turbines sold by Mitsubishi to Iberdrola Renewables ("Iberdrola") contained features not available on GE's turbines. In his deposition, Harmie Toren of Iberdrola noted that the Mitsubishi turbines that were installed at the Penascal project sites were the only turbines that were suitable for the project's location in Texas due to the high winds associated with potential hurricanes.[59] As such, GE would not likely have been able to place its own turbines at that location. Similarly, I understand that technical reasons would have precluded GE from selling its 2.5 MW turbine to Edison Mission Energy ("EME") for use at the Pinnacle project. Further, space constraints would have precluded GE from placing its 1.5 MW turbines at that site. After taking into account the above factors,

---

[56] Deposition of Akira Yasugi, April 13, 2011, pp. 15-18.
[57] U.S. Patent No. 7,629,705 B2.
[58] Response of Mitsubishi Power Systems Americas, Inc. to Plaintiff's Interrogatories Regarding Indirect Infringement, April 26, 2010, pp. 20-21.
[59] Deposition of Harmie Toren, September 21, 2011, pp. 68-69.

United States District Court for the Northern District of Texas – Dallas Division
Civil Action No. 3:10-CV-276-F

General Electric Company v. Mitsubishi Heavy Industries, Ltd., and Mitsubishi Power Systems Americas, Inc.

only certain turbines that were sold and/or installed for Iberdrola and EME in 2010 and 2011 are subject to lost profits.

Also important to the consideration of lost profits is an understanding of the internal rate of return ("IRR") analysis performed by wind turbine project developers and others in the industry. Mr. Toren of Iberdrola explained that IRR is the rate of return earned after considering the costs for capital expenditures, the initial construction, and the revenues earned by the project.[60] He elaborated about the three primary factors that influence IRR: the cost of the wind turbine and the balance of plant[61] equipment (referred to collectively as the capital cost), the purchase price of the power generated by the turbines, and the number of MW hours that are actually produced given the site conditions and the output of the particular turbines located at the site.[62] Mr. Toren indicated that the following factors were particularly relevant to the IRR calculation: capital expenditures or capital cost, the revenue generated by selling the power, and most importantly the efficiency of the turbine which is referred to as net capacity factor.[63] I understand that this type of IRR analysis is performed by all wind turbine project developers. For example, Randolph Peter Mann testified that EME conducts an "internal investment approval process" that relates to finding wind turbines that are economically viable at a particular site.[64]

A final and important consideration related to lost profits is the process by which wind energy projects are originated and developed. Mr. Mann described this process generally indicating it "really starts with origination, to find project opportunities, and then move them through the evaluation and permitting and preparation phase, marketing of the power for sale to the utilities, organizing them for construction and procurement, and then going through an internal investment approval process."[65] Mr. Toren of Iberdrola further described the portion of the development process that relates to the "interconnection queue."

The interconnection agreement refers to the process by which the wind farm operator obtains approval from the utility to connect its electrical equipment with the grid.[66] In order to be placed into the interconnection

---

[60] Deposition of Harmie Toren, September 21, 2011, p. 28.
[61] "Balance of plant" refers to those components, equipment and services that surround the wind turbine at a project site. Examples include roads, collector systems, turbine foundations, substations and other ancillary devices and services. See Deposition of Harmie Toren, September 21, 2011, p. 41.
[62] Deposition of Harmie Toren, September 21, 2011, p. 29.
[63] Deposition of Harmie Toren, September 21, 2011, pp. 136-137.
[64] Deposition of Randolph Peter Mann, January 24, 2011, pp. 11-12.
[65] Deposition of Randolph Peter Mann, January 24, 2011, p. 11.
[66] Deposition of Harmie Toren, September 21, 2011, pp. 106-107.

Confidential Business Information – Outside Attorneys' Eyes Only

United States District Court for the Northern District of Texas – Dallas Division
Civil Action No. 3:10-CV-276-F

General Electric Company v. Mitsubishi Heavy Industries, Ltd., and Mitsubishi Power Systems Americas, Inc.

queue, the developers need to first file the interconnection agreement.[67]   The interconnection queue determines how quickly a developer can obtain approval for its wind farm.[68]   As Mr. Toren explained, the interconnection queue operated as "a list of independent power producers that are available to connect to a grid.  And in order to get into that queue you need to file in advance of your desire the number of megawatts, the size of the wind farm, location, and some other parameters around which it will operate."[69]   Mr. Toren noted that his company would sometimes need to file interconnection agreements with the utilities "as much as five to six years" before the wind farm would be commissioned.[70]

Among other things, the interconnect agreement would include certain requirements that the wind farm would have to meet, including FERC Order No. 661-A that mandates ZVRT.[71]   I understand that when filing an interconnection agreement, the developer is required to identify the model of turbine that it plans to install and provide technical information to the utility such that the utility can determine whether the proposed wind farm will meet its operating requirements.[72]   I further understand that in order for a developer to change the primary pieces of electrical equipment, such as the turbine or substation equipment, it must request approval from the utility and submit technical documents to show that the change in equipment will not change the electrical operation of the wind farm.  If the change is material, such that it may affect the project's ability to comply with FERC grid code requirements, the developer's project may get pushed back in the queue.[73]

With this background information in mind, I now discuss the individual *Panduit* factors.  Although the determination as to whether these factors have been met is a matter for the fact finder to decide, I have detailed my observations regarding each factor as follows:

1.     *Demand for the patented product*

I understand demand can be demonstrated by showing significant sales of the patented product.  In this matter, I believe that there is significant demand for both GE and Mitsubishi's wind turbines that practice the

---

[67] Deposition of Harmie Toren, September 21, 2011, p. 35.
[68] Deposition of Harmie Toren, September 21, 2011, p. 121-122.
[69] Deposition of Harmie Toren, September 21, 2011, p. 35.
[70] Deposition of Harmie Toren, September 21, 2011, p. 122.
[71] Deposition of Harmie Toren, September 21, 2011, p. 107.
[72] See, for example, Deposition of Harmie Toren, September 21, 2011, pp. 35, 107 and 117.
[73] Discussion with with Ragu Balanthan; Deposition of Harmie Toren, September 21, 2011, pp. 35-36.

United States District Court for the Northern District of Texas – Dallas Division
Civil Action No. 3:10-CV-276-F

General Electric Company v. Mitsubishi Heavy Industries, Ltd., and Mitsubishi Power Systems Americas, Inc.

technology of the '705 patent.  Further, the technology covered by the '705 patent is a driver of demand for both sets of products.

I understand that the '705 patent enables ZVRT capability for wind turbines.  In addition, FERC Order No. 661-A mandates that "[a] wind generating plant shall be able to remain online during voltage disturbances up to the time periods and associated voltage levels set forth in the standard…."[74]  Thus, beginning in 2008, the ability to achieve ZVRT was a requirement for any wind generating plant.

In 2006, before the FERC requirement became active, GE recognized that the requirements set forth in the order included ZVRT capability and began to include that as a standard feature on its wind turbines. [75]  Mete Maltepe, Country Executive for GE Energy in Turkey, was asked what prompted the decision to make ZVRT a standard feature on GE's wind turbines.  He responded, "… it was a FERC requirement, which basically meant practically that option needed to be applied on every turbine, so we just made it a standard option."[76]  Ronald Brzezinski, Customer Value Manager for GE, stated that ZVRT was developed "[t]o meet customer requirements."[77]  He expounded that "[i]t's a requirement to install on the grid to have zero voltage ride through.  And so if a wind turbine is going to – in the Americas, in the United States, if it's going to go onto that grid, it has to meet that requirement [FERC Order No. 661-A]."[78]

Mitsubishi also recognized the importance of ZVRT relative to its ability to sell wind turbines in the United States.  Akira Yasugi, Project Promotion Section Manager at MHI, stated that LVRT and ZVRT are important features of its 2.4 MW turbines "[b]ecause there have been an increasing number of cases in the past few years in which LVRT is a requirement when connecting to a grid."[79]  Within the last two years, MHI has not offered a 2.4 MW wind turbine without LVRT or ZVRT for sale in the United States.  In addition, aside from a single project for a single turbine, none of MHI's customers has ever requested a 2.4 MW turbine in the United States without LVRT or ZVRT capability.[80]  Indeed, an internal MHI presentation identified

---

[74] United States of America Federal Energy Regulatory Commission Order No. 661-A, December 12, 2005, p. 49.
[75] Deposition of Mete Maltepe, July 18, 2011, p. 70.  Mr. Maltepe believed that the transition from an option pricing to being part of the standard offer occurred in 2006, for wind turbines to be shipped in 2008.
[76] Deposition of Mete Maltepe, July 18, 2011, pp. 8 and 61.
[77] Deposition of Ronald J. Brzezinski, June 23, 2011, pp. 5 and 16.
[78] Deposition of Ronald J. Brzezinski, June 23, 2011, pp. 16-17.
[79] Deposition of Akira Yasugi, April 13, 2011, pp. 11 and 98.
[80] Deposition of Akira Yasugi, April 13, 2011, p. 103.

United States District Court for the Northern District of Texas – Dallas Division
Civil Action No. 3:10-CV-276-F

General Electric Company v. Mitsubishi Heavy Industries, Ltd., and Mitsubishi Power Systems Americas, Inc.

LVRT/ZVRT as an innovative technology regarding Mitsubishi's 2.4 MW wind turbines.[81]  MHI's Mr. Yasugi indicated that if Mitsubishi did not offer LVRT and ZVRT, "the probability of [Mitsubishi] receiving an order would decrease…[and  that] if [Mitsubishi's] price was very cheap, it's possible that [it] would be able to sell even without [LVRT and ZVRT]."[82]  Gregory Wunder, Vice President and Chief Corporate Officer for MPSA, had stronger views concerning this issue.  He indicated that in order for MPSA to be able to bid on projects in the United States, and therefore sell its wind turbines, it is "mandatory" that those turbines be compliant with the ZVRT standard.[83]

From 2010 through the first quarter of 2011, GE has sold 1,880 1.5 MW and 1.6 MW wind turbines in the U.S. resulting in approximately $4.3 billion of sales.[84]  MHI has sold to MPSA 495 2.4 MW wind turbines from 2007 to 2009, generating approximately $1.08 billion in sales.[85]  From 2008 through 2010, MPSA has sold these 495 wind turbines for $1.78 billion in sales.[86]

2.      *Absence of acceptable non-infringing substitutes*

The second *Panduit* factor that must be proven in order to claim lost profits under the *Panduit* test is the absence of products that the marketplace would find acceptable as a substitute for the patented product.  In order to be an acceptable substitute, a product must have the advantages of the patented invention that were important to customers, and must not infringe the patents-in-suit.  If no such products are deemed available, then an absence of acceptable non-infringing substitutes exists.  In this matter, the "marketplace" consists of Iberdrola and EME.

I understand that other wind turbine manufacturers also provide turbines that include ZVRT functionality.  I further understand that ZVRT capability may be provided in a manner similar to that provided by GE and Mitsubishi, where ZVRT is implemented in the control system of each turbine, or utilizing a solution where ZVRT is implemented at the substation.

---

[81] Mitsubishi Heavy Industries, Ltd. Presentation slides re: Mitsubishi Wind Turbine (Bates # MPSANDTX0002707-MPSANDTX0002755 at MPSANDTX0002716 and MPSANDTX0002721).
[82] Deposition of Akira Yasugi, April 13, 2011, p. 99.
[83] Deposition of Gregory Wunder, July 14, 2011, pp. 76-77.
[84] Appendix A, Schedule 2B.
[85] Appendix C, Schedule 1.
[86] Appendix B.  These sales exclude the 456 turbines and $232 million in revenues that were subject to settlement agreements (See Appendix B, Schedule 3).

United States District Court for the Northern District of Texas – Dallas Division
Civil Action No. 3:10-CV-276-F

General Electric Company v. Mitsubishi Heavy Industries, Ltd., and Mitsubishi Power Systems Americas, Inc.

However, this latter potentially non-infringing substitute would not have been acceptable to Iberdrola and EME.  First, implementing this solution would require the procurement of additional power electronic components along with a redesign of the civil and electrical layout required to coordinate the use of this additional equipment, which could take anywhere between 12 and 18 months.[87]  I also understand that a wind farm developer who uses a solution at the substation faces increased risk of farm-wide electrical failure because there is a single point of failure instead of many, and therefore many wind farm developers will install additional substation equipment for redundancy.[88]  Finally, I also understand it is unlikely that an electrical utility in the United States would consider the use of this solution to be equivalent to the solution covered by the '705 patent, and the utility would likely require a wind farm developer proposing this solution to submit testing and certification data before being permitted to connect to the grid.[89]  Therefore, it is reasonable to assume that neither Iberdrola nor EME would consider the use of this solution to be an acceptable alternative to the method for accomplishing ZVRT that is disclosed in the '705 patent.

Furthermore, because redesigning the civil and electrical layout of a wind farm to accommodate the use of additional equipment would likely require resubmitting the new layout to the utility for approval, I understand that a developer attempting to use additional equipment at the substation to meet the operating requirements for ZVRT may lose its place in the interconnection queue, resulting in a potential delay.[90]

I now discuss additional information pertinent to Iberdrola and EME individually:

### *Iberdrola*

The Elm Creek II and Juniper Canyon project sites of Iberdrola account for 63 and 62 units of Mitsubishi 2.4 MW wind turbines, respectively.[91]  All 125 of these turbines were provided by Mitsubishi to Iberdrola pursuant to a Framework Agreement entered into in 2006.[92]  GE believes that "but for" Mitsubishi's presence in the market after the issuance of the '705 patent, Iberdrola would have chosen GE to supply the turbines at Elm Creek II and Juniper Canyon.  As discussed below, I am aware of evidence supporting this view.

---

[87] Discussion with Ragu Balanathan.
[88] Discussion with Ragu Balanathan.
[89] Discussion with Ragu Balanathan.
[90] Discussion with Ragu Balanthan; Deposition of Harmie Toren, September 21, 2011, pp. 35-36.
[91] Deposition of Harmie Toren, September 21, 2011, pp. 14-15.
[92] Deposition of Harmie Toren, September 21, 2011, pp. 15-16.

United States District Court for the Northern District of Texas – Dallas Division
Civil Action No. 3:10-CV-276-F

General Electric Company v. Mitsubishi Heavy Industries, Ltd., and Mitsubishi Power Systems Americas, Inc.


<u>Likely suppliers to Iberdrola</u>

In late 2007, or the beginning of 2008, Iberdrola was attempting to expand its pipeline of turbine supply from 500 MWs per year to 1,000 MWs per year.[93]  According to Mr. Toren, only three suppliers had capacity at that time – GE, Mitsubishi, and Suzlon.[94]  However, Iberdrola considered Suzlon to be a tier-three supplier and therefore not a preferred supplier.[95]  Consequently, Iberdrola excluded Suzlon from its consideration, and chose to contract with GE and Mitsubishi.[96]  Subsequent to this decision, in June 2008, Gamesa and Iberdrola entered into a supply agreement covering 4,500 MWs of capacity to be delivered to projects in Europe, Mexico, and the United States between 2010 and 2012.[97]  Mr. Toren indicated that Iberdrola had not purchased all of the capacity available under this agreement.[98]  Therefore, absent Mitsubishi, the most likely suppliers for the 300 MWs to be supplied to Elm Creek II and Juniper Canyon would be GE or Gamesa.


<u>Iberdrola has a demonstrated preference for GE turbines</u>

Historically, GE had been the preferred provider of wind turbines to Iberdrola.[99]  For example, a GE market presentation from 2010 indicates GE's market share of Iberdrola purchases to be 36% as compared to 21% for Gamesa.[100]  This preference for GE's turbines was related in large part to the superior net capacity factor of the GE turbine.[101]  Mr. Toren testified that a high net capacity factor has a significant effect on the IRR calculation performed by Iberdrola when it is deciding which turbines to purchase or install at a particular site.[102]  Further, GE's 1.5 MW turbines are already installed at Iberdrola's Elm Creek I[103] and Leaning Juniper[104] sites.  I understand the proximity of Elm Creek II and Juniper Canyon to Elm Creek I and Leaning Juniper respectively, could increase efficiencies and reduce the overall maintenance costs for both projects.[105]

---

[93] Deposition of Harmie Toren, September 21, 2011, pp. 84-85.
[94] Deposition of Harmie Toren, September 21, 2011, pp. 85-86.
[95] Deposition of Harmie Toren, September 21, 2011, pp. 21-22.
[96] Deposition of Harmie Toren, September 21, 2011, pp. 21-22, 85 and 88.
[97] http://www.renewableenergyworld.com/rea/news/article/2008/06/iberdrola-signs-4500-mw-wind-deal-52812.
[98] Deposition of Harmie Toren, September 21, 2011, pp. 81-82.
[99] Deposition of Harmie Toren, September 21, 2011, pp. 134-135.
[100] GENDTX03219508.
[101] Deposition of Harmie Toren, September 21, 2011, pp. 136-137.
[102] Deposition of Harmie Toren, September 21, 2011, pp. 136-137.
[103] Deposition of Harmie Toren, September 21, 2011, pp. 70-71.
[104] http://www.iberdrolarenewables.us/rel_06.05.24b.html: PPM Announces 100 MW Leaning Juniper Wind Project.
[105] Discussion with Dave Johnson.

United States District Court for the Northern District of Texas – Dallas Division
Civil Action No. 3:10-CV-276-F

General Electric Company v. Mitsubishi Heavy Industries, Ltd., and Mitsubishi Power Systems Americas, Inc.


Further, in 2010 when Iberdrola would have been selecting a turbine supplier to replace Mitsubishi, GE's turbines were favored by financiers "due to the perceived bankability of their turbine projects."[106] An Emerging Energy Research 2010 Report notes that "[t]he track record of products such as the GE 1.5, which has an average 98% availability fleet-wide, has allowed developers to secure financing more easily in the risk-adverse market."[107] This report further elaborated that "[w]hen the recession tightened credit markets and forced developers to turn to bankable turbines, GE was well-positioned…."[108]


Using Gamesa's turbines may have had adverse effects on the developer's timeline

As discussed above, wind energy project developers file an interconnection agreement to be placed into the interconnection queue. Mr. Toren noted that when Iberdrola is in its development process, "[it] is extremely important…to get into the queue of interconnects. That process can take quite some time."[109] In some cases, the interconnection agreement is filed five to six years in advance of the proposed interconnect.[110] He also noted that if the interconnection agreement is modified, for example by substituting the manufacturer of the wind turbine, the developer could be placed at the back of the queue and lose its capability of connecting to the electrical grid.[111] I understand that without being able to connect to the grid, the wind energy project will not be able to generate revenue which will have a negative effect on the IRR analysis.


When Iberdrola originally filed the interconnection request for the Elm Creek II and Juniper Canyon project sites, it had to identify a certain type of generating unit.[112] Iberdrola filed each of the interconnection agreements naming GE's 1.5 MW turbines.[113] As the date of the installation approached, Iberdrola filed requests with the U.S. Department of Energy to substitute Mitsubishi's 2.4 MW turbines in place of the GE 1.5 MW turbines.[114]

---

[106] GENDTX04748337-GENDTX04748570 at GENDTX04748536: "U.S. Wind Power Markets and Strategies, 2010-2025," Emerging Energy Research, May 2010.
[107] GENDTX04748337-GENDTX04748570 at GENDTX04748536: "U.S. Wind Power Markets and Strategies, 2010-2025," Emerging Energy Research, May 2010.
[108] GENDTX04748337-GENDTX04748570 at GENDTX04748562: "U.S. Wind Power Markets and Strategies, 2010-2025," Emerging Energy Research, May 2010.
[109] Deposition of Harmie Toren, September 21, 2011, pp. 114-115.
[110] Deposition of Harmie Toren, September 21, 2011, p. 122.
[111] Deposition of Harmie Toren, September 21, 2011, pp. 35-36.
[112] Deposition of Harmie Toren, September 21, 2011, pp. 114-115 and 128.
[113] Deposition of Harmie Toren, September 21, 2011, pp. 130.
[114] Deposition of Harmie Toren, September 21, 2011, pp. 114-117.

United States District Court for the Northern District of Texas – Dallas Division
Civil Action No. 3:10-CV-276-F

General Electric Company v. Mitsubishi Heavy Industries, Ltd., and Mitsubishi Power Systems Americas, Inc.


I am not aware of any evidence suggesting that such substitution would have been technically feasible using any other manufacturer's turbine (aside from GE or Mitsubishi) for the Elm Creek II and Juniper Canyon project sites.  I understand that if Mitsubishi had attempted to substitute a turbine produced by yet another supplier other than GE or Mitsubishi (for example, Gamesa), it may have lost its place in the interconnection queue, resulting in a potential delay.  I understand this delay could drive the IRR of that project down, possibly to the point where development would no longer be economically feasible.


### *EME*

EME's project site in Dewey County, Oklahoma (the "Taloga project") accounts for 54 of Mitsubishi's 2.4 MW wind turbine sales.  These 54 units translate to 129.6 MWs of output.  GE believes that "but for" Mitsubishi's presence in the market after the issuance of the '705 patent, EME would have chosen GE to supply the turbines at the Taloga project.  As discussed below, I am aware of evidence supporting this view.


I understand that after Mitsubishi and EME entered into a contract for the supply of these wind turbines, certain disputes arose, and each party filed a Complaint against the other in the Superior Court of the State of California for the County of Orange.[115]  During the EME/Mitsubishi litigation, EME stated its concern that "it most likely would be impossible for the Taloga project to be completed, which would result in a total waste of years of efforts to build the project and a loss in benefit of the green energy [EME] hoped to develop at the project."[116]


While the EME/Mitsubishi litigation was pending, EME reached out to GE and requested a budgetary price quote for 81 of GE's 1.6 MW wind turbines.[117]  These 81 units represent the same 129.6 MWs of output that Mitsubishi was contracted to deliver to EME for the Taloga project.  Additionally, in a follow-up email, EME

---

[115] Settlement Agreement, Mutual Release and Amendment to Wind Turbine Generator Supply Agreement between Mitsubishi Power Systems Americas, Inc., Mitsubishi Heavy Industries, Ltd., and Edison Mission Energy, October 8, 2010 (Bates # MPSANDTX0269657-MPSANDTX0269705 at MPSANDTX0269657-MPSANDTX0269658).

[116] Declaration of Karen House in Support of Plaintiff Edison Mission Energy's Motion for Preliminary Injunction, July 6, 2010 (Bates # EDISON MISSION 0000627-EDISON MISSION 0000631 at EDISON MISSION 0000630).

[117] Email from Delnaz Marvasti to Liping Guthrie re: Budgetary Price Quote, August 9, 2010. (GENDTX07693209-GENDTX07693212).

United States District Court for the Northern District of Texas – Dallas Division
Civil Action No. 3:10-CV-276-F

General Electric Company v. Mitsubishi Heavy Industries, Ltd., and Mitsubishi Power Systems Americas, Inc.

stated that the project would require these turbines to be delivered in 2011 to a wind farm in Oklahoma "25 miles north of Clinton on I-40."[118]

These negotiations progressed to the point where GE and EME discussed major contractual issues relating to the Taloga project, and EME presented the project to its board of directors.[119]  EME's options were to: 1) continue to work with MHI because of the risk associated with changing suppliers, with the understanding that settlement would be a risky proposition; or 2) execute a contract with GE for the 129.6 MWs of output and deal with the dispute with MHI later.[120]

In an internal GE email from October 2010, Liping Guthrie, Account Manager for GE, stated that "[o]nce they decide not to settle with MHI, they would only come to GE, because they believe GE is the only party they can rely on to deliver & execute on time.  This is critical for the Taloga project, because PPA expires September 1, 2011, & EME wants COD 6/31/2011, just to be on the safe side."[121]

### 3.    Manufacturing and marketing capability to exploit demand

The third *Panduit* factor considers that the patentee is only entitled to lost profits for those sales it would have been capable of making.  The patentee must prove it had the capacity both to manufacture and market the additional products in order to ensure the sale.

### Manufacturing Capacity

I understand that GE's assembly plants had sufficient capacity to produce the additional wind turbines that would have resulted from the sales to Iberdrola and EME.  From 2009 to 2011, GE's assembly plants were capable of manufacturing 100 to 110 of its 1.5 MW wind turbines per week.  Assuming 48 weeks of production, GE's annual manufacturing capability ranges between 4,800 and 5,280 1.5 MW wind turbines.  Approximately 90% of this manufacturing capability is captured within the three plants located in the U.S.[122]

---

[118] Email from Delnaz Marvasti to Liping Guthrie re: Budgetary Price Quote, August 9, 2010. (GENDTX07693209-GENDTX076932012).
[119] Email from Rafael Alcalde-Navarro to Liping Guthrie, et al. re Taloga Ts and Cs, October 6, 2010 (GENDTX07693369-GENDTX07693370).
[120] Email from Rafael Alcalde-Navarro to Liping Guthrie, et al. re: Taloga Ts and Cs, October 6, 2010 (GENDTX07693369-GENDTX07693370).
[121] Email from Liping Guthrie to Rafael Alcalde-Navarro, et al. re: EME Taloga Update, October 7, 2010 (GENDTX07693112-GENDTX07693113).
[122] GENDTX07693882.

United States District Court for the Northern District of Texas – Dallas Division
Civil Action No. 3:10-CV-276-F

General Electric Company v. Mitsubishi Heavy Industries, Ltd., and Mitsubishi Power Systems Americas, Inc.

In addition, these manufacturing facilities utilized only 33% to 42% of available capacity during the damages period.[123]  Indeed, according to Stephen Swift, General Manager of Sales and Commercial Operations for the Renewable Energy Business at GE, "… as a business, we've had capacity in place to deliver 3,200 units globally and of that, 400 of them went outside the U.S.  So we've had capacity in the past for 2,800 units, but again, we've not hit our physical limits."[124]

In 2010 and 2011, GE would have had to manufacture an additional 282 wind turbines to capture sales lost to Mitsubishi "but for" the alleged infringement.[125]  Based on discussion with Tom Flaherty, Global Materials and Operations Leader at GE, I understand that this quantity would have been within the manufacturing capacity of assembly plants used by GE.  I also understand that there were no constraints related to the supply of components used in the manufacture of wind turbines.[126]

Related to marketing capability, both GE and Mitsubishi sell to and compete for the same customers within the wind energy market.  As explained in the *Panduit* Factor 2 section above, GE and Mitsubishi competed against each other in their attempts to secure wind turbine supply contracts with Iberdrola and EME.  It is clear that GE had the marketing capacity for the specific projects that I have included in lost profits.

*4.     Amount of profit that the patentee would have made absent the infringement*

To calculate the amount of lost profits suffered by the patentee, the appropriate sales revenues must be determined and the costs associated with making those sales should be deducted.  This profit calculation should only consider the costs that would have increased with the production and sale of additional product.  These costs are often referred to as incremental costs, and the resulting margin is called an incremental profit margin.

For purposes of this report, I have assumed that "but for" Mitsubishi's presence in the market, certain supply contracts awarded to Mitsubishi would instead have been awarded to GE.  Specifically, as discussed above, I have assumed GE would have been able to capture sales made by Mitsubishi to Iberdrola and EME in 2010

---

[123] GENDTX07693882.
[124] Deposition of Stephen L. Swift, June 24, 2011, p. 140.
[125] Exhibit 3, Schedule A1.
[126] GENDTX07692935-GENDTX07693031 at GENDTX07692965: GE 2009 Growth Playbook.

United States District Court for the Northern District of Texas – Dallas Division
Civil Action No. 3:10-CV-276-F

General Electric Company v. Mitsubishi Heavy Industries, Ltd., and Mitsubishi Power Systems Americas, Inc.

and 2011.  I describe below certain aspects of the lost profits calculation.  Further details are provided in the attached schedules.

### Lost GE units

But for Mitsubishi's sales of infringing 2.4 MW wind turbines to Iberdrola, I have assumed GE would have sold its 1.5 SLE MW wind turbines.[127]  Similarly, but for the infringing sales by Mitsubishi, I have assumed GE would have sold its 1.6 MW turbine to EME.[128]  Since these competing products have different outputs in megawatts, I have calculated the number of GE wind turbines necessary to match the output provided by Mitsubishi's 2.4 MW products.  In order to match the total of 429.6 MWs provided by the 179 Mitsubishi turbines, GE would have sold 201 units of its 1.5 MW turbine and 81 units of its 1.6 MW turbine.[129]

### "But for" GE revenue

On a per megawatt basis, GE's selling price was lower than Mitsubishi's during the damages period.  For example, during 2010, GE's selling price for its 1.5 SLE model wind turbines (the model that it would have sold to Iberdrola) was approximately $1.53 million per MW.[130]  For 2010, MPSA's selling price for those 2.4 MW turbines it delivered was approximately $1.78 million per MW.[131]

I have assumed for purposes of the lost profits calculation that GE would have sold its turbines to Iberdrola at the average price at which it sold the same model to other U.S. customers.  In 2010, the average selling price of GE's 1.5 MW SLE model wind turbine was $2,289,202 per unit.[132]

For the purposes of the lost profits calculation, I have assumed that GE would have sold its turbines to EME at the same unit price offered by GE to EME, which was $1,720,000 per turbine.[133]

---

[127] GENDTX07664330-GENDTX07664337 at GENDTX07664330: Proposal from Ignacio Martin Negrete of GE to Imanol Barquin of Iberdrola.
[128] GENDTX0763209-GENDTX0763212 at GENDTX0763212.
[129] Exhibit 3, Schedule A1.
[130] Appendix A.
**[131]** Appendix B.
[132] Appendix A.
[133] GENDTX07692799-GENDTX07692800.

United States District Court for the Northern District of Texas – Dallas Division
Civil Action No. 3:10-CV-276-F

General Electric Company v. Mitsubishi Heavy Industries, Ltd., and Mitsubishi Power Systems Americas, Inc.


*"But for" incremental profit*

GE incurred incremental costs of $1,293,660 per unit on each sale of its 1.5 MW SLE wind turbines for 2010.[134]  Similarly, GE incurred incremental costs of $1,485,364 on its sales of 1.6 MW XLE turbines in 2011.[135]  Deducting these per unit costs from the expected selling prices discussed above results in a per unit incremental profit margin of $995,542 for GE's lost sales of the 1.5 MW turbines to Iberdrola and $234,636 for GE's lost sales of the 1.6 MW turbines to EME.[136]


Additionally, I understand GE would have generated additional revenue and profits from sales of maintenance agreements, software upgrades, and replacement parts.[137]  I have not included these expected lost profits in this calculation.


**Lost Profits Summary**

Applying the metrics above results in total lost profits related to the lost Iberdrola and EME turbines of $200,103,942 and $19,005,516 respectively.[138]


As explained above, lost profits would not be an appropriate measure of damages for all sales of the accused products.  For those remaining sales, damages would be measured as a reasonable royalty which I discuss next.


**<u>Reasonable Royalty</u>**


I understand that, if Mitsubishi is found to have infringed the patents-in-suit, GE is entitled to recover "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer."[139]  In my determination of a reasonable royalty, I have considered a number of factors, including those identified in the *Georgia-Pacific* case.[140]  One of the most important of the fifteen *Georgia-Pacific* factors is the last factor, a hypothetical negotiation pictured to take place between

---

[134] Exhibit 3, Schedule A1.
[135] Exhibit 3, Schedule A1.
[136] Exhibit 3, Schedule A1.
[137] Discussion with John McGuinness and James Maughan.
[138] Exhibit 3, Schedule A1.
[139] Title 35 U.S.C. § 284.
[140] *Georgia-Pacific v. United States Plywood Corp.*, 318 F. Supp. 1116,1121 (S.D.N.Y.), *modified and aff'd*, 446 F. 2d 295 (2d Cir. 1971).

United States District Court for the Northern District of Texas – Dallas Division
Civil Action No. 3:10-CV-276-F

General Electric Company v. Mitsubishi Heavy Industries, Ltd., and Mitsubishi Power Systems Americas, Inc.


a willing licensee and willing licensor as of the date of first infringement.  I describe below the key issues that I believe would be particularly important to the hypothetical negotiators and then detail my observations regarding all of the *Georgia-Pacific* factors and their effect on the hypothetical negotiation between the parties.

I understand that in considering and analyzing the *Georgia-Pacific* factors, I am allowed to use the "book-of-wisdom" to consider events and facts that happened subsequent to the date of the hypothetical negotiation.[141]


## The hypothetical negotiations

It is my opinion that separate negotiations would take place for the '055 and '705 patents.  Those negotiations would result in separate royalties for each of the two patents.  The relative contributions of the technology of the patents-in-suit, as well as the dates of first infringement, are sufficiently different, making it likely that the hypothetical negotiators would choose to handle them separately.  To the extent that an accused product is found to have infringed both of the patents-in-suit, the related royalties would be additive.


## Dates of the hypothetical negotiations

I understand that the hypothetical negotiation between the parties would have taken place around the date of first infringement of the patents-in-suit.


### '055 patent

The '055 patent issued on April 12, 2005.[142]  MPSA's first executed contract for the sale of an accused 2.4 MW turbine occurred on August 1, 2006.[143]  The first accused 2.4 MW wind turbine to be imported, installed

---

[141] *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1333 (Fed. Cir. 2009) (citing *Fromson v. W. Litho Plate & Supply Co.*, 853 F.2d 1568 (Fed. Cir. 1988), *overruled on other grounds by Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1343-44 (Fed. Cir. 2004) (en banc)).  In explaining the book-of-wisdom in *Fromson*, the court stated:
Determining a fair and reasonable royalty is often, as it was here, a difficult judicial chore, seeming often to involve more the talents of a conjurer than those of a judge.  Lacking adequate evidence of an established royalty, the court was left with the judge-created methodology described as 'hypothetical negotiations between willing licensor and willing licensee.'…
The methodology encompasses fantasy and flexibility; fantasy because it requires what warring parties would have agreed to as willing negotiators; flexibility because it speaks of negotiations of the time infringement began, *yet permits and often requires a court to look to events and facts that occurred thereafter and that could not have been known to or predicted by the hypothesized negotiators*."  (Emphasis added.)
[142] U.S. Patent No. 6,879,055 B2.
[143] Response of Mitsubishi Power Systems Americas, Inc. to Plaintiff's Interrogatories Regarding Indirect Infringement, April 26, 2010, p. 19.

Confidential Business Information – Outside Attorneys' Eyes Only                      Page 26 of 57

United States District Court for the Northern District of Texas – Dallas Division
Civil Action No. 3:10-CV-276-F

General Electric Company v. Mitsubishi Heavy Industries, Ltd., and Mitsubishi Power Systems Americas, Inc.


and commissioned[144] occurred in 2007.[145]  I have assumed the hypothetical negotiation for a license to the '055 patent would have occurred in 2006.

### '705 patent

The '705 patent issued on December 8, 2009.[146]  The first accused 2.4 MW wind turbine to be commissioned subsequent to the '705 patent's issuance occurred in April 2010.[147]  Therefore, I have assumed the hypothetical negotiation for a license to the '705 patent would have occurred in early 2010.


### Parties to the negotiation

The parties to the hypothetical negotiations would be GE, the owner of the patents-in-suit at the time, and Mitsubishi.


### Royalty structure

Patent licenses can be structured in several different ways.  Some incorporate a "running royalty," which is typically calculated based upon the number of units sold of the licensed products or their net sales value expressed in monetary (dollar) amounts.  Running royalties require the determination of the royalty base as well as the royalty rate that will be applied to that base.  Others require lump sum amounts paid upfront or periodically during the term of the license, sometimes in addition to a running royalty.  In this matter, I believe that the hypothetical license would be structured with a per MW royalty based on the power output of the accused wind turbines sold by Mitsubishi in the U.S.  Such a structure is consistent with other licenses I have reviewed in this matter.


### Royalty base

The royalty base for each of the patents-in-suit is summarized in the charts below.  This royalty base does not include those revenues from sales of wind turbines that I have included in my lost profits calculation:[148]

---

[144] Commissioning is the process by which the turbine supplier "sets the parameters within the turbine, ensures that it's operating correctly, ensures that the owner has connected the turbine in accordance with…" the supplier's requirements and establishes that the turbine is in proper functioning condition.  See Deposition of Harmie Toren, September 21, 2011, pp. 49-51.

[145] Response of Mitsubishi Power Systems Americas, Inc. to Plaintiff's Interrogatories Regarding Indirect Infringement, April 26, 2010, p. 19; Deposition of Harmie Toren, September 21, 2011, pp. 9-10.

[146] U.S. Patent No. 7,629,705 B2.

[147] Response of Mitsubishi Power Systems Americas, Inc. to Plaintiff's Interrogatories Regarding Indirect Infringement, April 26, 2010, p. 7.

[148] Exhibit 3, Schedule A4.

United States District Court for the Northern District of Texas – Dallas Division
Civil Action No. 3:10-CV-276-F

General Electric Company v. Mitsubishi Heavy Industries, Ltd., and Mitsubishi Power Systems Americas, Inc.

|  | 2010 | 2011 | Total |
|---|---|---|---|
| Royalty Base in MWs - '705 Patent | 50.4 | 55.2 | 105.6 |

|  | 2008 | 2009 | 2010 | 2011 | Total |
|---|---|---|---|---|---|
| Royalty Base in MWs - '055 Patent | 393.6 | 314.4 | 1,144.8 | 55.2 | 1,908 |

If the Court or jury determines that damages based on only a reasonable royalty are appropriate, the royalty base is summarized below:[149]

|  | 2010 | 2011 | Total |
|---|---|---|---|
| Royalty Base in MWs - '705 Patent | 350.4 | 184.8 | 535.2 |

|  | 2008 | 2009 | 2010 | 2011 | Total |
|---|---|---|---|---|---|
| Royalty Base in MWs - '055 Patent | 393.6 | 314.4 | 1,444.8 | 184.8 | 2,337.6 |

In my determination of an appropriate royalty rate in this matter, I believe several considerations would be particularly important to the hypothetical negotiators, including:

- Relative importance of the patented technology to Mitsubishi and its customers;
- Guidance provided by existing licenses;
- Relationship between GE and Mitsubishi;
- Profitability of the relevant products;
- Other indicators of value; and
- Cost savings enabled by the patents-in-suit.

I address each of these considerations below.

***Relative importance of the patented technology to Mitsubishi and its customers***

I would expect the hypothetical negotiators to start their deliberations by first trying to understand the relative importance of the patented technology to Mitsubishi.

---

[149] Exhibit 3, Schedule B1.

United States District Court for the Northern District of Texas – Dallas Division
Civil Action No. 3:10-CV-276-F

General Electric Company v. Mitsubishi Heavy Industries, Ltd., and Mitsubishi Power Systems Americas, Inc.


'055 patent

As discussed above, I understand the '055 patent relates to a particular type of base frame used in a wind turbine, and that such a base frame facilitates transport and assembly during the erecting of wind power plants.[150]


The technology of the '055 patent was critical to Mitsubishi. At the time it was developing the accused 2.4 MW turbine, Mitsubishi's assembly factory utilized a crane that had a lifting limit of 60 tons.[151] This weight restriction is considerably less than the weight of the completed nacelle of the accused wind turbine. The mass of the yaw module, front module, and rear module when combined into a single piece is approximately 127.7 tons.[152] If Mitsubishi were to use a one-piece nacelle on its 2.4 MW wind turbine, it would have required a larger crane.[153] Specifically, Mitsubishi noted in a design presentation given to Global Energy Concepts that

> MHI has given serious thought to the difficulty of transporting and erecting a large MW machine. Their strategy of separating the nacelle into three separate components, each weighing less than 60 MT, allows the use of trucks and cranes that are commonly used for turbines in the 1-2 MW range. A 450-ton crane, as opposed to a 650-ton crane that would be required to lift the pre-assembled front and rear nacelle, is readily available in North America and represents significant savings in leasing costs.[154]

In addition to the larger crane, Mr. Dobashi, MHI's Group Head of Manufacturing Planning, testified that "…the layout of the entire plant would need to be changed. Meaning if you change where something is placed, then other things would need to be changed as well…."[155] Mr. Dobashi went on to explain the importance of the three-piece nacelle to Mitsubishi when he stated "[a] large wind turbine was created and…there were limitations imposed by the factory, limitations imposed by transport. So we were forced to make it the size we did…. In the end [the nacelle] became three-piece. We were forced to make [the nacelle] into three pieces."[156]

---

[150] U.S. Patent No. 6,879,055 B2.
[151] Deposition of Koji Dobashi, April 21, 2011, pp. 11-12.
[152] MHINDTX0000003-MHINDTX0000060 at MHINDTX0000017.
[153] Deposition of Koji Dobashi, April 21, 2011, p. 20.
[154] MHINDTX1025726-MHINDTX1025748 at MHINDTX1025740-MHINDTX1025741.
[155] Deposition of Koji Dobashi, April 21, 2011, pp. 18-19.
[156] Deposition of Koji Dobashi, April 21, 2011, pp. 23-24.

United States District Court for the Northern District of Texas – Dallas Division
Civil Action No. 3:10-CV-276-F

General Electric Company v. Mitsubishi Heavy Industries, Ltd., and Mitsubishi Power Systems Americas, Inc.


In addition to the constraints imposed by Mitsubishi's factory, having the nacelle divided into three modules makes the transportation of the nacelle easier and less expensive.[157]  It also potentially allows for delivery to sites that would otherwise be inaccessible if the nacelle were in a single piece.[158]  Mr. Numajiri, Shunin at MHI, agreed that the three-piece nacelle enables easier transportation since each of the pieces is lighter and smaller than the combined nacelle.[159]  I understand that if Mitsubishi were transporting a single piece nacelle of the same size as its assembled three piece nacelle, it would need to use a 19-axle truck.  Not only are there additional costs related to use of a 19-axle truck, there is also limited availability of trucks that large.  In December 2009, GE estimated that there were only 35 to 40 19-axle trucks available in North America.[160]

Perhaps most importantly, were Mitsubishi to change the base frame, it would have required redesigning the entire nacelle, as the bed frame is the principal support structure for a wind turbine's rotor and drive train and is responsible for absorbing the stresses due to high wind speeds.[161]  I understand that it takes approximately 15 to 24 months to perform the six major phases of the design process for a new nacelle.[162]  This estimate is consistent with the experience of both GE and Mitsubishi.  It took GE from October 2000 until early 2002 to have the first working prototype of its 3.6 MW nacelle.[163]  More recently, Mitsubishi conceived a new nacelle design for its 2.4 MW turbine sometime in 2009, but only manufactured its first prototype this past August.[164]  Therefore, were Mitsubishi to attempt to design around the '055 patent, it would have to delay production and delivery of its 2.4 MW turbine for approximately 15 to 24 months.

Ultimately, the negotiators would recognize that a license to the '055 patent was critical to Mitsubishi at the time of the hypothetical negotiation.  Without such a license, Mitsubishi would have been forced to use a single-piece nacelle.  Due to the restrictions imposed by its factory, Mitsubishi would have been unable to remove the nacelle from the factory in order to transport it to customers without redesigning its factory and purchasing additional equipment such as a larger crane.  Mitsubishi would also likely prefer to use the three-piece nacelle to avoid the increased costs and logistical challenges associated with a larger, one-piece version.

[157] Deposition of Akira Yasugi, April 13, 2011, pp. 94-95.
[158] Deposition of Akira Yasugi, April 13, 2011, p. 97; Yasugi Exhibit 50: MHINDTX0456169-MHINDTX0456232 at MHINDTX0456203.
[159] Deposition of Tomohiro Numajiri, April 19, 2011, p. 43.
[160] GENDTX07692734.
[161] Discussion with Dr. Andrew Swift.
[162] Discussion with Dr. Andrew Swift.
[163] Deposition of Vincent Schellings, October 5, 2011, pp. 174-177.
[164] Deposition of Tomohiro Numajiri, September 20, 2011, pp. 11-12; Mitsubishi Wind Turbine Development Technical Forum 2009: MHINDTX3920944-MHINDTX3920972 at MHINDTX3920946.
.

United States District Court for the Northern District of Texas – Dallas Division
Civil Action No. 3:10-CV-276-F

General Electric Company v. Mitsubishi Heavy Industries, Ltd., and Mitsubishi Power Systems Americas, Inc.

Alternatively, Mitsubishi could have attempted to redesign its nacelle to be constructed with multiple parts, but in a manner that did not infringe the '055 patent, but that too would have resulted in significant delays at a time when the market had significant demand.[165]   Mitsubishi thus would have been willing to pay a higher royalty to avoid the time and cost involved in redesigning its nacelle and delaying delivery of its 2.4 MW machine for 15 to 24 months.

'705 patent

As discussed above, I understand the '705 patent relates to a method of implementing ZVRT.  As discussed in the lost profits section of this report, this technology is critical to Mitsubishi's ability to make sales of the accused 2.4 MW turbines in the U.S.  For example, an MHI presentation titled "Mitsubishi Wind Turbine" identified certain innovative technology including the 2.4 MW turbine's LVRT/ZVRT electrical performance. The presentation states that the "2.4 MW turbine's capability to ride through low voltage conditions in accordance with FERC requirements has been verified…."[166]  MHI's Mr. Yasugi indicated that if Mitsubishi did not offer LVRT and ZVRT, "the probability of [Mitsubishi] receiving an order would decrease…[and that] if [Mitsubishi's] price was very cheap, it's possible that [it] would be able to sell even without [LVRT and ZVRT]."[167]  Gregory Wunder, Vice President and Chief Corporate Officer for MPSA, had stronger views concerning this issue.  He indicated that in order for MPSA to be able to bid on projects in the United States, and therefore sell its wind turbines, it is "mandatory" that those turbines be compliant with the ZVRT standard.[168]

Mitsubishi's customers also recognized the importance of ZVRT.  EME felt that it was important for the turbines it was considering purchasing from Mitsubishi to comply with the LVRT requirements, including the "control capability to allow the turbine to continue uninterrupted automatic operation in the event of brief voltage dips or drop-outs."[169]  In fact, with the exception of a single project that had one turbine, no Mitsubishi customer in the United States has ever requested a 2.4 MW turbine without LVRT and ZVRT capabilities.[170]  At least since April 2009, MHI has not even offered a 2.4 MW turbine in the U.S. that does not include LVRT or ZVRT.[171]

---

[165] Discussion with Dr. Andrew Swift.
[166] MPSANDTX0002707-MPSANDTX0002755 at MPSANDTX0002716.
[167] Deposition of Akira Yasugi, April 13, 2011, p. 99.
[168] Deposition of Gregory Wunder, July 14, 2011, pp. 76-77.
[169] Deposition of Randolph Peter Mann, January 24, 2011, pp. 25-26.
[170] Deposition of Akira Yasugi, April 13, 2011, p. 103.
[171] Deposition of Akira Yasugi, April 13, 2011, p. 103.

United States District Court for the Northern District of Texas – Dallas Division
Civil Action No. 3:10-CV-276-F

General Electric Company v. Mitsubishi Heavy Industries, Ltd., and Mitsubishi Power Systems Americas, Inc.

I note that GE also recognized the importance of ZVRT to its ability to make wind turbine sales.  Mr. Brzezinski testified that "…a grid feature is a requirement to connect to the grid.  If you have it, you can sell your turbines for that project.  If you don't have it, you're not considered to be able to sell your turbines to that project."[172]  ZVRT is a type of grid feature Mr. Brzezinski was referring to, as it is a mandatory requirement for wind farm projects installed in the United States.  Mr. Maltepe also recognized the importance of meeting grid code requirements at project sites.  He indicated that "if technically it doesn't fit, it's kind of a no-brainer.… The technical fit is if it doesn't fit, you won't have a transaction, and so [the technical fit is] very important."[173]  He further elaborated saying "…[i]f you can't integrate to the grid, this project has no value.… [I]f there is no technical solution to integrate to the grid, then the customer wouldn't purchase.  So it's very, very important."[174]


### Guidance provided by existing licenses

After understanding the relative importance of the patented technology, the hypothetical negotiators would look for guidance in other licenses involving one or more of the parties.


<u>Mitsubishi Licenses</u>

I am aware of two licenses entered into by Mitsubishi that relate to wind turbine technology.  As discussed later in this report, one of these licenses, involving TPI, VienTek, and Mitsubishi, involves related entities as the licensee and licensor.  As such, this license would not be informative to the hypothetical negotiators.

In addition to the TPI license, MHI has also entered into a license agreement with Thomas A. Wilkins.  Effective December 18, 2009, Mr. Wilkins granted to MHI a non-exclusive license under U.S. Patent No. 6,921,985 relating to LVRT for wind turbine generators.[175]  The rights granted allow for MHI to make and sell wind turbines within the scope of the '985 patent in the United States.[176]  In consideration of the license

---

[172] Deposition of Ronald Brzezinski, June 23, 2011, p. 38.
[173] Deposition of Mete Maltepe, July 18, 2011, p. 33.  Technical fit included meeting the grid code requirements.  See Deposition of Mete Maltepe, July 18, 2011, pp. 34-35.
[174] Deposition of Mete Maltepe, July 18, 2011, p. 58.
[175] MHINDTX3903592-MHINDTX3903602: Quitclaim Nonexclusive License Agreement between Thomas A. Wilkins and Mitsubishi Heavy Industries, Ltd., dated December 18, 2009; U.S. Patent No. 6,921,985.
[176] MHINDTX3903592-MHINDTX3903602 at MHINDTX3903592-MHINDTX3903593: Quitclaim Nonexclusive License Agreement between Thomas A. Wilkins and Mitsubishi Heavy Industries, Ltd., dated December 18, 2009.

Confidential Business Information – Outside Attorneys' Eyes Only

United States District Court for the Northern District of Texas – Dallas Division
Civil Action No. 3:10-CV-276-F

General Electric Company v. Mitsubishi Heavy Industries, Ltd., and Mitsubishi Power Systems Americas, Inc.

granted, MHI agreed to pay an up-front license fee of $1,000,000 and a running royalty of $2,500 per MW for each licensed wind turbine imported into the United States.[177]

This license would also not be informative to the hypothetical negotiators.  First, unlike the competitive relationship between GE and Mitsubishi, the agreement was made between a claimed inventor and promoter. Thus, all else being equal, the compensation Wilkins received is lower when compared to an agreement reached between competitors in the same marketplace.

Also, there is a dispute regarding the actual ownership interest possessed by the licensor to this agreement. Specifically, GE has sued Mitsubishi in a separate lawsuit for infringement of other patents at the U.S. International Trade Commission.[178]  In that lawsuit, I understand that Mitsubishi claimed that Wilkins should have been named as an inventor of the '985 patent.  Indeed, according to the agreement, "Wilkins… desires to grant Licensee a nonexclusive license under *whatever* [emphasis added] interest he possesses in the '985 patent…."[179]  Mitsubishi entered into this agreement to avoid the potential risk of being precluded from importing wind turbines which customers had already purchased.[180]  Clearly, the circumstances surrounding the consummation of this agreement differ from the agreement GE and Mitsubishi would have entered into as a result of the hypothetical negotiation.

GE Licenses

Though not related to the technology of the patents-in-suit, GE has entered into numerous license agreements covering other wind turbine technologies.  Certain of these agreements were entered into in the context of a settlement of an ongoing litigation.  Settlement agreements are generally not instructive in determining the outcome of a hypothetical negotiation because the risk factors driving settlement of litigation can rarely be separated from the economics of the license alone.  These agreements are summarized in Appendix F.

GE has also entered into several agreements that are structured as cross-licenses.  Often times, cross-licenses are not instructive in determining the outcome of a hypothetical negotiation since it is difficult to isolate the

---

[177] MHINDTX3903592-MHINDTX3903602 at MHINDTX3903593-MHINDTX3903594: Quitclaim Nonexclusive License Agreement between Thomas A. Wilkins and Mitsubishi Heavy Industries, Ltd., dated December 18, 2009.
[178] Deposition of Masato Akado, April 20, 2011, pp. 114-115.
[179] MHINDTX3903592-MHINDTX3903602 at MHINDTX3903592: Quitclaim Nonexclusive License Agreement between Thomas A. Wilkins and Mitsubishi Heavy Industries, Ltd., dated December 18, 2009.
[180] Deposition of Masato Akado, April 20, 2011, pp. 119-120.

United States District Court for the Northern District of Texas – Dallas Division
Civil Action No. 3:10-CV-276-F

General Electric Company v. Mitsubishi Heavy Industries, Ltd., and Mitsubishi Power Systems Americas, Inc.

value of any one technology.  However, in this case, since GE received a royalty free license to certain technology in each of these agreements, it is reasonable to assume that without that license to GE, the other party would have paid a higher royalty rate for access to GE's technology as compared to what the agreement states.  These agreements are discussed further in *Georgia-Pacific* factor one later in this report, and are summarized in Appendix F.

Finally, GE has also entered into agreements that are structured as a traditional patent license agreement. These agreements are summarized in Appendix F and discussed below:

*GE Power Technology LLC ("GE Power") and Americas Wind Energy, Inc. ("Americas Wind Energy")*
On May 11, 2005, GE Power agreed to grant to Americas Wind Energy a non-exclusive license under U.S. and Canadian patents covering variable speed wind turbine technology.  The grant included the right and privilege to make, use, lease, sell, and offer for sale wind turbine products with a power producing rated capacity between 150 KW and less than 1 MW in the U.S. and Canada.[181]  In consideration of the license granted by GE Power, Americas Wind Energy agreed to pay a royalty of $32,500 per MW for each sale or shipment of a licensed product.[182]

*GE Infrastructure Technology LLC, GE Infrastructure Technology International Inc., (collectively "GE Infrastructure"), and Fuhrländer AG ("Fuhrländer)*
Under this agreement, in April 2006, GE Infrastructure granted Fuhrländer a non-exclusive license and right under two U.S. patents covering variable speed wind turbine technology "to make, have made, use, sell, service, lease or otherwise dispose of Licensed Products, and components thereof," in the United States and Canada.  Additionally, Fuhrländer was granted the option to include technologies covered by 35 foreign patents within its licensed products, provided that all payment obligations were fulfilled.[183]

In exchange for the rights granted by GE Infrastructure, Fuhrländer agreed to pay a royalty of $14,000 per MW for each unit of Licensed Product sold.  Once Fuhrländer had paid $11,000,000 in aggregate royalties, its

---

[181] License Agreement between GE Power Technology LLC and Americas Wind Energy, Inc., dated May 11, 2005 (Bates # GENDTX00104868-GENDTX00104877 at GENDTX00104868-GENDTX00104869).
[182] License Agreement between GE Power Technology LLC and Americas Wind Energy, Inc., dated May 11, 2005 (Bates # GENDTX00104868-GENDTX00104877 at GENDTX00104870, GENDTX00104876).
[183] Patent License Agreement between GE Infrastructure Technology LLC, GE Infrastructure Technology International Inc., and Fuhrländer AG, dated April 19, 2006 (Bates # GENDTX00105019-GENDTX00105028 at GENDTX00105020-GENDTX00105021).

United States District Court for the Northern District of Texas – Dallas Division
Civil Action No. 3:10-CV-276-F

General Electric Company v. Mitsubishi Heavy Industries, Ltd., and Mitsubishi Power Systems Americas, Inc.

payment obligations would terminate.[184]  Beginning three years from the effective date of the agreement, this $11,000,000 royalty cap was to increase by 2.5% annually.[185]

*GE Infrastructure Technology LLC, GE Infrastructure Technology International Inc., (collectively "GE Infrastructure") and Harrington License Company, LLC ("Harrington")*

GE Infrastructure and Harrington executed this license agreement in April 2006.  Under the terms of the agreement, GE Infrastructure granted a non-exclusive license under U.S. Patent No. 5,083,039 covering technology related to variable speed wind turbines.  The license included the right to make and sell wind turbines generating less than 1.25 MWs in the United States and Canada.[186]

Harrington agreed to pay GE Infrastructure a royalty of $25,000 per MW for the first 100 MWs capacities of licensed products.  For additional capacities in excess of 100 MWs, Harrington agreed to pay a royalty of $20,000 per MW.[187]  Furthermore, the parties agreed that beginning in 2008, the royalties would increase by 3% annually.[188]

*GE Infrastructure Technology LLC, GE Infrastructure Technology International Inc., (collectively "GE Infrastructure") and EU Energy Inc. ("EU Energy")*

On October 6, 2006, GE Infrastructure and EU Energy entered into a license agreement regarding technologies covering variable speed wind turbines and components, and improvements and variations thereof.  Specifically, GE Infrastructure granted a non-exclusive license under eight U.S. patents and its foreign counterparts to make, use, and sell D6 and D8 wind turbines and components.  The rights granted

---

[184] Patent License Agreement between GE Infrastructure Technology LLC, GE Infrastructure Technology International Inc., and Fuhrländer AG, dated April 19, 2006 (Bates # GENDTX00105019-GENDTX00105028 at GENDTX00105021).

[185] Patent License Agreement between GE Infrastructure Technology LLC, GE Infrastructure Technology International Inc., and Fuhrländer AG, dated April 19, 2006 (Bates # GENDTX00105019-GENDTX00105028 at GENDTX00105023).

[186] Patent License Agreement between GE Infrastructure Technology LLC, GE Infrastructure Technology International Inc., and Harrington License Company, LLC, dated April 27, 2006 (Bates # GENDTX00105055-GENDTX00105076 at GENDTX00105055-GENDTX00105056, GENDTX00105063).

[187] Patent License Agreement between GE Infrastructure Technology LLC, GE Infrastructure Technology International Inc., and Harrington License Company, LLC, dated April 27, 2006 (Bates # GENDTX00105055-GENDTX00105076 at GENDTX00105057).

[188] Patent License Agreement between GE Infrastructure Technology LLC, GE Infrastructure Technology International Inc., and Harrington License Company, LLC, dated April 27, 2006 (Bates # GENDTX00105055-GENDTX00105076 at GENDTX00105059).

Confidential Business Information – Outside Attorneys' Eyes Only

United States District Court for the Northern District of Texas – Dallas Division
Civil Action No. 3:10-CV-276-F

General Electric Company v. Mitsubishi Heavy Industries, Ltd., and Mitsubishi Power Systems Americas, Inc.

apply to sales of EU Energy's licensed products within the United States and certain foreign countries where the licensed patents have issued.[189]

In consideration of the rights granted by GE Infrastructure, EU Energy agreed to pay an initial fee of $6,000,000 for 280 MWs of wind turbine capacity.  For licensed products sold in excess of 280 MWs, EU Energy agreed to pay a royalty of $25,000 per MW.[190]

*GE Infrastructure Technology LLC, GE Infrastructure Technology International Inc., (collectively "GE Infrastructure") and AAER, Inc. ("AAER")*
GE Infrastructure and AAER entered into this license agreement in April 2007.  Within the terms of the agreement, GE Infrastructure granted a non-exclusive license under two U.S. patents and its counterparts relating to variable speed wind turbines to AAER.[191]  Under this non-exclusive license, AAER was granted the right and privilege to make and sell its 1.5 MW A-1500 model wind turbine, or an optimized model with an output of up to 1.65 MWs, within the United States, Canada, and Mexico.[192]

AAER agreed to pay an initial fee of $3,750,000 for 150 MWs in exchange for the rights granted by GE Infrastructure.  For licensed products sold in excess of 150 MWs, AAER agreed to pay $30,000 per MW.[193] Beginning in 2008, the parties agreed that the royalty fee shall increase by 3% annually.[194]

---

[189] Patent License Agreement between GE Infrastructure Technology LLC, GE Infrastructure Technology International Inc., and EU Energy Inc., dated October 6, 2006 (Bates # GENDTX00104933-GENDTX00104957 at GENDTX00104933-GENDTX00104934, GENDTX00104942-GENDTX00104943).
[190] Patent License Agreement between GE Infrastructure Technology LLC, GE Infrastructure Technology International Inc., and EU Energy Inc., dated October 6, 2006 (Bates # GENDTX00104933-GENDTX00104957 at GENDTX00104934, GENDTX00104944).
[191] Patent License Agreement between GE Infrastructure Technology LLC, GE Infrastructure Technology International Inc., and AAER, Inc., dated April 9, 2007 (Bates # GENDTX00104847-GENDTX00104866 at GENDTX00104847-GENDTX00104848, GENDTX00104858).
[192] Patent License Agreement between GE Infrastructure Technology LLC, GE Infrastructure Technology International Inc., and AAER, Inc., dated April 9, 2007 (Bates # GENDTX00104847-GENDTX00104866 at GENDTX00104849, GENDTX00104862- GENDTX00104864).
[193] Patent License Agreement between GE Infrastructure Technology LLC, GE Infrastructure Technology International Inc., and AAER, Inc., dated April 9, 2007 (Bates # GENDTX00104847-GENDTX00104866 at GENDTX00104849, GENDTX00104860).
[194] Patent License Agreement between GE Infrastructure Technology LLC, GE Infrastructure Technology International Inc., and AAER, Inc., dated April 9, 2007 (Bates # GENDTX00104847-GENDTX00104866 at GENDTX00104851).

United States District Court for the Northern District of Texas – Dallas Division
Civil Action No. 3:10-CV-276-F

General Electric Company v. Mitsubishi Heavy Industries, Ltd., and Mitsubishi Power Systems Americas, Inc.


I believe the hypothetical negotiators would conclude that the non-settlement and non-cross licenses available to them would provide guidance in terms of the potential structures for a license, as well as be helpful in determining a royalty rate between the parties.  In particular, they would recognize that:

- The majority of the licenses entered into by the parties were structured on a royalty per MW basis.

- The royalty rate ranged from $14,000 and $32,500 per MW.  Applying these rates to Mitsubishi's 2.4 MW wind turbine would have resulted in royalty rates ranging from $33,600 to $78,000 per turbine.

- The technologies at issue in these licenses are not comparable to the patents-in-suit.  While the technology licensed by GE under these licenses was likely important to the licensee, I understand it was not a technology necessary in order for the licensee to be able to make sales of its products as is the case with the '705 patent in particular.[195]  In addition, Mitsubishi would have needed to reconfigure its plant and redesign the nacelle for its turbines in order to avoid infringement of the '055 patent at a time when the market had significant demand.  Therefore, the rates in these licenses are lower than would be expected for a hypothetical license to either of the patents-in-suit.


### Relationship between GE and Mitsubishi

Personnel from both GE and Mitsubishi recognize that they are competitors in the field of manufacturing and selling wind turbines.  Masateru Komiya, Assistant Manager of Commercial Operations for MPSA, recognized that when MPSA submits a bid to provide wind turbines, it may be competing against GE.[196]  GE documents and personnel also indicate that GE and Mitsubishi are competitors.  GE's Wind 2006 Volume and Americas Commercial Strategy Review specifically identifies MHI as a competitor.[197]  Additionally, in certain GE licenses, MHI was identified as "…a direct competitor of LICENSOR's GE Wind Energy business in the manufacture and sale of wind turbines…."[198]  Stephen Swift, General Manager of Sales and Commercial Operations for the Renewable Energy Business at GE, testified that GE considers anyone who provides a wind turbine to be a potential competitor.[199]  Mr. Swift elaborated that "[i]f a customer were…considering Mitsubishi's turbine, yes, [GE] would consider them a competitor and a main competitor in that transaction."[200]

---

[195] Discussion with Jim McGinness.
[196] Deposition of Masateru Komiya (30(b)(6)), March 31, 2011, p. 107.
[197] Swift Exhibit 7: GEWT00737722-GEWT00737750 at GEWT00737741.
[198] See, for example, license between AAER Inc. and GE Infrastructure Technology International Inc.: GENDTX00104847-GENDTX00104866 at GENDTX00104848-GENDTX00104849.
[199] Deposition of Stephen Swift, June 24, 2011, p. 152.
[200] Deposition of Stephen Swift, June 24, 2011, p. 153.

United States District Court for the Northern District of Texas – Dallas Division
Civil Action No. 3:10-CV-276-F

General Electric Company v. Mitsubishi Heavy Industries, Ltd., and Mitsubishi Power Systems Americas, Inc.

The views of wind turbine purchasers also indicate that GE and Mitsubishi are competitors. Johnny Combs, in his deposition on behalf of Kairos Energy ("Kairos"), testified that Kairos considered purchasing wind turbines from both GE and Mitsubishi, among others.[201] Similarly, in the deposition of Harmie Toren on behalf of Iberdrola, Mr. Toren testified that as he was trying to fill Iberdrola's wind turbine supply pipeline, he developed relationships with numerous manufacturers, including GE and Mitsubishi.[202] Finally, both GE and MPSA have supplied wind turbines to EME.[203] In fact, GE and Mitsubishi provided competing bids to EME in 2006 for delivery of wind turbines in 2008 and 2009.[204]

### *Profitability of the relevant products*

GE manufactures and sells 1.5 and 1.6 MW wind turbines in the United States which practice the technologies covered by the '705 patent. However, these turbines do not utilize the technologies covered by the '055 patent.[205] For 2010 and the first quarter of 2011, GE's sales and profitability of its wind turbines sold in the United States are below:[206]

|  | Units | Revenue | Contribution Margin |
|---|---|---|---|
| 2010 | 1,710 | $ 3,960,260,622 | $ 1,640,953,193 |
| 2011 | 170 | 365,788,496 | 147,731,224 |
| **Total** | **1,880** | **$ 4,326,049,118** | **$ 1,788,684,417** |
| *As a % of Revenue* | | | *41.3%* |

GE's per unit sales of its wind turbines sold in the United States are below:[207]

|  | Per Unit | |
|---|---|---|
|  | Price | Contribution Margin |
| 2010 | $ 2,315,942 | $ 959,622 |
| 2011 | 2,151,697 | 869,007 |
| **Total** | **$ 2,301,090** | **$ 951,428** |

---

[201] Deposition of Johnny Combs, May 13, 2011, p. 15.
[202] Deposition of Harmie Toren, September 21, 2011, pp. 12-13.
[203] Appendix A, Schedule 2A; Appendix B, Schedule 2.
[204] GENDTX07664222-GENDTX07664225; EDISON MISSION 0000040-EDISON MISSION 0000049.
[205] From my discussion with Dr. Andrew Swift, I understand that GE does not use a two-piece base frame on its 1.5MW wind turbine sold in the United States because the nacelle of the 1.5MW turbine is significantly lighter and therefore, splitting the base frame for transportation is not necessary.
[206] Appendix A, Schedule 2A and Schedule 2B.
[207] Appendix A, Schedule 2A and Schedule 2B.

United States District Court for the Northern District of Texas – Dallas Division
Civil Action No. 3:10-CV-276-F

General Electric Company v. Mitsubishi Heavy Industries, Ltd., and Mitsubishi Power Systems Americas, Inc.

MHI manufactures the Accused Products in Japan and makes sales in the United States through its subsidiary, MPSA.[208]  MHI's sales and profitability from the Accused Products are listed below:[209]

|  | Units | Revenue | Gross Margin |
|---|---|---|---|
| 2007 | 1 | $ 2,106,148 | $ (1,078,552) |
| 2008 | 285 | 555,506,767 | 31,318,808 |
| 2009 | 209 | 520,229,783 | 48,465,445 |
| **Total** | **495** | **$ 1,077,842,698** | **$ 78,705,701** |
| *As a % of Revenue* | | | *7.3%* |

On a per unit basis, MHI's sales and profitability of the Accused Products are below:[210]

|  | Price | Gross Margin |
|---|---|---|
| 2007 | $ 2,106,148 | $ (1,078,552) |
| 2008 | 1,949,147 | 109,891 |
| 2009 | 2,489,138 | 231,892 |
| **Total** | **$ 2,177,460** | **$ 159,001** |

MPSA's sales and profitability from the Accused Products are below:[211]

|  | Units | Revenue | Gross Margin |
|---|---|---|---|
| 2008 | 164 | $ 535,870,098 | $ 19,232,389 |
| 2009 | 185 | 621,532,858 | 34,983,684 |
| 2010 | 146 | 623,629,692 | 49,354,608 |
| **Total** | **495** | **$ 1,781,032,648** | **$ 103,570,681** |
| *As a % of Revenue* | | | *5.8%* |

On a per unit basis, MPSA's sales and profitability of the Accused Products are below:[212]

---

[208] Amended Complaint for Patent Infringement, May 17, 2010, p. 2.
[209] Appendix C, Schedule 1.
[210] Appendix C, Schedule 1.
[211] Appendix B.
[212] Appendix B.

Confidential Business Information – Outside Attorneys' Eyes Only

United States District Court for the Northern District of Texas – Dallas Division
Civil Action No. 3:10-CV-276-F

General Electric Company v. Mitsubishi Heavy Industries, Ltd., and Mitsubishi Power Systems Americas, Inc.

| | Per Unit | |
| --- | --- | --- |
| | Price | Gross Margin |
| 2008 | $    3,267,501 | $       117,271 |
| 2009 | 3,359,637 | 189,101 |
| 2010 | 4,271,436 | 338,045 |
| **Total** | **$    3,598,046** | **$       209,234** |

For those projects completed by MPSA in 2010, Mitsubishi's financial documents indicate an enterprise gross profit of $510,528.[213]

### Other indicators of value

#### Option pricing for ZVRT

GE first offered ZVRT capability in its wind turbines as a purchasable option to its customers.[214] When deciding what price to charge for the technology, GE performed an avoided cost analysis by looking at the potential expenses of the additional equipment that would be needed to provide similar functionality.[215] In addition to the avoided cost analysis, GE also examined what the market would pay for this option.[216] The result of these analyses was an option price of $40,000 or $60,000 per turbine.[217] Mr. Brzezinski believed the option price charged to customers to be $60,000.[218] According to Mr. Brzezinski, GE customers' perception of the price for this option was positive.[219]

GE's option price for ZVRT was not always $60,000. According to Mr. Swift, the option was introduced in the 2006 or 2007 time frame at a cost of $40,000 per turbine. The price of the option increased over time as turbine prices were increasing and due to a potential evaluation of an alternative cost to comply.[220]

GE's contracts for the sale of wind turbines illustrate the upward trend of ZVRT pricing in the 2005 and 2006 time frame. The January 19, 2005 Contract for Sale of Wind Turbine Generators with Field Engineering

---

[213] Appendix D.
[214] Deposition of Ronald Brzezinski, June 23, 2011, pp. 26-27.
[215] Deposition of Ronald Brzezinski, June 23, 2011, pp. 26-27.
[216] Deposition of Stephen Swift, June 24, 2011, pp. 30-31.
[217] Deposition of Ronald Brzezinski, June 23, 2011, p. 27; Deposition of Stephen Swift, June 24, 2011, p. 28-30.
[218] Deposition of Ronald Brzezinski, June 23, 2011, p. 27.
[219] Deposition of Ronald Brzezinski, June 23, 2011, p. 29.
[220] Deposition of Stephen Swift, June 24, 2011, p. 29-30.

United States District Court for the Northern District of Texas – Dallas Division
Civil Action No. 3:10-CV-276-F

General Electric Company v. Mitsubishi Heavy Industries, Ltd., and Mitsubishi Power Systems Americas, Inc.


Services for the Kaheawa Wind project specified a ZVRT option price of $25,000 per turbine.[221]  The
December 8, 2005 Contract for the Sale of Power Generation Equipment and Related Services for the Pakini
Nui project specified a ZVRT option price of $45,000 per turbine.[222]  Contracts entered into in June and
October of 2006 with Airtricity, Inc. and Noble Power respectively, specified ZVRT option prices of $60,000
per turbine.[223]


Once FERC mandated that beginning in 2008 wind turbines comply with ZVRT, GE incorporated the price
into the standard product offering.[224]  As Mr. Maltepe testified, the ZVRT option became "a FERC
requirement, which…meant…that option needed to be applied on every turbine, so we just made it a standard
option."[225]  Mr. Maltepe believed that the transition from an optional pricing to being part of the standard
offer occurred in 2006, for wind turbines to be shipped in 2008.[226]


<u>Economic Analysis of Transfer of Intangible Property within GE</u>

In February 2005, PricewaterhouseCoopers LLP ("PWC") provided GE with a report titled "Economic
Analysis of Transfer of Intangible Property."[227]  According to this report, GE Wind Energy ("GE Wind")
sought to transfer its intangible property portfolio to Global Technology Company ("GTC"), another GE
subsidiary.[228]  The PWC report was written to determine if the contemplated lump-sum payment from GTC to
GE Wind was in accordance with certain tax regulations and transfer pricing rules.[229]  PWC concluded that
the $102 million payment from GTC to GE Wind for intangible property was consistent with its findings that
an arm's-length payment would be between $78.2 million and $126.7 million.[230]  PWC imputed royalty rates
of 1.6% to 2.6% based on this range of lump-sum values.[231]  This royalty rate would have covered GE Wind's
entire intellectual property portfolio in 2004, including know-how, patents, patent applications, and other
types of intellectual property.[232]

---

[221] GENDTX00102743-GENDTX00102866 at GENDTX00102756.
[222] GENDTX00000025-GENDTX00000063 at GENDTX00000029.
[223] GENDTX00000662-GENDTX00000755 at GENDTX00000709; GENDTX00072693-GENDTX0072765 at
GENDTX00072748.
[224] Deposition of Ronald Brzezinski, June 23, 2011, p. 28.
[225] Deposition of Mete Maltepe, July 18, 2011, p. 61.
[226] Deposition of Mete Maltepe, July 18, 2011, p. 70.
[227] GENDTX05538060-GENDTX05538157.
[228] GENDTX05538060-GENDTX05538157 at GENDTX05538063.
[229] GENDTX05538060-GENDTX05538157 at GENDTX05538063.
[230] GENDTX05538060-GENDTX05538157 at GENDTX05538065.
[231] GENDTX05538060-GENDTX05538157 at GENDTX05538065.
[232] Deposition of Robert Letts, September 23, 2011, p. 46; GENDTX05533669-GENDTX05533671.

United States District Court for the Northern District of Texas – Dallas Division
Civil Action No. 3:10-CV-276-F

General Electric Company v. Mitsubishi Heavy Industries, Ltd., and Mitsubishi Power Systems Americas, Inc.


Robert Letts, GE's Transfer Pricing Director for the Energy Business and Tax Business Process Manager, indicated that this report does not accurately reflect the value of GE's intellectual property as of today.[233] Similarly, I do not believe the royalty rates calculated by PWC would be representative of the outcome of the hypothetical negotiations.  First, it is important to note that the '705 patent was not applied for until October 2006.[234]  Therefore, any royalty rates arrived at in the PWC report do not reflect the value of GE's ZVRT patent.  Second, the methodology used by PWC appears to have relied heavily on the profits of GE Wind.[235]  At the time the PWC analysis was completed, GE Wind was "struggling [and] losing money."[236]  Since that time, Mr. Letts estimates that the value of GE's wind business has increased tenfold and is now profitable.[237]  Indeed, he explains that "[t]he market has changed significantly.  The technology has improved, and the profits of the business and the value of the underlying [intellectual property] has gone up."[238]


***Cost savings enabled by the patents-in-suit***

'705 patent

I have discussed above the avoided cost analysis performed by GE when deciding what price to charge for the ZVRT option on its wind turbines.  I also discussed the cost of utilizing a solution where ZVRT is implemented at the substation with Ragu Balanathan, an Engineering Manager with GE.  Mr. Balanathan's cost estimates were consistent with the avoided cost analysis previously performed by GE.  However, as discussed in the lost profits section of this report, a solution where ZVRT is implemented at the substation is likely not as desirable to customers as a solution that is implemented in the control system of each turbine.  According to Mr. Balanathan, an advantage of implementing ZVRT in the control system of each turbine is an increase in the redundancy for the wind farm.  Specifically, if a single turbine is unable to produce electricity, the other turbines in that wind farm would still be able to do so.  Conversely, when ZVRT is implemented at the substation, if the substation goes off the grid, I understand the entire wind farm is no longer able to produce electricity.

I also understand that turbines utilizing doubly-fed induction generators, such as GE's 1.5 MW and Mitsubishi's 2.4 MW turbines, already include the power electronics necessary to ride through faults down to zero volts.  I understand from discussions with Mr. Balanathan that using equipment at the substation to

---

[233] Deposition of Robert Letts, September 23, 2011, pp. 52-53.
[234] U.S. Patent No. 7,629,705 B2.
[235] GENDTX05538060-GENDTX05538157 at GENDTX05538064.
[236] Deposition of Robert Letts, September 23, 2011, pp. 51-52.
[237] Deposition of Robert Letts, September 23, 2011, p. 52.
[238] Deposition of Robert Letts, September 23, 2011, p. 53.

United States District Court for the Northern District of Texas – Dallas Division
Civil Action No. 3:10-CV-276-F

General Electric Company v. Mitsubishi Heavy Industries, Ltd., and Mitsubishi Power Systems Americas, Inc.


facilitate ZVRT would add additional costs to the balance of plant calculation and therefore, increase the overall capital expenditures and maintenance costs for a particular manufacturer. These increased costs would result in a reduction of the return calculated as part of the IRR analysis.


<u>'055 patent</u>

According to Akira Yasugi of MHI, the modular nacelle of Mitsubishi's accused 2.4 MW wind turbines allows customers to save money on installation and transportation costs.[239] Indeed, Mitsubishi touts these advantages to its customers. A customer presentation from February 2008 indicates that the modular nacelle design has several advantages when compared to similarly sized turbines. One of these advantages is that no specialized trailers are needed for transportation. Other advantages include a reduction in the size of the installation crane and access to sites that might otherwise be restricted.[240] Mitsubishi concluded that these "[b]enefits result in cost savings to owner[s] during installation and future service activities."[241] The cost savings during transportation and installation are discussed in more detail below:


*Transportation*

As discussed above, the nacelle of the accused Mitsubishi 2.4 MW turbine is composed of three modules. These modules are transported separately to the project site.[242] Transportation from the port of entry to the actual project site must take into consideration factors such as the type of vehicle and the height and weight limitations of the roads to be used for transportation.[243] Having the nacelle divided into three modules makes the transportation of the nacelle easier and less expensive.[244] It also potentially allows for delivery to sites that would otherwise be inaccessible if the nacelle were in a single piece.[245] Mr. Numajiri believes the three-piece nacelle enables easier transportation since each of the pieces is lighter and smaller than the combined nacelle.[246]


According to a Trailer Cost Comparison completed by Mitsubishi in October 2010, its typical trailer configuration for the three-module nacelle set would include a 5-axle truck, a 6 to 7-axle truck and an 8 to 13-

---

[239] Deposition of Akira Yasugi, April 13, 2011, pp. 94-96.
[240] MHINDTX0456203.
[241] MHINDTX0456203.
[242] Deposition of Akira Yasugi, April 13, 2011, p. 91.
[243] Deposition of Akira Yasugi, April 13, 2011, p. 94.
[244] Deposition of Akira Yasugi, April 13, 2011, p. 94-95.
[245] Deposition of Akira Yasugi, April 13, 2011, p. 97; Yasugi Exhibit 50.
[246] Deposition of Tomohiro Numajiri, April 19, 2011, p. 43.

United States District Court for the Northern District of Texas – Dallas Division
Civil Action No. 3:10-CV-276-F

General Electric Company v. Mitsubishi Heavy Industries, Ltd., and Mitsubishi Power Systems Americas, Inc.

axle truck for the yaw module, rear module, and front module, respectively.[247] Mitsubishi estimated that the cost per mile for transportation ranged from $41 to $200 depending on the distance travelled and the port of entry.[248] I understand that if Mitsubishi were transporting a single piece nacelle of the same size as its assembled three piece nacelle, it would need to use a 19-axle truck. A GE transportation cost analysis indicates that a 19-axle truck would cost from $75 to $90 per mile. These differences in truck costs result in an estimated savings of $25,000 per turbine for an installation that requires 1,000 miles of transportation and estimated savings of $54,250 per turbine for an installation that requires 1,750 miles of transportation.[249]

*Installation*

Lifting of the nacelle modules is completed by a crane. The size of the components and the height to which they will be hoisted dictate the size of the crane needed. Lifting the nacelle modules individually requires a smaller and less expensive crane as compared to lifting the entire nacelle as a single assembly.[250]

In 2004, Mitsubishi received a proposal from Mortonson that contained two estimates for installing a wind turbine. The proposal put forth different costs depending on how the wind turbines were constructed.[251] The first estimate was for installation of a wind turbine with a single piece nacelle. The second estimate was for installation of a wind turbine with a two-piece nacelle.[252] The cost of installation for the two-piece nacelle was $10,000 less expensive than the installation of the one-piece nacelle.[253] This difference in cost appears to be related in part to the use of different equipment depending on how many pieces of the nacelle were lifted at a time.[254]

Though this estimate was prior to Mitsubishi's completion of its 2.4 MW turbine, the prototype that was under consideration had a similar output rating of 2 MWs.[255] Further, this proposal was for a nacelle being delivered in one or two pieces. Mitsubishi's accused 2.4 MW wind turbines incorporate a three-piece nacelle.

---

[247] MHINDTX3920887.
[248] MHINDTX3920887.
[249] Appendix E.
[250] Deposition of Akira Yasugi, April 13, 2011, pp. 95-96.
[251] Deposition of Tomohiro Numajiri, April 19, 2011, p. 71; MHINDTX0606209-MHINDTX0606211 at MHINDTX0606209.
[252] Deposition of Tomohiro Numajiri, April 19, 2011, pp. 76-77; MHINDTX0606209-MHINDTX0606211 at MHINDTX0606209.
[253] MHINDTX0606209-MHINDTX0606211 at MHINDTX0606210: Exhibit 63 to Numajiri.
[254] MHINDTX0606209-MHINDTX0606211 at MHINDTX0606210: Exhibit 63 to Numajiri.
[255] MHINDTX0606209-MHINDTX0606211 at MHINDTX0606209.

United States District Court for the Northern District of Texas – Dallas Division
Civil Action No. 3:10-CV-276-F

General Electric Company v. Mitsubishi Heavy Industries, Ltd., and Mitsubishi Power Systems Americas, Inc.


Mitsubishi's use of a three-piece nacelle resulted in less expense associated with the transportation and installation of the wind turbine. According to Mr. Yasugi, these savings typically benefit the customer.[256] He also explained that MPSA is typically contracted by the customer to perform the inland transportation of the turbine.[257] I am not aware of any evidence that MPSA's customers would be willing to pay the additional costs described above. For example, in June 2006, Iberdrola was already concerned about Mitsubishi's prices. Mr. Toren had noted that Mitsubishi's "[p]ricing is high. Will be a struggle to get them in the game." Mr Toren explained that he was concerned that he would not be able to negotiate the price low enough to get an acceptable IRR.[258] Additional transportation and installation costs would have made this prospect even more difficult. Further, Mr. Combs noted that Mitsubishi's installation costs were already "[c]omparable to slightly higher" as compared to other manufacturer's costs.[259]


I also understand that Mitsubishi would have to incur additional costs to produce a nacelle with a redesigned base frame. These costs would include changes to the factory and costs related to obtaining certification for the new nacelle.[260]


Prior to reaching a conclusion as to the appropriate royalty based upon the considerations above, I have also addressed each of the *Georgia-Pacific* factors below in addition to the matters discussed above.


### *Georgia-Pacific Factors*


*Factor #1:*     *The royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty.*


Though not related to the patents-in-suit, I am aware that GE and/or its affiliates have entered into certain license agreements covering non-accused wind turbine technology. These agreements include traditional license agreements, cross-license agreements, and settlement agreements. I discuss these agreement types below.

---

[256] Deposition of Akira Yasugi, April 13, 2011, p. 97.
[257] Deposition of Akira Yasugi, April 13, 2011, pp. 93-94.
[258] Deposition of Harmie Toren, September 21, 2011, p. 28.
[259] Deposition of Johnny Combs, May 13, 2011, p. 17.
[260] Discussion with Dr. Andrew Swift; Deposition of Koji Dobashi, April 21, 2011, pp. 18-19.

United States District Court for the Northern District of Texas – Dallas Division
Civil Action No. 3:10-CV-276-F

General Electric Company v. Mitsubishi Heavy Industries, Ltd., and Mitsubishi Power Systems Americas, Inc.


*Traditional License Agreements*

I have discussed the five traditional license agreements entered into by GE above.  These agreements are summarized in Appendix F.


*Cross-License Agreements*

GE and/or its affiliates have also entered into five cross-license agreements:

- Patent License Agreement between GE Infrastructure Technology LLC and GE Infrastructure Technology International Inc. and VENSYS Energiesysteme GmbH & Co. KG, dated March 3, 2006;[261]
- Patent License Agreement between GE Infrastructure Technology LLC and GE Infrastructure Technology International Inc. and REpower Systems AG, dated June 6, 2006;[262]
- Patent Cross-License Agreement between GE Infrastructure Technology LLC and GE Infrastructure Technology International Inc. and Acciona Windpower, S.A., dated June 23, 2006;[263]
- Patent License Agreement between GE Infrastructure Technology LLC and GE Infrastructure Technology International Inc. and Blitz F08-eins-null-drei GmbH, dated October 27, 2008;[264] and
- Patent License Agreement between GE Infrastructure Technology LLC and GE Infrastructure Technology International Inc. and Guangdong Ming Yang Wind Power Technology Company Ltd., dated November 28, 2008.[265]

These agreements generally cover patented technologies relating to wind turbines.  In each of these agreements, the rights granted *to* GE were royalty-free.  In contrast, in consideration of the licenses granted *by* GE, the licensees paid a royalty ranging between $3,500 and $25,000 per MW.  Certain agreements included a lump sum payment to GE between $100,000 and $10,000,000 in exchange for 3 MWs and 1,000 MWs, respectively.[266]  Often times, cross-licenses are not instructive in determining the outcome of a hypothetical

---

[261] Patent License Agreement between GE Infrastructure Technology LLC and GE Infrastructure Technology International Inc. and VENSYS Energiesysteme GmbH & Co. KG, dated March 3, 2006 (Bates # GENDTX00105046-GENDTX00105054).

[262] Patent License Agreement between GE Infrastructure Technology LLC and GE Infrastructure Technology International Inc. and REpower Systems AG, dated June 6, 2006 (Bates # GENDTX00105029-GENDTX00105045).

[263] Patent Cross-License Agreement between GE Infrastructure Technology LLC and GE Infrastructure Technology International Inc. and Acciona Windpower, S.A., dated June 23, 2006 (Bates # GEWT00676073-GEWT00676087).

[264] Patent License Agreement between GE Infrastructure Technology LLC and GE Infrastructure Technology International Inc. and Blitz F08-eins-null-drei GmbH, dated October 27, 2008 (Bates # GENDTX00104878-GENDTX00104892).

[265] Patent License Agreement between GE Infrastructure Technology LLC and GE Infrastructure Technology International Inc. and Ming Yang Wind Power Technology Company Ltd., dated November 28, 2008 (Bates # GENDTX00105005-GENDTX00105018).

[266] Appendix F.

United States District Court for the Northern District of Texas – Dallas Division
Civil Action No. 3:10-CV-276-F

General Electric Company v. Mitsubishi Heavy Industries, Ltd., and Mitsubishi Power Systems Americas, Inc.

negotiation since it is difficult to isolate the value of any one technology.  However, in this case, since GE received a royalty-free license to certain technology in each of these agreements, it is reasonable to assume that without that license to GE, the other party would have paid a higher royalty rate for access to GE's technology as compared to what the agreement states.

### Settlement Agreements

I am aware of two settlement agreements entered into by GE related to wind turbine technology:

- Settlement and Cross-License Agreement between Enercon GmbH and Mr. Aloys Wobben and General Electric Company, dated May 10, 2004;[267] and
- Settlement and Cross License Agreement between Gamesa Eolica, S.A. and GE Wind Energy, LLC and, dated April 1, 2005.[268]

Settlement agreements are generally considered to be of secondary value in determining the outcome of a hypothetical negotiation because the risk factors driving settlement of litigation can be difficult to separate from the economics of the license alone.  Thus, they are of limited value to the hypothetical negotiators.  These settlement agreements have been summarized in Appendix F.

*Factor #2:*     *The rates paid by the licensee for the use of other patents comparable to the patent-in-suit.*

I have reviewed the agreements produced by Mitsubishi in this matter.  I understand Mitsubishi has entered into two agreements that cover wind turbine technology.  I have discussed MHI's license with Mr. Wilkins above.  Mitsubishi's second license is discussed below:

### TPI Technology, Inc., TPI Composites, Inc. and VienTek, LLC, et al., Mitsubishi Power Systems, Inc., and Mitsubishi Heavy Industries, Ltd.

In March 2002, TPI Technology, Inc. and TPI Composites, Inc. entered into a license agreement with VienTek, LLC and certain of its affiliates, MHI, and MPSA.[269]  TPI granted a non-exclusive license under the licensed patents to make and repair wind turbine blades and any components thereof, within the countries of

---

[267] Settlement and Cross-License Agreement between Enercon GmbH, Mr. Aloys Wobben and General Electric Company, dated May 10, 2004 (Bates # GENDTX00104893- GENDTX00104932).
[268] Settlement and Cross License Agreement between Gamesa Eolica, S.A. and GE Wind Energy, LLC, dated April 1, 2005 (Bates # GENDTX00104958- GENDTX00105004).
[269] Technology License Agreement between TPI Technology, Inc., TPI Composites, Inc., VienTek, LLC, et al., Mitsubishi Power Systems, Inc., and Mitsubishi Heavy Industries, Ltd., dated March 29, 2002 (Bates # MHINDTX3903603-MHINDTX3903647).

---

United States District Court for the Northern District of Texas – Dallas Division
Civil Action No. 3:10-CV-276-F

General Electric Company v. Mitsubishi Heavy Industries, Ltd., and Mitsubishi Power Systems Americas, Inc.


North America and Japan.[270]  In consideration of the license granted, MHI agreed to pay an aggregate license fee of $1,500,000, which when fully paid, shall be considered a paid-up royalty.[271]  As additional consideration for the license granted by TPI, each of the licensees granted back a non-exclusive, fully paid-up license under any patents and other intellectual property owned by the licensees, to make and sell any improvements to proprietary technology relating to a resin transfer molding process used for manufacturing high quality, repeatable composite parts with virtually zero VOC emissions.[272]


This agreement would not be instructive to the parties at the hypothetical negotiation because the licensor, VienTek, is owned by the licensees, TPI and MPSA.[273]  MPSA and TPI each had a 50% ownership interest in VienTek when it was established for the purpose of supplying blades for wind turbines to MPSA.[274]  Therefore, the royalty terms agreed upon as a result of this agreement would likely differ from an agreement reached by two unrelated parties.  In addition, the patented technology relates to the manufacturing process for blades, which is not related to the technologies involved in this lawsuit.


*Factor #3:*       *The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.*


The hypothetical negotiations would have resulted in non-exclusive licenses to each of the patents-in-suit for wind turbines made, used, offered for sale, or sold in the United States.


*Factor #4:*       *The licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.*

---

[270] Technology License Agreement between TPI Technology, Inc., TPI Composites, Inc., VienTek, LLC, et al., Mitsubishi Power Systems, Inc., and Mitsubishi Heavy Industries, Ltd., dated March 29, 2002 (Bates # MHINDTX3903603-MHINDTX3903647 at MHINDTX3903604-MHINDTX3903609).

[271] Technology License Agreement between TPI Technology, Inc., TPI Composites, Inc., VienTek, LLC, et al., Mitsubishi Power Systems, Inc., and Mitsubishi Heavy Industries, Ltd., dated March 29, 2002 (Bates # MHINDTX3903603- MHINDTX3903647 at MHINDTX3903609).

[272] Technology License Agreement between TPI Technology, Inc., TPI Composites, Inc., VienTek, LLC, et al., Mitsubishi Power Systems, Inc., and Mitsubishi Heavy Industries, Ltd., dated March 29, 2002 (Bates # MHINDTX3903603- MHINDTX3903647 at MHINDTX3903608 and MHINDTX3903616).

[273] Deposition of Masato Akado, April 20, 2011, p. 110.

[274] Deposition of Masato Akado, April 20, 2011, pp. 109 – 110, 113.

United States District Court for the Northern District of Texas – Dallas Division
Civil Action No. 3:10-CV-276-F

General Electric Company v. Mitsubishi Heavy Industries, Ltd., and Mitsubishi Power Systems Americas, Inc.


I understand that GE has not licensed either of the patents-in-suit to a competitor such as Mitsubishi and presently has no plans to license the patents-in-suit to any other wind turbine manufacturers.[275]
I am also aware of certain agreements where GE's affiliates, GE Infrastructure Technology LLC and GE Infrastructure Technology International Inc., licensed other wind turbine technology.  These agreements were structured to restrict those licenses from being extended to MHI as well as other companies should those companies become an affiliate of the licensee.[276]  Consequently, it is apparent that GE would prefer not to license Mitsubishi.


Factor #5:     *The commercial relationship between the licensor and the licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter.*


I have discussed this factor above.


Factor #6:     *The effect of selling the patented specialty in promoting sales of other products of the licensee; the existing value of the invention to the licensor as a generator of sales of its non-patented items; and the extent of such derivative or convoyed sales.*


Certain non-accused products and services are often sold in conjunction with Mitsubishi's or GE's wind turbines.  Mr. Dobashi testified that Mitsubishi's goals included 1.5 billion yen in profit related to an after-service business in America.  These activities would include a parts center, a training center and a repair factory.[277]  Mitsubishi generates additional revenues by providing technical advisors[278] and maintenance services.[279]  From 2009 to 2011, MPSA earned approximately $30.1 million associated with technical advisor and maintenance fees.  Its profits on these revenues totaled $4.2 million.[280]

---

[275] Discussion with Jim McGinness.
[276] See, for example, license between AAER Inc. and GE Infrastructure Technology International Inc.:
GENDTX00104847-GENDTX00104866 at GENDTX00104848-GENDTX00104849.
[277] Deposition of Koji Dobashi, April 21, 2011, pp. 85-86.
[278] Deposition of Masateru Komiya (30(b)(6)), March 31, 2011, p. 79.
[279] Deposition of Gregory Wunder, July 14, 2011, pp. 47-48.
[280] Appendix B, Schedule 5.

Confidential Business Information – Outside Attorneys' Eyes Only

United States District Court for the Northern District of Texas – Dallas Division
Civil Action No. 3:10-CV-276-F

General Electric Company v. Mitsubishi Heavy Industries, Ltd., and Mitsubishi Power Systems Americas, Inc.

Mr. Swift indicated that GE customers purchase items such as step-up transformers and sub-stations as part of the same transaction, but not necessarily as part of the same contract.[281]  Additionally, GE also generates income from service contracts.[282]  For example, GE's service agreements with EME outline payments to GE of $27,000 per year for each turbine.  These agreements have a term of at least 5 years, and the payments escalate by 2% per year beginning January 1, 2013.[283]  I understand GE's contribution margin on these maintenance revenues is 19%.[284]

Factor #7:       *The duration of the patent and the term of the license.*

The hypothetical license would have been for the duration of the patents-in-suit.  I understand that the '055 patent expires on April 19, 2022 while the '705 patent expires October 6, 2027.

Factor #8:       *The established profitability of the product made under the patent; its commercial success; and its current popularity.*

I have discussed this factor above.

Additionally, MPSA recognized revenue of approximately $232 million related to settlements for projects that were cancelled.[285]  It earned a margin of over $84 million on this revenue.[286]

---

[281] Deposition of Stephen Swift, June 24, 2011, p. 158.
[282] Deposition of Brian Cretti, June 22, 2011, pp. 31-32.
[283] Operations Support Agreement between Cedro Hill Wind LLC and General Electric International Incorporated, December 3, 2009 (GENDTX07693717-GENDTX07693775 at GENDTX07693730-GENDTX07693732); Operations Support Agreement between Edison Mission Energy and General Electric International Incorporated, May 8, 2009 (GENDTX07693779-GENDTX07693819 at GENDTX07693787, GENDTX07639789); Operations Support Agreement between Laredo Ridge Wind, LLC and General Electric International Incorporated, July 8, 2010 (GENDTX07693821-GENDTX07693878 at GENDTX07693833, GENDTX07693835).
[284] Sales Summary for Cedro Hill Project (GENDTX07693879).
[285] Appendix B, Schedule 3; Deposition of Gregory Wunder, July 14, 2011, pp. 50-51.
[286] Appendix B, Schedule 3.

United States District Court for the Northern District of Texas – Dallas Division
Civil Action No. 3:10-CV-276-F

General Electric Company v. Mitsubishi Heavy Industries, Ltd., and Mitsubishi Power Systems Americas, Inc.


*Factor #9:*     *The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.*

*and*

*Factor #10:*     *The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.*

As discussed above, and in the Court's Claim Construction Order, the '055 patent

> provides for a base frame that is divided into upper and lower parts, which can be transported to a construction site with less difficulty and can be more easily assembled by the manufacturer.  At the construction site, the lower part of the base frame can be mounted onto the tower, and the upper part of the base frame can be mounted onto the lower part.[287]

In discussing the '705 patent, the Court noted that it

> consists of a method of allowing an electrical machine, such as a wind turbine, to remain connected to its utility grid during voltage fluctuations.  The voltage fluctuations themselves take place on the electrical grid, which acts to carry energy from the wind turbines to the eventual recipients of the energy produced.  The voltage fluctuations cause the flow of electricity to decrease to a low voltage range, at times approaching zero volts.[288]

The Court noted that "[t]he allegedly important and unique feature of the '705 patent, as compared to some of this prior art, is that this method allows the turbine to remain connected to the grid when the flow of voltage decreases to zero, allegedly improving upon this past technology."[289]


*Factor #11:*     *The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use.*

I have discussed above the use Mitsubishi has made of the invention and the revenues and profits generated by Mitsubishi related to its sales of the accused 2.4 MW wind turbines.

---

[287] Claim Construction Order, May 9, 2011, p. 2.
[288] Claim Construction Order, May 9, 2011, pp. 3-4.
[289] Claim Construction Order, May 9, 2011, p. 3.

United States District Court for the Northern District of Texas – Dallas Division
Civil Action No. 3:10-CV-276-F

General Electric Company v. Mitsubishi Heavy Industries, Ltd., and Mitsubishi Power Systems Americas, Inc.

*Factor #12:*     *The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.*

I am not aware of any apportionment of the profit or selling price that may be customary in this business. Royalty rates depend on the facts and circumstances surrounding the accused products and the parties to the license.

I did engage in a search of the RoyaltySource® database for publicly available royalty rates on technology related to the patents-in-suit.[290]  This database is at times used by damages experts as part of their research into industry rates and practices.

There were no licenses identified in the RoyaltySource® database that would be comparable to the hypothetical license that would have been negotiated between GE and Mitsubishi.  Those agreements that appear to relate to wind turbine technology and which are structured in a manner similar to the hypothetical license include royalty rates ranging from 1% to 5%.  Applying these rates to MPSA's 2010 per megawatt selling price of $1.78 million results in royalties ranging from $17,800 to $89,000 per MW.  These agreements also often included additional upfront fees in the form of monetary compensation or stock grants.

*Factor #13:*     *The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.*

This *Georgia-Pacific* factor, which essentially addresses the concept of apportionment, is often highly important in assessing the value of patented technology.  In this matter, the negotiators would recognize that the accused products are complicated and incorporate various technologies, including some technologies that would be unrelated to the patents-in-suit.

Factors that customers typically consider in deciding to purchase GE wind turbines include:

- capital cost – the price of the equipment;

---

[290] The search included licensing transactions related to Energy Resources: Wind Related Technology.  Specific search terms included wind turbine, grid technology, LVRT and ZVRT.

United States District Court for the Northern District of Texas – Dallas Division
Civil Action No. 3:10-CV-276-F

General Electric Company v. Mitsubishi Heavy Industries, Ltd., and Mitsubishi Power Systems Americas, Inc.

- power curve – the performance of the wind turbine represented by power output at a given wind speed;

- schedule – when the turbines could be delivered to the project site;

- track record – the long-term performance of a fleet of a particular model of turbines;

- availability – the turbine must be working when the wind is blowing;

- technical fit;

- physical size;

- cost of operations; and

- cost of maintenance.[291]

However, as discussed above, the technology of each of the patents-in-suit is critical to Mitsubishi's ability to sell the accused 2.4 MW wind turbines.  Without compliance with FERC's ZVRT requirements, Mitsubishi would unlikely be able to make any sales in the United States.  Similarly, at the time of the hypothetical negotiation for the '055 patent, Mitsubishi needed a license to the '055 patent due to the size of its nacelle and constraints imposed by the equipment at its plant.

The hypothetical negotiators would seek a royalty that appropriately takes into consideration the relative importance of the technology, as well as other features and technology incorporated into the accused products that would be unrelated to the technology of the patents-in-suit.

*Factor #14:*     *The opinion testimony of qualified experts.*

This report reflects my opinions in this matter.  I have also held a discussion with Dr. Andrew Swift, GE's technical expert regarding the '055 patent.

*Factor #15:*     *The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee – who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention – would have been willing to pay as a royalty and*

---

[291] Deposition of Mete Maltepe, July 18, 2011, pp. 29-32.

United States District Court for the Northern District of Texas – Dallas Division
Civil Action No. 3:10-CV-276-F

General Electric Company v. Mitsubishi Heavy Industries, Ltd., and Mitsubishi Power Systems Americas, Inc.

> *yet be able to make a reasonable profit and which amount would have been acceptable by a*
> *prudent patentee who was willing to grant a license.*

In determining an appropriate royalty, I have considered the following matters, among others:

- Relative importance of the patented technology to Mitsubishi and its customers;
- Guidance provided by existing licenses;
- Relationship between GE and Mitsubishi;
- Profitability of the relevant products;
- Other indicators of value; and
- Cost savings enabled by the patents-in-suit.

### Royalty Structure

For reasons I have discussed above, I believe that the appropriate royalty structure would be a running royalty calculated as an amount per MW of output produced by the accused 2.4 MW wind turbines. This structure is consistent with other licenses I have seen in this matter.

### Royalty Base

The royalty base in this matter would consist of the total MWs of power output produced by the accused 2.4 MW Mitsubishi wind turbines. The royalty base for each of the patents-in-suit is summarized in the charts below. This royalty base does not include those revenues from sales of wind turbines that I have included in my lost profits calculation:[292]

|  | 2010 | 2011 | Total |
|---|---|---|---|
| Royalty Base in MWs - '705 Patent | 50.4 | 55.2 | 105.6 |

|  | 2008 | 2009 | 2010 | 2011 | Total |
|---|---|---|---|---|---|
| Royalty Base in MWs - '055 Patent | 393.6 | 314.4 | 1,144.8 | 55.2 | 1,908 |

If the Court or jury determines that damages based on only a reasonable royalty are appropriate, the royalty base is summarized below:[293]

---

[292] Exhibit 3, Schedule A4.
[293] Exhibit 3, Schedule B1.

United States District Court for the Northern District of Texas – Dallas Division
Civil Action No. 3:10-CV-276-F

General Electric Company v. Mitsubishi Heavy Industries, Ltd., and Mitsubishi Power Systems Americas, Inc.

|  | 2010 | 2011 | Total |
|---|---|---|---|
| Royalty Base in MWs - '705 Patent | 350.4 | 184.8 | 535.2 |

|  | 2008 | 2009 | 2010 | 2011 | Total |
|---|---|---|---|---|---|
| Royalty Base in MWs - '055 Patent | 393.6 | 314.4 | 1,444.8 | 184.8 | 2,337.6 |

### *Royalty Rate*

As I discussed above, I believe the negotiators would arrive at different royalty rates for each of the patents-in-suit because the contribution of these patents is different to the Accused Products.

For the '055 patent, I believe that the appropriate royalty is $35,000 per MW.  Such a rate is reasonable in light of the following:

- A license to the '055 patent allows Mitsubishi to avoid the constraints imposed by the layout and equipment at its manufacturing facility.  Without such a license, Mitsubishi could potentially lose all of its revenues and profits at a time when the wind energy market was at its strongest.

- Without a license to the '055 patent, Mitsubishi or its customers would have incurred additional costs related to transportation and installation.

- GE's existing licenses for other wind turbine technology that is important, though not essential, range from $14,000 and $32,500 per MW.  $35,000 per MW is near the upper end of that range in keeping with the relative value of the '055 patent and the fact that GE would receive no additional compensation in the form of an upfront payment or cross-license.

For the '705 patent, I believe that the appropriate royalty is $50,000 per MW.  Such a rate is reasonable in light of the following:

- The amount separately charged by GE as an option prior to FERC Order No. 661-A was $60,000, which equates to $40,000 per MW.

- The license would be made to a direct competitor, where GE has historically not licensed the '705 patent.

- A license to the '705 patent allows Mitsubishi to offer the market a ZVRT compliant wind turbine without having to incur the additional costs or time to redesign the turbine.

United States District Court for the Northern District of Texas – Dallas Division
Civil Action No. 3:10-CV-276-F

General Electric Company v. Mitsubishi Heavy Industries, Ltd., and Mitsubishi Power Systems Americas, Inc.

- GE's existing licenses for other wind turbine technology that is important, though not essential, range from $14,000 and $32,500 per MW.  The ZVRT patented technology would be considered essential and would therefore be more valuable to the licensee than GE's existing licenses.

## Prejudgment Interest

I understand that the decision to award prejudgment interest is a matter for the Court to determine.  However, unless otherwise instructed, I would ordinarily expect to calculate prejudgment interest at the average annual prime rate, compounded annually.  I typically calculate prejudgment interest at the prime rate based upon my understanding that the prime rate is often chosen by federal judges in patent infringement matters.

## Future damages

My damages analysis assumes that GE will be granted a permanent injunction preventing Mitsubishi from making, using, offering for sale, or selling in the U.S. the accused 2.4 MW wind turbines after the Court enters a judgment on liability against Mitsubishi.  If such an injunction is not entered, GE will experience future damages that are not included in this report.

## 7.    Total Damages

Based on my understanding of the facts and circumstances in this matter (and assuming liability), I have calculated damages measured as a combination of lost profits and reasonable royalties.  My calculations assume that "but for" Mitsubishi offering the Accused Products to certain customers, GE would have been able to capture those sales.  However, not all of Mitsubishi's sales represent lost sales for GE.  For those sales not subject to lost profits damages, I have calculated damages based on a reasonable royalty applied to the output measured in MWs provided by Mitsubishi's infringing sales.  If the Court or jury determines that both of the patents-in-suit are infringed by Mitsubishi, I have calculated damages as summarized below:[294]

| Lost Profits | Reasonable Royalties | Total Damages |
|---|---|---|
| $ 219,109,458 | $     72,060,000 | $   291,169,458 |

---

[294] Exhibit 3.  This represents total damages (lost profits and reasonable royalties) if the Court or jury finds both patents-in-suit valid and infringed by Mitsubishi.  I have also prepared schedules which calculate damages assuming only one of the patents-in-suit is valid and infringed by Mitsubishi.  These calculations are summarized in the attached Exhibit 4 and Exhibit 5.

United States District Court for the Northern District of Texas – Dallas Division
Civil Action No. 3:10-CV-276-F

General Electric Company v. Mitsubishi Heavy Industries, Ltd., and Mitsubishi Power Systems Americas, Inc.

If the Court or jury determines that the appropriate measure of damages is reasonable royalties only, total damages are summarized below:[295]

| '055 Patent | '705 Patent | Total Damages |
|---|---|---|
| $81,816,000 | $26,760,000 | $   108,576,000 |

**********

My report, with supporting exhibits, is contained herein, and presents a summary of my opinion and the bases and reasons therefore as of this date. To the extent any additional information is produced by either party, I will be prepared to incorporate any such additional information into my report, or otherwise to amend or supplement my report as appropriate.

This report is to be used only for the purpose of this litigation and may not be published or used for any other purpose without prior written consent.

By:

*Julie L. Davis*

Julie L. Davis

October 18, 2011

---

[295] Exhibit 3, Schedule B. This represents total damages (reasonable royalties only) if the Court or jury finds both patents-in-suit valid and infringed by Mitsubishi. I have also prepared schedules which calculate damages assuming only one of the patents-in-suit is valid and infringed by Mitsubishi. These calculations are summarized in the attached Exhibit 4 and Exhibit 5.

# Julie L. Davis, CPA

Tel:  312-506-1505
Fax: 312-506-1510

20 North Wacker Drive – Suite 2150
Chicago, Illinois 60606

jdavis@dhllc.com

## Employment

| | |
|---|---|
| June 2003 – Present | Davis & Hosfield Consulting LLC – Principal |
| May 2002 – May 2003 | KPMG LLP – Partner-in-Charge, National Intellectual Property Practice |
| September 1991 – May 2002 | Andersen – Co-Managing Partner, Global Intellectual Asset Consulting Practice |
| November 1987 – August 1991 | Andersen – Chicago office:  Senior Manager in Specialty Consulting |
| July 1978 – November 1987 | Touche Ross & Co. – Kansas City office:  Audit practice |

## Educational Background

| | |
|---|---|
| September 2000 | Inducted into Kansas State University Accounting Hall of Fame |
| July 1980 and subsequent | Certified Public Accountant (CPA) and licensed in California, Illinois, Kansas, Missouri, and Texas |
| May 1978 | Gold Key-State of Kansas CPA Examination (Highest score in state) |
| May 1978 | B.S. in Business Administration and Accounting Kansas State University Summa Cum Laude |

## Litigation Consulting Experience

Testified at trial (bench and jury) and through deposition as expert witness.

Conducted complex damages studies involving lost sales, lost profits, incremental profits, manufacturing and marketing capacity, fixed and variable costs, product line profitability, price erosion, reasonable royalty, unjust enrichment and prejudgment interest.

Cases have involved patent, trademark, trade dress, trade secret and copyright infringement, antitrust, false advertising, dealership termination, fraudulent conveyance, breach of contract, professional malpractice, and other types of business disputes.

Industries have included apparel, aerospace, automotive, biotechnology, carpet, chemicals, computer hardware and software, construction, consumer products, electronics, financial institutions, food, hospitality, industrial equipment, internet, medical products, military equipment, office equipment, pharmaceuticals, power tools, real estate, sporting goods, and transportation.

## Other Financial Consulting Experience

Assisted global companies with development of intellectual property strategy.

Developed competitive assessment capabilities for major consumer products company using patent portfolio analyses.

00760

Directed analyses of a Fortune 50 company's portfolio of over 25,000 patents, including review of prosecution and maintenance fees, trends, and patent department processes.

Assisted with licensing analyses, including whether the company should license its intellectual property and at what rates.

Supervised review of royalty payments for compliance with license agreements.

Directed and performed independent financial audits of private and publicly held companies ranging from manufacturing enterprises to financial institutions.

Developed insurance claims for business interruption losses in such industries as retail, processing, hospitality, fine arts, and professional services.

Performed due diligence services for potential acquisitions in the cosmetics and automotive parts industries.

Assisted consumer products company with analysis of operations and purchasing practices to improve productivity and profitability.

Developed and implemented comprehensive turnaround plan for national wholesale grocer experiencing financial crisis.

Investigated numerous fraud and negligence claims related to failed savings and loans.

## Membership in Trade Associations

American Institute of Certified Public Accountants

Illinois CPA Society – past Chairperson of statewide Litigation Services Committee

American Bar Association

Licensing Executives Society

## Publications

*Edison in the Boardroom:  How Leading Companies Realize Value from Their Intellectual Assets* – Julie L. Davis, Suzanne S. Harrison – Wiley/Andersen Intellectual Capital Series, June 2001.  (Also translated into Chinese and Japanese.)

"Tapping Into Your Company's Hidden Resources" – *U.S. Industry Today*, July 1999.

"An Update on Patent Damages – A Closer Look at Lost Profits and Reasonable Royalty Decisions from 1982 through June 1998" – *Licensing Law and Business Report*, January-February 1999 (Vol. 21, No. 1).

"Emerging Trends in Patent Infringement Damage Awards 1982-June 1997" – *Intellectual Property Infringement Damages*, 1999, Chapter 14.

"Using Your IP to Increase Shareholder Value" – *Managing Intellectual Property*™, Patent Yearbook 1998.

"Emerging Trends in Patent Infringement Damage Awards" – *Intellectual Property Infringement Damages*, 1998 Cumulative Supplement, Chapter1.4A.

"Reaching for the Sky and Beyond" – *Managing Intellectual Property*™, March 1997 (Issue 67).  Provided summary of damages cases and related data only.

"Patent Infringement Damages Awards" – *Licensing Law and Business Report*, May-June, 1995 (Vol. 17, No. 7).

"An Historical Look at Patent Infringement Damage Awards" – *Intellectual Property Infringement Damages*, 1995 Cumulative Supplement, Chapter 1.4A.

# Julie L. Davis
# Testimony Experience

| Lawsuit | Court | Law Firm | Type | Testimony |
|---------|-------|----------|------|-----------|
| Broadcom Corporation v. Emulex Corporation Case No. SACV-09-01058-JVS (ANx) consolidated SACV 10-03963-JVS (ANx) | U.S. District Court for the Central District of California, Southern Division | Wilmer Cutler Pickering Hale and Dorr | Patent infringement | Trial: 2011 Dep: 2011 Report(2): 2011 |
| Solvay, S.A. v. Honeywell Specialty Materials, LLC and Honeywell International Inc. Case No. 06-557-SLR | U.S. District Court for the District of Delaware | Kirkland & Ellis LLP | Patent infringement | Trial: 2011 Dep(2): 2008, 2011 Report(4): 2007, 2011 |
| Novozymes A/S and Novozymes North America, Inc. v. Danisco A/S, Genencor International Wisconsin, Inc., Danisco US Inc., and Danisco USA Inc. | U.S. District Court for the Western District of Wisconsin | Fenwick & West LLP | Patent Infringement | Dep: 2011 Report(2): 2011 |
| Coloplast A/S v. Generic Medical Devices, Inc. Case No. CV 10-227 BHS | U.S. District Court for the Western District of Washington at Tacoma | Faegre & Benson LLP | Patent infringement | Report: 2011 |
| Kruse Technology Partnership v. Daimler AG; Mercedes-Benz USA LLC; Detroit Diesel Corporation; Western Star Truck Sales, Inc.; Volkswagen AG; Volkswagen Group of America, Inc., d/b/a Audi Of America, Inc.; Chrysler Group LLC; Daimler Trucks North America LLC; Mercedes-Benz U.S. International, Inc.; and Daimler Vans Manufacturing LLC | U.S. District Court for the Central District of California, Southern Division (Santa Ana) | Howrey LLP | Patent infringement | Declaration: 2011 |
| Server Technology, Inc. v. American Power Conversion Corporation Civil Action No. 3:06-CV-00698-LRH (VPC) | U.S. District Court, District of Nevada | Jenner & Block LLP | Patent infringement | Dep: 2011 Report(2): 2011 |
| Novartis Vaccines and Diagnostics, Inc. v. Wyeth and Wyeth Pharmaceuticals Inc. 2:08-cv-00067-TJE-CE | U.S. District Court for the Eastern District of Texas, Marshall Division | McKool Smith; O'Melveny & Myers LLP | Patent infringement | Dep: 2011 Report(2): 2011 |
| WiAV Solutions LLC v. Motorola Mobility, Inc., Nokia Corporation, Nokia Inc., Sony Ericsson Mobile Communications AB, and Sony Ericsson Mobile Communications (USA) Inc. Case No. 3:09-cv-447-LO-JFA | U.S. District Court for the Eastern District of Virginia, Alexandria Division | Winston & Strawn LLP; Alston & Bird LLP; Andrews Kurth LLP | Patent infringement | Dep: 2011 Report: 2011 |
| Triangle Software, LLC v. Garmin International, Inc.; TomTom, Inc.; Volkswagen Group of America, Inc.; and Westwood One, Inc. | U.S. District Court for the Eastern District of Virginia Alexandria Division | Morrison Forester LLP | Patent infringement | Report(2): 2011 |
| Abbott GmbH & Co., KG and Abbott Biotechnology Ltd. v. Centocor Ortho Biotech, Inc. and Centocor Biologics, LLC Civil Action No. 4:09-cv-11340-FDS | U.S. District Court for the District of Massachusetts | Wilmer Cutler Pickering Hale and Dorr | Patent infringement | Dep: 2011 Report: 2011 |

underline indicates client

# Julie L. Davis
## Testimony Experience

| Lawsuit | Court | Law Firm | Type | Testimony |
|---|---|---|---|---|
| Nordyne Inc. v. <u>RBC Manufacturing Corporation</u><br>Case No. 4:09-cv-00203 | U.S. District Court for the Eastern District of Missouri, Eastern Division | Wilmer Cutler Pickering Hale & Dorr LLP | Patent infringement | Dep: 2011<br>Report: 2011 |
| Mformation Technologies, Inc. v. <u>Research In Motion Limited and Research In Motion Corporation</u><br>Case No. 5:08-cv-04990 | U.S. District Court for the Northern District of California, San Jose Division | Kirkland & Ellis LLP | Patent infringement | Dep: 2011<br>Report(2): 2011 |
| Osmose, Inc. v. <u>Arch Chemicals, Inc., Arch Wood Protection, Inc., Arch Treatment Technologies, Inc., Cox Industries, Inc., and Rocky Top Building Products, Inc. and Madison Wood Preservers, Inc.</u><br>Civil Action No. 2:10-cv-00108 | U.S. District Court for the Eastern District of Virginia, Norfolk Division | Kilpatrick Townsend & Stockton LLP | Patent infringement | Report: 2011 |
| <u>GE Healthcare UK Limited</u> v. Beckman Coulter, Inc. and Beckman Coulter Genomics, Inc.<br>Civil Action No. 09-974-RK | U.S. District Court for the District of Delaware | Weil, Gotshal & Manges LLP | Patent infringement | Dep: 2011<br>Report: 2010 |
| CIVIX-DDI, LLC v. <u>Hotels.com, L.P. and Hotels.com GP LLC</u><br>Case No. 05 C 6869 | U.S. District Court for the Northern District of Illinois | Kirkland & Ellis LLP | Patent infringement | Report: 2011 |
| i2 Technologies, Inc. and i2 Technologies US, Inc. v. <u>Oracle Corporation and Oracle USA, Inc. Oracle Corporation, Oracle America, Inc. and Oracle International Corporation</u> v. i2 Technologies, Inc., i2 Technologies US, Inc., and JDA Software Group, Inc.<br>Civil Action No. 6:09-cv-194 (LED) | U.S. District Court for the Eastern District of Texas, Tyler Division | Wilmer Cutler Pickering Hale & Dorr LLP | Patent infringement | Dep: 2011<br>Report(2): 2010; 2011 |
| <u>Brake Parts, Inc.</u> v. David Lewis, Satisfied Brake Products, Inc., and Robert<br>Case Number: 5:09-cv-00132 | U.S. District Court for the Eastern District of Kentucky, Central Division at Lexington | Seyfarth Shaw LLP | Trade Secret | Hearing: 2010 |
| Bruce J. Brumfield, Jr. and Jerry Caulder, as Members of the Advanced Stent Technologies, Inc. Stockholder Representative Committee and <u>Boston Scientific Corporation</u><br>Case No. 65-180-Y-00290-08<br>Case No. 65-489-292-08 | American Arbitration Association | Howrey LLP | Post acquisition dispute | Dep: 2010<br>Report: 2010 |
| Tyco Healthcare Group LP d/b/a <u>VNUS Medical Technologies</u> v. Biolitec, Inc., Dornier Medtech America, Inc., New Star Lasers, Inc. d/b/a Cooltouch, Inc.<br>Case No. C08-03129 MMC | U.S. District Court for the Northern District of California, San Francisco Division | Davis Polk & Wardwell LLP | Patent infringement | Trial: 2010<br>Report(2): 2010 |
| Beneficial Innovations, Inc. v. <u>Google Inc. and YouTube, LLC</u><br>Case No. 2:07-CV-555-TJW-CE | U.S. District Court for the Eastern District of Texas Marshall Division | Wilmer Cutler Pickering Hale & Dorr LLP | Patent infringement | Report: 2010 |

underline indicates client

4

# Julie L. Davis
## Testimony Experience

| Lawsuit | Court | Law Firm | Type | Testimony |
|---|---|---|---|---|
| The Chamberlain Group, Inc. and Johnson Controls Interiors LLC v. Lear Corporation Civil Action No. 1:05-CV-3449 | U.S. District Court for the Northern District of Illinois, Eastern Division | Winston & Strawn LLP | Patent infringement | Dep: 2010 Report: 2010 |
| Riddell, Inc. v. Schutt Sports, Inc. Case No. 03:08-cv-00711-BBC | U.S. District Court for the Western District of Wisconsin | Kirkland & Ellis LLP | False advertising and patent infringement | Trial: 2010 Dep: 2010 Report(3): 2010 |
| Ronald A. Katz Technology Licensing, L.P. v. Time Warner Cable Inc., et al. (on behalf of defendants Charter Communications Inc., Charter Communications Holding Company LLC, Charter Communications Operating LLC and Charter Communications Entertainment I LLC) Case No. 1:06-cv-00546-GMS | U.S. District Court for the District of Delaware (Wilmington) | Alston & Bird LLP | Patent infringement | Dep(2): 2008, 2010 Report(2): 2008, 2009 |
| Baxter Healthcare Corporation, et al. v. Fresenius Medical Care Holdings, Inc., et al. Case No. C 07-01359 PJH(JL) | U.S. District Court for the Northern District of California, San Francisco Division | Kirkland & Ellis LLP | Patent infringement | Trial: 2010 Dep: 2009 Report(3): 2009, 2010 |
| Network-1 Security Solutions, Inc. v. Cisco Systems, Inc., Cisco-Linksys, L.L.C., ADTRAN, Inc., Enterasys Networks, Inc., Extreme Networks, Inc., Foundry Networks, Inc., and 3Com Corporation Case No. 6:08cv030 | U.S. District Court for the Eastern District of Texas, Tyler Division | Wilmer Cutler Pickering Hale & Dorr LLP; Fulbright & Jaworski, L.L.P.; Jones Day; Howrey LLP; Simpson Thacher & Bartlett LLP | Patent infringement | Trial: 2010 Dep: 2010 Report(4): 2010 |
| Affinity Labs of Texas, LLC v. BMW North America, LLC, et al. (Mercedes-Benz USA, LLC) Case No. 9:08-cv-00164-RC | U.S. District Court for the Eastern District of Texas, Lufkin Division | Crowell & Moring LLP | Patent infringement | Dep: 2010 Report: 2010 |
| WiAV Solutions LLC v. Nokia Corporation and Nokia Inc., et al. Case No. 3:09cv447 REP | U.S. District Court for the Eastern District of Virginia, Richmond Division | Alston & Bird LLP | Patent infringement | Dep: 2010 Report: 2010 |
| Semiconductor Energy Laboratory Co., Ltd. v. Samsung Electronics Co., Ltd., S-LCD Corporation, Samsung Electronics America, Inc., Samsung Telecommunications America, LLC, and Samsung Mobile Display Co., Ltd. Case No. 3:09-CV-00001 | U.S. District Court for the Western District of Wisconsin | Jenner & Block LLP | Patent infringement | Dep: 2010 Report(2): 2010 |
| Dr. David Kannar v. Alticor Inc., Amway Corp., Quixtar, Access Business Group LLC, Nutrilite Case No. 2:09-cv-02500-PSG-VBK | U.S. District Court for the Central District of California, Western Division – Los Angeles | Brinks Hofer Gilson & Lione | Patent infringement | Report: 2010 |

underline indicates client

5

# Julie L. Davis
# Testimony Experience

| Lawsuit | Court | Law Firm | Type | Testimony |
|---|---|---|---|---|
| Tessera, Inc. v. United Test and Assembly Center Ltd. and UTAC America, Inc. Case No. RG08410327 | Superior Court of the State of California for the County of Alameda | Irell & Manella LLP | Breach of contract | Dep: 2010 Report(2): 2010 |
| 3M Innovative Properties Company and 3M Company v. Louis M. Gerson Co., Inc. and Gerson Professional Products, Inc. Civil No. 08-04960 JRT/FLN | U.S. District Court for the District of Minnesota | Faegre & Benson LLP | Patent infringement | Dep: 2010 Report: 2009 |
| Zamora Radio, LLC v. Pandora Media, Inc., et al. Case No. 1:09-cv-20940-EGT | U.S. District Court for the Southern District of Florida, Miami | Banner & Witcoff, Ltd. | Patent Infringement | Report: 2010 |
| DuPont Air Products NanoMaterials L.L.C. v. Cabot Microelectronics Corporation Cabot Microelectronics Corporation v. Precision Colloids, L.L.C. and The Virkler Company Case No. CV06-2952-PHX-ROS | U.S. District Court for the District of Arizona | Wilmer Cutler Pickering Hale & Dorr LLP | Patent infringement | Report(2): 2008, 2010 |
| IP Innovation L.L.C. and Technology Licensing Corporation v. Google Inc. Case No. 2:07cv503-RRR | U.S. District Court for the Eastern District of Texas Marshall Division | Wilmer Cutler Pickering Hale & Dorr LLP | Patent infringement | Report: 2010 |
| Ledergerber Medical Innovations, LLC and Dr. Walter Ledergerber v. W.L. Gore & Associates, Inc. Case No. 07-C-1593 | U.S. District Court for the Northern District of Illinois, Eastern Division | Locke Lord Bissell & Liddell LLP | Patent infringement | Report: 2009 |
| Diagnostic Systems Corporation v. Symantec Corporation, et al. (Microstrategy, Inc.) | U.S. District Court for the Central District of California, Southern Division | Wilmer Cutler Pickering Hale & Dorr LLP | Patent infringement | Dep: 2009 Report: 2009 |
| United States Gypsum Company v. Lafarge North America, Inc., et al. Civil Action No. 03-CV-6027 | U.S. District Court for the Northern District of Illinois, Eastern Division | Leydig, Voit & Mayer, Ltd. | Patent infringement and trade secret misappropriation | Dep(2): 2007, 2009 Report(7): 2007, 2008, 2009 |
| Honeywell International Inc. and Honeywell Intellectual Properties Inc. v. Nikon Corporation, et al. (Fuji Film Report) C.A. No. 04-1337-JJF (Consolidated) | U.S. District Court for the District of Delaware | Robins, Kaplan, Miller & Ciresi L.L.P. | Patent infringement | Dep: 2009 Report(2): 2009 |
| Alexsam, Inc. v. Humana, Inc. Case No. 2:07-cv-00288-DF | U.S. District Court for the Eastern District of Texas, Marshall Division | Standley Law Group LLP | Patent infringement | Report: 2009 |
| Monolithic Power Systems, Inc. v. O2 Micro International Limited and related counterclaims Case No. C 08-4567 | U.S District Court for the Northern District of California, Oakland Division | Latham & Watkins LLP | Patent infringement | Dep: 2009 Report: 2009 |

underline indicates client

# Julie L. Davis
## Testimony Experience

| Lawsuit | Court | Law Firm | Type | Testimony |
|---|---|---|---|---|
| Honeywell International Inc. and Honeywell Intellectual Properties Inc. v. Nikon Corporation, et al. (Samsung SDI Report) C.A. No. 04-1337-JJF (Consolidated) | U.S. District Court for the District of Delaware | Robins, Kaplan, Miller & Ciresi L.L.P. | Patent infringement | Dep:  2009 Report:  2009 |
| Wisconsin Alumni Research Foundation v. Intel Corporation Case No. 08-C-78-C | U.S. District Court for the Western District of Wisconsin | Wilmer Cutler Pickering Hale & Dorr LLP | Patent infringement | Dep:  2009 Report(2):  2009 |
| Robin Singh d/b/a TestMasters v. Duane Morris LLP Case No. 2008-49090 | U.S. District Court for Harris County, Texas – 164th Judicial Court | Vinson & Elkins LLP | Negligence | Dep:  2009 Report:  2009 |
| Synovis Life Technologies, Inc. v. W.L. Gore & Associates, Inc. Case No. 07 CV 1396 (DWF/SRN) | U.S. District Court for the District of Minnesota | Paul, Hastings, Janofsky & Walker LLP | Patent infringement | Report:  2009 Declaration:  2009 |
| Motorola, Inc. and GMP Wireless Medicine, Inc. v. Nonin Medical, Inc. Case No. 04 CV 05944 | U.S. District Court Northern District of Illinois Eastern Division | Dykema Gossett Rooks Pitts PLLC | Patent infringement | Report:  2009 |
| Santarus, Inc. and The Curators of the University of Missouri v. Par Pharmaceutical, Inc. C.A. No. 07-551 (GMS) | U.S. District Court for the District of Delaware | Irell & Manella LLP | Patent infringement | Trial:  2009 Dep:  2009 Report:  2009 |
| Ring Plus, Inc. v. StoneTurn Group, LLP, et al. No. SC096962 | Superior Court for the State of California for the County of Los Angeles – West District | Caldwell Leslie & Proctor, PC | Breach of contract, professional negligence and rescission | Dep:  2009 |
| LG Electronics, Inc. v. Hitachi, Ltd.; Hitachi Automotive Products (USA), Inc.; Clarion Co., Ltd; Clarion Corporation of America; and Xanavi Informatics Corporation Case No. 5:07-cv-00090-DF | U.S. District Court for the Eastern District of Texas, Texarkana | Kirkland & Ellis LLP | Patent infringement | Dep:  2009 Report:  2009 |
| Drew Heriot and Drew Pictures Pty Ltd. v. Simon & Schuster, Inc. Case No. 1:08-cv-04386 | U.S. District Court for the Northern District of Illinois, Eastern Division | Squire, Sanders & Dempsey L.L.P. | Copyright infringement | Report:  2009 |
| MOAEC, Inc. v. Pandora Media, Inc., et al. Civil Action No. 07-C-0654-BBC | U.S. District Court for the Western District of Wisconsin | Banner & Witcoff, Ltd. | Patent infringement | Dep:  2009 Report:  2009 |
| Medinol Ltd. against Boston Scientific Corp., et al. WIPOA030807 | World Intellectual Property Organization | Cravath Swaine & Moore LLP | Patent infringement | Dep:  2009 Report:  2008 |
| Ameritox, Ltd. and U.D. Testing, Inc. v. Aegis Sciences Corp. Case No. 07-80498 | U.S. District Court for the Southern District of Florida, West Palm Beach Division | Bell, Boyd & Lloyd LLP | Unfair and deceptive trade practices | Dep:  2009 Report(4):  2008, 2009 |

underline indicates client

# Julie L. Davis
## Testimony Experience

| Lawsuit | Court | Law Firm | Type | Testimony |
|---|---|---|---|---|
| CIF Licensing, LLC d/b/a GE Licensing v. Agere Systems Inc. Case No. 07-170-JJF | U.S. District Court of the District of Delaware | McDermott Will & Emery LLP | Patent infringement | Trial: 2009 Dep: 2008 Report(3): 2008, 2009 |
| Spectralytics, Inc. v. Cordis Corporation and Norman Noble, Inc. Civil Action No. 05-1464 (PJS/RLE) | U.S. District Court for the District of Minnesota | Carlson, Caspers, Vandenburgh & Lindquist | Patent infringement | Trial: 2009 Dep: 2007 Report(2): 2007, 2008 |
| MarcTec, L.L.C. v. Johnson & Johnson and Cordis Corporation Case No. 3:07-cv-825-DRH-CJP | U.S. District Court for the Southern District of Illinois | Kirkland & Ellis LLP | Patent Infringement | Dep: 2008 Report: 2008 |
| Freedom Wireless, Inc. v. Cricket Communications, Inc., et al. Civil Action No. 2-06-CV-504 (TJW-CE) | U.S. District Court for the Eastern District of Texas, Marshall Division | Latham & Watkins LLP | Patent infringement | Dep: 2008 Report: 2008 |
| Honeywell International Inc. and Honeywell Intellectual Properties Inc. v. Universal Avionics Systems Corp. and Sandel Avionics, Inc. Civil Action No. 02-359-MPT | U.S. District Court for the District of Delaware | Kirkland & Ellis LLP and Mayer, Brown, Rowe & Maw LLP | Patent infringement and antitrust | Trial(2): 2003, 2008 Dep: 2003 Report(7): 2003, 2008 |
| Ronald A. Katz Technology Licensing, L.P., v. Cincinnati Bell Inc., Cincinnati Bell Wireless, LLC, Cincinnati Bell Any Distance Inc., Cincinnati Bell Entertainment, Inc., Cincinnati Bell Extended Territories LLC, Cincinnati Bell Telephone Company LLC, Brcom Inc., and IXC Internet Services, Inc. Case No. 07-ML-01816-C-RGK | U.S. District Court, Central District of California, Western Division | Standley Law Group | Patent infringement | Dep: 2008 Report: 2008 |
| Hologic, Inc., Cytyc Corporation and Hologic L.P. v. SenoRx, Inc. Civil Action No. 08-CV-0133 RMW | U.S. District Court for the Northern District of California, San Jose Division | Howrey LLP | Patent infringement | Dep(2): 2008 Declaration(2): 2008 |
| Safe Auto Insurance Company v. State Automobile Mutual Insurance Company Case No. 2:07-cv-01121-EAS-NMK | U.S. District Court, Southern District of Ohio (Columbus) | Standley Law Group LLP | Trademark infringement | Report: 2008 |
| Ronald A. Katz Technology Licensing, L.P. v. Time Warner Cable Inc., et al. (on behalf of defendants Time Warner Cable Inc., Time Warner NY Cable LLC and Time Warner Entertainment Company LP) Case No. 1:06-cv-00546-GMS | U.S. District Court for the District of Delaware (Wilmington) | Alston & Bird LLP | Patent infringement | Dep: 2008 Report: 2008 |
| Ronald A. Katz Technology Licensing, L.P. v. Time Warner Cable Inc., et al. (on behalf of defendants AOL LLC, Compuserve Interactive Services Inc. and Netscape Communications Corporation) Case No. 1:06-cv-00546-GMS | U.S. District Court for the District of Delaware (Wilmington) | Alston & Bird LLP | Patent infringement | Dep: 2008 Report: 2008 |

underline indicates client

8

# Julie L. Davis
# Testimony Experience

| Lawsuit | Court | Law Firm | Type | Testimony |
|---------|-------|----------|------|-----------|
| Ronald A. Katz Technology Licensing, L.P. v. Humana, Inc. (on behalf of defendants Humana, Inc. and Humana Military Healthcare Services, Inc.) Case No. 9:06-cv-199-RC | U.S. District Court for the Eastern District of Texas (Lufkin) | Standley Law Group LLP | Patent infringement | Dep: 2008 Report: 2008 |
| Ronald A. Katz Technology Licensing, L.P. v. TD Banknorth, Inc., et al. (on behalf of defendants Dillard's, Inc. and Dillard Investment Co., Inc.) Case No. 1:06-cv-00544-GMS | U.S. District Court for the District of Delaware (Wilmington) | Alston & Bird LLP | Patent infringement | Report: 2008 |
| Ronald A. Katz Technology Licensing, L.P. v. Ahold U.S.A., Inc., et al. (on behalf of defendants Ahold U.S.A., Inc., Stop & Shop Supermarket Company LLC, Giant Food Stores LLC and Giant Food Inc.) Case No. 1:06-cv-00545-GMS | U.S. District Court for the District of Delaware (Wilmington) | Alston & Bird LLP | Patent infringement | Report: 2008 |
| Auction Management Solutions, Inc. v. Manheim Auctions, Inc., et al. Auction Management Solutions, Inc. v. ADESA, Inc. Case Nos. 1:05-CV-0639 and 1:05-CV-0638 | U.S. District Court for the Northern District of Georgia, Atlanta Division | Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P. | Patent infringement | Dep: 2008 Report: 2008 |
| ExonHit Therapeutics S.A. and ExonHit Therapeutics, Inc. v. Jivan Biologics, Inc. Case No. C07 1427 WHA | U.S. District Court for the Northern District of California, San Francisco Division | Hogan & Hartson LLP | Patent infringement | Report: 2008 |
| 3M Company and 3M Innovative Properties Company v. Vita Zahnfabrik H. Rauter GmbH & Co. KG and Vident, Inc. Case No. 0:05-CV-01875 ADM/JJG | U.S. District Court of Minnesota | Fish & Richardson P.C. | Patent infringement | Report: 2008 |
| Herman Miller, Inc. v. Teknion Corporation and Okamura Corporation Civil Action No. 05-CV-2761 | U.S. District Court Northern District of Illinois, Eastern Division | Howrey LLP Michael Best & Friedrich LLP | Patent infringement | Dep: 2008 Report: 2008 |
| Taurus IP, LLC v. DaimlerChrysler Corporation, et al. Civil Action No. 07-C-158-C | U.S. District Court for the Western District of Wisconsin | Kilpatrick Stockton LLP | Patent infringement | Dep: 2008 Report(2): 2008 |
| Repligen Corporation and The Regents of the University of Michigan v. Bristol-Myers Squibb Company Case No. 2:06-CV-004-TJW | U.S. District Court for the Eastern District of Texas, Marshall Division | Fish & Richardson PC | Patent infringement | Dep: 2008 Report: 2007 |
| PUMA AG Rudolf Dassler Sport and PUMA North America v. Payless Shoesource, Inc. and Payless Shoesource Worldwide, Inc. Civil Action No. 06-cv-11943 | U.S. District Court for the District of Massachusetts | Kirkpatrick & Lockhart Preston Gates Ellis LLP | Trademark infringement | Report: 2008 |

underline indicates client

# Julie L. Davis
# Testimony Experience

| Lawsuit | Court | Law Firm | Type | Testimony |
|---|---|---|---|---|
| Rowe International Corp. and Arachnid, Inc. v. Ecast Inc., Rock-Ola Manufacturing Corp., and View Interactive Entertainment Corp. Case No.: 1:06-cv-02703 | U.S. District Court for the Northern District of Illinois, Eastern Division | Dickstein Shapiro LLP | Patent infringement | Dep: 2008 Report(3): 2007 |
| Abbott Diabetes Care Inc. and Abbott Laboratories v. Roche Diagnostics Corp., Roche Diagnostics Operations, Inc. and Bayer Healthcare LLC Case No.: C05-3117 MJJ | U.S. District Court for the Northern District of California | Barnes & Thornburg LLP | Patent infringement | Dep: 2008 Report: 2007 |
| Volumetrics Medical Imaging LLC v. GE Healthcare, Ltd., GE Medical Systems, Inc., GE Medical Systems, L.L.C., GE Medical Systems Kretztechnik GMBH & Co. OHG, Toshiba America Medical Systems, Inc., Medison America, Inc., and Siemens Medical Solutions USA, Inc. Civil Action No. 1:05CV00955 | U.S. District Court for the Middle District of North Carolina | McDermott, Will & Emery LLP | Patent infringement | Report: 2007 |
| Kathleen Adams and Snap-Saver, LLC v. Newell Rubbermaid Inc. and Target Corporation Civil Action No. 07 C 0313 S | U.S. District Court for the Western District of Wisconsin | Schiff Hardin LLP | Patent infringement | Report: 2007 |
| O'Gara-Hess & Eisenhardt Armoring Company, L.L.C. v. Paul Bartock and Ibis Tek, LLC and Thomas G. Buckner and John P. Buckner Case No. CV 2006 04 1157 | Common Pleas Court of Butler County, Ohio | Sebaly Shillito and Dyer | Trade secret | Dep: 2007 Report(2): 2007 |
| Pergo, Inc. and Pergo (Europe) AB v. Alloc, Inc., Armstrong World Industries, Inc. and Berry Finance NV Civil Action No. 02-CV-0736V | U.S. District Court for the Eastern District of Wisconsin | Baker & McKenzie | Patent infringement | Trial: 2007 Dep: 2007 Report: 2007 |
| Intermatic Incorporated v. TayMac Corporation Civil Action No. 00-CV-50224 | U.S. District Court for the Northern District of Illinois, Western Division | Brinks Hofer Gilson & Lione | Patent infringement | Report(2): 2001, 2007 |
| Johnson Controls, Inc. v. InnerWireless, Inc. Arbitration No. 51 181 Y 284 07 | American Arbitration Association | Banner & Witcoff, Ltd. | Breach of contract | Dep: 2007 Report(2): 2007 |
| Medinol Ltd. against Boston Scientific Corp., et al. WIPOA200206 | World Intellectual Property Organization | Cravath Swaine & Moore LLP | Patent infringement | Arbitration: 2007 Dep: 2007 Report(2): 2007 |
| Donaldson Company, Inc. v. Baldwin Filters Inc. Civil Action No. 04-2679 | U.S. District Court for the District of Minnesota | Merchant & Gould | Patent infringement | Dep: 2007 Report(2): 2007 |
| 3M Company and 3M Innovative Properties Company v. Kerr Corporation Case No. 07-C-0087-C | U.S. District Court for the Western District of Wisconsin | Kirkland & Ellis LLP | Patent infringement | Report(2): 2007 |

underline indicates client

10

# Julie L. Davis
## Testimony Experience

| Lawsuit | Court | Law Firm | Type | Testimony |
|---------|-------|----------|------|-----------|
| Calphalon Corporation v. Meyer Corporation, U.S. Case No. 2:05-CV-00971-WBS-DAD | U.S. District Court Eastern District of California, Sacramento Division | Sheppard, Mullin, Richter & Hampton LLP | Patent infringement and unfair competition | Trial: 2007 Dep: 2006 Report(2): 2006, 2007 |
| 911EP, Inc. v. Whelen Engineering Company, Inc. and Tomar Electronics, Inc. Case No. 2-05 CV-137 | U.S. District Court for the Eastern District of Texas, Marshall Division | McKool Smith | Patent infringement | Report: 2007 |
| Atlanta Attachment Company v. Leggett & Platt, Inc. Civil Action File No. 1:05-cv-01071-ODE | U.S. District Court for the Northern District of Georgia, Atlanta Division | Troutman Sanders LLP | Patent infringement and breach of contract | Trial: 2007 Dep: 2006 Report(2): 2005, 2007 |
| Through the Country Door, Inc. v. J.C. Penney Company, Inc., et al. Case No. 06-C-0540 | U.S. District Court for the Western District of Wisconsin, Madison Division | Barnes & Thornburg LLP | Copyright infringement | Report: 2007 |
| Honeywell International and Honeywell Intellectual Properties Inc. v. The United States, et al. No. 02-1909C | U.S. District Court of Federal Claims | Paul, Hastings, Janofsky & Walker LLP | Patent infringement | Trial: 2007 Dep: 2007 Report(3): 2006, 2007 |
| Textron Innovations Inc. v. The Toro Company Civil Action No. 05-486 (GMS) | U.S. District Court for the District of Delaware | Merchant & Gould | Patent infringement | Dep: 2007 Report(2): 2007 |
| DE Technologies, Inc. v. Dell Inc. Civil Action No. 7:04 CV 00628 | U.S. District Court for the Western District of Virginia | Robins, Kaplan, Miller & Ciresi L.L.P. | Patent infringement | Dep: 2007 Report: 2006 |
| Cummins-Allison Corp. v. Glory Ltd., Glory Shoji Co., Ltd. and Glory (U.S.A.) Inc. Civil Action No. 02 C 7008 | U.S. District Court for the Northern District of Illinois, Eastern Division | Hogan & Hartson LLP | Patent infringement | Report(2): 2004, 2006 |
| The Holmes Group, Inc. v. West Bend Housewares, LLC and Focus Products Group, LLC Civil Action No. 05-CV-11367 WGY | U.S. District Court for the District of Massachusetts | Michael Best & Friedrich LLP | Patent infringement | Report(2): 2006 |
| Novozymes A/S v. Genencor International, Inc. and Enzyme Development Corporation Civil Action No. 05-160-KAJ | U.S. District Court for the District of Delaware | Darby & Darby PC | Patent infringement | Trial: 2006 Dep: 2006 Report(2): 2006 |
| One World Technologies, Ltd. and Ryobi Technologies, Inc. v. Robert Bosch Tool Corporation. Rexon Industrial Corp., Ltd., Rexon USA, Corp., and Power Tool Specialists, Inc. Civil Action No. 04 C 0833 | U.S. District Court for the Northern District of Illinois, Eastern Division | Brinks Hofer Gilson & Lione, P.C. | Patent infringement | Dep: 2006 Report: 2006 |
| InLine Connection Corporation v. AOL Time Warner Incorporated and America Online, Inc. Civil Action No. 02-272 | U.S. District Court for the District of Delaware | Latham & Watkins LLP | Patent infringement | Dep: 2006 Report: 2006 |

underline indicates client

# Julie L. Davis
# Testimony Experience

| Lawsuit | Court | Law Firm | Type | Testimony |
|---------|-------|----------|------|-----------|
| Archer Daniels Midland Company v. Vogelbusch U.S.A., Inc. and UOP LLC Case No. 98L 008240 | Circuit Court of Cook County, Illinois County Department, Law Division | Winston & Strawn LLP and McDermott Will & Emery LLP | Breach of implied warranty | Trial: 2006 Dep: 2004 Report: 2004 |
| Maytag Corporation v. Electrolux Home Products, Inc., d/b/a Frigidaire Civil Action No. C 04-4067-MWB | U.S. District Court for the Northern District of Iowa, Western Division | Alston & Bird LLP | Patent infringement | Dep: 2006 Hearing: 2006 Report(2): 2006 |
| One World Technologies, Ltd. and Ryobi Technologies, Inc. v. Rexon Industrial Corp., Ltd., Rexon USA, Corp., Power Tool Specialists, Inc., Porter-Cable Corp., Delta International Machinery Corp., and Pentair, Inc. Civil Action No. 04C-4337 | U.S. District Court for the Northern District of Illinois, Eastern Division | Brinks Hofer Gilson & Lione, P.C. | Patent infringement | Dep: 2005 Report(2): 2005, 2006 |
| OPTi Inc. v. nVidia Corporation Civil Action No. 2-04CV-377 | U.S. District Court for the Eastern District of Texas, Marshall Division | Winston & Strawn LLP | Patent infringement | Report: 2006 |
| Medinol Ltd. v. Guidant Corporation and Advanced Cardiovascular Systems, Inc. Civil Action No. 03 Civ. 2604 (SAS) | U.S. District Court for the Southern District of New York | Cravath, Swaine & Moore LLP and Morgan & Finnegan, L.L.P. | Patent infringement | Dep: 2005 Report(2): 2004, 2006 |
| Alcon Manufacturing, Ltd. and Alcon Laboratories, Inc., v. Advanced Medical Optics, Inc. Civil Action No. 4-05CV-496-A | U.S. District Court for the Northern District of Texas, Fort Worth Division | Rader, Fishman & Grauer PLLC | Patent infringement | Dep: 2006 Report: 2006 |
| International Truck and Engine Corporation v. Kile International Trucks, Inc. Case No. 2004L000580 | Circuit Court of Eighteenth Judicial Circuit, DuPage County, Illinois, Law Division | Seyfarth Shaw LLP | Breach of contract | Dep: 2006 Report(2): 2005 |
| Versus Technology, Inc. v. Radianse, Inc. Civil Action No. 04-1231 | U.S. District Court for the District of Delaware | Lahive & Cockfield LLP | Patent infringement | Dep: 2006 Report: 2005 |
| PowerOasis, Inc. and PowerOasis Networks, LLC v. Wayport, Inc. Civil Action No. 04-12023 RWZ | U.S. District Court for the District of Massachusetts | Wilmer Cutler Pickering Hale & Dorr LLP | Patent infringement | Dep: 2006 Report: 2005 |
| Cummins-Allison Corp. v. Glory Ltd., Glory Shoji Co., Ltd. and Glory (U.S.A.), Inc. Civil Action No. 2-03-CV-358 (TJW) | U.S. District Court for the Eastern District of Texas, Marshall Division | Hogan & Hartson LLP | Patent infringement | Dep: 2005 Report(2): 2005, 2006 |
| Mandy N. Haberman v. Playtex Products Inc., Gerber Products Company and Wal-Mart Stores, Inc. Civil Action No. 05-C-0224-S | U.S. District Court for the Western District of Wisconsin | Latham & Watkins LLP | Patent infringement | Dep: 2005 Report: 2005 |
| SMART Technologies Inc. v. Polyvision Corporation and Paragram Sales Company, Inc. Civil Action No. 1:04-cv-0713 | U.S. District Court for the Western District of Michigan, Southern Division | Katten Muchin Rosenman LLP | Patent infringement | Report(2): 2005 |

underline indicates client

# Julie L. Davis
# Testimony Experience

| Lawsuit | Court | Law Firm | Type | Testimony |
|---------|-------|----------|------|-----------|
| Kmart Corporation v. Capital One Bank, Capital One F.S.B., Capital One Services, Inc. Case No. 03-055092-CK | State of Michigan Circuit Court for the County of Oakland | Kirkland & Ellis LLP | Breach of contract and trade secret | Dep: 2005 |
| PolyVision Corporation v. SMART Technologies Inc. and SMART Technologies Corporation Civil Action No. 1:03-cv-0476 | U.S. District Court for the Western District of Michigan, Southern Division | Katten Muchin Rosenman LLP | Patent infringement | Report: 2005 |
| Solutions for Women, LLC v. Warner Health Care, Inc., Berkeley Premium Nutraceuticals, Inc. and Vitaquest International, Inc. d/b/a Garden State Nutritionals, Inc. Case No. CV04-10357 JFW (RCX) | U.S. District Court for the Central District of California, Western Division | Wood, Heron and Evans LLP | Patent infringement and trade secret | Report: 2005 |
| Flexi-Mat Corporation v. Dallas Manufacturing Company, Inc., BJ's Wholesale Club, Inc., and Doskocil Manufacturing Company, Inc. Civil Action No. 04 10162 DPW | U.S. District Court for the District of Massachusetts | Michael Best & Friedrich LLP | Patent infringement | Dep: 2005 Report: 2005 |
| Morton Grove Pharmaceuticals, Inc. v. Pharmaceutical Resources, Inc. and Par Pharmaceuticals, Inc. Civil Action No. 04 C 7007 | U.S. District Court for the Northern District of Illinois, Eastern Division | Winston & Strawn LLP | Patent infringement | Dep: 2005 Report: 2005 |
| Windy City Innovations, LLC v. America Online, Inc. Civil Action No. 04 C 4240 | U.S. District Court for the Northern District of Illinois, Eastern Division | Banner & Witcoff, Ltd. | Patent infringement | Dep: 2005 Report: 2005 |
| Amersham PLC, et al. v. Applera Corporation's Applied Biosystems Division File No. G-04-40 | Center for Public Resources Institute for Dispute Resolution | Howrey LLP | Breach of license agreement | Arbitration: 2005 Dep: 2005 Report: 2005 |
| Honeywell International Inc. and Honeywell Intellectual Properties Inc. v. Hamilton Sundstrand Corp. Civil Action No. 03-1153 | U.S. District Court for the District of Delaware | Kirkland & Ellis LLP | Patent infringement | Trial: 2005 Dep(2): 2005 Report(2): 2005 |
| Advanced Medical Optics, Inc. v. Alcon Laboratories, Inc. and Alcon Manufacturing Ltd. Civil Action No. 03-1095-KAJ | U.S. District Court for the District of Delaware | Kirkland & Ellis LLP | Patent infringement | Trial: 2005 Dep: 2004 Report(4): 2004, 2005 |
| Unimed Pharmaceuticals, Inc. and Laboratories Besins Iscovesco v. Watson Pharmaceuticals, Inc. Unimed Pharmaceuticals, Inc. and Laboratories Besins Iscovesco v. Paddock Laboratories, Inc. Case Nos. 1:03-CV-2501 and 1:03-CV-2503 | U.S. District Court for the Northern District of Georgia, Atlanta Division | Mayer, Brown, Rowe & Maw LLP | Patent infringement | Dep: 2005 Report: 2005 |

underline indicates client

# Julie L. Davis
## Testimony Experience

| Lawsuit | Court | Law Firm | Type | Testimony |
|---|---|---|---|---|
| Deere & Company v. The Toro Company<br>Civil Action No. 99-4100 | U.S. District Court for the Central District of Illinois, Rock Island Division | Merchant & Gould | Patent infringement | Arbitration: 2005<br>Dep: 2004<br>Report(3): 2001, 2004, 2005 |
| Dr. Marc L. Kozam, d/b/a MLK SOFTWARE and DATASCI, LLC v. Phase Forward Incorporated and Quintiles Inc.<br>Civil Action No. 04-CV-1787 (MJG) | U.S. District Court, District of Maryland, Greenbelt Division | Kirkpatrick & Lockhart Nicholson Graham LLP | Patent infringement | Dep: 2005<br>Report: 2005 |
| Travel Tags, Inc. v Digital Replay, Inc.<br>Case No. 02-4726 MJD/JGL | U.S. District Court for the District of Minnesota | Merchant & Gould, P.C. | Patent infringement | Dep: 2005<br>Report: 2004 |
| Mars, Inc., et al. v. H.J. Heinz Co., LP Heinz Management Co., and Del Monte Corporation<br>Case No. CV-01-10961 RGK | U.S. District Court for the Southern District of California, Western Division | Covington & Burling and Kirkland & Ellis LLP | Patent infringement | Trial: 2005<br>Dep: 2003<br>Report(3): 2003, 2004 |
| Rodeo Cold Marketing Company and Wyoming West Designs LLC v. Coors Brewing Company<br>Case No. Civ: F-03-5280-AWI DLB | U.S. District Court for the Eastern District of California | Featherstone DeSisto LLP | Trademark infringement | Dep: 2004<br>Report(2): 2004, 2005 |
| Richard J. Ditzik v. Planar Systems, Inc., et al.<br>Civil Action No. 03 – 74043 | U.S. District Court for the Eastern District of Michigan, Southern Division | Shaw Pittman LLP | Patent infringement | Report: 2005 |
| Savient Pharmaceuticals, Inc., et al. v. Duramed Pharmaceuticals, Inc. and Barr Laboratories, Inc.<br>Civil Action No. 00-4509-DMC | U.S. District Court District of New Jersey | Winston & Strawn LLP | Patent infringement | Dep: 2004<br>Report: 2004 |
| 3M Innovative Properties Company and 3M Company v. Dentsply International, Inc.<br>Civil Action No. 04 C 0564 S | U.S. District Court for the Western District of Wisconsin | Kirkland & Ellis LLP | Patent infringement | Dep: 2004<br>Report(2): 2004 |
| Honeywell International Inc. and Honeywell Intellectual Properties Inc. v. Universal Avionics Systems Corp. and Sandel Avionics, Inc.<br>Civil Action No. 03-242-MPT | U.S. District Court for the District of Delaware | Kirkland & Ellis LLP and Mayer, Brown, Rowe & Maw LLP | Patent infringement | Trial: 2004<br>Dep: 2004<br>Report(4): 2004 |
| QinetiQ Limited v. Samsung Telecommunications America, L.P.<br>Civil Action No. 2-03CV-221 | U.S. District Court for the Eastern District of Texas, Marshall Division | Latham & Watkins LLP | Patent infringement | Trial: 2004<br>Report: 2004 |
| Dow AgroSciences LLC v. Crompton Corporation and Uniroyal Chemical Company, Inc.<br>Civil Action No. 1:03-CV-0654-SEB-JPG | U.S. District Court Southern District of Indiana, Indianapolis Division | Barnes & Thornburg LLP | Patent infringement | Dep: 2004<br>Report: 2004 |

underline indicates client

14

# Julie L. Davis
## Testimony Experience

| Lawsuit | Court | Law Firm | Type | Testimony |
|---------|-------|----------|------|-----------|
| Collaboration Properties, Inc. v. Polycom Inc. and Polycom, Inc. v. Collaboration Properties, Inc. and Avistar Communications Corp. Case No. C02-49591 | U.S. District Court for the Northern District of California, San Francisco Division | Keker & Van Nest LLP | Patent infringement | Report: 2004 |
| Yoon Ja Kim v. ConAgra Foods, Inc. Civil Action No. 01 CV 2467 | U.S. District Court for the Northern District of Illinois, Eastern Division | Bingham McCutchen LLP | Patent infringement | Trial: 2004 Report(2): 2003, 2004 |
| PSN Illinois, LLC v. Oil-Dri Corporation of America Civil Action No. 04C 0915 | U.S. District Court for the Northern District of Illinois | Wildman, Harrold, Allen & Dixon LLP | Patent infringement | Report: 2004 |
| Motorola, Inc. v. Analog Devices, Inc. Civil Action No. 1:03-CV-0131 | U.S. District Court Eastern District of Texas, Beaumont Division | Wilmer Culter Pickering Hale and Dorr LLP | Patent infringement | Dep: 2004 Report(3): 2004 |
| Syngenta Seeds, Inc. v. Monsanto Company, et al., Pioneer Hi-Bred, et al. Civil Action No. 02-1331 (SLR) | U.S. District Court for the District of Delaware | Kaye Scholer LLP | Patent infringement | Dep: 2004 Report: 2004 |
| Pinpoint Incorporated v. Amazon.com Inc., et al. Civil Action No. 03C-4954 | U.S. District Court for the Northern District of Illinois, Eastern Division | Bartlit Beck Herman Palenchar & Scott LLP | Patent infringement | Dep: 2004 Report(3): 2004 |
| Riverwood International Corporation v. R.A. Jones & Company, Inc. No. 1:98-CV-2840-BBM | U.S. District Court for the Northern District of Georgia, Atlanta Division | Wood, Herron & Evans, LLP and Powell, Goldstein, Frazer & Murphy, LLP | Patent infringement | Trial: 2001 Dep: 2001 Report(2): 2001, 2004 |
| Do It Best Corp. v. Passport Software, Inc. Case No. 01 C 7674 | U.S. District Court for the Northern District of Illinois, Eastern Division | Barnes & Thornburg LLP | Copyright infringement | Dep: 2004 Report: 2004 |
| Arthur D. Little Enterprises, Inc. and The Gillette Company Civil Action No. 11 133 00735 00 | American Arbitration Association Northeast Case Management Center Riverside, Rhode Island | Morgan & Finnegan and Niro, Scavone, Haller & Niro | Licensing dispute | Dep: 2002 Report(2): 2001, 2004 |
| Milliken & Company v. Interface, Inc., et al. Civil Action No. 7:02-3633-20 | U.S. District Court for the District of South Carolina, Spartanburg Division | Kilpatrick Stockton LLP | Patent infringement | Trial: 2004 Dep: 2003 Report(4): 2003 |
| Haggerty Enterprises, Inc. v. Creative Motion Industries, Inc. Case No. 02C 8578 | U.S. District Court for the Northern District of Illinois, Eastern Division | Michael Best & Friedrich LLP | Trademark and trade dress infringement | Report: 2004 |
| Sanyo Energy (USA) Corporation v. BYD Company Limited Case No. 02-CV01900B (JMA) | U.S. District Court for the Southern District of California | Hogan & Hartson LLP | Patent infringement | Dep: 2004 Report: 2004 |

underline indicates client

15

# Julie L. Davis
## Testimony Experience

| Lawsuit | Court | Law Firm | Type | Testimony |
|---|---|---|---|---|
| Loegering Mfg. Inc. v. Grouser Products, Inc. and Ronald J. Hoffart Civil Action No. A3-02-008 | U.S. District Court for the District of North Dakota, Southeastern Division | Merchant & Gould | Patent infringement | Dep: 2004 Report(2): 2003, 2004 |
| Rambus, Inc. v. Infineon Technologies AG, et al. Civil Action No. 3:00CV524 | U.S. District Court for the Eastern District of Virginia | Kirkland & Ellis LLP | Patent infringement, antitrust, breach of contract, fraud and RICO | Dep: 2001 Report(4): 2000, 2001, 2004 |
| Waters Technologies Corporation, et al. v. Applera Corporation Civil Action No. 02-1285-GMS | U.S. District Court for the District of Delaware | Shaw Pittman LLP | Patent infringement | Dep: 2003 Report(2): 2003, 2004 |
| United States Filter Corporation v. Met-Pro Corporation Civil Action No. 02-1491-GMS | U.S. District Court for the District of Delaware | Hale and Dorr LLP | Patent infringement | Report: 2003 |
| John Mezzalingua Associates, Inc. d/b/a PPC, Inc. v. Arris International, Inc. Civil Action No. 03 C 0353 C | U.S. District Court for the Western District of Wisconsin | Bartlit Beck Herman Palenchar & Scott | Patent infringement | Trial: 2003 Dep: 2003 Report(3): 2003 |
| T. Andrew Janes v. Bose Corporation Civil Action No. 02C3886 | U.S. District Court for the Northern District of Illinois, Eastern Division | Fish & Richardson | Patent infringement | Report: 2003 |
| Johnson Controls Technology Company and Johnson Controls Interiors, L.L.C. v. Donnelly Corporation Case No. 1:02-CV-419 | U.S. District Court for the Western District of Michigan | Foley & Lardner | Patent infringement | Report: 2003 |
| France Telecom, et al. and RSA Security Inc. Arbitration No. 11899/DB | International Chamber of Commerce, International Court of Arbitration, Paris, France | Testa, Hurwitz & Thibeault, LLP | Breach of license agreement | Arbitration: 2003 Report: 2003 |
| In re: Application of: Curt H. Appelgren, et al. | U.S. Patent and Trademark Office | Fitzpatrick, Cella, Harper & Scinto | Patent application | Declaration: 2003 |
| Clinical Center Pharmacy, et al. v. IMS Health Incorporated, et al. Case No. 94-L-654 | U.S. Circuit Court, Twentieth Judicial Circuit, St. Clair County, Illinois | Mayer, Brown, Rowe & Maw | Trade secret | Dep: 2003 Report: 2003 |
| Tanox, Inc. and Genentech, Inc. Civil Action No. 74 Y181 01113 99 | American Arbitration Association International Center for Dispute Resolution, San Francisco, California | Latham & Watkins | Trade secret, breach of contract and unfair competition | Arbitration: 2003 Dep: 2002 Report: 2002 |
| Leon Stambler v. RSA Security Inc., VeriSign Inc., First Data Corporation, Openwave Systems, Inc., OmniSky Corporation, and Certicom Corp. Civil Action No. 01-0065 | U.S. District Court for the District of Delaware | Hale and Dorr LLP | Patent infringement | Dep: 2003 Report(2): 2002, 2003 |

underline indicates client

# Julie L. Davis
## Testimony Experience

| Lawsuit | Court | Law Firm | Type | Testimony |
|---|---|---|---|---|
| Susan M. Maxwell v. Meijer, Inc., et al. Civil Action No. IP95-870-C-Y/F | U.S. District Court for the Southern District of Indiana | Baker & Daniels | Patent infringement | Report: 2002 |
| Honeywell International Inc. and Honeywell Intellectual Property Inc. v. Solutia, Inc. Civil Action No. 01-423 | U.S. District Court for the District of Delaware | Kirkland & Ellis LLP | Patent infringement | Report: 2002 |
| BorgWarner Inc. and BorgWarner TorqTransfer Systems Inc. v. New Venture Gear Inc. No. 00-C-7470 | U.S. District Court for the Northern District of Illinois, Eastern Division | Brinks Hofer Gilson & Lione | Patent infringement | Dep: 2002 Report: 2002 |
| ACTV, Inc. and HyperTV Networks, Inc. v. The Walt Disney Co., ABC, Inc. and ESPN, Inc. Civil Action No. 00CIV 9622 JSR | U.S. District Court for the Southern District of New York | Weil, Gotshal & Manges LLP | Patent infringement | Dep: 2002 Report: 2002 |
| Hill-Rom, Inc. v. Ohmeda Medical, Inc. No. C.A. IP001500-CY/G | U.S. District Court for the Southern District of Indiana, Indianapolis Division | Barnes & Thornburg | Patent infringement | Dep: 2002 Report(2): 2002 |
| Bancorp Services, L.L.C. v. Hartford Life Insurance Company and International Corporate Marketing Group, Inc. No. 4:00-CV-0070 | U.S. District Court for the District of Missouri, Eastern Division | Akin, Gump, Strauss, Hauer & Feld, LLP | Patent infringement and trade secret | Trial: 2002 Dep: 2001 |
| Pechiney Plastic Packaging, Inc. v. Continental PET Technologies, Inc. Civil Action No. B90-558 (EBB) | U.S. District Court for the District of Connecticut | Akin, Gump, Strauss, Hauer & Feld, LLP | Patent infringement | Dep: 2002 Report: 2002 |
| TV/Com International, Inc. v. MediaOne of Greater Florida, Inc., Canal Plus Technologies S.A., Canal Plus US Technologies, Inc. and Société Européene de Contrôle d' Accés No. 3:00-CV-1045-J-21 A | U.S. District Court for the Middle District of Florida, Jacksonville Division | Oblon, Spivak, McClelland, Maier & Neustadt | Patent infringement | Report: 2001 |
| Residential Funding Corporation v. DeGeorge Financial Corp., et al. No. 3:00CV202 (JBA) | U.S. District Court for the District of Connecticut | Bartlit Beck Herman Palenchar & Scott | Breach of contract and unfair trade practices | Trial: 2001 Dep: 2001 Report: 2001 |
| Soitec, S.A. and CEA v. Silicon Genesis Corporation No. Civil Action 99-CV-10826 NG | U.S. District Court for the District of Massachusetts | Winston & Strawn LLP | Patent infringement | Dep: 2001 Report(2): 2000, 2001 |
| Caterpillar, Inc. v. Deere & Company No. 96C 5355 | U.S. District Court for the Northern District of Illinois | Mayer, Brown & Platt | Patent infringement | Dep: 1999 Report(4): 1998, 1999, 2001 |
| Zevo Golf Co., Inc. v. Karsten Manufacturing Corp., et al. No. 99-CV-2310-H | U.S. District Court for the Southern District of California | Bryan Cave LLP | Patent infringement | Dep: 2001 Report: 2001 |

# Julie L. Davis
## Testimony Experience

| Lawsuit | Court | Law Firm | Type | Testimony |
|---|---|---|---|---|
| Roxane Laboratories, Inc. v. Unimed Pharmaceuticals, Inc. No. C2 00 125 | U.S. District Court for the Southern District of Ohio, Eastern Division | Sonnenschein Nath & Rosenthal | Breach of contract | Dep: 2001 Report(2): 2001 |
| Pharmacia & Upjohn AB v. Genentech, Inc. No. 10295/AMW/KGA | International Chamber of Commerce Arbitration | Latham & Watkins | Breach of contract | Arbitration: 2001 Report(3): 2000, 2001 |
| Honeywell International, Inc. and Honeywell Intellectual Properties, Inc. v. Hamilton Sundstrand Corporation No. Civil Action 99-309 (GMS) | U.S. District Court for the District of Delaware | Kirkland & Ellis LLP | Patent infringement | Trial: 2001 Dep: 2001 Report(2): 2000, 2001 |
| MorphoSys AG v. Cambridge Antibody Technology, Ltd. No. 1:99CV01012 | U.S. District Court for the District of Columbia | Katten Muchin Zavis | Patent infringement | Dep: 2000 Report(4): 2000, 2001 |
| CCL Container (Hermitage) Inc. v. Exal Corp. No. Civil Action 98-1786 | U.S. District Court for the Western District of Pennsylvania | Laff, Whitesel & Saret Ltd. | Patent infringement | Dep: 2001 Report: 2000 |
| TorPharm, Inc. v. Ranbaxy Pharmaceuticals, Inc., et al. No. 99-714 (JCL) | U.S. District Court for the District of New Jersey | Lord, Bissell & Brook | Patent infringement | Report: 2000 |
| Xu Liu v. Price Waterhouse LLP and Computer Language Research, Inc. No. 97 C 3093 | U.S. District Court for the Northern District of Illinois, Eastern Division | Kirkland & Ellis LLP | Copyright infringement | Trial: 2000 Dep: 1998 Report(3): 1998 |
| Curtis P. Bryant, Kim R. Bryant and Rebecca Meloan v. American Greetings Corporation No. 99-WM-1819 | U.S. District Court for the District of Colorado | Merchant & Gould | Trademark and copyright infringement | Report: 2000 |
| Rotec Industries, Inc. v. Mitsubishi Corporation No. 99-2080 | U.S. District Court for the Central District of Illinois | Mayer, Brown & Platt | Trade secret | Report: 2000 |
| Spalding Sports Worldwide, Inc. v. Wilson Sporting Goods Company No. 98-CV-2855 | U.S. District Court for the Northern District of Ohio, Eastern Division | Seyfarth Shaw | Patent infringement | Report: 2000 |
| Newell Operating Company, doing business as and through its division, EZ Paintr Company v. Linzer Products Corporation No. 98-C-0864 | U.S. District Court for the Eastern District of Wisconsin | Winston & Strawn LLP | Patent infringement | Report: 2000 |
| Keith S. Champlin, PhD and Midtronics, Inc. v. Actron Manufacturing Company Inc. Civil Action No. 98-CV-06441 | U.S. District Court for the Northern District of Illinois | Sidley & Austin | Patent infringement | Report: 2000 |
| Joseph Serfecz & First Chicago Trust Co. v. Jewel Foods Stores, Inc., et al. No. 92 C 4171 | U.S. District Court for the Northern District of Illinois, Eastern Division | Rock Fusco Reynolds Crowe & Garvey Lynda J. Khan & Associates | Antitrust restraint of trade and breach of contract | Dep(2): 1993, 1997 Report(3): 1993, 1997, 2000 |

underline indicates client

# Julie L. Davis
## Testimony Experience

| Lawsuit | Court | Law Firm | Type | Testimony |
|---------|-------|----------|------|-----------|
| First Health Group Corp., formerly known as HealthCare Compare Corp., d/b/a The First Health AFFORDABLE Medical Networks v. <u>United Payors & United Providers, Inc.</u><br>No. 9 C 2518 | U.S. District Court for the Northern District of Illinois, Eastern Division | Kirkland & Ellis LLP | Unfair competition | Dep(2): 1999<br>Report(2): 1999 |
| <u>Goody Products, Inc.</u> v. The New L&N Sales & Marketing, Inc. and Rommy Hunt Revson<br>Civil Action No. 99C-0724 | U.S. District Court for the Northern District of Illinois, Eastern Division | Schiff Hardin & Waite | Patent infringement | Dep: 1999<br>Report: 1999 |
| <u>Lucent Technologies, Inc.</u> v. Newbridge Networks Corporation and Newbridge Networks Inc.<br>No. 97-347 | U.S. District Court for the District of Delaware | Kirkland & Ellis LLP | Patent infringement | Trial: 1999<br>Dep: 1999<br>Report(2): 1999, 2000 |
| <u>EMI Group North America, Inc.</u> v. Cypress Semiconductor Corporation<br>No. 98-350-RRM | U.S. District Court for the District of Delaware | Sidley & Austin and Morris, Nichols, Arsht & Tunnell | Patent infringement | Trial: 1999<br>Dep: 1999<br>Report: 1999 |
| Precor Incorporated v. <u>Life Fitness, et al.</u><br>No. C94-1586C | U.S. District Court for the Western District of Washington at Seattle | Lane Powell Spears & Lubersky and Bartlit Beck Herman Palenchar & Scott | Patent infringement and unfair competition | Trial: 1999<br>Dep(3): 1995, 1996, 1999<br>Report(3): 1995, 1996, 1999 |
| The Regents of the University of California v. <u>Genentech, Inc.</u><br>No. C 90-2232 CAL | U.S. District Court for the Northern District of California | Rogers & Wells | Patent infringement | Dep: 1998, 1999<br>Report(2): 1997, 1999 |
| <u>AMP Incorporated and The Whitaker Corporation</u> v. Teradyne, Inc.<br>No. 4:CV-98-0975 | U.S. District Court for the Middle District of Pennsylvania | Brinks Hofer Gilson & Lione | Patent infringement and trade secret | Dep: 1999<br>Report: 1999 |
| Investment Holdings, Inc., and its wholly-owned subsidiaries Surface Technical Systems, Inc., Electrolizing, Inc. and ME-92 Operations, Inc. v. <u>Smith & Nephew, Inc. and Harry E. Corl, III</u><br>Case No. 97-3021 | U.S. District Court for the Western District of Tennessee | Fulbright & Jaworski | Trade secret | Dep: 1999<br>Report: 1999 |
| LePage's Incorporated and LePage's Management Co. LLC v. <u>Minnesota Mining and Manufacturing Company (3M)</u><br>No. 97-CV-3983 | U.S. District Court for the Eastern District of Pennsylvania | Collier, Shannon, Rill & Scott | Antitrust | Trial: 1999<br>Dep: 1998<br>Report: 1998 |
| <u>Micro Solutions, Inc.</u> v. Hewlett-Packard Company, <u>Micro Solutions, Inc.</u> v. Computer Connections America, Inc., and H45 Technology Corporation<br>Civil Action No. 98 C 50135 | U.S. District Court for the Northern District of Illinois, Western Division | Brinks Hofer Gilson & Lione | Patent infringement | Dep: 1999<br>Report: 1999 |
| Ferndale Laboratories, Inc. v. <u>Block Drug Company, Inc., Reed & Carnrick Division and Schwarz Pharma, Inc.</u><br>No. 95-CV-12796-DT | U.S. District Court for the Eastern District of Michigan, Southern Division | Dickinson, Wright, Moon, Van Dusen & Freeman | Breach of contract | Trial: 1999<br>Dep: 1997<br>Report(2): 1997, 1999 |

underline indicates client

19

# Julie L. Davis
## Testimony Experience

| Lawsuit | Court | Law Firm | Type | Testimony |
|---------|-------|----------|------|-----------|
| Hilgraeve Corporation v. McAfee Associates, Inc. (Network Associates) No. 97-74695 | U.S. District Court for the Eastern District of Michigan, Southern Division | Wilson, Sonsini, Goodrich & Rosati | Patent infringement | Report: 1998 |
| Dade Behring Marburg GmbH Syva Company, and Dade Behring, Inc. v. Biosite Diagnostics, Inc. No. 97-501 | U.S. District Court for the District of Delaware | Kaye, Scholer, Fierman, Hays & Handler | Patent infringement | Dep: 1998 Report: 1998 |
| United Technologies Motors Systems, Inc. v. Borg Warner Automotive, Inc. No. 97-71706 | U.S. District Court for the Eastern District of Michigan, Southern Division | Brinks Hofer Gilson & Lione | Patent infringement | Report: 1998 |
| F.C. Cycles International, Inc. v. FILA Sport S.p.A. No. AMD 96-107 | U.S. District Court for the District of Maryland | Dickstein Shapiro Morin & Oshinsky | Wrongful termination of a license | Dep: 1998 Report: 1998 |
| Videojet Systems International, Inc. v. Eagle Inks, Inc. and Frank M. Quaglia, Jr. No. 97 C 4505 | U.S. District Court for the Northern District of Illinois | Jones, Day, Reavis & Pogue | Patent infringement | Report: 1998 |
| Smith & Nephew Richards, Inc. v. Zimmer, Inc. No. 94-2479 GBRO | U.S. District Court for the Western District of Tennessee | Pravel Hewitt Kimball & Krieger | Patent infringement | Dep: 1998 Report(4): 1998 |
| Alumax, Inc. v. Hot Metal Molding, Inc., Hot Metal Technologies, Inc., Buhler, Inc., Buhler AG, and Ormet Primary Aluminum Corporation No. LR-C-95-486 | U.S. District Court for the Eastern District of Arkansas, Little Rock Division | Jones & Askew | Patent infringement | Dep: 1998 Report(3): 1998 |
| Time Inc. v. Petersen Publishing Company, LLC Civil Action No. 97 Civ. 5879 (HB) | U.S. District Court for the Southern District of New York | Kirkland & Ellis LLP | Trademark infringement | Trial: 1998 Dep: 1998 Report(2): 1998 |
| Donald E. Haney v. Timesavers, Inc., et al. No. CV-93-151-HA (Lead) | U.S. District Court for the District of Oregon | Bartlit Beck Herman Palenchar & Scott | Patent infringement | Trial: 1998 Dep: 1997 Report: 1997 |
| Stryker Corporation v. Davol, Inc. Davol, Inc. v. Stryker Corporation No. 96CV191 | U.S. District Court for the Western District of Michigan, Southern Division | Winston & Strawn LLP | Patent infringement | Trial: 1998 Dep(2): 1998 Report(6): 1997, 1998 |
| Caterpillar, Inc. v. Detroit Diesel Corporation No. 3:95 CV0489 RM | U.S. District Court for the Northern District of Indiana, South Bend Division | Ungaretti & Harris, Barnes & Thornburg, and Howrey & Simon | Patent infringement | Dep(2): 1997, 1998 Report(2): 1997, 1998 |
| Mattel, Inc. v. Thomas Lowe Ventures, Inc., et al. and Thomas Lowe Ventures, Inc., et al. v. Mattel, Inc. No. CV 96-7872 CBM (CWx) | U.S. District Court for the Central District of California | Laff, Whitesel, Conte & Saret | Copyright, trademark and trade dress infringement, unfair competition, and false advertising | Report(2): 1997 |

underline indicates client

# Julie L. Davis
# Testimony Experience

| Lawsuit | Court | Law Firm | Type | Testimony |
|---|---|---|---|---|
| Genentech, Inc. v. Boehringer Mannheim GmbH, and Boehringer Mannheim Corporation No. 96-11090 PBS | U.S. District Court for the District of Massachusetts | Rogers & Wells | Patent infringement | Dep: 1997 Report: 1997 |
| C&F Packing Co., Inc. v. IBP, Inc., and Pizza Hut, Inc. No. 93 C 1601 | U.S. District Court for the Northern District of Illinois, Eastern Division | Schiff Hardin & Waite and Seyfarth Shaw | Patent infringement and trade secret | Trial: 1998 Dep: 1997 Report: 1996 |
| Industrial Wire Products, Inc. v. Lee/Rowan Company and Gary Lee No. 4:95 CVO1705CAS | U.S. District Court for the Eastern District of Michigan | Schiff Hardin & Waite | Patent and trademark infringement | Report: 1997 |
| Newell Operating Company, doing business as and through its division, EZ Paintr Company v. Wooster Brush Company No. 96-C-511 | U.S. District Court for the Eastern District of Wisconsin | Schiff Hardin & Waite | Patent infringement | Dep: 1997 Report(2): 1997 |
| Albert L. Wokas v. Dresser Industries, Inc. d/b/a Wayne Dresser No. 1:96 CV0297 | U.S. District Court for the Northern District of Indiana, Fort Wayne Division | Bartlit Beck Herman Palenchar & Scott | Patent infringement | Dep: 1997 Report: 1997 |
| Discovision Associates v. Disc Manufacturing, Inc. consolidated with Disc Manufacturing, Inc. v. Pioneer Electronic Corp., Pioneer Electronics (USA) Inc., Pioneer Electronics Capital, Inc., and Discovision Assoc. Nos. 95-345-SLR and 95-21-SLR | U.S. District Court for the District of Delaware | Brinks Hofer Gilson & Lione | Antitrust and unfair competition | Dep: 1997 Report: 1997 |
| PPG Industries, Inc. v. Guardian Industries Corporation No. 94-1112 | U.S. District Court for the Western District of Pennsylvania | Kirkland & Ellis LLP | Patent infringement | Trial: 1997 Report(2): 1997 |
| Gossen Corporation v. Marley Mouldings, Inc. No. 96-C-0351 | U.S. District Court for the Eastern District of Wisconsin | Leydig, Voit & Mayer, Ltd. | Patent infringement | Dep(2): 1997 Report: 1997 |
| Sextant Avionique, S.A. v. Analog Devices, Inc. No. C95 2838 SI | U.S. District Court for the Northern District of California | Fried, Frank, Harris, Shriver & Jacobson | Patent infringement | Dep: 1997 Report: 1997 |
| NeXstar Pharmaceuticals, Inc. v. The Liposome Company, Inc. The Liposome Company, Inc. v. NeXstar Pharmaceuticals, Inc. and Fujisawa USA, Inc. Civil Action No. 93-232 (RRM) | U.S. District Court for the District of Delaware | Rogers & Wells | Patent infringement | Report(2): 1997 |
| Avon Products, Inc. v. S.C. Johnson & Son, Inc. 94 Civ. 3958 (AGS) | U.S. District Court for the Southern District of New York | Pattishall, McAuliffe, Newbury, Hilliard & Geraldson LLP | False advertising | Trial: 1997 Dep: 1996 Report(3): 1996 |
| Symtron Systems, Inc. v. Contraves, Inc. No. 94-4109 (AMW) | U.S. District Court for the District of New Jersey | Graham, Curtin & Sheridan | Patent infringement | Report: 1996 |

underline indicates client

# Julie L. Davis
## Testimony Experience

| Lawsuit | Court | Law Firm | Type | Testimony |
|---|---|---|---|---|
| Ajinomoto Co., Inc. v. Archer Daniels Midland Co. No. 95-218 (SLR) | U.S. District Court for the District of Delaware | Laff, Whitesel, Conte & Saret and Williams & Connolly | Patent infringement | Trial:  1996 Dep:  1996 Report:  1996 |
| General Signal Corporation v. Applied Materials, Inc. No. 94-461 | U.S. District Court for the District of Delaware | Rogers & Wells | Patent infringement | Report:  1996 |
| Dade International, Inc. v. Electronic Data Systems Corporation No. 95-1293 | U.S. District Court for the Southern District of Florida | Holleb & Coff | Breach of contract | Arbitration:  1996 Dep:  1996 Report(3):  1996, 1997 |
| O.I. Corporation v. Tekmar Company No. G-95-113 | U.S. District Court for the Southern District of Texas, Galveston Division | Fish & Neave | Patent infringement | Report:  1996 |
| Cistron Biotechnology, Inc. v. Immunex Corp. No. C93-1742WD | U.S. District Court for the Western District of Washington | Kirkland & Ellis LLP | Trade secret | Report(2):  1996 |
| Monon Corporation v. Stoughton Trailers, Inc. No. 95C0511 | U.S. District Court for the Northern District of Illinois | Lee F. Grossman & Associates | Patent infringement | Report:  1996 |
| Lull Industries, Inc. v. Pettibone Corporation and Traverse Lift Company No. 4-94-227 | U.S. District Court for the District of Minnesota, 4th Division | Sperling, Slater & Spitz | Patent infringement and antitrust | Report(2):  1995 |
| Dorr-Oliver Incorporated v. Fluid-Quip, Inc., Andrew Franko, and Pic Tek, Inc. No. 93 C 0842 | U.S. District Court for the Northern District of Illinois, Eastern Division | Felfe & Lynch | Trademark and trade dress infringement | Trial:  1995 Report:  1995 |
| Richardson-Vicks, Inc. v. Upjohn Company, McNeil-PPC, Inc. and Johnson & Johnson No. 93-556SLR | U.S. District Court for the District of Delaware | Brinks Hofer Gilson & Lione | Patent infringement | Trial:  1995 Dep:  1995 Report:  1995 |
| Storck USA, LP, and August Storck v. Farley Candy Company, Inc. No. 92 C 0552 | U.S. District Court for the Northern District of Illinois, Eastern Division | Laff, Whitesel, Conte & Saret | Trade dress and false advertising | Trial:  1995 Dep:  1995 Report(4):  1994, 1995 |
| Al-Site Corp. v. Opti-Ray, Inc. No. CV-91-1770 (ILG) and No. CV-92-4205 (ILG) | U.S. District Court for the Eastern District of New York | Schiff Hardin & Waite | Patent infringement | Trial:  1995 Dep(2):  1994, 1995 Report(2):  1994, 1995 |
| The Dow Chemical Co. v. The United States No. 19-83C | U.S. Court of Federal Claims | Lieberman & Nowak | Patent infringement | Trial:  1994 Dep:  1994 |
| Imax Corporation v. World Odyssey, Inc. and the Jefferson National Expansion Historical Association, Inc. No. 4:93 V001285 GFG | U.S. District Court for the Eastern District of Missouri | Laff, Whitesel, Conte & Saret | Patent infringement | Dep:  1994 |
| Morton International, Inc. v. Thomas E. Nowakowski, et al. No. 93-CV-2967 | U.S. District Court for the Eastern District of Pennsylvania | Jones, Day, Reavis & Pogue | Trade secret | Dep:  1994 Report:  1994 |

underline indicates client

# Julie L. Davis
## Testimony Experience

| Lawsuit | Court | Law Firm | Type | Testimony |
|---|---|---|---|---|
| BHI Corporation, et al. v. Mesirow Realty Management, Inc. No. 89 CH 3332 | Circuit Court of Cook County, Illinois, Chancery Division | Clausen, Miller, Gorman Caffrey & Witous, P.C. | Business interruption | Dep: 1994 Report: 1990 |
| Charles C. Allenson v. Hoyne Savings Bank No. 90 CH 10351 | Circuit Court of Cook County, Illinois, Chancery Division | Ruff, Weidenaar & Reidy, Ltd. | Deceptive business practice and consumer fraud | Dep: 1994 |
| Brent Thomas Smith, et al. v. Kansas City Power and Light Co. d/b/a KPL Gas Service Co. CV91-0873-CV-W-3 | U.S. District Court for the Western District of Missouri, Kansas City Division | Hillix, Brewer, Hoffhaus, Whittaker & Wright | Business interruption | Trial: 1992 Dep: 1992 Report: 1992 |
| Electronic Business Systems, Inc. v. Omron Business Systems, Inc. | U.S. District Court for the District of Kansas | Mayer Brown & Platt | Dealership termination | Dep: 1988 |

underline indicates client

23

General Electric Company v. Mitsubishi Heavy Industries, Ltd. and Mitsubishi Power Systems Americas, Inc.                    **Exhibit 2**

**Documents Considered in Forming Opinion**

| Begin Bates | End Bates | Description |
|---|---|---|
| EDISON MISSION 0000040 | EDISON MISSION 0000049 | Term Sheet between Edison Mission Energy and Mitsubishi Power Systems Americas, Inc., December 7, 2006 |
| EDISON MISSION 0000095 | EDISON MISSION 0000117 | Revision 1 - Technical Review of the Mitsubishi MWT/95 Wind Turbine, December 27, 2006 |
| EDISON MISSION 0000458 | EDISON MISSION 0000478 | Revision 2 - Technical Review of the Mitsubishi MWT/95 Wind Turbine, February 1, 2007 |
| EDISON MISSION 0000479 | EDISON MISSION 0000499 | Revision 2 - Technical Review of the Mitsubishi MWT/95 Wind Turbine, February 1, 2007 |
| EDISON MISSION 0000524 | EDISON MISSION 0000535 | Determination of the voltage dip capability of the MWT 95/2.4 according to FERC order 661-A, March 12, 2009 |
| EDISON MISSION 0000560 | EDISON MISSION 0000563 | Germanischer Lloyd Industrial Services GmbH Renewables Certification Report, April 24, 2009 |
| EDISON MISSION 0000581 | EDISON MISSION 0000588 | Supplemental Declaration of Robert E. Palmer in Support of Plaintiff Edison Mission Energy's Reply to Defendants' Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Preliminary Injunction, July 23, 2010 |
| EDISON MISSION 0000589 | EDISON MISSION 0000597 | Supplemental Declaration of Karen House in Support of Plaintiff Edison Mission Energy's Reply to Defendants' Memorandum of Points |
| EDISON MISSION 0000609 | EDISON MISSION 0000623 | Plaintiff Edison Mission Energy's Reply to Defendants' Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for |
| EDISON MISSION 0000627 | EDISON MISSION 0000631 | Declaration of Karen House in Support of Plaintiff Edison Mission Energy's Motion for Preliminary Injunction, July 6, 2010 |
| EDISON MISSION 0000632 | EDISON MISSION 0000757 | Declaration of Robert E. Palmer in Support of Plaintiff Edison Mission Energy's Motion for Preliminary Injunction, July 6, 2010 |
| EDISON MISSION 0000769 | EDISON MISSION 0000892 | Declaration of Gerard P. Loughman in Support of Plaintiff Edison Mission Energy's Motion for Preliminary Injunction, July 2, 2010 |
| GENDTX00000025 | GENDTX00000063 | Contract for the Sale of Power Generation Equipment and Related Services between General Electric Company and Tawhiri Power LLC, December 8, 2005 |
| GENDTX00000662 | GENDTX00000755 | Contract for the Sale of Power Generation Equipment and Related Services between General Electric Company and Airtricity, Inc., June 26, 2006 |
| GENDTX00001555 | GENDTX00001557 | Technical drawings |
| GENDTX00001558 | GENDTX00001559 | Technical drawings |
| GENDTX00001688 | GENDTX00001729 | Strength calculation on the bolt connection of the upper and lower part of the machine frame of the GEWE 3.x wind turbine, June 26, 2002 |
| GENDTX00072693 | GENDTX00072765 | Master Contract for the Sale of Power Generation Equipment and Related Services (2008 WTGs) between General Electric Company and Noble Environmental Power 2008 Equipment Co., LLC, October 17, 2006 |
| GENDTX00074646 | GENDTX00074797 | GE Financial Summaries by Opportunity or Project |
| GENDTX00099485 | GENDTX00099507 | GE Wind Energy Financial Information 2005 - 2007 |
| GENDTX00099564 | GENDTX00099579 | GE Wind Energy Orders 2007 - 2009 |
| GENDTX00099580 | GENDTX00099781 | GE Financial Summaries by Opportunity or Project |
| GENDTX00102743 | GENDTX00102866 | Contract for Sale of Wind Turbine Generators with Field Engineering Services between GE Wind Energy and Kaheawa Wind, January 19, 2005 |
| GENDTX00104847 | GENDTX00104866 | Patent License Agreement between GE Infrastructure Technology LLC, GE Infrastructure Technology International Inc. and AAER, Inc., April 9, 2007 |
| GENDTX00104867 | | Signature page to license agreement, June 23, 2006 |
| GENDTX00104868 | GENDTX00104877 | License Agreement between GE Power Technology LLC and Americas Wind Energy, Inc., May 11, 2005 |
| GENDTX00104878 | GENDTX00104892 | Patent License Agreement between GE Infrastructure Technology LLC, GE Infrastructure Technology International Inc. and Conergy Wind GmbH, October 8, 2008 |
| GENDTX00104878 | GENDTX00104892 | Patent License Agreement between GE Infrastructure Technology LLC, GE Infrastructure Technology International Inc., Blitz F08-eins- |
| GENDTX00104893 | GENDTX00104932 | Settlement and Cross-License Agreement between Enercon GMBH, Mr. Aloys Wobben and General Electric Company, May 10, 2004 |
| GENDTX00104933 | GENDTX00104957 | Patent License Agreement between GE Infrastructure Technology LLC, GE Infrastructure Technology International Inc. and EU Energy Inc., October 6, 2006 |
| GENDTX00104958 | GENDTX00105004 | Settlement and Cross License Agreement between Gamesa Eolica, S.A. and GE Wind Energy, LLC, April 1, 2005 |
| GENDTX00105005 | GENDTX00105018 | Patent License Agreement between GE Infrastructure Technology LLC, GE Infrastructure Technology International Inc. and Ming Yang Wind Power Technology Company Ltd., November 28, 2008 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

General Electric Company v. Mitsubishi Heavy Industries, Ltd. and Mitsubishi Power Systems Americas, Inc.                    Exhibit 2

Documents Considered in Forming Opinion

| Begin Bates | End Bates | Description |
|---|---|---|
| GENDTX00105019 | GENDTX00105028 | License Agreement between GE Infrastructure Technology LLC, GE Infrastructure Technology International Inc. and Fuhrlander AG, April 19, 2006 |
| GENDTX00105029 | GENDTX00105045 | Patent License Agreement between GE Infrastructure Technology LLC, GE Infrastructure Technology International Inc. and Repower Systems AG, June 6, 2006 |
| GENDTX00105046 | GENDTX00105054 | License Agreement between GE Infrastructure Technology LLC, GE Infrastructure Technology International Inc. and Vensys Energiesysteme GmbH & Co. KG, February 23, 2006 |
| GENDTX00105055 | GENDTX00105076 | Patent License Agreement between GE Infrastructure Technology LLC, GE Infrastructure Technology International Inc. and Harrington License Company, LLC, April 27, 2006 |
| GENDTX00105260 | GENDTX00105261 | Document in a foreign language |
| GENDTX01457974 | GENDTX01458005 | Garrad Hassan Technical Due Diligence Review of the GE Offshore Turbine, April 29, 2010 |
| GENDTX01490607 | GENDTX01490609 | Email re: 2.4MW MHI - PPM, October 24, 2006 |
| GENDTX01565425 | GENDTX01565426 | Email re: Deadlines for sending Presentations, September 29, 2004 |
| GENDTX01726871 | | Email re: EER On Point for Global Wind Advisory Clients - Mitsubishi Squares off with GE Wind for Supply, October 29, 2009 |
| GENDTX01853518 | GENDTX01853519 | Curriculum Vitae of Vincent Michael Schellings |
| GENDTX03219508 | | Iberdrola Renewables Inc. GE Short Listed 300-350 MW RFP, March 4, 2011 |
| GENDTX03429944 | GENDTX03430015 | J.P. Morgan Global Equity Research - Global Power Market Review, February 24, 2009 |
| GENDTX03502874 | GENDTX03502944 | US Wind Power Markets and Strategies, 2008-2020, July 2008 |
| GENDTX03612863 | GENDTX03612963 | Email with RFQ attachments re: Iberdrola US RFP 2010-12, January 7, 2008 |
| GENDTX04748337 | GENDTX04748570 | Emerging Energy Research - US Wind Power Market and Strategies: 2010 - 2025, May 2010 |
| GENDTX05533662 | GENDTX05533667 | Email re: IP Inventory/Catalogue Process Wind Energy, August 11, 2004 |
| GENDTX05533669 | GENDTX05533671 | Spreadsheet with IP Categories |
| GENDTX05538060 | GENDTX05538157 | General Electric Energy, General Electric Wind Energy Economic Analysis of Transfer of Intangible Property by PricewaterhouseCoopers LLP, February 15, 2005 |
| GENDTX05901003 | GENDTX05901092 | Strength calculation on the EW 3.x wind turbine machine frame, January 15, 2002 |
| GENDTX07603439 | GENDTX07603582 | Wind Growth Playbook 2007, April 23, 2006 |
| GENDTX07607516 | GENDTX07607532 | Renewable Growth Playbook 2007, May 2, 2007 |
| GENDTX07607547 | GENDTX07607599 | Renewable Energy Growth Playbook, May 20, 2009 |
| GENDTX07659163 | GENDTX07659212 | Wind Growth Playbook 2006, April 11, 2006 |
| GENDTX07662813 | GENDTX07662814 | Email re: GEPS GTC IP Inventory Template, February 5, 2004 |
| GENDTX07664166 | GENDTX07664329 | GE Budgetary Quotes and Emails for EME and Iberdrola |
| GENDTX07664330 | GENDTX07664337 | Letter re: Firm Proposal for Iberdrola Renovables, USA Frame Agreement for the Purchase of Wind Turbines in the 2010-2012 Period, January 21, 2008 |
| GENDTX07664338 | GENDTX07664339 | Email re: Summary of conditions Taloga/MTSA/Broken Bow transactions, September 14, 2010 |
| GENDTX07665834 | GENDTX07665835 | Email re: turbine cost, November 20, 2001 |
| GENDTX07668375 | GENDTX07668426 | Enron Wind presentation in a foreign language |
| GENDTX07670414 | | Email in a foreign language, January 23, 2001 |
| GENDTX07670449 | | Email in a foreign language, December 12, 2000 |
| GENDTX07692734 | | 2.5 MH - Capacity and Cost Analysis |
| GENDTX07692736 | | WA State Cargo Weight Requirements |
| GENDTX07692737 | GENDTX07692793 | Renewable Energy Growth Playbook, May 20, 2009 |
| GENDTX07692799 | GENDTX07692800 | Email re: Summary of conditions Taloga/MTSA/Broken Bow transactions, September 30, 2010 |
| GENDTX07692801 | GENDTX07692803 | Email re: Pricing for turbines, September 1, 2010 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

General Electric Company v. Mitsubishi Heavy Industries, Ltd. and Mitsubishi Power Systems Americas, Inc.                    Exhibit 2

Documents Considered in Forming Opinion

| Begin Bates | End Bates | Description |
|---|---|---|
| GENDTX07692804 | GENDTX07692806 | Email re: Taloga Discussions, September 29, 2010 |
| GENDTX07692807 | GENDTX07692914 | Email with attachment re: Redlined TSA (Taloga), October 1, 2010 |
| GENDTX07692915 | GENDTX07692934 | Summary of track changes |
| GENDTX07692935 | GENDTX07693031 | Renewables Growth Playbook, May 7, 2008 |
| GENDTX07693032 | GENDTX07693032 | Email with attachment re: EME Taloga Redline, October 11, 2010 |
| GENDTX07693112 | GENDTX07693113 | Email re: EME Taloga Update, October 7, 2010 |
| GENDTX07693114 | GENDTX07693116 | Email re: EME, September 1, 2010 |
| GENDTX07693117 | GENDTX07693118 | Email re: 2011 Delivery, September 1, 2010 |
| GENDTX07693119 | GENDTX07693126 | Email with attachment re: GE 1.6 XLE Pricing, September 2, 2010 |
| GENDTX07693127 | GENDTX07693205 | Contract for the Sale of Power Generation Equipment and Related Services between General Electric Company and [Customer Name], October 11, 2010 (draft) |
| GENDTX07693206 | GENDTX07693208 | Email re: Contract conditions and pricing, September 16, 2010 |
| GENDTX07693209 | GENDTX07693212 | Email re: Budgetary Price Quote, August 10, 2010 |
| GENDTX07693213 | GENDTX07693214 | Email re: EME Update Sep 10 2010, September 14, 2010 |
| GENDTX07693215 | GENDTX07693216 | Email re: GE 1.6 XLE Pricing, September 2, 2010 |
| GENDTX07693217 | GENDTX07693219 | Email re: Pricing for turbines, September 1, 2010 |
| GENDTX07693220 | GENDTX07693223 | Email re: Project manager's contact info |
| GENDTX07693224 | GENDTX07693227 | Email re: Taloga Status |
| GENDTX07693228 | GENDTX07693231 | Email re: Taloga Ts and Cs, October 7, 2010 |
| GENDTX07693232 | GENDTX07693339 | Email with attachment re: Redlined TSA (Taloga), October 1, 2010 |
| GENDTX07693340 | GENDTX07693359 | Summary of track changes |
| GENDTX07693360 | GENDTX07693361 | Email re: EME proposal, September 10, 2010 |
| GENDTX07693362 | GENDTX07693366 | Email with attachment re: Taloga 130 MW Summary and Action Items |
| GENDTX07693367 | GENDTX07693368 | Email re: Taloga Status |
| GENDTX07693369 | GENDTX07693370 | Email re: Taloga Ts and Cs |
| GENDTX07693371 | GENDTX07693424 | Renewables Growth Playbook, May 7, 2008 |
| GENDTX07693443 | GENDTX07693501 | Renewable Growth Playbook 2007, May 2, 2007 |
| GENDTX07693584 | GENDTX07693595 | First Amendment to Contract for the Sale of Power Generation Equipment and Related Services, February 23, 2009 |
| GENDTX07693596 | GENDTX07693653 | Attachment 6 to Original Contract Delivery Order-2 for the Sale of Power Generation Equipment and Related Services - Manzana, July 29, 2010 |
| GENDTX07693654 | GENDTX07693716 | Attachment 6 to Original Contract Delivery Order-2 for the Sale of Power Generation Equipment and Related Services - Learning Juniper, |
| GENDTX07693717 | GENDTX07693775 | Operations Support Agreement between Cedro Hill Wind LLC and General Electric International Incorporated, December 3, 2009 |
| GENDTX07693776 | | Marketshare data |
| GENDTX07693777 | GENDTX07693778 | Conergy PowerWind 56 Technical Data |
| GENDTX07693779 | GENDTX07693819 | Operations Support Agreement between Edison Mission Energy and General Electric International Incorporated, May 8, 2009 |
| GENDTX07693820 | | Letter re: GE Yaw Brake Patent # EP945613B1, November 3, 2008 |
| GENDTX07693821 | GENDTX07693878 | Operations Support Agreement between Laredo Ridge Wind, LLC and General Electric International Incorporated, July 8, 2010 |
| GENDTX07693879 | GENDTX07693880 | Sales Summary for Cedro Hill Project, September 25, 2009 |
| GENDTX07693881 | | Wind Turbine Sales List of MHI, January 2009 |
| GENDTX07693882 | | 2011 GPB Assembly Capacity.xls |
| GENDTX07693883 | | Blade Capacity 1-28-2010.xls |
| GENDTX07693884 | GENDTX07693897 | Commodity Playbook Template 4-1-2010.ppt |

General Electric Company v. Mitsubishi Heavy Industries, Ltd. and Mitsubishi Power Systems Americas, Inc.          Exhibit 2

Documents Considered in Forming Opinion

| Begin Bates | End Bates | Description |
|---|---|---|
| GENDTX07693898 | | SLE Blade Volume Summary 12-7-09.xls |
| GENDTX6899200 | GENDTX6899230 | 2011 May DR Sales and Margin |
| GENDTX6899231 | GENDTX6899255 | TY Sales and Margin |
| GENDTX7326110 | GENDTX7326123 | GE presentation - Erection of a Windturbine |
| GEWT00676073 | GEWT00676087 | Patent Cross-License Agreement between GE Infrastructure Technology LLC, GE Infrastructure Technology International Inc., and Acciona Windpower, S.A., June 23, 2006 |
| GEWT00737722 | GEWT00737750 | Wind 2006 Volume and Americas Commercial Strategy Review, July 14, 2005 |
| IBR0000525 | IBR0000526 | Email re: Iberdrola/PPM Technical Clarification, February 15, 2008 |
| IBR0000534 | IBR0000535 | Email re: MHI Wind Turbine Supply for 2010 Projects, February 1, 2008 |
| IBR0000655 | | Email re: Confirmation and detail on FERC 661 and 661a compliance, August 14, 2008 |
| IBR0000900 | IBR0000905 | Email re: Penascal Purchase Contract, December 13, 2007 |
| IBR0000925 | IBR0000954 | MWT95/2.4 (60Hz, 80m hub height) Wind Turbine Generator specifications, January 16, 2008 |
| IBR00009663 | IBR00009666 | 2008 Turbine Sort/Allocation Mtg, August 16, 2007 |
| IBR00009715 | IBR00009816 | Generator Interconnection Agreement (GIA) between Heartland Wind LLC, Northern States Power, and Midwest Independent Transmission System Operator, Inc., June 15, 2010 |
| IBR00009826 | IBR00009834 | Letter re: Project G514 - Request to Change Wind Turbines, December 9, 2009 |
| IBR00009876 | IBR00009959 | Standard Large Generator Interconnection Agreement between Bonneville Power Administration and Juniper Canyon Wind Power LLC |
| IBR00010061 | IBR00010109 | Interconnect Agreement between Electric Transmission Texas, LLC and Heartland Wind LLC, May 8, 2009 |
| IBR0004407 | IBR0004408 | Over/Low Voltage Ride Through Capability |
| IBR0006901 | IBR0006906 | Letter re: TPO#3 and TPO#4 Change order request for deferral of delivery, January 13, 2009 |
| MHINDTX0000003 | MHINDTX0000060 | MHI Engineering Sheet re: Design Approval for MWT92/2.4 (50/60Hz) Erection Manual, May 15, 2007 |
| MHINDTX0000061 | MHINDTX0000170 | Ingecon Wind Converter Control (CCU) User Manual |
| MHINDTX0000293 | MHINDTX0000359 | Ingecon Wind Firmware for AK9729 CCU User Manual, April 19, 2007 |
| MHINDTX0034452 | MHINDTX0035255 | General Electric Company Mod-5A Wind Turbine Generator Program Design Report, August 1984 |
| MHINDTX0063810 | MHINDTX0063825 | Email in a foreign language |
| MHINDTX0100000 | MHINDTX0100032 | MHI Engineering Sheet re: Design Approval for MWT92/2.4 (50/60Hz) Commissioning Manual, May 15, 2007 |
| MHINDTX0212116 | MHINDTX0212131 | MPSA Technical Presentation for MWT62/1.0, MWT92/2.4 & 95/2.4, January 2007 |
| MHINDTX0349206 | MHINDTX0349519 | Patent Application 10/126,999, Patent Number 6,879,055 |
| MHINDTX0456169 | MHINDTX0456232 | Mitsubishi Wind Turbine presentation, February 2008 |
| MHINDTX0606209 | MHINDTX0606211 | Letter re: Budget Proposal for MWT-92A Prototype Turbine, June 18, 2004 |
| MHINDTX0716040 | MHINDTX0716044 | Spreadsheet with wind turbine data in a foreign language, July 20, 2006 |
| MHINDTX0978051 | MHINDTX0978060 | Email re: PPM/Iberdrola 2010-2012, January 11, 2008 |
| MHINDTX0982808 | MHINDTX0982817 | Email re: PPM/Penascal - PO request for special tools to MHI, February 16, 2006 |
| MHINDTX1025726 | MHINDTX1025748 | Revision 1 - Technical Review of the Mitsubishi MWT/95 Wind Turbine, December 27, 2006 |
| MHINDTX1558791 | MHINDTX1558802 | Mitsubishi presentation - Advanced Wind Turbine |
| MHINDTX2534155 | MHINDTX2534226 | Cranes Access Volume 8, Issue 6, October 2006 |
| MHINDTX2721013 | | Mitsubishi Heavy Industries Financial Information |
| MHINDTX2758789 | MHINDTX2758818 | Email re: Technical comments to Iberdrola Renewables specification, April 14, 2008 |
| MHINDTX3119186 | MHINDTX3119188 | Email re: Iberdrola/PPM Technical Clarification, February 16, 2008 |
| MHINDTX3891972 | MHINDTX3891977 | National Renewable Energy Laboratory Wind Turbine Design Cost and Scaling Model, December 2006 |
| MHINDTX3903584 | MHINDTX3903591 | MPSA and MHI financials in a foreign language |
| MHINDTX3903592 | MHINDTX3903602 | Quitclaim Nonexclusive License Agreement between Thomas A. Wilkins and Mitsubishi Heavy Industries, Ltd., December 18, 2009 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

General Electric Company v. Mitsubishi Heavy Industries, Ltd. and Mitsubishi Power Systems Americas, Inc.                           Exhibit 2

Documents Considered in Forming Opinion

| Begin Bates | End Bates | Description |
|---|---|---|
| MHINDTX3903603 | MHINDTX3903647 | Technology License Agreement between TPI Technology, Inc., TPI Composites, Inc., VienTek, LLC, et al., Mitsubishi Power Systems, Inc., and Mitsubishi Heavy Industries, Ltd., dated March 29, 2002 |
| MHINDTX3920887 | | Trailer Cost Comparison, October 5, 2010 |
| MHINDTX3920888 | MHINDTX3920943 | MPSA LA 2010 Technical Forum |
| MHINDTX3920944 | MHINDTX3920972 | Mitsubishi Wind Turbine Development Technical Forum 2009 |
| MHINDTX3920974 | MHINDTX3920983 | Document in a foreign language re: cost data |
| MPSANDTX0000975 | MPSANDTX0001344 | Supply Frame Agreement between Mitsubishi Power Systems Americas, Inc. and PPM Energy, Inc., August 1, 2006 |
| MPSANDTX0001345 | MPSANDTX0001385 | Turbine Purchase Order #3 between PPM Energy, Inc. and Mitsubishi Power Systems Americas, Inc., December 21, 2006 |
| MPSANDTX0001386 | MPSANDTX0001487 | Turbine Purchase Order #3 between PPM Energy, Inc. and Mitsubishi Power Systems Americas, Inc., February 21, 2008 |
| MPSANDTX0001488 | MPSANDTX0001822 | Supply Agreement between Mitsubishi Power Systems Americas, Inc. and Babcock & Brown Infrastructure Group US LLC, June 5, 2007 |
| MPSANDTX0001823 | MPSANDTX0002114 | Supply Agreement between Mitsubishi Power Systems Americas, Inc. and Babcock & Brown Infrastructure Group US LLC, March 30, 2007 |
| MPSANDTX0002115 | MPSANDTX0002410 | Supply Agreement (2010) between Mitsubishi Power Systems Americas, Inc. and Babcock & Brown Infrastructure Group US LLC, |
| MPSANDTX0002411 | MPSANDTX0002433 | Guaranty by Scottish Power Finance (US), Inc. in favor of Mitsubishi Power Systems Americas, Inc., October 23, 2006 |
| MPSANDTX0002434 | MPSANDTX0002509 | Supply Agreement between Mitsubishi Power Systems Americas, Inc. and PPM Energy, Inc., October 23, 2006 |
| MPSANDTX0002510 | MPSANDTX0002585 | Supply Agreement between Mitsubishi Power Systems Americas, Inc. and Edison Mission Energy, March 28, 2007 |
| MPSANDTX0002707 | MPSANDTX0002755 | Mitsubishi Wind Turbine presentation |
| MPSANDTX0002908 | MPSANDTX0002951 | MPS Contract of Purchase re: PPM Flagship PJ MWT92/2.4, October 15, 2007 |
| MPSANDTX0003040 | MPSANDTX0003073 | MPS Change Order re: TPO#4 - Elm Creek II, January 12, 2010 |
| MPSANDTX0003077 | MPSANDTX0003080 | MPS Tech Team Work Scope |
| MPSANDTX0003083 | MPSANDTX0003084 | Letter re: Invitation for Iberdrola Wind turbine Supply for 2010-2012, November 9, 2007 |
| MPSANDTX0003099 | | Letter from Iberdrola to MPSA re: invite for wind turbine supply for 2010-2012, December 18, 2007 |
| MPSANDTX0003136 | MPSANDTX0003141 | Iberdrola Renovables - Framework Agreement for the Purchase of Wind Turbines in the 2010-2012 Period, December 18, 2007 |
| MPSANDTX0003142 | MPSANDTX0003212 | Iberdrola Renewables Wind turbine specification, December 14, 2007 |
| MPSANDTX0003284 | MPSANDTX0003289 | Main Conditions for the Framework Agreement for the Purchase of Wind Turbines in the 2010-2012 Period |
| MPSANDTX0003290 | MPSANDTX0003305 | Main Conditions for Supply Offer for 2010-2012 |
| MPSANDTX0003796 | MPSANDTX0003815 | Proposal for Wind Turbine Generator Supply, January 21, 2008 |
| MPSANDTX0008784 | MPSANDTX0008785 | Letter re: Iberdrola Wind Turbine Supply for 2010-2010, November 22, 2007 |
| MPSANDTX0057943 | MPSANDTX0057947 | European Wind Energy Advisory - Iberernova IPO Banks on Wind, June 29, 2007 |
| MPSANDTX0062627 | MPSANDTX0062632 | Email in a foreign language re: Edison Goat Mounta 2.4MW x 29???, December 20, 2007 |
| MPSANDTX0070939 | MPSANDTX0070943 | Email re: MHI Meeting follow-up, July 24, 2009 |
| MPSANDTX0075474 | MPSANDTX0075566 | Purchase Contract between Mitsubishi Power Systems Americas, Inc. and Penascal Wind Power LLC, July 21, 2008 |
| MPSANDTX0077588 | MPSANDTX0077683 | Purchase Contract between Mitsubishi Power Systems Americas, Inc. and Iberdrola Renewables, Inc., November 20, 2009 |
| MPSANDTX0080488 | MPSANDTX0080492 | Email re: Turbine data, March 20, 2009 |
| MPSANDTX0084227 | MPSANDTX0084331 | MHI Master Packing List |
| MPSANDTX0151170 | MPSANDTX0151188 | Email re: Action Items meeting MHI-EME 04/27/2009, May 26, 2009 |
| MPSANDTX0151202 | MPSANDTX0151205 | Email re: Action Items meeting MHI-EME 04/27/2009, May 27, 2009 |
| MPSANDTX0171771 | MPSANDTX0171775 | Email re: Iberdrola's Evaluation on MWT 102/2.4MW, October 22, 2009 |
| MPSANDTX0188727 | MPSANDTX0188817 | Email re: Elm Creek II - Turbine Info, December 30, 2009 |
| MPSANDTX0191560 | MPSANDTX0191563 | Email in Japanese, January 17, 2010 |
| MPSANDTX0203495 | MPSANDTX0203571 | Wind Energy Owner's Engineer Project Dominion Energy, Inc., April 25, 2008 |
| MPSANDTX0204957 | MPSANDTX0204962 | Request for Information Mitsubishi Turbines Lompoc, CA Project, May 14, 2009 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

General Electric Company v. Mitsubishi Heavy Industries, Ltd. and Mitsubishi Power Systems Americas, Inc.                    **Exhibit 2**

**Documents Considered in Forming Opinion**

| Begin Bates | End Bates | Description |
|---|---|---|
| MPSANDTX0206763 | MPSANDTX0206767 | Email re: MHI 2.4 under voltage, September 16, 2008 |
| MPSANDTX0206768 | MPSANDTX0206770 | LVRT limit curve MWT92&95/2.4 for Canadian Project, January 2008 |
| MPSANDTX0207400 | MPSANDTX0207574 | Mitsubishi Power Systems Americas Financial Information |
| MPSANDTX0269657 | MPSANDTX0269705 | Settlement Agreement, Mutual Release and Amendment to Wind Turbine Generator Supply Agreement between Mitsubishi Power Systems Americas, Inc., Mitsubishi Heavy Industries, Ltd., and Edison Mission Energy, October 8, 2010 |
| MPSANDTX0279518 | MPSANDTX0279521 | MPS Financials |
| | | Amended Complaint for Patent Infringement |
| | | Claim Construction Order |
| | | Crane Requirements.xls |
| | | Defendant Mitsubishi Heavy Industries, Ltd.'s Answer and Counterclaim to the Amended Complaint of General Electric Company |
| | | Defendant Mitsubishi Power Systems Americas, Inc.'s Answer and Counterclaim to the Amended Complaint of General Electric Company |
| | | Defendants' First Notice of Rule 30(B)(6) Deposition of Plaintiff General Electric Company |
| | | Deposition of Akira Yasugi, April 13, 2011 and Exhibits |
| | | Deposition of Brian Cretti, June 22, 2011 and Exhibits |
| | | Deposition of Douglas Powell, December 16, 2010 and Exhibits |
| | | Deposition of Gregory Wunder, July 14, 2011 and Exhibits |
| | | Deposition of Guido Schumacher, July 15, 2011 and Exhibits |
| | | Deposition of Harmie Toren, September 21, 2011 |
| | | Deposition of Kairos Energy through Johnny Combs, May 13, 2011 and Exhibits |
| | | Deposition of Koji Dobashi, April 21, 2011 and Exhibits |
| | | Deposition of Masateru Komiya, March 31, 2011 and Exhibits |
| | | Deposition of Masato Akado, April 14, 2011 and Exhibits |
| | | Deposition of Masato Akado, April 20, 2011 and Exhibits |
| | | Deposition of Mete Maltepe, July 18, 2011 and Exhibits |
| | | Deposition of Randolph Peter Mann, January 24, 2011 and Exhibits |
| | | Deposition of Robert Letts, September 23, 2011 |
| | | Deposition of Ronald J. Brzezinski, June 23, 2011 and Exhibits |
| | | Deposition of Stephen Swift, June 24, 2011 and Exhibits |
| | | Deposition of Tomohiro Numajiri, April 19, 2011 and Exhibits |
| | | Deposition of Tomohiro Numajiri, September 20, 2011 |
| | | Deposition of Vincent Michael Schellings, October 5, 2011 |
| | | Electric Reliability Counsel of Texas Operating Guide Section 3.1.4.6.1 |
| | | Emerging Energy Research - Asia Pacific Wind Energy Advisory, June 25, 2007 |
| | | EP 0 945 613 A2 (foreign language) |
| | | General Electric Company Form 10-K for the fiscal year ended December 31, 2010 |
| | | Mitsubishi Heavy Industries, Ltd. Annual Report 2010 for the year ended March 31, 2010 |
| | | Mitsubishi Heavy Industries, Ltd.'s Fifth Supplemental Objections and Responses to GE's First Set of Fact Discovery Interrogatories |
| | | Mitsubishi Heavy Industries, Ltd.'s First Supplemental Objections and Responses to GE's First Set of Fact Discovery Interrogatories |
| | | Mitsubishi Heavy Industries, Ltd.'s Objections and Responses to GE's First Set of Fact Discovery Interrogatories |
| | | Mitsubishi Heavy Industries, Ltd.'s Second Supplemental Objections and Responses to GE's First Set of Fact Discovery Interrogatories |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**General Electric Company v. Mitsubishi Heavy Industries, Ltd. and Mitsubishi Power Systems Americas, Inc.**   Exhibit 2

**Documents Considered in Forming Opinion**

| Begin Bates | End Bates | Description |
|---|---|---|
| | | Mitsubishi Power Systems Americas, Inc.'s Fifth Supplemental Objections and Responses to GE's First Set of Fact Discovery Interrogatories |
| | | Mitsubishi Power Systems Americas, Inc.'s Objections and Responses to GE's First Set of Fact Discovery Interrogatories |
| | | Mitsubishi Power Systems Americas, Inc.'s Second Supplemental Objections and Responses to GE's First Set of Fact Discovery Interrogatories |
| | | Production Volume History - Americas[1].xls |
| | | Response of Mitsubishi Power Systems Americas, Inc. to Plaintiff's Interrogatories Regarding Indirect Infringement |
| | | U.S. Patent No. 6,879,055 |
| | | U.S. Patent No. 7,629,705 |
| | | United State of America Federal Energy Regulatory Commission Order No. 661-A, December 12, 2005 |
| | | USA Wind Turbine Market Pricing Chart rev4.xls |
| | | www.ge-energy.com/wind |
| | | www.mhi.co.jp/en/power/introduction/network/index.html |
| | | www.mhi.co.jp/en/products/category/wind_turbine_generators.html |
| | | www.mpshq.com |
| | | www.mpshq.com/products/index.html |
| | | www.mpshq.com/products/wind_turbines/index.html |
| | | www.mpshq.com/service/index.html |
| | | www.renewableenergyworld.com/rea/news/article/2008/06/iberdrola-signs-4500-mw-wind-deal-52812 |
| | | www1.eere.energy.gov/windandhydro/wind_ad.html |
| | | www1.eere.energy.gov/windandhydro/wind_how.html |

**General Electric Company v. Mitsubishi Heavy Industries, Ltd. and Mitsubishi Power Systems Americas, Inc.**                    **Exhibit 3**

**Summary of Damages - '055 and '705 Patents Infringed**

|                                          | Lost Profits    | Royalty       | Total Damages   |
|------------------------------------------|-----------------|---------------|-----------------|
| Scenario I: Lost Profits and Royalties   | $   219,109,458 | $  72,060,000 | $  291,169,458  |
| Scenario II: Reasonable Royalty Only     | $          -    | $ 108,576,000 | $  108,576,000  |

Sources:
Exhibit 3, Schedules A and B.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**General Electric Company v. Mitsubishi Heavy Industries, Ltd. and Mitsubishi Power Systems Americas, Inc.**

**Scenario I: Summary of Damages - '055 and '705 Patents Infringed**

**Exhibit 3**
**Schedule A**

| | 2008 | 2009 | 2010 | 2011 | Total |
|---|---|---|---|---|---|
| Lost Profits Damages | $        - | $        - | $   200,103,942 | $   19,005,516 | $   219,109,458 |
| Royalty Damages | 13,776,000 | 11,004,000 | 42,588,000 | 4,692,000 | 72,060,000 |
| **Total Damages** | **$   13,776,000** | **$   11,004,000** | **$   242,691,942** | **$   23,697,516** | **$   291,169,458** |

Sources:
Exhibit 3, Schedules A1, A3.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

General Electric Company v. Mitsubishi Heavy Industries, Ltd. and Mitsubishi Power Systems Americas, Inc.

Scenario I: Calculation of GE's Lost Profits - '055 and '705 Patents Infringed

Exhibit 3
Schedule A1

| | 2010 | | 2011 | |
| | Elm Creek II | Juniper Canyon | Taloga | Total |
|---|---|---|---|---|
| Sales lost to Mitsubishi in MWs | 148.8 | 151.2 | 129.6 | 429.6 |
| GE Wind Turbines in MW [1] | 1.5 | 1.5 | 1.6 | |
| Lost Unit Sales of Competing GE Wind Turbines | 100 | 101 | 81 | 282 |
| | | | | |
| *Per Competing GE Wind Turbine* | | | | |
| Price | $  2,289,202 | $  2,289,202 | $  1,720,000 | |
| | | | | |
| Cost | $  1,104,984 | $  1,104,984 | $  1,123,671 | |
| Outbound Transportation | 95,019 | 95,019 | 145,500 | |
| Commissioning & Installation | 45,657 | 45,657 | 174,193 | |
| Warranty | 48,000 | 48,000 | 42,000 | |
| Total Expenses | $  1,293,660 | $  1,293,660 | $  1,485,364 | |
| | | | | |
| Lost Profits | $  995,542 | $  995,542 | $  234,636 | |
| *As a % of Sales* | *43.5%* | *43.5%* | *13.6%* | |
| | | | | |
| **Total GE Lost Profits** | $  99,554,200 | $  100,549,742 | $  19,005,516 | $  219,109,458 |

Notes:

[1] GE offered to sell Iberdrola its 1.5 SLE wind turbines in its proposal for the purchase of wind turbines in the 2010-2012 period.
See GENDTX07664330 - GENDTX07664337 at GENDTX07664330.

[2] GE offered to sell Edison Mission Energy its 1.6 XLE wind turbines for the Taloga project.
See GENDTX07693362 - GENDTX07693366 at GENDTX07693363.

Sources:

Exhibit 3, Schedule A2.

Appendix A.

GENDTX07692799 - GENDTX07692800.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**General Electric Company v. Mitsubishi Heavy Industries, Ltd. and Mitsubishi Power Systems Americas, Inc.**

**Scenario I: Calculation of GE's Lost Sales - '055 and '705 Patents Infringed**

**Exhibit 3**
**Schedule A2**

| Customer | Project | Year | MW/Unit | Units | Total MWs | Price | Price/Unit | Price/MW |
|----------|---------|------|---------|-------|-----------|-------|-----------|----------|
| Iberdrola | Elm Creek II | 2010 | 2.4 | 62 | 148.8 | $ 271,510,625 | $ 4,379,204 | $ 1,824,668 |
| Iberdrola | Juniper Canyon | 2010 | 2.4 | 63 | 151.2 | 266,156,095 | 4,224,700 | 1,760,292 |
| EME | Taloga | 2011 | 2.4 | 54 | 129.6 | 168,759,719 | 3,125,180 | 1,302,158 |
| **Total** | | | | **179** | **429.6** | **$ 706,426,439** | **$ 3,946,516** | **$ 1,644,382** |

Sources:
Exhibit 3, Schedule A6.
Appendix B, Schedules 2 - 3.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**General Electric Company v. Mitsubishi Heavy Industries, Ltd. and Mitsubishi Power Systems Americas, Inc.**

**Scenario I: Summary of Royalty Damages - '055 and '705 Patents Infringed**

**Exhibit 3**
**Schedule A3**

| | 2008 | 2009 | 2010 | 2011 | Total |
|---|---|---|---|---|---|
| Royalty - '055 Patent | $ 13,776,000 | $ 11,004,000 | $ 40,068,000 | $ 1,932,000 | $ 66,780,000 |
| Royalty - '705 Patent | - | - | 2,520,000 | 2,760,000 | 5,280,000 |
| **Total Royalty Damages** | **$ 13,776,000** | **$ 11,004,000** | **$ 42,588,000** | **$ 4,692,000** | **$ 72,060,000** |

<u>Source</u>:
Exhibit 3, Schedule A4.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**General Electric Company v. Mitsubishi Heavy Industries, Ltd. and Mitsubishi Power Systems Americas, Inc.**

**Scenario I: Calculation of Royalty Damages - '055 and '705 Patents Infringed**

**Exhibit 3**
**Schedule A4**

|  | 2008 | 2009 | 2010 | 2011 | Total |
|---|---|---|---|---|---|
| Accused Output in MWs - '055 Patent | 393.6 | 314.4 | 1,144.8 | 55.2 | 1,908 |
| Royalty Rate | $ 35,000 | $ 35,000 | $ 35,000 | $ 35,000 | |
| **Royalty Damages - '055 Patent** | **$ 13,776,000** | **$ 11,004,000** | **$ 40,068,000** | **$ 1,932,000** | **$ 66,780,000** |
| | | | | | |
| Accused Output in MWs - '705 Patent | - | - | 50.4 | 55.2 | 105.6 |
| Royalty Rate | $ 50,000 | $ 50,000 | $ 50,000 | $ 50,000 | |
| **Royalty Damages - '705 Patent** | **$ -** | **$ -** | **$ 2,520,000** | **$ 2,760,000** | **$ 5,280,000** |

Source:
Exhibit 3, Schedule A5.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**General Electric Company v. Mitsubishi Heavy Industries, Ltd. and Mitsubishi Power Systems Americas, Inc.**    **Exhibit 3**
**Scenario I: Calculation of Royalty Base - '055 and '705 Patents Infringed**    **Schedule A5**

|  | 2008 | 2009 | 2010 | 2011 | Total |
|---|---|---|---|---|---|
| *'055 Patent* | | | | | |
| Mitsubishi 2.4 MW wind turbines | 164 | 131 | 477 | 23 | 795 |
| MWs per wind turbine | 2.4 | 2.4 | 2.4 | 2.4 | |
| **Royalty Base in MWs - '055 Patent** | **393.6** | **314.4** | **1,144.8** | **55.2** | **1,908** |
| | | | | | |
| *'705 Patent* | | | | | |
| Mitsubishi 2.4 MW wind turbines | - | - | 21 | 23 | 44 |
| MWs per wind turbine | 2.4 | 2.4 | 2.4 | 2.4 | |
| **Royalty Base in MWs - '705 Patent** | **-** | **-** | **50.4** | **55.2** | **105.6** |

Sources:
Exhibit 3, Schedule A5.1 - A5.2.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

General Electric Company v. Mitsubishi Heavy Industries, Ltd. and Mitsubishi Power Systems Americas, Inc.

**Exhibit 3**
**Schedule A5.1**

**Scenario I: Summary of Mitsubishi Wind Turbines**
**Subject to Royalty Damages - '055 and '705 Patents Infringed**

|  | Year | Project | Units |
|---|---|---|---|
| *'055 Patent* | 2008 | PPM/Penascal (TPO#1) 2.4MW | 64 |
|  |  | B&B/Gulf Wind 2.4MW | 99 |
|  |  | PPM/Flagship 2.4MW | 1 |
|  |  | Edison/Goat Mountain-2 2.4MW | - |
|  |  | 2008 Subtotal | 164 |
|  | 2009 | Iberdrola/Penascal (TPO#1&2) 2.4MW | 20 |
|  |  | B&B/Gulf Wind 2.4MW | 19 |
|  |  | Edison/Goat Mountain-2 2.4MW | 29 |
|  |  | Iberdrola/Penascal-II (TPO#3) 2.4MW | 63 |
|  |  | 2009 Subtotal | 131 |
|  | 2010 | PPM Frame Work (TPO#3 Penascal) | 21 |
|  |  | Hatchet Ridge/B&B 2009 WT Farm | 44 |
|  |  | 2009 WT Farm Babcock & Brown | 78 |
|  |  | 2009 WT Farm Babcock & Brown | 84 |
|  |  | Babcock & Brown (2010) | 250 |
|  |  | 2010 Subtotal | 477 |
|  | 2011 | EME Pinnacle | 23 |
|  |  | 2011 Subtotal | 23 |
|  |  | **Total Mitsubishi Wind Turbines - '055 Patent** | **795** |

<u>Source</u>:
Exhibit 3, Schedule A6.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**General Electric Company v. Mitsubishi Heavy Industries, Ltd. and Mitsubishi Power Systems Americas, Inc.**

**Exhibit 3**
**Schedule A5.2**

Scenario I: Summary of Mitsubishi Wind Turbines
Subject to Royalty Damages - '055 and '705 Patents Infringed

|  | Year | Project | Units |
|---|---|---|---|
| *'705 Patent* | 2010 | PPM Frame Work (TPO#3 Penascal) | 21 |
|  |  | 2010 Subtotal | 21 |
|  | 2011 | EME Pinnacle | 23 |
|  |  | 2011 Subtotal | 23 |
|  | **Total Mitsubishi Wind Turbines - '705 Patent** | | **44** |

<u>Source</u>:
Exhibit 3, Schedule A6.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

General Electric Company v. Mitsubishi Heavy Industries, Ltd. and Mitsubishi Power Systems Americas, Inc.

**Exhibit 3**
**Schedule A6**

**Scenario I: Summary of Mitsubishi Wind Turbines Subject to Lost Profits and Royalty Damages**

| Project Name | Year | Total Units | Lost Profits Units | Royalty Units |
|---|---|---|---|---|
| PPM/Penalcal (TPO#1) 2.4MW | 2008 | 64 | - | 64 |
| B&B/Gulf Wind 2.4MW | 2008 | 99 | - | 99 |
| PPM/Flagship 2.4MW | 2008 | 1 | - | 1 |
| Edison/Goat Mountain-2 2.4MW | 2008 | - | - | - |
| 2008 Subtotal | | 164 | - | 164 |
| | | | | |
| Iberdrola/Penalcal (TPO#1&2) 2.4MW | 2009 | 20 | - | 20 |
| B&B/Gulf Wind 2.4MW | 2009 | 19 | - | 19 |
| Edison/Goat Mountain-2 2.4MW | 2009 | 29 | - | 29 |
| Iberdrola/Penalcal-II (TPO#3) 2.4MW | 2009 | 63 | - | 63 |
| 2009 Subtotal [1] | | 131 | - | 131 |
| | | | | |
| PPM Frame Work (TPO#3 Penascal) | 2010 | 21 | - | 21 |
| TPO#4 - Elm Creek II | 2010 | 62 | 62 | - |
| TPO#4 - Juniper Canyon | 2010 | 63 | 63 | - |
| Hatchet Ridge/B&B 2009 WT Farm | 2010 | 44 | - | 44 |
| 2009 WT Farm Babcock & Brown | 2010 | 78 | - | 78 |
| 2009 WT Farm Babcock & Brown | 2010 | 84 | - | 84 |
| Babcock & Brown (2010) | 2010 | 250 | - | 250 |
| Edison Reconciliation | 2010 | - | - | - |
| 2010 Subtotal | | 602 | 125 | 477 |
| | | | | |
| Edison/Taloga 2.4MW [1] | 2011 | 54 | 54 | - |
| EME Pinnacle [2] | 2011 | 23 | - | 23 |
| 2011 Subtotal | | 77 | 54 | 23 |
| | | | | |
| **Total** | | **974** | **179** | **795** |

Notes:

[1] MPSA recognized sales relating to EME's Taloga Project in 2009 (see Appendix B, Schedule 2). Per the Settlement Agreement, Mutual Release and Amendment to Wind Turbine Generator Supply Agreement, as of October 2010, "EME intends to deploy the Taloga Turbines at a wind energy project site in Dewey County, Oklahoma." See MPSANDTX0269657 - MPSANDTX0269705. Therefore, I have assumed that this project will be completed in 2011.

[2] MPSA had not recognized sales relating to EME's Pinnacle Project as of the first quarter of 2011. Per the Settlement Agreement, Mutual Release and Amendment to Wind Turbine Generator Supply Agreement, as of October 2010, "EME intends to deploy twenty three (23) of the 2009 Turbines (the "Pinnacle Turbines") at a wind energy project site located in Mineral County, West Virginia (the "Pinnacle Project")." See MPSANDTX0269657 - MPSANDTX0269705. Therefore, I have assumed that this project will be completed in 2011.

Sources:
Appendix B, Schedules 1 - 4.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**General Electric Company v. Mitsubishi Heavy Industries, Ltd. and Mitsubishi Power Systems Americas, Inc.**

**Scenario II: Summary of Royalty Damages - '055 and '705 Patents Infringed**

**Exhibit 3**
**Schedule B**

| | 2008 | 2009 | 2010 | 2011 | Total |
|---|---|---|---|---|---|
| Royalty Damages - '055 Patent | $   13,776,000 | $   11,004,000 | $   50,568,000 | $   6,468,000 | $   81,816,000 |
| Royalty Damages - '705 Patent | - | - | 17,520,000 | 9,240,000 | 26,760,000 |
| **Total Royalty Damages** | **$   13,776,000** | **$   11,004,000** | **$   68,088,000** | **$   15,708,000** | **$   108,576,000** |

Source:
Exhibit 3, Schedule B1.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

00800

**General Electric Company v. Mitsubishi Heavy Industries, Ltd. and Mitsubishi Power Systems Americas, Inc.**

**Scenario II: Calculation of Royalty Damages - '055 and '705 Patents Infringed**

**Exhibit 3**
**Schedule B1**

| | 2008 | 2009 | 2010 | 2011 | Total |
|---|---|---|---|---|---|
| Accused Output in MWs - '055 Patent | 393.6 | 314.4 | 1,444.8 | 184.8 | 2,337.6 |
| Royalty Rate | $ 35,000 | $ 35,000 | $ 35,000 | $ 35,000 | |
| **Royalty Damages - '055 Patent** | **$ 13,776,000** | **$ 11,004,000** | **$ 50,568,000** | **$ 6,468,000** | **$ 81,816,000** |
| | | | | | |
| Accused Output in MWs - '705 Patent | - | - | 350.4 | 184.8 | 535.2 |
| Royalty Rate | $ 50,000 | $ 50,000 | $ 50,000 | $ 50,000 | |
| **Royalty Damages - '705 Patent** | **$ -** | **$ -** | **$ 17,520,000** | **$ 9,240,000** | **$ 26,760,000** |

Source:
Exhibit 3, Schedule B2.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

00801

**General Electric Company v. Mitsubishi Heavy Industries, Ltd. and Mitsubishi Power Systems Americas, Inc.**

**Scenario II: Calculation of Royalty Base - '055 and '705 Patents Infringed**

**Exhibit 3**
**Schedule B2**

| | 2008 | 2009 | 2010 | 2011 | Total |
|---|---|---|---|---|---|
| *'055 Patent* | | | | | |
| Mitsubishi 2.4 MW wind turbines | 164 | 131 | 602 | 77 | 974 |
| MWs per wind turbine | 2.4 | 2.4 | 2.4 | 2.4 | |
| **Royalty Base in MWs - '055 Patent** | **393.6** | **314.4** | **1,444.8** | **184.8** | **2,337.6** |
| | | | | | |
| *'705 Patent* | | | | | |
| Mitsubishi 2.4 MW wind turbines | - | - | 146 | 77 | 223 |
| MWs per wind turbine | 2.4 | 2.4 | 2.4 | 2.4 | |
| **Royalty Base in MWs - '705 Patent** | **-** | **-** | **350.4** | **184.8** | **535.2** |

<u>Sources</u>:
Exhibit 3, Schedule B2.1 - B2.2.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

General Electric Company v. Mitsubishi Heavy Industries, Ltd. and Mitsubishi Power Systems Americas, Inc.

Exhibit 3
Schedule B2.1

**Scenario II: Summary of Mitsubishi Wind Turbines**
**Subject to Royalty Damages - '055 and '705 Patents Infringed**

| | Year | Project | Units |
|---|---|---|---|
| *'055 Patent* | 2008 | PPM/Penascal (TPO#1) 2.4MW | 64 |
| | | B&B/Gulf Wind 2.4MW | 99 |
| | | PPM/Flagship 2.4MW | 1 |
| | | Edison/Goat Mountain-2 2.4MW | - |
| | | 2008 Subtotal | 164 |
| | 2009 | Iberdrola/Penascal (TPO#1&2) 2.4MW | 20 |
| | | B&B/Gulf Wind 2.4MW | 19 |
| | | Edison/Goat Mountain-2 2.4MW | 29 |
| | | Iberdrola/Penascal-II (TPO#3) 2.4MW | 63 |
| | | 2009 Subtotal [1] | 131 |
| | 2010 | PPM Frame Work (TPO#3 Penascal) | 21 |
| | | Hatchet Ridge/B&B 2009 WT Farm | 44 |
| | | 2009 WT Farm Babcock & Brown | 78 |
| | | 2009 WT Farm Babcock & Brown | 84 |
| | | TPO#4 - Elm Creek II | 62 |
| | | Babcock & Brown (2010) | 250 |
| | | TPO#4 - Juniper Canyon | 63 |
| | | 2010 Subtotal | 602 |
| | 2011 | Edison/Taloga 2.4MW [1] | 54 |
| | | EME Pinnacle [2] | 23 |
| | | 2011 Subtotal | 77 |
| | | **Total Mitsubishi Wind Turbines - '055 Patent** | **974** |

Notes:

[1] MPSA recognized sales relating to EME's Taloga Project in 2009 (see Appendix B, Schedule 2).  Per the Settlement Agreement, Mutual Release and Amendment to Wind Turbine Generator Supply Agreement, as of October 2010, "EME intends to deploy the Taloga Turbines at a wind energy project site in Dewey County, Oklahoma."
See MPSANDTX0269657 - MPSANDTX0269705.  Therefore, I have assumed that this project will be completed in 2011.

[2] MPSA had not recognized sales relating to EME's Pinnacle Project as of the first quarter of 2011.  Per the Settlement Agreement, Mutual Release and Amendment to Wind Turbine Generator Supply Agreement, as of October 2010, "EME intends to deploy twenty three (23) of the 2009 Turbines (the "Pinnacle Turbines") at a wind energy project site located in Mineral County, West Virginia (the "Pinnacle Project")."  See MPSANDTX0269657 - MPSANDTX0269705.
Therefore, I have assumed that this project will be completed in 2011.

Sources:
Appendix B, Schedules 1 - 4.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**General Electric Company v. Mitsubishi Heavy Industries, Ltd. and Mitsubishi Power Systems Americas, Inc.**

**Exhibit 3**
**Schedule B2.2**

**Scenario II: Summary of Mitsubishi Wind Turbines**
**Subject to Royalty Damages - '055 and '705 Patents Infringed**

|  | Year | Project | Units |
|---|---|---|---|
| *'705 Patent* | 2010 | PPM Frame Work (TPO#3 Penascal) | 21 |
|  |  | TPO#4 - Elm Creek II | 62 |
|  |  | TPO#4 - Juniper Canyon | 63 |
|  |  | 2010 Subtotal | 146 |
|  | 2011 | Edison/Taloga 2.4MW [1] | 54 |
|  |  | EME Pinnacle [2] | 23 |
|  |  | 2011 Subtotal | 77 |
|  | **Total Mitsubishi Wind Turbines - '705 Patent** |  | **223** |

Notes:

[1] MPSA recognized sales relating to EME's Taloga Project in 2009 (see Appendix B, Schedule 2). Per the Settlement Agreement, Mutual Release and Amendment to Wind Turbine Generator Supply Agreement, as of October 2010, "EME intends to deploy the Taloga Turbines at a wind energy project site in Dewey County, Oklahoma." See MPSANDTX0269657 - MPSANDTX0269705. Therefore, I have assumed that this project will be completed in 2011.

[2] MPSA had not recognized sales relating to EME's Pinnacle Project as of the first quarter of 2011. Per the Settlement Agreement, Mutual Release and Amendment to Wind Turbine Generator Supply Agreement, as of October 2010, "EME intends to deploy twenty three (23) of the 2009 Turbines (the "Pinnacle Turbines") at a wind energy project site located in Mineral County, West Virginia (the "Pinnacle Project")." See MPSANDTX0269657 - MPSANDTX0269705. Therefore, I have assumed that this project will be completed in 2011.

Sources:
Appendix B, Schedules 3 - 4.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**General Electric Company v. Mitsubishi Heavy Industries, Ltd. and Mitsubishi Power Systems Americas, Inc.**   **Exhibit 4**

**Summary of Damages - Only '705 Patent Infringed**

| | Lost Profits | Royalty | Total Damages |
|---|---|---|---|
| Scenario III: Lost Profits and Royalties | $  219,109,458 | $  5,280,000 | $  224,389,458 |
| Scenario IV: Reasonable Royalty Only | $              - | $  26,760,000 | $  26,760,000 |

Sources:
Exhibit 4, Schedules A and B.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**General Electric Company v. Mitsubishi Heavy Industries, Ltd. and Mitsubishi Power Systems Americas, Inc.**

**Scenario III: Summary of Damages - Only '705 Patent Infringed**

**Exhibit 4**
**Schedule A**

|  | 2010 | 2011 | Total |
|---|---|---|---|
| Lost Profits Damages | $ 200,103,942 | $ 19,005,516 | $ 219,109,458 |
| Royalty Damages | 2,520,000 | 2,760,000 | 5,280,000 |
| **Total Damages** | **$ 202,623,942** | **$ 21,765,516** | **$ 224,389,458** |

Sources:
Exhibit 4, Schedules A1, A3.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**General Electric Company v. Mitsubishi Heavy Industries, Ltd. and Mitsubishi Power Systems Americas, Inc.**

Scenario III: Calculation of GE's Lost Profits - Only '705 Patent Infringed

Exhibit 4
Schedule A1

| | 2010 | | 2011 | |
| --- | --- | --- | --- | --- |
| | Elm Creek II | Juniper Canyon | Taloga | Total |
| Sales lost to Mitsubishi in MWs | 148.8 | 151.2 | 129.6 | 429.6 |
| GE Wind Turbines in MW [1, 2] | 1.5 | 1.5 | 1.6 | |
| Lost Unit Sales of Competing GE Wind Turbines | 100 | 101 | 81 | 282 |
| *Per Competing GE Wind Turbine* | | | | |
| Price | $ 2,289,202 | $ 2,289,202 | $ 1,720,000 | |
| Cost | $ 1,104,984 | $ 1,104,984 | $ 1,123,671 | |
| Outbound Transportation | 95,019 | 95,019 | 145,500 | |
| Commissioning & Installation | 45,657 | 45,657 | 174,193 | |
| Warranty | 48,000 | 48,000 | 42,000 | |
| Total Expenses | $ 1,293,660 | $ 1,293,660 | $ 1,485,364 | |
| Lost Profits | $ 995,542 | $ 995,542 | $ 234,636 | |
| *As a % of Sales* | *43.5%* | *43.5%* | *13.6%* | |
| **Total GE Lost Profits** | **$ 99,554,200** | **$ 100,549,742** | **$ 19,005,516** | **$ 219,109,458** |

Notes:

[1] GE offered to sell Iberdrola its 1.5 SLE wind turbines in its proposal for the purchase of wind turbines in the 2010-2012 period.
See GENDTX07664330 - GENDTX07664337 at GENDTX07664330.

[2] GE offered to sell Edison Mission Energy its 1.6 XLE wind turbines for the Taloga project.
See GENDTX07693362 - GENDTX07693366 at GENDTX07693363.

Sources:
Exhibit 4, Schedule A2.
Appendix A.
GENDTX07692799 - GENDTX07692800.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**General Electric Company v. Mitsubishi Heavy Industries, Ltd. and Mitsubishi Power Systems Americas, Inc.**

**Scenario III: Calculation of GE's Lost Sales - Only '705 Patent Infringed**

**Exhibit 4**
**Schedule A2**

| Customer | Project | Year | MWs/Unit | Units | Total MWs | Price | Price/Unit | Price/MW |
|----------|---------|------|----------|-------|-----------|-------|------------|----------|
| Iberdrola | Elm Creek II | 2010 | 2.4 | 62 | 148.8 | $ 271,510,625 | $ 4,379,204 | $ 1,824,668 |
| Iberdrola | Juniper Canyon | 2010 | 2.4 | 63 | 151.2 | 266,156,095 | 4,224,700 | 1,760,292 |
| EME | Taloga | 2011 | 2.4 | 54 | 129.6 | 168,759,719 | 3,125,180 | 1,302,158 |
| **Total** | | | | **179** | **429.6** | **$ 706,426,439** | **$ 3,946,516** | **$ 1,644,382** |

Sources:
Exhibit 4, Schedule A5.
Appendix B, Schedules 2 - 3.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**General Electric Company v. Mitsubishi Heavy Industries, Ltd. and Mitsubishi Power Systems Americas, Inc.**

**Scenario III: Calculation of Royalty Damages - Only '705 Patent Infringed**

**Exhibit 4**
**Schedule A3**

| | 2010 | 2011 | Total |
|---|---|---|---|
| Accused Output in MWs - '705 Patent | 50.4 | 55.2 | 105.6 |
| Royalty Rate | $    50,000 | $    50,000 | |
| **Royalty Damages - '705 Patent** | **$    2,520,000** | **$    2,760,000** | **$    5,280,000** |

Source:
Exhibit 4, Schedule A4.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**General Electric Company v. Mitsubishi Heavy Industries, Ltd. and Mitsubishi Power Systems Americas, Inc.**

**Scenario III: Calculation of Royalty Base - Only '705 Patent Infringed**

**Exhibit 4**
**Schedule A4**

|  | 2010 | 2011 | Total |
|---|---|---|---|
| *'705 Patent* | | | |
| Mitsubishi 2.4 MW wind turbines | 21 | 23 | 44 |
| MWs per wind turbine | 2.4 | 2.4 | |
| **Royalty Base in MWs - '705 Patent** | **50.4** | **55.2** | **105.6** |

Source:
Exhibit 4, Schedule A4.1.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**General Electric Company v. Mitsubishi Heavy Industries, Ltd. and Mitsubishi Power Systems Americas, Inc.**

**Scenario III: Summary of Mitsubishi Wind Turbines**
**Subject to Royalty Damages - Only '705 Patent Infringed**

**Exhibit 4**
**Schedule A4.1**

| | Year | Project | Units |
|---|---|---|---|
| *'705 Patent* | 2010 | PPM Frame Work (TPO#3 Penascal) | 21 |
| | | 2010 Subtotal | 21 |
| | 2011 | EME Pinnacle | 23 |
| | | 2011 Subtotal | 23 |
| | **Total Mitsubishi Wind Turbines - '705 Patent** | | **44** |

Source:
Exhibit 4, Schedule A5.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

00811

General Electric Company v. Mitsubishi Heavy Industries, Ltd. and Mitsubishi Power Systems Americas, Inc.

**Scenario III: Summary of Mitsubishi Wind Turbines Subject to Lost Profits and Royalty Damages**

Exhibit 4
Schedule A5

| Project Name | Year | Total Units | Lost Profits Units | Royalty Units |
|---|---|---|---|---|
| PPM Frame Work (TPO#3 Penascal) | 2010 | 21 | - | 21 |
| TPO#4 - Elm Creek II | 2010 | 62 | 62 | - |
| TPO#4 - Juniper Canyon | 2010 | 63 | 63 | - |
| 2010 Subtotal | | 146 | 125 | 21 |
| Edison/Taloga 2.4MW [1] | 2011 | 54 | 54 | - |
| EME Pinnacle [2] | 2011 | 23 | - | 23 |
| 2011 Subtotal | | 77 | 54 | 23 |
| **Total** | | **223** | **179** | **44** |

Notes:

[1] MPSA recognized sales relating to EME's Taloga Project in 2009 (see Appendix B, Schedule 2).  Per the Settlement Agreement, Mutual Release and Amendment to Wind Turbine Generator Supply Agreement, as of October 2010, "EME intends to deploy the Taloga Turbines at a wind energy project site in Dewey County, Oklahoma."  See MPSANDTX0269657 - MPSANDTX0269705. Therefore, I have assumed that this project will be completed in 2011.

[2] MPSA had not recognized sales relating to EME's Pinnacle Project as of the first quarter of 2011.  Per the Settlement Agreement, Mutual Release and Amendment to Wind Turbine Generator Supply Agreement, as of October 2010, "EME intends to deploy twenty three (23) of the 2009 Turbines (the "Pinnacle Turbines") at a wind energy project site located in Mineral County, West Virginia (the "Pinnacle Project")."  See MPSANDTX0269657 - MPSANDTX0269705. Therefore, I have assumed that this project will be completed in 2011.

Sources:
Appendix B, Schedules 3 - 4.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**General Electric Company v. Mitsubishi Heavy Industries, Ltd. and Mitsubishi Power Systems Americas, Inc.**

**Scenario IV: Calculation of Royalty Damages - Only '705 Patent Infringed**

**Exhibit 4**
**Schedule B**

|  | 2010 | 2011 | Total |
|---|---|---|---|
| Accused Output in MWs - '705 Patent | 350.4 | 184.8 | 535.2 |
| Royalty Rate | $ 50,000 | $ 50,000 | |
| **Royalty Damages - '705 Patent** | **$ 17,520,000** | **$ 9,240,000** | **$ 26,760,000** |

Note:
The '705 patent issued in December 2009.  I have calculated damages on Mitsubishi sales beginning in 2010.

Source:
Exhibit 4, Schedule B1.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**General Electric Company v. Mitsubishi Heavy Industries, Ltd. and Mitsubishi Power Systems Americas, Inc.**

**Scenario IV: Calculation of Royalty Base - Only '705 Patent Infringed**

**Exhibit 4**
**Schedule B1**

|  | 2010 | 2011 | Total |
|---|---|---|---|
| *'705 Patent* | | | |
| Mitsubishi 2.4 MW wind turbines | 146 | 77 | 223 |
| MWs per wind turbine | 2.4 | 2.4 | |
| **Royalty Base in MWs - '705 Patent** | **350.4** | **184.8** | **535.2** |

Note:
The '705 patent issued in December 2009.  I have calculated damages on Mitsubishi sales beginning in 2010.

Source:
Exhibit 4, Schedule B2.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

General Electric Company v. Mitsubishi Heavy Industries, Ltd. and Mitsubishi Power Systems Americas, Inc.

**Exhibit 4**
**Schedule B2**

**Scenario IV: Summary of Mitsubishi Wind Turbines**
**Subject to Royalty Damages - Only '705 Patent Infringed**

| | Year | Project | Units |
|---|---|---|---|
| *'705 Patent* | 2010 | PPM Frame Work (TPO#3 Penascal) | 21 |
| | | TPO#4 - Elm Creek II | 62 |
| | | TPO#4 - Juniper Canyon | 63 |
| | | 2010 Subtotal | 146 |
| | 2011 | Edison/Taloga 2.4MW [1] | 54 |
| | | EME Pinnacle [2] | 23 |
| | | 2011 Subtotal | 77 |
| | **Total Mitsubishi Wind Turbines - '705 Patent** | | **223** |

Notes:
The '705 patent issued in December 2009.  I have calculated damages on Mitsubishi sales beginning in 2010.

[1] MPSA recognized sales relating to EME's Taloga Project in 2009 (see Appendix B, Schedule 2).  Per the Settlement Agreement, Mutual Release and Amendment to Wind Turbine Generator Supply Agreement, as of October 2010, "EME intends to deploy the Taloga Turbines at a wind energy project site in Dewey County, Oklahoma."  See MPSANDTX0269657 - MPSANDTX0269705.  Therefore, I have assumed that this project will be completed in 2011.

[2] MPSA had not recognized sales relating to EME's Pinnacle Project as of the first quarter of 2011.  Per the Settlement Agreement, Mutual Release and Amendment to Wind Turbine Generator Supply Agreement, as of October 2010, "EME intends to deploy twenty three (23) of the 2009 Turbines (the "Pinnacle Turbines") at a wind energy project site located in Mineral County, West Virginia (the "Pinnacle Project")."  See MPSANDTX0269657 - MPSANDTX0269705. Therefore, I have assumed that this project will be completed in 2011.

Sources:
Appendix B, Schedules 3 - 4.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**General Electric Company v. Mitsubishi Heavy Industries, Ltd. and Mitsubishi Power Systems Americas, Inc.**   **Exhibit 5**

**Scenario V: Summary of Royalty Damages - Only '055 Patent Infringed**

| | 2008 | 2009 | 2010 | 2011 | Total |
|---|---|---|---|---|---|
| **Royalty Damages - '055 Patent** | $ 13,776,000 | $ 11,004,000 | $ 50,568,000 | $ 6,468,000 | $ 81,816,000 |

Source:
Exhibit 5, Schedule A.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**General Electric Company v. Mitsubishi Heavy Industries, Ltd. and Mitsubishi Power Systems Americas, Inc.**

**Scenario V: Calculation of Royalty Damages - Only '055 Patent Infringed**

**Exhibit 5**
**Schedule A**

| | 2008 | 2009 | 2010 | 2011 | Total |
|---|---|---|---|---|---|
| Accused Output in MWs - '055 Patent | 393.6 | 314.4 | 1,444.8 | 184.8 | 2,337.6 |
| Royalty Rate | $ 35,000 | $ 35,000 | $ 35,000 | $ 35,000 | |
| **Royalty Damages - '055 Patent** | **$ 13,776,000** | **$ 11,004,000** | **$ 50,568,000** | **$ 6,468,000** | **$ 81,816,000** |

Source:
Exhibit 5, Schedule B1.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**General Electric Company v. Mitsubishi Heavy Industries, Ltd. and Mitsubishi Power Systems Americas, Inc.**

**Exhibit 5**
**Schedule B1**

**Scenario V: Calculation of Royalty Base - Only '055 Patent Infringed**

|  | 2008 | 2009 | 2010 | 2011 | Total |
|---|---|---|---|---|---|
| Mitsubishi 2.4 MW wind turbines | 164 | 131 | 602 | 77 | 974 |
| MWs per wind turbine | 2.4 | 2.4 | 2.4 | 2.4 | |
| **Royalty Base in MWs** | **393.6** | **314.4** | **1,444.8** | **184.8** | **2,337.6** |

Source:
Exhibit 5, Schedule B2.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

General Electric Company v. Mitsubishi Heavy Industries, Ltd. and Mitsubishi Power Systems Americas, Inc.

Exhibit 5<br>Schedule B2

**Scenario V: Summary of Mitsubishi Wind Turbines**
**Subject to Royalty Damages - Only '055 Patent Infringed**

| | Year | Project | Units |
|---|---|---|---|
| *'055 Patent* | 2008 | PPM/Penascal (TPO#1) 2.4MW | 64 |
| | | B&B/Gulf Wind 2.4MW | 99 |
| | | PPM/Flagship 2.4MW | 1 |
| | | Edison/Goat Mountain-2 2.4MW | - |
| | | 2008 Subtotal | 164 |
| | 2009 | Iberdrola/Penascal (TPO#1&2) 2.4MW | 20 |
| | | B&B/Gulf Wind 2.4MW | 19 |
| | | Edison/Goat Mountain-2 2.4MW | 29 |
| | | Iberdrola/Penascal-II (TPO#3) 2.4MW | 63 |
| | | 2009 Subtotal | 131 |
| | 2010 | PPM Frame Work (TPO#3 Penascal) | 21 |
| | | Hatchet Ridge/B&B 2009 WT Farm | 44 |
| | | 2009 WT Farm Babcock & Brown | 78 |
| | | 2009 WT Farm Babcock & Brown | 84 |
| | | TPO#4 - Elm Creek II | 62 |
| | | Babcock & Brown (2010) | 250 |
| | | TPO#4 - Juniper Canyon | 63 |
| | | 2010 Subtotal | 602 |
| | 2011 | Edison/Taloga 2.4MW [1] | 23 |
| | | EME Pinnacle [2] | 54 |
| | | 2011 Subtotal | 77 |
| | | **Total Mitsubishi Wind Turbines - '055 Patent** | **974** |

Notes:

[1] MPSA recognized sales relating to EME's Taloga Project in 2009 (see Appendix B, Schedule 2). Per the Settlement Agreement, Mutual Release and Amendment to Wind Turbine Generator Supply Agreement, as of October 2010, "EME intends to deploy the Taloga Turbines at a wind energy project site in Dewey County, Oklahoma." See MPSANDTX0269657 - MPSANDTX0269705. Therefore, I have assumed that this project will be completed in 2011.

[2] MPSA had not recognized sales relating to EME's Pinnacle Project as of the first quarter of 2011. Per the Settlement Agreement, Mutual Release and Amendment to Wind Turbine Generator Supply Agreement, as of October 2010, "EME intends to deploy twenty three (23) of the 2009 Turbines (the "Pinnacle Turbines") at a wind energy project site located in Mineral County, West Virginia (the "Pinnacle Project")." See MPSANDTX0269657 - MPSANDTX0269705. Therefore, I have assumed that this project will be completed in 2011.

Sources:
Appendix B, Schedules 1 - 4.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

General Electric Company v. Mitsubishi Heavy Industries, Ltd. and Mitsubishi Power Systems Americas, Inc.    Appendix A

Summary of GE 1.5 SLE and 1.6 XLE Wind Turbine Sales from 2010 - Q1 2011 in the U.S.

| | Units | Sales | Cost | Outbound Transportation | Commission & Installation | Warranty | Contribution Margin |
|---|---|---|---|---|---|---|---|
| *1.5 SLE* | | | | | | | |
| 2010 | 620 | $ 1,419,305,024 | $ 685,089,802 | $ 58,911,512 | $ 28,307,210 | $ 29,760,000 | $ 617,236,500 |
| Per Unit | | $ 2,289,202 | $ 1,104,984 | $ 95,019 | $ 45,657 | $ 48,000 | $ 995,542 |
| Per MW | | 1,526,135 | 736,656 | 63,346 | 30,438 | 32,000 | 663,695 |
| *As a % of Sales* | | | | | | | *43.5%* |
| 2011 | 102 | $ 221,979,040 | $ 110,397,376 | $ 9,110,000 | $ 2,585,432 | $ 4,080,000 | $ 95,806,232 |
| Per Unit | | $ 2,176,265 | $ 1,082,327 | $ 89,314 | $ 25,347 | $ 40,000 | $ 939,277 |
| Per MW | | 1,450,843 | 721,551 | 59,543 | 16,898 | 26,667 | 626,185 |
| *As a % of Sales* | | | | | | | *43.2%* |
| Total 1.5 SLE | 722 | $ 1,641,284,064 | $ 795,487,178 | $ 68,021,512 | $ 30,892,642 | $ 33,840,000 | $ 713,042,732 |
| Per Unit | | $ 2,273,247 | $ 1,101,783 | $ 94,213 | $ 42,788 | $ 46,870 | $ 987,593 |
| Per MW | | 1,515,498 | 734,522 | 62,809 | 28,525 | 31,247 | 658,395 |
| *As a % of Sales* | | | | | | | *43.4%* |
| *1.6 XLE* | | | | | | | |
| 2010 | 706 | $ 1,644,285,699 | $ 852,718,675 | $ 86,402,450 | $ 47,523,023 | $ 33,888,000 | $ 623,753,551 |
| Per Unit | | $ 2,329,017 | $ 1,207,817 | $ 122,383 | $ 67,313 | $ 48,000 | $ 883,504 |
| Per MW | | 1,455,636 | 754,886 | 76,489 | 42,071 | 30,000 | 552,190 |
| *As a % of Sales* | | | | | | | *37.9%* |
| 2011 | 4 | $ 8,722,001 | $ 4,494,683 | $ 582,000 | $ 696,772 | $ 168,000 | $ 2,780,546 |
| Per Unit | | $ 2,180,500 | $ 1,123,671 | $ 145,500 | $ 174,193 | $ 42,000 | $ 695,136 |
| Per MW | | 1,362,813 | 702,294 | 90,938 | 108,871 | 26,250 | 434,460 |
| *As a % of Sales* | | | | | | | *31.9%* |
| Total 1.6 XLE | 710 | $ 1,653,007,700 | $ 857,213,358 | $ 86,984,450 | $ 48,219,795 | $ 34,056,000 | $ 626,534,097 |
| Per Unit | | $ 2,328,180 | $ 1,207,343 | $ 122,513 | $ 67,915 | $ 47,966 | $ 882,443 |
| Per MW | | 1,455,113 | 754,589 | 76,571 | 42,447 | 29,979 | 551,527 |
| *As a % of Sales* | | | | | | | *37.9%* |

Sources:
Appendix A, Schedules 1A - 1B.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**General Electric Company v. Mitsubishi Heavy Industries, Ltd. and Mitsubishi Power Systems Americas, Inc.**

**Summary of GE 1.5 SLE Wind Turbine Sales from 2010 - Q1 2011 in the U.S.**

Appendix A
Schedule 1A

| Year | Units | Sales | Cost | Outbound Transportation | Commission & Installation [1] | Warranty | Contribution Margin |
|------|-------|-------|------|------------------------|-------------------------------|----------|---------------------|
| 2010 | 620 | $ 1,419,305,024 | $ 685,089,802 | $ 58,911,512 | $ 28,307,210 | $ 29,760,000 | $ 617,236,500 |
| *As a % of Sales* | | | | | | | *43.5%* |
| 2011 | 102 | $ 221,979,040 | $ 110,397,376 | $ 9,110,000 | $ 2,585,432 | $ 4,080,000 | $ 95,806,232 |
| *As a % of Sales* | | | | | | | *43.2%* |
| **Total** | **722** | **$ 1,641,284,064** | **$ 795,487,178** | **$ 68,021,512** | **$ 30,892,642** | **$ 33,840,000** | **$ 713,042,732** |
| *As a % of Sales* | | | | | | | *43.4%* |
| 2010 Per Unit | | $ 2,289,202 | $ 1,104,984 | $ 95,019 | $ 45,657 | $ 48,000 | 995,542 |
| 2011 Per Unit | | $ 2,176,265 | $ 1,082,327 | $ 89,314 | $ 25,347 | $ 40,000 | 939,277 |

Note:

[1] GE incurred $29,198,250 in commissioning and installation costs in 2010 reflecting a price adjustment for sales to Nextera.  I have assumed that the price adjustment would be split evenly across all Nextera unit sales.  In 2010, GE sold Nextera 32 1.5 SLE wind turbines out of a total of 491 total wind turbines.  Therefore, I have deducted $1,902,941 in additional commissioning and installation costs from revenues.  $29,198,250 * (32/491) = $1,902,941.

See the deposition of Brian Cretti, dated June 22, 2011, pp. 47 - 48.

Sources:

Appendix A, Schedules 2A - 2B.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**General Electric Company v. Mitsubishi Heavy Industries, Ltd. and Mitsubishi Power Systems Americas, Inc.**

**Summary of GE 1.6 XLE Wind Turbine Sales from 2010 - Q1 2011 in the U.S.**

Appendix A
Schedule 1B

| Year | Units | Sales | Cost | Outbound Transportation | Commission & Installation [1] | Warranty | Contribution Margin |
|------|-------|-------|------|-------------------------|-------------------------------|----------|---------------------|
| 2010 | 706 | $ 1,644,285,699 | $ 852,718,675 | $ 86,402,450 | $ 47,523,023 | $ 33,888,000 | $ 623,753,551 |
| *As a % of Sales* | | | | | | | *37.9%* |
| 2011 | 4 | $ 8,722,001 | $ 4,494,683 | $ 582,000 | $ 696,772 | $ 168,000 | $ 2,780,546 |
| *As a % of Sales* | | | | | | | *31.9%* |
| **Total** | **710** | **$ 1,653,007,700** | **$ 857,213,358** | **$ 86,984,450** | **$ 48,219,795** | **$ 34,056,000** | **$ 626,534,097** |
| *As a % of Sales* | | | | | | | *37.9%* |
| 2010 Per Unit | | $ 2,329,017 | $ 1,207,817 | $ 122,383 | $ 67,313 | $ 48,000 | $ 883,504 |
| 2011 Per Unit | | $ 2,180,500 | $ 1,123,671 | $ 145,500 | $ 174,193 | $ 42,000 | $ 695,136 |

Note:

[1] GE incurred $29,198,250 in commissioning and installation costs in 2010 reflecting a price adjustment for sales to Nextera.  I have assumed that the price adjustment would be split evenly across all Nextera unit sales.  In 2010, GE sold Nextera 327 1.6 XLE wind turbines out of a total of 491 total wind turbines. Therefore, I have deducted $19,445,678 in additional commissioning and installation costs from revenues.  $29,198,250 * (327/491) = $19,445,678. See the deposition of Brian Cretti, dated June 22, 2011, pp. 47 - 48.

Sources:

Appendix A, Schedules 2A - 2B.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

General Electric Company v. Mitsubishi Heavy Industries, Ltd. and Mitsubishi Power Systems Americas, Inc.

GE Wind Turbine Sales - 2010

| Project | Customer | Country / Region | Model | Units | Sales | Cost | Outbound Transportation | Commission & Installation | Warranty | Contribution Margin |
|---|---|---|---|---|---|---|---|---|---|---|
| *Americas* | | | | | | | | | | |
| Crow Lake | Basin | US | 1.5SLE | 108 | $ 239,002,600 | $ 119,276,884 | $ 4,518,466 | $ 4,152,677 | $ 5,184,000 | $ 105,870,573 |
| Coastal Energy | Coastal Energy | US | 1.5SLE | 4 | 9,068,000 | 4,421,408 | 590,262 | 400,756 | 192,000 | 3,463,574 |
| Top of the World | Duke | US | 1.5SLE | 66 | 158,411,500 | 72,929,771 | 5,917,111 | 3,015,253 | 3,168,000 | 73,381,365 |
| Kit Carson | Duke | US | 1.5SLE | 34 | 81,987,400 | 37,638,030 | 2,727,545 | 1,859,808 | 1,632,000 | 38,130,017 |
| ML3 | EDP/Horizon | US | 1.5SLE | 69 | 160,033,400 | 76,524,165 | 9,289,742 | 3,058,754 | 3,312,000 | 67,848,739 |
| Top Crop II | EDP/Horizon | US | 1.5SLE | 132 | 305,166,200 | 146,076,164 | 15,725,729 | 5,460,153 | 6,336,000 | 131,568,154 |
| Teichert Project | Energy Alchemy | US | 1.5SLE | 1 | 2,474,100 | 1,113,048 | 95,425 | 203,062 | 48,000 | 1,014,565 |
| Leaning Juniper | Iberdrola | US | 1.5SLE | 74 | 164,911,380 | 81,668,397 | 6,958,751 | 193,818 | 3,552,000 | 72,538,414 |
| Cedar Hills | MDU | US | 1.5SLE | 13 | 31,502,300 | 14,391,403 | 1,171,525 | 485,781 | 624,000 | 14,829,491 |
| Diamond Willow | MDU | US | 1.5SLE | 7 | 16,921,800 | 7,750,475 | 754,357 | 287,024 | 336,000 | 7,793,944 |
| Palm Springs | Nextera | US | 1.5SLE | 32 | 62,124,364 | 34,846,321 | 3,943,888 | 4,528,769 | 1,536,000 | 17,269,386 |
| Dunlap Ranch | Pacificorp | US | 1.5SLE | 34 | 79,906,639 | 37,611,315 | 3,052,282 | 1,149,659 | 1,632,000 | 36,461,383 |
| Dunlap Ranch II | Pacificorp | US | 1.5SLE | 40 | 94,007,811 | 44,248,606 | 3,590,920 | 1,352,540 | 1,920,000 | 42,895,745 |
| Patu | Patu | US | 1.5SLE | 6 | 13,787,630 | 6,593,815 | 575,509 | 256,215 | 288,000 | 6,074,091 |
| 1.5 SLE Subtotal | | | | 620 | $ 1,419,305,024 | $ 685,089,802 | $ 58,911,512 | $ 26,404,269 | $ 29,760,000 | $ 619,139,441 |
| *As a Percentage of Sales* | | | | | | | | | | *43.6%* |
| | | | | | | | | | | |
| Cedro Hills | Edison Mission | US | 1.5XLE | 100 | $ 257,655,899 | $ 120,294,771 | $ 9,393,043 | $ 3,421,229 | $ 4,800,000 | $ 119,746,856 |
| Day County Wind | Nextera | US | 1.5XLE | 66 | 142,187,000 | 79,091,454 | 4,117,379 | 2,348,200 | 3,168,000 | 53,461,967 |
| TPO#8 | Nextera | US | 1.5XLE | 66 | 141,820,500 | 79,103,913 | 3,883,435 | 2,250,914 | 3,168,000 | 53,414,238 |
| Flat Water | Third Planet | US | 1.5XLE | 40 | 98,744,675 | 48,278,680 | 3,680,000 | 1,855,366 | 1,920,000 | 43,010,629 |
| Lost Creek | Wind Capital Group | US | 1.5XLE | 49 | 114,357,800 | 59,073,973 | 3,528,739 | 1,274,398 | 2,352,000 | 48,128,690 |
| 1.5 XLE Subtotal | | | | 321 | $ 754,765,874 | $ 385,842,791 | $ 24,602,596 | $ 11,150,107 | $ 15,408,000 | $ 317,762,380 |
| *As a Percentage of Sales* | | | | | | | | | | *42.1%* |
| | | | | | | | | | | |
| Cedar Creek II | BP | US | 1.6SLE | 63 | $ 141,904,025 | $ 69,588,780 | $ 7,346,750 | $ 1,092,352 | $ 3,024,000 | $ 60,852,143 |
| 1.6 SLE Subtotal | | | | 63 | $ 141,904,025 | $ 69,588,780 | $ 7,346,750 | $ 1,092,352 | $ 3,024,000 | $ 60,852,143 |
| *As a Percentage of Sales* | | | | | | | | | | *42.9%* |
| | | | | | | | | | | |
| North Rim | AES | US | 1.6XLE | 22 | 52,043,200 | 26,573,832 | 2,850,977 | 1,909,018 | 1,056,000 | 19,653,373 |
| Laurel Mountain | AES | US | 1.6XLE | 61 | 144,911,450 | 73,666,636 | 9,076,758 | 6,950,761 | 2,928,000 | 52,289,295 |
| Goshen | BP | US | 1.6XLE | 83 | 201,100,287 | 100,406,362 | 11,353,071 | 2,738,664 | 3,984,000 | 82,618,190 |
| Laredo Ridge | Edison Mission | US | 1.6XLE | 54 | 141,012,900 | 65,182,801 | 8,346,627 | (559,717) | 2,592,000 | 65,451,189 |
| Idaho Wind | Exergy | US | 1.6XLE | 122 | 288,836,600 | 147,441,269 | 18,171,019 | 1,451,085 | 5,856,000 | 115,917,227 |
| TPO#1 | Nextera | US | 1.6XLE | 66 | 150,919,625 | 79,736,024 | 7,537,128 | 2,082,214 | 3,168,000 | 58,396,259 |
| TPO#2 | Nextera | US | 1.6XLE | 66 | 150,919,625 | 79,697,126 | 10,255,834 | 2,332,657 | 3,168,000 | 55,466,008 |
| TPO#3 | Nextera | US | 1.6XLE | 66 | 148,584,020 | 79,671,394 | 6,902,211 | 2,294,809 | 3,168,000 | 56,547,606 |
| TPO#9 | Nextera | US | 1.6XLE | 85 | 182,964,000 | 102,602,158 | 5,314,313 | 2,866,230 | 4,080,000 | 68,101,299 |
| Red Mesa | Nextera | US | 1.6XLE | 5 | 12,120,125 | 5,985,947 | 346,350 | 282,682 | 240,000 | 5,265,146 |
| Elk City | Nextera | US | 1.6XLE | 18 | 41,142,517 | 21,759,663 | 1,351,727 | 726,000 | 864,000 | 16,441,127 |
| TPO 7 Storage | Nextera | US | 1.6XLE | 21 | 40,698,000 | 25,286,459 | 1,414,615 | 1,503,748 | 1,008,000 | 11,485,178 |
| Frey Farms | PPL Renewables | US | 1.6XLE | 2 | 5,080,100 | 2,421,967 | 390,962 | 206,278 | 96,000 | 1,964,893 |
| Lorraine II | Third Planet | US | 1.6XLE | 35 | 83,953,250 | 42,287,037 | 3,490,858 | 3,292,916 | 1,680,000 | 33,602,439 |
| 1.6 XLE Subtotal | | | | 706 | $ 1,644,285,699 | $ 852,718,675 | $ 86,402,450 | $ 28,077,345 | $ 33,888,000 | $ 643,199,229 |
| *As a Percentage of Sales* | | | | | | | | | | *39.1%* |
| | | | | | | | | | | |
| **GE Wind Turbine Subtotal** | | | | **1,710** | **$ 3,960,260,622** | **$ 1,993,240,048** | **$ 177,263,308** | **$ 66,724,073** | **$ 82,080,000** | **$ 1,640,953,193** |
| | | | | | | | | | | |
| GE Wind Turbine Per Unit | | | | | $ 2,315,942 | $ 1,165,637 | $ 103,663 | $ 39,020 | $ 48,000 | $ 959,622 |
| *As a Percentage of Sales* | | | | | | | | | | *41.4%* |
| | | | | | | | | | | |
| Price Adjustment | Nextera | | | - | $ - | $ - | $ - | $ 29,198,250 | $ - | (29,198,250) |
| Other - LDs (Below the Line) | | | | - | - | | | | | - |
| Other - OB Transportation (Below the Line) | | | | - | - | | 618,000 | | | (618,000) |
| PI adjustment | | | | - | - | (5,586,000) | | | | 5,586,000 |
| Commissioning Deferral | | | | - | (6,324,000) | | | (6,324,000) | | - |
| Functional Cost | | | | - | | | | 7,313,762 | | (7,313,762) |
| Closeouts | | | | - | | | (7,200,000) | (7,900,000) | | 15,100,000 |
| Management Reserve Adj | | | | - | | | | (3,400,000) | | 3,400,000 |
| Prior Qtr True ups/ECOs | | | | - | 19,996,526 | 954,514 | 3,850,674 | 2,580,580 | | 12,610,758 |
| Startup Costs (BRZPRO) | | Latin America | | - | | | | (4,524,772) | | 4,524,772 |
| **Total** | | | | **1,710** | **$ 3,973,933,148** | **$ 1,988,608,562** | **$ 174,531,982** | **$ 83,667,893** | **$ 82,080,000** | **$ 1,645,044,711** |
| *As a Percentage of Sales* | | | | | | | | | | *41.4%* |

Source:
GENDTX6899232 - GENDTX6899255.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

General Electric Company v. Mitsubishi Heavy Industries, Ltd. and Mitsubishi Power Systems Americas, Inc.

**GE Wind Turbine Sales - Q1 2011**

| Project | Customer | Country | Model | Units | Sales | Cost | Outbound Transportation | Commission & Installation | Warranty | Contribution Margin |
|---|---|---|---|---|---|---|---|---|---|---|
| *Americas* | - | | | | | | | | | |
| BRSA | Conti Construction | US | 1.5 SLE | - | $ - | $ - | $ - | $ - | $ - | $ - |
| Massachusetts Military Res II | Environmental Chemical Corp | US | 1.5 SLE | - | | | | | | - |
| Heron Lake | enXco | US | 1.5 SLE | 56 | 121,039,100 | 61,514,768 | 4,648,000 | 1,419,453 | 2,240,000 | 51,216,879 |
| Lakefield | enXco | US | 1.5 SLE | 46 | 100,939,940 | 48,882,608 | 4,462,000 | 1,165,979 | 1,840,000 | 44,589,353 |
| Merricourt | enXco | US | 1.5 SLE | - | | | | | | - |
| Manzana | Iberdrola | US | 1.5 SLE | - | | | | | | - |
| 1.5 SLE Subtotal | | | | 102 | $ 221,979,040 | $ 110,397,376 | $ 9,110,000 | $ 2,585,432 | $ 4,080,000 | $ 95,806,232 |
| *As a Percentage of Sales* | | | | | | | | | | *43.2%* |
| North Rim | AES | US | 1.5 XLE | - | $ - | $ - | $ - | $ - | $ - | - |
| Maxwell | AIM | US | 1.5 XLE | - | | | | | | - |
| Golden Hills | BP | US | 1.5 XLE | - | | | | | | - |
| TBD | EME | US | 1.5 XLE | - | | | | | | - |
| Pioneer Trail | EON | US | 1.5 XLE | - | | | | | | - |
| Settler's Trail | Eon | US | 1.5 XLE | 39 | 73,084,830 | 45,207,368 | 2,808,000 | 1,550,461 | 3,900,000 | 19,619,001 |
| Petersburg | Third Planet | US | 1.5 XLE | 25 | 62,002,625 | 28,787,190 | 2,050,000 | 639,990 | 1,000,000 | 29,525,445 |
| 1.5 XLE Subtotal | | | | 64 | $ 135,087,455 | $ 73,994,558 | $ 4,858,000 | $ 2,190,451 | $ 4,900,000 | $ 49,144,446 |
| *As a Percentage of Sales* | | | | | | | | | | *36.4%* |
| Bishop Hill | Invenergy | US | 1.6 XLE | - | $ - | $ - | $ - | $ - | $ - | - |
| Bishop Hill | Invenergy | US | 1.6 XLE | - | | | | | | - |
| Bishop Hill II | Invenergy | US | 1.6 XLE | - | | | | | | - |
| Gratiot | Invenergy | US | 1.6 XLE | - | | | | | | - |
| Harden | Invenergy | US | 1.6 XLE | - | | | | | | - |
| Ipswich | Ipswich Municipal | US | 1.6 XLE | 1 | 2,443,115 | 1,103,382 | 267,000 | 154,842 | 40,000 | 877,891 |
| Palm Springs | Nextera | US | 1.6 XLE | 1 | 2,402,886 | 1,086,824 | 129,000 | (120,879) | 48,000 | 1,259,941 |
| TBD | Nextera | US | 1.6 XLE | - | | | | | | - |
| TBD | Nextera | US | 1.6 XLE | - | | | | | | - |
| TBD | Nextera | US | 1.6 XLE | - | | | | | | - |
| TPO 7 | Nextera | US | 1.6 XLE | 2 | 3,876,000 | 2,304,477 | 186,000 | 662,809 | 80,000 | 642,714 |
| Sawtooth | Power Works | US | 1.6 XLE | - | | | | | | - |
| High Praire | Wind Capital Group | US | 1.6 XLE | - | | | | | | - |
| Windwalkers / Roeder Family Farm | Wind Partners LLC | US | 1.6 XLE | - | | | | | | - |
| 1.6 XLE Subtotal | | | | 4 | $ 8,722,001 | $ 4,494,683 | $ 582,000 | $ 696,772 | $ 168,000 | $ 2,780,546 |
| *As a Percentage of Sales* | | | | | | | | | | *31.9%* |
| Horseshoe Bend | Caithness | US | 2.75 XL | - | $ - | $ - | $ - | $ - | $ - | - |
| North Hurlburt | Caithness | US | 2.75 XL | - | | | | | | - |
| South Hurlburt | Caithness | US | 2.75 XL | - | | | | | | - |
| North Sky River | Nextera | US | 2.75 XL | - | | | | | | - |
| 2.75 Subtotal | | | | - | $ - | $ - | $ - | $ - | $ - | - |
| *As a Percentage of Sales* | | | | | | | | | | *0.0%* |
| **GE Wind Turbine Subtotal** | | | | **170** | **$ 365,788,496** | **$ 188,886,617** | **$ 14,550,000** | **$ 5,472,655** | **$ 9,148,000** | **$ 147,731,224** |
| GE Wind Turbine Per Unit | | | | | $ 2,151,697 | $ 1,111,098 | $ 85,588 | $ 32,192 | $ 53,812 | $ 869,007 |
| *As a Percentage of Sales* | | | | | | | | | | *40.4%* |
| White Oak commissioning | Invenergy | | | - | $ 2,067,225 | $ - | $ 8,100 | $ 544,359 | $ 80,000 | 1,434,766 |
| | Other - LDs (Below the Line) | | | - | | | | | | - |
| LEC Charges | Other - OB Transportation (Below the Line) | | | - | | | 128,000 | | | (128,000) |
| | Lagging Aux BOM Charges | | | - | | | | | | - |
| Leaning Juniper Credit | Iberdrola | | | - | 9,736,920 | | | | | 9,736,920 |
| | Pine Tree Extended Warranty | | | - | 2,000,000 | | | | | 2,000,000 |
| | Commissioning Deferral | | | - | 3,980,000 | | | 3,980,000 | | - |
| | Functional Cost | | | - | | | | 3,484,325 | | (3,484,325) |
| | Closeouts | | | - | | | (1,402,421) | (50,266) | | 1,452,687 |
| | Incremental Ocean | | | - | | | 216,000 | | | (216,000) |
| | Prior Qtr True ups/ECOs | | | - | 1,589,794 | 668,000 | 3,158,138 | 6,445,403 | | (8,681,845) |
| | LA new markets costs | | | - | | | | 25,480 | | (25,480) |
| | Interest Income | | | - | | | (4,239,190) | | | 4,239,190 |
| | MH ICP elim | | | - | | | | | | - |
| **Total** | | | | **170** | **$ 385,162,435** | **$ 189,554,715** | **$ 16,657,817** | **$ 15,662,766** | **$ 9,228,000** | **$ 154,059,137** |
| *As a Percentage of Sales* | | | | | | | | | | *40.0%* |
| **Grand Total 2010 - Q1 2011 Wind Turbines** | | | | **1,880** | **$ 4,326,049,118** | **$ 2,182,126,665** | **$ 191,813,308** | **$ 72,196,728** | **$ 91,228,000** | **$ 1,788,684,417** |
| Per Unit 2010 - Q1 2011 Wind Turbines | | | | | $ 2,301,090 | $ 1,160,706 | $ 102,028 | $ 38,403 | $ 48,526 | $ 951,428 |
| *As a Percentage of Sales* | | | | | | | | | | *41.3%* |

*Sources:*
GENDTX6899201 - GENDTX6899230.
Appendix A, Schedule 2A.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

General Electric Company v. Mitsubishi Heavy Industries, Ltd. and Mitsubishi Power Systems Americas, Inc.                Appendix B

Summary of Mitsubishi Power Systems Americas 2.4 MW Wind Turbine Sales for 2008 - Q1 2011

| | Units | Total | | | | Per Unit | | | Per MW | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Revenue | Cost | P & L | Margin % | Price | Cost | P & L | Price | Cost | P & L |
| 2008 | 164 | $ 535,870,098 | $ 516,637,709 | $ 19,232,389 | 3.6% | $ 3,267,501 | $ 3,150,230 | $ 117,271 | $ 1,361,459 | $ 1,312,596 | $ 48,863 |
| 2009 | 185 | 621,532,858 | 586,549,174 | 34,983,684 | 5.6% | 3,359,637 | 3,170,536 | 189,101 | 1,399,849 | 1,321,057 | 78,792 |
| 2010 Non-Settlement | 146 | 623,629,692 | 574,275,084 | 49,354,608 | 7.9% | 4,271,436 | 3,933,391 | 338,045 | 1,779,765 | 1,638,913 | 140,852 |
| 2010 Settlement | 456 | 232,117,604 | 147,801,642 | 84,315,962 | 36.3% | 509,030 | 324,126 | 184,904 | | | |
| 2011 | - | - | - | - | 0.0% | - | - | - | - | - | - |
| Total | 951 | $ 2,013,150,252 | $ 1,825,263,609 | $ 187,886,643 | 9.3% | $ 2,116,877 | $ 1,919,310 | $ 197,567 | $ 882,032 | $ 799,713 | $ 82,320 |
| Total Excluding Settlement | 495 | $ 1,781,032,648 | $ 1,677,461,967 | $ 103,570,681 | 5.8% | $ 3,598,046 | $ 3,388,812 | $ 209,234 | $ 1,499,186 | $ 1,412,005 | $ 87,181 |

Sources:
Appendix B, Schedules 1 - 4.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

General Electric Company v. Mitsubishi Heavy Industries, Ltd. and Mitsubishi Power Systems Americas, Inc.

Appendix B
Schedule 1

Mitsubishi Power Systems Americas 2.4 MW Wind Turbine Sales for 2008

| Order | Project Name | Units | Total Revenue | Total Cost | Total P & L | Total Margin % | Per MW Price | Per MW Cost | Per MW P & L | Per MW Margin % |
|---|---|---|---|---|---|---|---|---|---|---|
| 2A3027 | PPM/Penascal (TPO#1) 2.4MW | 64 | $ 216,985,418 | $ 207,577,667 | $ 9,407,751 | 4.3% | $ 1,412,665 | $ 1,351,417 | $ 61,248 | 4.3% |
| 2A3028 | B&B/Gulf Wind 2.4MW | 99 | 315,639,453 | 304,623,745 | 11,015,708 | 3.5% | 1,328,449 | 1,282,087 | 46,362 | 3.5% |
| 2A3029 | PPM/Flagship 2.4MW | 1 | 3,245,227 | 3,385,003 | (139,776) | -4.3% | 1,352,178 | 1,410,418 | (58,240) | -4.3% |
| 2A3032 | Edison/Goat Mountain-2 2.4MW | - | - | 1,051,294 | (1,051,294) | 0.0% | - | 438,039 | (438,039) | 0.0% |
| | **2.4 MW Subtotal** | **164** | **$ 535,870,098** | **$ 516,637,709** | **$ 19,232,389** | **3.6%** | **$ 1,361,459** | **$ 1,312,596** | **$ 48,863** | **3.6%** |
| | Construction Misc. | | $ - | $ (846) | $ 846 | 0.0% | | | | |
| | Others | | - | (978,602) | 978,602 | 0.0% | | | | |
| | Maintenance | | 29,207,930 | 21,283,620 | 7,924,310 | 27.1% | | | | |
| | Spare Parts etc. | | 7,496,163 | 6,421,947 | 1,074,216 | 14.3% | | | | |
| | Additional Cost | | 774,067 | 247,787 | 526,280 | 68.0% | | | | |
| | Subtotal | | $ 37,478,160 | $ 26,973,906 | $ 10,504,254 | 28.0% | | | | |
| | W/T Dept Cost | | $ - | 11,914,582 | $ (11,914,582) | 0.0% | | | | |
| | LA General Charge Allocation | | - | 6,104,148 | (6,104,148) | 0.0% | | | | |
| | Interest | | - | (829,000) | 829,000 | 0.0% | | | | |
| | H/Q Charge Allocation | | - | 13,577,000 | (13,577,000) | 0.0% | | | | |
| | Subtotal | | $ - | 30,766,730 | $ (30,766,730) | 0.0% | | | | |
| **Total** | | **164** | **$ 573,348,258** | **$ 574,378,345** | **$ (1,030,087)** | **-0.2%** | | | | |

Source:
Exhibit 2 to the deposition of Gregory Wunder, dated July 14, 2011.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

General Electric Company v. Mitsubishi Heavy Industries, Ltd. and Mitsubishi Power Systems Americas, Inc.

Appendix B
Schedule 2

**Mitsubishi Power Systems Americas 2.4 MW Wind Turbine Sales for 2009**

| Order | Project Name | Units | Total Revenue | Total Cost | Total P & L | Total Margin % | Per MW Price | Per MW Cost | Per MW P & L | Per MW Margin % |
|---|---|---|---|---|---|---|---|---|---|---|
| 2A3027 | Iberdrola/Penascal (TPO#1&2) 2.4MW | 20 | $ 65,225,146 | $ 65,362,318 | $ (137,172) | -0.2% | $ 1,358,857 | $ 1,361,715 | $ (2,858) | -0.2% |
| 2A3028 | B&B/Gulf Wind 2.4MW | 19 | 70,292,950 | 60,919,852 | 9,373,098 | 13.3% | 1,541,512 | 1,335,962 | 205,550 | 13.3% |
| 2A3032 | Edison/Goat Mountain-2 2.4MW | 29 | 96,284,174 | 89,609,930 | 6,674,244 | 6.9% | 1,383,393 | 1,287,499 | 95,894 | 6.9% |
| 2A3033 | Iberdrola/Penascal-II (TPO#3) 2.4MW | 63 | 220,970,869 | 212,090,495 | 8,880,374 | 4.0% | 1,461,448 | 1,402,715 | 58,733 | 4.0% |
| 2A3044 | Edison/Taloga 2.4MW | 54 | 168,759,719 | 158,566,579 | 10,193,140 | 6.0% | 1,302,158 | 1,223,508 | 78,651 | 6.0% |
| | **2.4 MW Subtotal** | **185** | **$ 621,532,858** | **$ 586,549,174** | **$ 34,983,684** | **5.6%** | **$ 1,399,849** | **$ 1,321,057** | **$ 78,792** | **5.6%** |
| | Construction Misc. | | $ 18,600 | $ 15,904 | $ 2,696 | 14.5% | | | | |
| | Others | | 1,685,137 | 19,611,224 | (17,926,087) | -1063.8% | | | | |
| | Hurricane Ike | | - | (5,678,438) | 5,678,438 | 0.0% | | | | |
| | Additional Reserve for Wrinkle Blade | | - | 954,199 | (954,199) | 0.0% | | | | |
| | Adjustment | | - | (57) | 57 | 0.0% | | | | |
| | Maintenance | | 42,856,747 | 38,392,157 | 4,464,590 | 10.4% | | | | |
| | Spare Parts etc. | | 6,017,849 | 4,681,320 | 1,336,529 | 22.2% | | | | |
| | Additional Cost | | 1,799,000 | (2,903,580) | 4,702,580 | 261.4% | | | | |
| | Subtotal | | $ 52,377,333 | $ 55,072,729 | $ (2,695,396) | -5.1% | | | | |
| | W/T Dept Cost | | $ - | $ 20,132,167 | $ (20,132,167) | 0.0% | | | | |
| | LA General Charge Allocation | | - | 10,511,724 | (10,511,724) | 0.0% | | | | |
| | Interest | | - | 461,085 | (461,085) | 0.0% | | | | |
| | H/Q Charge Allocation | | - | 11,095,927 | (11,095,927) | 0.0% | | | | |
| | Subtotal | | $ - | $ 42,200,903 | $ (42,200,903) | 0.0% | | | | |
| **Total** | | **185** | **$ 673,910,191** | **$ 683,822,806** | **$ (9,912,615)** | **-1.5%** | | | | |

Source:
Exhibit 2 to the deposition of Gregory Wunder, dated July 14, 2011.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

00827

General Electric Company v. Mitsubishi Heavy Industries, Ltd. and Mitsubishi Power Systems Americas, Inc.

Appendix B
Schedule 3

Mitsubishi Power Systems Americas 2.4 MW Wind Turbine Sales for 2010

| Order | Project Name | Units | Total Revenue | Total Cost | Total P & L | Total Margin % | Per MW Price | Per MW Cost | Per MW P & L | Per MW Margin % |
|---|---|---|---|---|---|---|---|---|---|---|
| 2A3033 | PPM Frame Work (TPO#3 Penascal) | 21 | $ 85,962,972 | $ 69,175,237 | $ 16,787,735 | 19.5% | $ 1,705,615 | $ 1,372,525 | $ 333,090 | 19.5% |
| 2A3041 | TPO#4 - Elm Creek II | 62 | 271,510,625 | 254,845,629 | 16,664,996 | 6.1% | 1,824,668 | 1,712,672 | 111,996 | 6.1% |
| 2A3046 | TPO#4 - Juniper Canyon | 63 | 266,156,095 | 250,254,218 | 15,901,877 | 6.0% | 1,760,292 | 1,655,120 | 105,171 | 6.0% |
| | **2.4 MW Non-Settlement Subtotal** | **146** | **$ 623,629,692** | **$ 574,275,084** | **$ 49,354,608** | **7.9%** | **$ 1,779,765** | **$ 1,638,913** | **$ 140,852** | **7.9%** |
| | | | | | | | | | | |
| 2A3037 * | Hatchet Ridge/B&B 2009 WT Farm | 44 | $ 12,852,310 | $ 8,143,583 | $ 4,708,727 | 36.6% | | | | |
| 2A3039 * | 2009 WT Farm Babcock & Brown | 78 | 24,916,737 | 16,570,122 | 8,346,615 | 33.5% | | | | |
| 2A3040 * | 2009 WT Farm Babcock & Brown | 84 | 26,504,123 | 16,611,398 | 9,892,725 | 37.3% | | | | |
| 2A3042 * | Babcock & Brown (2010) | 250 | 147,844,434 | 93,476,539 | 54,367,895 | 36.8% | | | | |
| 2A3049 * | Edison Reconciliation | - | 20,000,000 | 13,000,000 | 7,000,000 | 35.0% | | | | |
| | **2.4 MW Settlement Subtotal** | **456** | **$ 232,117,604** | **$ 147,801,642** | **$ 84,315,962** | **36.3%** | | | | |
| | | | | | | | | | | |
| | **Total Wind Turbines** | **602** | **$ 855,747,296** | **$ 722,076,726** | **$ 133,670,570** | **15.6%** | | | | |
| | | | | | | | | | | |
| | Loss due to Market Decline (Tower) | | $ - | $ 51,436,961 | $ (51,436,961) | 0.0% | | | | |
| | Loss due to Market Decline (Blade) | | - | 33,117,312 | (33,117,312) | 0.0% | | | | |
| | Others | | 5,465,871 | 4,322,075 | 1,143,796 | 20.9% | | | | |
| | Maintenance | | 56,694,663 | 40,194,099 | 16,500,564 | 29.1% | | | | |
| | Spare Parts etc. | | 6,826,294 | 6,404,959 | 421,335 | 6.2% | | | | |
| | Additional Cost | | 319,000 | 394,000 | (75,000) | -23.5% | | | | |
| | Subtotal | | $ 69,305,828 | $ 135,869,406 | $ (66,563,578) | -96.0% | | | | |
| | | | | | | | | | | |
| | W/T Dept Cost | | $ - | $ 41,132,000 | $ (41,132,000) | 0.0% | | | | |
| | Interest | | - | (1,121,000) | 1,121,000 | 0.0% | | | | |
| | H/Q Charge Allocation | | - | 14,063,000 | (14,063,000) | 0.0% | | | | |
| | Subtotal | | $ - | $ 54,074,000 | $ (54,074,000) | 0.0% | | | | |
| | | | | | | | | | | |
| **Total** | | **602** | **$ 925,053,124** | **$ 912,020,132** | **$ 13,032,992** | **1.4%** | | | | |

Note:
Orders with an asterisk are related to cancellations of projects and the settlement amounts associated with the cancellations.  See the deposition of Gregory Wunder, dated July 14, 2011, pp. 50 - 51.

Source:
Exhibit 2 to the deposition of Gregory Wunder, dated July 14, 2011.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

General Electric Company v. Mitsubishi Heavy Industries, Ltd. and Mitsubishi Power Systems Americas, Inc.

Mitsubishi Power Systems Americas 2.4 MW Wind Turbine Sales for Q1 2011

| Order | Project Name | Units | Total Revenue | Total Cost | Total P & L | Total Margin % | Per MW Price | Per MW Cost | Per MW P & L | Per MW Margin % |
|-------|--------------|-------|---------|------|-------|----------|-------|------|-------|----------|
| | **2.4 MW Subtotal** | - | - | - | - | 0.0% | | | | 0.0% |
| | **Wind Turbine Subtotal** | - | $ - | $ - | $ - | 0.0% | $ - | $ - | $ - | 0.0% |
| | Others | | $ 4,072,976 | $ 1,377,077 | $ 2,695,899 | 66.2% | | | | |
| | Maintenance | | 14,804,317 | 12,094,688 | 2,709,629 | 18.3% | | | | |
| | Spare Parts etc. | | 961,428 | 544,840 | 416,588 | 43.3% | | | | |
| | Additional Cost | | 796,000 | 167,000 | 629,000 | 79.0% | | | | |
| | Subtotal | | $ 20,634,721 | $ 14,183,605 | $ 6,451,116 | 31.3% | | | | |
| | W/T Dept Cost | | $ - | $ 6,698,000 | $ (6,698,000) | 0.0% | | | | |
| | Interest | | - | (248,000) | 248,000 | 0.0% | | | | |
| | H/Q Charge Allocation | | - | 66,000 | (66,000) | 0.0% | | | | |
| | Subtotal | | $ - | $ 6,516,000 | $ (6,516,000) | 0.0% | | | | |
| **Total** | | - | $ 20,634,721 | $ 20,699,605 | $ (64,884) | -0.3% | | | | |

Source:
Exhibit 2 to the deposition of Gregory Wunder, dated July 14, 2011.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**General Electric Company v. Mitsubishi Heavy Industries, Ltd. and Mitsubishi Power Systems Americas, Inc.**

Appendix B
Schedule 5

**Summary of MPSA Maintenance and Services Attributable to Mitsubishi 2.4 MW Wind Turbine**

| | 2009 | | | 2010 | | | 2011 | | | Total | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Revenue | Cost | P&L | Revenue | Cost | P&L | Revenue | Cost | P&L | Revenue | Cost | P&L |
| Maintenance | $ 5,355,579 | $ 7,941,372 | $ (2,585,793) | $ 15,594,219 | $ 10,874,885 | $ 4,719,334 | $ - | $ - | $ - | $ 20,949,798 | $ 18,816,257 | $ 2,133,541 |
| Technical Advisor [1] | - | - | - | 5,103,855 | 5,727,974 | (624,119) | 4,072,976 | 1,377,077 | 2,695,899 | 9,176,831 | 7,105,051 | 2,071,780 |
| **Total** | **$ 5,355,579** | **$ 7,941,372** | **$ (2,585,793)** | **$ 20,698,074** | **$ 16,602,859** | **$ 4,095,215** | **$ 4,072,976** | **$ 1,377,077** | **$ 2,695,899** | **$ 30,126,629** | **$ 25,921,308** | **$ 4,205,321** |
| *As a % of Revenue* | | | *-48.3%* | | | *19.8%* | | | *66.2%* | | | *14.0%* |

Note:
[1] See the deposition of Gregory Wunder, dated July 14, 2011, pp. 39, 52 - 53.

Source:
Exhibit 2 to the deposition of Gregory Wunder, dated July 14, 2011.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

General Electric Company v. Mitsubishi Heavy Industries, Ltd. and Mitsubishi Power Systems Americas, Inc.

Appendix C
Schedule 1

Summary of MHI Wind Turbine Sales (in U.S. Dollars)

| Year | Quarter | Project | Model | Output | Yen/Dollar | Units | Turnover | M/C | Gross Profit [1] | T/C [2] | Operating Profit |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 2007 | 3 | PPM Flagship | MWT92 | 2.4 MW | ¥ 117.7505 | 1 | $ 2,106,148 | $ 3,184,700 | $ (1,078,552) | $ 3,252,640 | $ (1,146,492) |
| **FY 2007 Total** | | | | | | **1** | **$ 2,106,148** | **$ 3,184,700** | **$ (1,078,552)** | **$ 3,252,640** | **$ (1,146,492)** |
| FY 2007 Per Unit | | | | | | | $ 2,106,148 | $ 3,184,700 | $ (1,078,552) | $ 3,252,640 | $ (1,146,492) |
| FY 2007 Per MW | | | | | | | 877,562 | 1,326,958 | (449,397) | 1,355,267 | (477,705) |
| *As a % of Sales* | | | | | | | | | *-51.2%* | | *-54.4%* |
| 2008 | 1 | PPM TPO#1 (22/42) | MWT92 | 2.4 MW | ¥ 120.7981 | 22 | $ 38,792,001 | $ 35,621,421 | $ 3,170,580 | $ 37,219,129 | $ 1,572,872 |
| 2008 | 2 | PPM TPO#1 (20/42) | MWT92 | 2.4 MW | 117.7306 | 20 | 36,184,306 | 34,358,102 | 1,826,204 | 35,827,559 | 356,747 |
| 2008 | 3 | PPM TPO#2 (8+34 / 42) | MWT92 | 2.4 MW | 113.1293 | 42 | 79,342,840 | 76,505,379 | 2,837,461 | 79,988,119 | (645,279) |
| 2008 | 3 | Edison/Goat Mountain 2 | MWT95 | 2.4 MW | 113.1293 | 29 | 58,260,769 | 54,221,143 | 4,039,626 | 56,687,348 | 1,573,421 |
| 2008 | 4 | Edison/ Taloga Wind Project | MWT95 | 2.4 MW | 105.2014 | 54 | 119,209,440 | 105,416,848 | 13,792,592 | 107,935,826 | 11,273,614 |
| 2008 | 1 | BB Gulf (1/118) | MWT95 | 2.4 MW | 120.7981 | 1 | 1,796,386 | 1,705,325 | 91,061 | 1,779,829 | 16,557 |
| 2008 | 2 | BB Gulf (37/118) | MWT95 | 2.4 MW | 117.7306 | 37 | 68,291,506 | 66,584,219 | 1,707,287 | 69,446,686 | (1,155,180) |
| 2008 | 3 | BB Gulf (80/118) | MWT95 | 2.4 MW | 113.1293 | 80 | 153,629,519 | 149,775,522 | 3,853,997 | 156,581,893 | (2,952,374) |
| **FY 2008 Total** | | | | | | **285** | **$ 555,506,767** | **$ 524,187,959** | **$ 31,318,808** | **$ 545,466,389** | **$ 10,040,378** |
| FY 2008 Per Unit | | | | | | | $ 1,949,147 | $ 1,839,256 | $ 109,891 | $ 1,913,917 | $ 35,229 |
| FY 2008 Per MW | | | | | | | 812,145 | 766,357 | 45,788 | 797,465 | 14,679 |
| *As a % of Sales* | | | | | | | | | *5.6%* | | *1.8%* |
| 2009 | | Iberdrola TPO#3 [3] | | 2.4 MW | ¥ 100.4866 | 84 | $ 184,741,050 | $ 178,859,669 | $ 5,881,381 | $ 182,571,607 | $ 2,169,443 |
| 2009 | 3 | Iberdrola Elm-Creek 2 | MWT95 | 2.4 MW | 96.0688 | 62 | 166,401,579 | 145,999,534 | 20,402,045 | 154,191,579 | 12,210,000 |
| 2009 | 3 | Iberdrola Juniper Canyon | MWT95 | 2.4 MW | 96.0688 | 63 | 169,087,154 | 146,905,135 | 22,182,019 | 155,097,180 | 13,989,974 |
| **FY 2009 Total** | | | | | | **209** | **$ 520,229,783** | **$ 471,764,338** | **$ 48,465,445** | **$ 491,860,366** | **$ 28,369,417** |
| FY 2009 Per Unit | | | | | | | $ 2,489,138 | $ 2,257,246 | $ 231,892 | $ 2,353,399 | $ 135,739 |
| FY 2009 Per MW | | | | | | | 1,037,141 | 940,519 | 96,622 | 980,583 | 56,558 |
| *As a % of Sales* | | | | | | | | | *9.3%* | | *5.5%* |
| **Grand Total** | | | | | | **495** | **$ 1,077,842,698** | **$ 999,136,997** | **$ 78,705,701** | **$ 1,040,579,395** | **$ 37,263,303** |
| Grand Total Per Unit | | | | | | | $ 2,177,460 | $ 2,018,459 | $ 159,001 | $ 2,102,181 | $ 75,279 |
| Grand Total Per MW | | | | | | | 907,275 | 841,025 | 66,250 | 875,909 | 31,366 |
| *As a % of Sales* | | | | | | | | | *7.3%* | | *3.5%* |

Notes:
Per its Annual Report, MHI's fiscal year ends March 31.

[1] Gross Profit = Turnover - M/C.

[2] Total Cost = Turnover - Operating Profit.

[3] The "Sales period" for TPO #3 is listed as 2009, but the quarter is not provided.  I have used the average exchange rate for fiscal year 2009 (April 2008 - March 2009).

Sources:
Appendix C, Schedules 2 - 3.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

General Electric Company v. Mitsubishi Heavy Industries, Ltd. and Mitsubishi Power Systems Americas, Inc.

Summary of MHI Wind Turbine Sales (in Japanese Yen)

Appendix C
Schedule 2

| Year | Quarter | Project | Model | Output | Units | Turnover | M/C | Gross Profit [1] | T/C [2] | Operating Profit |
|---|---|---|---|---|---|---|---|---|---|---|
| 2007 | 3 | PPM Flagship | MWT92 | 2.4 MW | 1 | ¥ 248,000,000 | ¥ 375,000,000 | -¥ 127,000,000 | ¥ 383,000,000 | -¥ 135,000,000 |
| **FY 2007 Total** | | | | | **1** | **¥ 248,000,000** | **¥ 375,000,000** | **-¥ 127,000,000** | **¥ 383,000,000** | **-¥ 135,000,000** |
| | | | | | | | | | | |
| 2008 | 1 | PPM TPO#1 (22/42) | MWT92 | 2.4 MW | 22 | ¥ 4,686,000,000 | ¥ 4,303,000,000 | ¥ 383,000,000 | ¥ 4,496,000,000 | ¥ 190,000,000 |
| 2008 | 2 | PPM TPO#1 (20/42) | MWT92 | 2.4 MW | 20 | 4,260,000,000 | 4,045,000,000 | 215,000,000 | 4,218,000,000 | 42,000,000 |
| 2008 | 3 | PPM TPO#2 (8+34 / 42) | MWT92 | 2.4 MW | 42 | 8,976,000,000 | 8,655,000,000 | 321,000,000 | 9,049,000,000 | (73,000,000) |
| 2008 | 3 | Edison/Goat Mountain 2 | MWT95 | 2.4 MW | 29 | 6,591,000,000 | 6,134,000,000 | 457,000,000 | 6,413,000,000 | 178,000,000 |
| 2008 | 4 | Edison/ Taloga Wind Project | MWT95 | 2.4 MW | 54 | 12,541,000,000 | 11,090,000,000 | 1,451,000,000 | 11,355,000,000 | 1,186,000,000 |
| 2008 | 1 | BB Gulf (1/118) | MWT95 | 2.4 MW | 1 | 217,000,000 | 206,000,000 | 11,000,000 | 215,000,000 | 2,000,000 |
| 2008 | 2 | BB Gulf (37/118) | MWT95 | 2.4 MW | 37 | 8,040,000,000 | 7,839,000,000 | 201,000,000 | 8,176,000,000 | (136,000,000) |
| 2008 | 3 | BB Gulf (80/118) | MWT95 | 2.4 MW | 80 | 17,380,000,000 | 16,944,000,000 | 436,000,000 | 17,714,000,000 | (334,000,000) |
| **FY 2008 Total** | | | | | **285** | **¥ 62,691,000,000** | **¥ 59,216,000,000** | **¥ 3,475,000,000** | **¥ 61,636,000,000** | **¥ 1,055,000,000** |
| | | | | | | | | | | |
| 2009 | | Iberdrola TPO#3 [3] | | 2.4 MW | 84 | ¥ 18,564,000,000 | ¥ 17,973,000,000 | ¥ 591,000,000 | ¥ 18,346,000,000 | ¥ 218,000,000 |
| 2009 | 3 | Iberdrola Elm-Creek 2 | MWT95 | 2.4 MW | 62 | 15,986,000,000 | 14,026,000,000 | 1,960,000,000 | 14,813,000,000 | 1,173,000,000 |
| 2009 | 3 | Iberdrola Juniper Canyon | MWT95 | 2.4 MW | 63 | 16,244,000,000 | 14,113,000,000 | 2,131,000,000 | 14,900,000,000 | 1,344,000,000 |
| **FY 2009 Total** | | | | | **209** | **¥ 50,794,000,000** | **¥ 46,112,000,000** | **¥ 4,682,000,000** | **¥ 48,059,000,000** | **¥ 2,735,000,000** |
| | | | | | | | | | | |
| **Total** | | | | | **495** | **¥ 113,733,000,000** | **¥ 105,703,000,000** | **¥ 8,030,000,000** | **¥ 110,078,000,000** | **¥ 3,655,000,000** |

Notes:
Per its Annual Report, MHI's fiscal year ends March 31.

[1] Gross Profit = Turnover - M/C.

[2] Total Cost = Turnover - Operating Profit.

[3] TPO#3 is not included on MHINDTX2721013, but is included on MHINDTX3903584. The "Sales period" for TPO #3 is listed as 2009, but the quarter is not provided.

Sources:
MHINDTX2721013.
MHINDTX3903584.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**General Electric Company v. Mitsubishi Heavy Industries, Ltd. and Mitsubishi Power Systems Americas, Inc.**

**Summary of Japanese Yen per U.S. Dollar**

Appendix C
Schedule 3

| | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 |
|---|---|---|---|---|---|---|
| January | ¥115.4765 | ¥120.4471 | ¥107.8181 | ¥ 90.1205 | ¥ 91.1011 | ¥ 82.6250 |
| February | 117.8605 | 120.5047 | 107.0300 | 92.9158 | 90.1395 | 82.5368 |
| March | 117.2778 | 117.2600 | 100.7562 | 97.8550 | 90.7161 | 81.6470 |
| Quarterly Average | ¥116.8716 | ¥119.4039 | ¥105.2014 | ¥ 93.6304 | ¥ 90.6522 | ¥ 82.2696 |
| | | | | | | |
| April | ¥117.0695 | ¥118.9324 | ¥102.6777 | ¥ 98.9200 | ¥ 93.4527 | ¥ 83.1771 |
| May | 111.7305 | 120.7732 | 104.3595 | 96.6445 | 91.9730 | 81.1257 |
| June | 114.6250 | 122.6886 | 106.9152 | 96.6145 | 90.8059 | 80.4259 |
| Quarterly Average | ¥114.4750 | ¥120.7981 | ¥104.6508 | ¥ 97.3930 | ¥ 92.0772 | ¥ 81.5762 |
| | | | | | | |
| July | ¥115.7670 | ¥121.4148 | ¥106.8518 | ¥ 94.3670 | ¥ 87.5005 | ¥ 79.2425 |
| August | 115.9243 | 116.7335 | 109.3624 | 94.8971 | 85.3727 | 76.9657 |
| September | 117.2145 | 115.0435 | 106.5748 | 91.2748 | 84.3571 | 76.8100 |
| Quarterly Average | ¥116.3019 | ¥117.7306 | ¥107.5963 | ¥ 93.5130 | ¥ 85.7434 | ¥ 77.6727 |
| | | | | | | |
| October | ¥118.6090 | ¥115.8661 | ¥ 99.9659 | ¥ 90.3671 | ¥ 81.7285 | |
| November | 117.3205 | 111.0729 | 96.9656 | 89.2674 | 82.5180 | |
| December | 117.3220 | 112.4490 | 91.2750 | 89.9509 | 83.3376 | |
| Quarterly Average | ¥117.7505 | ¥113.1293 | ¥ 96.0688 | ¥ 89.8618 | ¥ 82.5280 | |

Source:
http://research.stlouisfed.org/fred2/data/EXJPUS.txt.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**General Electric Company v. Mitsubishi Heavy Industries, Ltd. and Mitsubishi Power Systems Americas, Inc.**                                                                                           Appendix D

**Calculation of Mitsubishi Profitability**

| | MPSA | | | MHI | | | Total Mitsubishi | |
|---|---|---|---|---|---|---|---|---|
| | Units | Revenue | Gross Margin | Units | Revenue | Gross Margin | Gross Margin | % of MPSA Revenue |
| Iberdrola/Penascal-II (TPO#3) 2.4MW | 63 | $ 220,970,869 | $ 8,880,374 | | | | | |
| PPM Frame Work (TPO#3 Penascal) | 21 | 85,962,972 | 16,787,735 | | | | | |
| TPO#3 Subtotal | 84 | $ 306,933,841 | $ 25,668,109 | 84 | $ 184,741,050 | $ 5,881,381 | $ 31,549,490 | 10.3% |
| TPO#4 - Elm Creek II | 62 | $ 271,510,625 | $ 16,664,996 | 62 | $ 166,401,579 | $ 20,402,045 | $ 37,067,041 | 13.7% |
| TPO#4 - Juniper Canyon | 63 | 266,156,095 | 15,901,877 | 63 | 169,087,154 | 22,182,019 | 38,083,896 | 14.3% |
| TPO#4 Subtotal | 125 | $ 537,666,720 | $ 32,566,873 | 125 | $ 335,488,733 | $ 42,584,064 | $ 75,150,937 | 14.0% |
| **Total** | **209** | **$ 844,600,561** | **$ 58,234,982** | **209** | **$ 520,229,783** | **$ 48,465,445** | **$ 106,700,427** | **12.6%** |
| *Per Unit* | | | | | | | | |
| TPO#3 | | $ 3,653,974 | $ 305,573 | | $ 2,199,298 | $ 70,016 | $ 375,589 | 10.3% |
| TPO#4 | | 4,301,334 | 260,535 | | 2,683,910 | 340,673 | 601,208 | 14.0% |
| **Total** | | **$ 4,041,151** | **$ 278,636** | | **$ 2,489,138** | **$ 231,892** | **$ 510,528** | **12.6%** |

Sources:
Appendix B, Schedules 2 - 3.
Appendix C, Schedule 1.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**General Electric Company v. Mitsubishi Heavy Industries, Ltd. and Mitsubishi Power Systems Americas, Inc.**   **Appendix E**

**Calculation of Cost Savings Attributable to Mitsubishi's Three-Piece Nacelle**

| | Costs per Mile | |
|---|---|---|
| | **1,000 Miles** | **1,750 Miles** |
| 19 axle truck | $ 90 | 85 |
| Mitsubishi Current Trailer | 65 | 54 |
| Cost Savings per Mile | $ 25 | $ 31 |
| Distance in Miles | 1,000 | 1,750 |
| **Cost Savings per Wind Turbine** | $ 25,000 | $ 54,250 |

Sources:
Appendix E, Schedules 1 - 2.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

00835

**General Electric Company v. Mitsubishi Heavy Industries, Ltd. and Mitsubishi Power Systems Americas, Inc.**

**Summary of Transportation Costs Using a 19 Axle Trailer**

**Appendix E**
**Schedule 1**

| Distance in Miles | Cost | Cost per Mile |
|---|---|---|
| 1,000 | $    90,000 | $        90 |
| 1,750 | 148,750 | 85 |

Source:
GENDTX07692734.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

00836

**General Electric Company v. Mitsubishi Heavy Industries, Ltd. and Mitsubishi Power Systems Americas, Inc.**

**Summary of Mitsubishi Trailer Costs for Transport of Current Three-Piece Nacelle**

**Appendix E**
**Schedule 2**

| City | Cost | | | |
|---|---|---|---|---|
| | 1000 miles | Per Mile | 1,750 miles | Per Mile |
| Everett, WA | $ 58,000 | $ 58 | $ 82,000 | $ 47 |
| Longview, WA | 58,000 | 58 | 80,000 | 46 |
| San Diego, CA | 58,000 | 58 | 80,000 | 46 |
| Galveston, TX | 52,000 | 52 | 78,000 | 45 |
| Baltimore, MD | 110,000 | 110 | 160,000 | 91 |
| Ft. Smith, AR | 54,000 | 54 | 80,000 | 46 |
| Average | $ 65,000 | $ 65 | $ 93,333 | $ 54 |

Source:
MHINDTX3920887.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

General Electric Company v. Mitsubishi Heavy Industries, Ltd. and Mitsubishi Power Systems Americas, Inc.

Appendix F
Schedule 1

**Summary of GE Agreements**

| Bates | Agreement Title | Licensor | Licensee | Licensed Product | Settlement | Cross License | Effective Date | Exclusive | Territory | Sublicense | Royalty Running Royalty | Lump Sum |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| GENDTX00104893 - GENDTX00104932 | Settlement and Cross-License Agreement | General Electric Company | Enercon GmbH and Mr. Aloys Wobben | Equipment, components and/or methods used in components, systems, hardware and/or software used in the conversion of wind energy to another form of energy, such as electricity. | Yes | Yes | 5/10/2004 (signed) | No | Worldwide | No | Fully paid-up | |
| | Settlement and Cross-License Agreement | Enercon GmbH and Mr. Aloys Wobben | General Electric Company | Equipment, components and/or methods used in components, systems, hardware and/or software used in the conversion of wind energy to another form of energy, such as electricity. | Yes | Yes | 5/10/2004 (signed) | No | Worldwide | No | Fully paid-up | |
| GENDTX00104958 - GENDTX00105004 | Settlement and Cross License Agreement | GE Wind Energy, LLC | Gamesa Eolica, S.A. | Products, articles, methods, systems, apparatus or processes used in the conversion of wind energy to electricity, for use in wind turbines. | Yes | Yes | 4/1/2005 (signed) | No | Worldwide | No | Fully paid-up.  Gamesa to pay $23,300,000 consideration. | |
| | Settlement and Cross License Agreement | Gamesa Eolica, S.A. | GE Wind Energy, LLC | Products, articles, methods, systems, apparatus or processes used in the conversion of wind energy to electricity, for use in wind turbines. | Yes | Yes | 4/1/2005 (signed) | No | Worldwide | No | Fully paid-up | |
| GENDTX00104868 - GENDTX00104877 | License Agreement | GE Power Technology LLC | Americas Wind Energy, Inc. | Wind turbine products having greater than 105 kilowatt and less than 1 MW power producing rated capacity | No | No | 5/12/2005 (signed) | No | United States, Canada | No | $32,500 / MW | |
| GENDTX00105046 - GENDTX00105054 | Patent License Agreement | GE Infrastructure Technology LLC and GE Infrastructure Technology International Inc. | VENSYS Energiesysteme GmbH & Co. KG | Wind turbines made, sold or exclusively designed by Vensys having a direct drive permanent magnet generator | No | Yes | 3/3/2006 (signed) | No | United States, Canada, Japan  Additional territories if Licensee elects to include the Optional Licensor Patents | Yes | $10,000 / MW from 1 - 99 turbines $15,000 / MW from 100 - 199 turbines $20,000 / MW from 200 - 299 turbines $25,000 / MW from 300 turbines or more | |
| | Patent License Agreement | VENSYS Energiesysteme GmbH & Co. KG | GE Infrastructure Technology LLC and GE Infrastructure Technology International Inc. | Wind energy turbines, including components, systems, hardware and software used therein | No | Yes | 3/3/2006 (signed) | No | Worldwide | | Royalty free | |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

General Electric Company v. Mitsubishi Heavy Industries, Ltd. and Mitsubishi Power Systems Americas, Inc.

Appendix F<br>Schedule 1

### Summary of GE Agreements

| Bates | Agreement Title | Licensor | Licensee | Licensed Product | Settlement | Cross License | Effective Date | Exclusive | Territory | Sublicense | Royalty Running Royalty | Lump Sum |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| GENDTX00105019 - GENDTX00105028 | Patent License Agreement | GE Infrastructure Technology LLC and GE Infrastructure Technology International Inc. | Fuhrländer AG | Products, the sale of which would infringe a subsisting and unexpired claim of any Licensor Patents | No | No | 4/20/2006 (signed) | No | United States, Canada<br><br>Additional territories if Licensee elects to include the optional Licensor Patents | Yes | $14,000 / MW<br><br>Running Royalty capped at $11,000,000 excluding payments made by sublicensees. After 3 years from effective date, this cap increased by 2.5% per year. | |
| GENDTX00105055 - GENDTX00105076 | Patent License Agreement | GE Infrastructure Technology LLC and GE Infrastructure Technology International Inc. | Harrington License Company, LLC | Wind turbines designed to generate less than 1.25 MW, including the Frisia 56 - 850 kw variable speed wind turbine. | No | No | 5/3/2006 (signed) | No | United States, Canada | Yes | $25,000 / MW for the first 100 MW capacity<br>$20,000 / MW for greater than 100 MW capacity<br><br>Royalty rates to increase 3% per year starting in 2008. | |
| GENDTX00105029 - GENDTX00105045 | Patent License Agreement | GE Infrastructure Technology LLC and GE Infrastructure Technology International Inc. | REpower Systems AG | Licensed Products: wind turbines having (i) output currents that are controlled to a zero reactive power and (ii) a pitch controller performing pitch regulation operating dependent of the generator torque controller.<br><br>Optional Licensed Products: Wind turbines not within the definition of Licensed Products. | No | Yes | 6/6/2006 (signed) | No | United States, Canada<br><br>Additional territories if Licensee elects to include the Optional Licensor Patents | To REpower Systems AG Affiliates | <u>Licensed Products</u><br>$7,000 / MW up to and including 2/1/2011<br><br>$3,500 / MW after 2/1/2011 up to and including 1/24/2023<br><br><u>Optional Licensed Products</u><br>$19,000 / MW up to and including 2/1/2011<br><br>$9,000 / MW after 2/1/2011 up to and including 1/24/2023<br><br>Discounted rates for installed base available if licensee elects option for additional patents and pays per schedule in Attachment 5 | $3,000,000 Initial Fee applied as a credit against the Running Royalties |
| | Patent License Agreement | REpower Systems AG | GE Infrastructure Technology LLC and GE Infrastructure Technology International Inc. | Wind energy turbines, including components, systems, hardware and software used therein | No | Yes | 6/6/2006 (signed) | No | Worldwide | | Royalty free | |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

General Electric Company v. Mitsubishi Heavy Industries, Ltd. and Mitsubishi Power Systems Americas, Inc.

Summary of GE Agreements

| Bates | Agreement Title | Licensor | Licensee | Licensed Product | Settlement | Cross License | Effective Date | Exclusive | Territory | Sublicense | Royalty | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | Running Royalty | Lump Sum |
| GEWT00676073 - GEWT00676087; GENDTX00104867 | Patent Cross-License Agreement | GE Infrastructure Technology LLC and GE Infrastructure Technology International Inc. | Acciona Windpower, S.A. | Wind turbines up to 3.0 MW, including components, systems, hardware and software used therein | No | Yes | 6/23/2006 (signed) | No | United States, Canada, and other countries where patents listed in Attachment 1 have issued | | U.S. and Canada $21,000 / MW up to and including 12/31/2011<br><br>$15,000 / MW up to and including 12/31/2017<br><br>$8,000 / MW up to and including the date of the last to expire of Licensor Patents<br><br>Other Countries $16,000 / MW up to and including 12/31/2011<br><br>$12,000 / MW up to and including 12/31/2017<br><br>$6,500 / MW up to and including the date of the last to expire of Licensor Patents<br><br>Spain $6,500 / MW | $10,000,000 Initial Fee for the Initial 1,000 MW in U.S. and Canada; $8,500,000 Initial Fee for the Initial 1,500 MW in countries where Licensor Patents have issued, but excluding the U.S. and Canada. |
| | Patent Cross-License Agreement | Acciona Windpower, S.A. | GE Infrastructure Technology LLC and GE Infrastructure Technology International Inc. | Wind energy turbines, including components, systems, hardware and software used therein | No | Yes | 6/23/2006 (signed) | No | Worldwide | | Royalty free | |
| GENDTX00104933 - GENDTX00104957 | Patent License Agreement | GE Infrastructure Technology LLC and GE Infrastructure Technology International Inc. | EU Energy Inc. | D6 and D8 wind turbines and components and systems thereof and hardware and software used therein and reasonable improvements and variations thereof | No | No | 10/6/2006 (not signed by licensee) | No | United States, Member countries of the European Patent Office, Canada, Japan, China, Australia | Only to EU Energy Affiliates | $25,000 / MW after Initial Fee | $6,000,000 Initial Fee for 280 MW<br><br>Initial Fee includes consideration for Licensed Product sold prior to effective date, represented to be less than 350 MW of D6 and D8 products. |
| GENDTX00104847 - GENDTX00104866 | Patent License Agreement | GE Infrastructure Technology LLC and GE Infrastructure Technology International Inc. | AAER, Inc. | 1.5 MW wind turbine or an optimized model of up to 1.65 MW, and components and systems thereof and hardware and software used therein | No | No | 4/13/2007 (signed) | No | United States, Canada, Mexico | Only to AAER Affiliates | $30,000 / MW after Initial Fee | $3,750,000 Initial Fee for 150 MW |
| GENDTX00104878 - GENDTX00104892 | Patent License Agreement | GE Infrastructure Technology LLC and GE Infrastructure Technology International Inc. | Blitz F08-eins-null-drei GmbH to be renamed Powerwind GmbH | Powerwind 56, 0.9 MW wind turbine, components and systems thereof and hardware and software used therein | No | Yes | 10/27/2008 (signed) | No | Member countries of the European Patent Office | Only to Powerwind Affiliates | | Conergy to pay Licensor $1,750,000 Initial Fee for 450 MW<br><br>Powerwind has option to pay $1,750,000 (escalated at 3.5% annually) for additional 450 MW |
| | Patent License Agreement | Blitz F08-eins-null-drei GmbH to be renamed Powerwind GmbH | GE Infrastructure Technology LLC and GE Infrastructure Technology International Inc. | Wind energy turbines, including components, systems, hardware and software used therein | No | Yes | 10/27/2008 (signed) | No | Worldwide | | Royalty free | |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

General Electric Company v. Mitsubishi Heavy Industries, Ltd. and Mitsubishi Power Systems Americas, Inc.

Appendix F
Schedule 1

Summary of GE Agreements

| Bates | Agreement Title | Licensor | Licensee | Licensed Product | Settlement | Cross License | Effective Date | Exclusive | Territory | Sublicense | Royalty | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | Running Royalty | Lump Sum |
| GENDTX00105005 - GENDTX00105018 | Patent License Agreement | GE Infrastructure Technology LLC and GE Infrastructure Technology International Inc. | Guangdong Ming Yang Wind Power Technology Company Ltd. | 1.5 MW wind turbines, components and systems thereof and hardware and software used therein | No | Yes | 11/28/2008 (signed) | No | United States, Canada, Mexico | Only to Guangdong Ming Yang Wind Power Technology Company Affiliates | | $100,000 Initial Fee for 3 MW |
| | Patent License Agreement | Guandong Ming Yang Wind Power Technology Company Ltd. | GE Infrastructure Technology LLC and GE Infrastructure Technology International Inc. | Wind energy turbines, including components, systems, hardware and software used therein | No | Yes | 11/28/2008 (signed) | No | Worldwide | | Royalty free | |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

General Electric Company v. Mitsubishi Heavy Industries, Ltd. and Mitsubishi Power Systems Americas, Inc.

Appendix F
Schedule 2

**Summary of Mitsubishi Agreements**

| Bates | Agreement Title | Licensor | Licensee | Licensed Product | Settlement | Cross License | Effective Date | Exclusive | Territory | Sublicense | Royalty | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | Running Royalty | Lump Sum |
| MHINDTX3903603 - MHINDTX3903647 | Technology License Agreement | TPI Technology, Inc. and TPI Composites, Inc. | VienTek, LLC; VienTek II, LLC; VienTek Mexico, S. de R.L. de C.V.; Mitsubishi Power Systems, Inc.; and Mitsubishi Heavy Industries, Ltd. | Wind turbine blades employing proprietary technology relating to a resin transfer molding process that uses a vacuum to pull liquid resin into a dry lay-up and is used for manufacturing high quality, repeatable composite parts with virtually zero VOC emissions, and any components thereof. | No | No | 3/29/2002 | No | Japan and the geographic content of North America. | Yes to Affiliates. | Fully paid up, provided that the license fee has been paid. | MHI to pay a license fee of $1,500,000. |
| MHINDTX3903592 - MHINDTX3903602 | Quitclaim Nonexclusive License Agreement | Thomas A. Wilkins | Mitsubishi Heavy Industries, Ltd. | Wind turbine generator, the manufacture, use, and sale of which falls within the scope of the claims of the Licensed Patent. | No | No | 12/18/2009 | No | U.S. | Yes to Related Companies and MHI's customers and contractors. | MHI to pay $2,500 per MW for each Licensed Wind Turbine. If Wilkins grants the Licensed Patent to any third party in the future, and those terms are more favorable than the terms in this agreement, MHI may accept such more favorable payment terms. | MHI to pay a license fee of $1,000,000. MHI to pay an additional $1,000,000 as prepayment of running royalties due in the future for the first 400 MW of Licensed Wind Turbines imported under this agreement. |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY