IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **GENERAL ELECTRIC COMPANY,** §<br>§<br>*Plaintiff*, §<br>§<br>v. §<br>§<br>**MITSUBISHI HEAVY INDUSTRIES,** §<br>**LTD., and MITSUBISHI POWER** §<br>**SYSTEMS AMERICAS, INC.,** §<br>§<br>*Defendants*. §<br>§ | Civil Action No. 3:10-CV-00276-F<br><br>JURY TRIAL DEMANDED |

**OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER
OF LAW THAT GE IS NOT ENTITLED TO LOST PROFITS DAMAGES**

Plaintiff General Electric Company ("GE") herein responds to Defendants' March 5, 2012 Motion for Judgment as a Matter of Law that GE is Not Entitled to Lost Profits Damages. [D.I. 518]. Defendants contend that "GE has not established an adequate factual basis to allow the jury to award lost profits damages." [D.I. 518 at 1]. Defendants are effectively re-casting their Motion *In Limine* on lost profits [D.I. 445, Motion *In Limine* 3], which the Court denied. [D.I. 484]. The same evidence that GE previously told the Court it intended to introduce at trial in support of its lost-profits claim, *see* GE's Opp'n to Mitsubishi's Motions *In Limine* [D.I. 460 at 12-13], was in fact introduced through the testimony of GE's damages expert, Ms. Julie Davis, testimony of GE's employees, Liping Guthrie, Steve Swift, and Thomas Flaherty, and testimony from Mitsubishi employee Harmie Toren (formerly of Iberdrola). In short, Defendants' Motion fails to overcome the substantial evidence offered by GE supporting its position

1

that lost profits are appropriate for certain infringing sales made by Defendants. Defendants' Motion should be denied.

## GE PRESENTED SUBSTANTIAL EVIDENCE SUPPORTING ITS CLAIM FOR LOST PROFITS

The law of lost profits is not disputed: GE must establish it is more likely than not that "but for" Mitsubishi's infringement of the '705 patent, Iberdrola and Edison Mission Energy ("EME") would have purchased wind turbines from GE. GE has presented substantial evidence supporting its lost-profits claim.[1]

First, Defendants' unsupported argument that Ms. Davis somehow failed to provide a legitimate lost-profits analysis because she did not talk to either Iberdrola or EME in forming her opinion is without merit. The but-for analysis is a hypothetical analysis that assumes a world where Defendant would not have infringed the '705 patent, and looks at whether GE would have made the sales that Defendant made in the real world but for Defendants' infringement. There is no requirement that Ms. Davis contact Iberdrola and EME and ask them, with 20/20 hindsight, "would you have made the sale to GE if Defendants' wind turbines were unavailable?" Moreover, Ms. Davis testified that it was her belief that legal and ethical barriers existed that precluded her from directly contacting Iberdrola and EME, and it was not common practice in her field to unilaterally contact potential purchasers in performing the but-for world analysis. 3/2/12

---

[1] Defendants' own counsel did not dispute that there is evidence supporting GE's lost-profits claim. *See* 3/2/12 Trial Tr. (Vol. 4A) at 7:16-19 ("THE COURT: What is your position on this? Your position is that there is no admissible evidence that if Mitsubishi hadn't gotten the deal GE would get it? MR IVEY: I'm not saying there is no evidence.").

Trial Tr. (Vol. 4B) at 14:14-15:3, 16:13-17:3, 23:17-23:25.[2] To defeat this JMOL Motion, GE need only provide substantial evidence that Iberdrola and EME would have purchased GE wind turbines but for Defendants' infringement. Ms. Davis's testimony, and the documents relied on by Ms. Davis during her examination, did just that. *See, e.g.*, 3/2/12 Trial Tr. (Vol. 4A) at 52:18-21, 53:8-15, 55:20-72:20, 92:12-93:12, 98:22-99:5, 100:18-101:3, and 102:15-22; 3/2/12 Trial Tr. (Vol. 4B) at 8:7-9:1, 11:13-18; 19:13-20:22  As did other testimony provided at trial. *See, e.g.*, 3/1/12 Trial Tr. (Vol. 3B) at 52:23-58:11 (Testimony of Steve Swift); 3/2/12 Trial Tr. (Vol. 4A) at 20:2-26:20 (Testimony of Liping Guthrie); 3/2/12 Trial Tr. (Vol. 4A) at 40:3-41:20 (Testimony of Thomas Flaherty).

Ms. Davis's lost-profits analysis is not speculative, and properly conforms to (and specifically addresses) the analysis set forth in *Panduit Corp. v. Stalin Bros. Fibre Works, Inc.*, 575 F.2d 1152 (6th Cir. 1978). *See* 3/2/12 Tr. (Vol. 4A) at 60:18-72:20. Nothing more is required. For example, documents relied on by Ms. Davis show that, in December 2009, Iberdrola and EME would have sought to purchase GE turbines in order to keep its project deadlines if Defendants were unable to use GE's patented ZVRT method. *Id.* at 63:11-65:23; 3/2/12 Trial Tr. (Vol. 4B) at 12:6-24. Ms. Davis's testimony and supporting documents show that Iberdrola most likely would have purchased GE's turbines in order to keep its place in the interconnection queue for the Elm Creek II and Juniper Canyon projects, thereby avoiding costly delays or possible cancellation. *See id.*

---

[2] GE further notes that Harmie Toren, the third-party witness who testified by deposition in this case on behalf of Iberdrola, became a Mitsubishi employee after that deposition. Mitsubishi had the opportunity to call Mr. Toren as a live witness at trial, and elected not to. This in itself suggests that Mr. Toren has nothing to add to the evidence and testimony already presented at trial. Any communication with Mr. Toren, even if proper, would have been futile.

at 57:10-60:13, 64:13-65:23, 70:4-21.  Similarly, Ms. Davis's testimony and supporting documents show that EME most likely would have purchased GE turbines for use at the Taloga site in order to meet the operating date for its Power Purchase Agreement.  *See id.* at 55:20-57:9, 64:8-12, 70:22-25.  In addition, substantial evidence supports the fact that Defendants' customers would have terminated its contracts with Mitsubishi as a result of its infringing activity.  *See, e.g.*, *id.* at 92:12-93:12; 3/2/12 Trial Tr. (Vol. 4B) at 11:13-12:13.

Second, Defendants' argument that Mitsubishi had a contractual right to cure infringement, which GE allegedly failed to address, is again without merit.  Ms. Davis testified at length that there were no acceptable non-infringing alternatives available in the but-for world.  3/2/12 Trial Tr. (Vol. 4A) at 63:11-72:20, 98:22-99:5, 100:18-101:3, 102:15-22.  As such, Defendants' reliance on *Grain Processing* is flawed.  *See Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1350-51 (Fed. Cir. 1999) ("Without the infringing product, a rational would-be infringer is likely to offer an acceptable non-infringing alternative, *if available*, to compete with the patent owner rather than leave the market altogether." (emphasis added)).  Because, in Ms. Davis's detailed and fully supported opinion, no acceptable non-infringing alternatives existed in the but-for world, Defendant would have been unable to cure its infringement.  "Clearly, such a hypothetical reconstruction is not barred by the existence of a contract to sell the infringing product.  It is redundant to note that absent the infringing products, the contract for those products would be absent as well."  *ISCO Int'l, Inc. v. Conductus, Inc.*, No. C.A. 01-487 GMS, 2003 WL 280223, at *2 (D. Del. Feb. 10, 2003).

Third, Defendants highlight in their own Motion that, in Ms. Davis's opinion, the

4

"substation solution" was "not necessarily acceptable." [D.I. 518 at 4]. This undermines Defendants' third and final argument, which is that Ms. Davis "admitted that non-infringing alternatives existed." [*Id.*]. It is Ms. Davis's opinion that, even if non-infringing alternatives did exist, these alternatives would not have been *acceptable* to Iberdrola or EME in the but-for world. 3/2/12 Trial Tr. (Vol. 4A) at 63:11-72:20, 98:22-99:5, 100:18-101:3, 102:15-22. As such, substantial evidence supports Ms. Davis's lost-profits analysis, and no competitor solutions offered by any of Vestas, Siemens, Suzlon, Clipper, or Gamesa were acceptable alternatives, even if "theoretically" available. *Id*.

## **CONCLUSION**

For the foregoing reasons, GE respectfully requests the Court to deny Defendants' March 5, 2012 Motion for Judgment as a Matter of Law that GE is Not Entitled to Lost Profits Damages.

Date: March 5, 2012

Respectfully submitted,

s/ Carmen E. Bremer
T. Ray Guy
Texas Bar #08648500
Carmen E. Bremer
Texas Bar #24041009
WEIL GOTSHAL & MANGES LLP
200 Crescent Court, Suite 300
Dallas, TX 75201
Telephone: (214) 746-7700
Facsimile: (214) 746-7777
ray.guy@weil.com
carmen.bremer@weil.com

David Lender
Nicholas Sethi
WEIL GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
david.lender@weil.com
nick.sethi@weil.com

Anish R. Desai
WEIL GOTSHAL & MANGES LLP
1300 Eye Street N.W.
Suite 900
Washington, D.C. 20005
Telephone: (202) 682-7000
Facsimile: (202) 857-0940
anish.desai@weil.com

Nicholas Groombridge
PAUL WEISS RIFKIND WHARTON & GARRISON
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
ngroombridge@paulweiss.com

**ATTORNEYS FOR PLAINTIFF GENERAL ELECTRIC COMPANY**

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served on March 5, 2012 on all counsel of record via the Court's ECF system.

                                        s/ Carmen E. Bremer
                                            Carmen E. Bremer